**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA,
ATLANTA DIVISION**

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

MAR 2 6 2015

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

|  |  |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>    Plaintiff,<br><br>        v.<br><br>UNIVERSAL DEBT & PAYMENT SOLUTIONS, LLC, *et al.*,<br><br>    Defendants. | Civil action no.<br><br>**1:15-CV-0859**<br><br> |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS *EX PARTE*
MOTION FOR A TEMPORARY RESTRAINING ORDER WITH ASSET
FREEZE AND OTHER EQUITABLE RELIEF, AND ORDER TO SHOW
CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

**(FILED UNDER SEAL)**

# TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ...............................................................1

II.  RELIEF REQUESTED ........................................................................3

III. PARTIES ...........................................................................................3

    A. Plaintiff .......................................................................................3

    B. Defendants ..................................................................................4

       1.  Universal Debt & Payment Solutions, LLC ("UDPS") ..............4

       2.  Universal Debt Solutions, LLC ("UDS") .....................................5

       3.  WNY Account Solutions, LLC and WNY Solutions Group, LLC
          (collectively, "WNY") ..................................................................5

       4.  Check & Credit Recovery, LLC ("Check & Credit Recovery")...6

       5.  Credit Power, LLC ("Credit Power") ...........................................7

       6.  S Payment Processing & Solutions, LLC ("SPPS")....................7

       7.  Marcus Brown ...............................................................................8

       8.  Mohan Bagga ................................................................................8

       9.  Sarita Brown .................................................................................9

       10. Tasha Pratcher ("Pratcher").......................................................9

       11. Sumant Khan ("Khan")...............................................................10

       12. Varinderjit Bagga........................................................................10

IV.  THE DEBT COLLECTORS' UNLAWFUL CONDUCT ................... 10

V.   ARGUMENT ..................................................................................... 12

A. The Consumer Financial Protection Act authorizes this Court to grant the requested relief .............................................................. 13

B. The Court should grant the requested TRO and Preliminary Injunction ....................................................................................... 13

  1. The Bureau is likely to succeed on the merits of its case ....... 14

    a. The Bureau will likely succeed on the merits of its claims under the FDCPA ................................................................. 14

    b. The Bureau will likely succeed on the merits of its claims under the CFPA ................................................................... 19

      i.    The Debt Collectors' conduct was deceptive ............. 19

      ii.   The Debt Collectors' conduct was unfair .................. 20

    c. The individual defendants are individually liable ............. 21

    d. Each Debt Collector provided substantial assistance to the other Debt Collectors' unfair or deceptive conduct ............ 25

    e. The Debt Collectors operate a common enterprise ............ 28

  2. The TRO is necessary to prevent irreparable harm ............... 29

  3. The public interest and balance of hardships support the TRO ............................................................................................... 31

C. The scope of the proposed TRO is appropriate and necessary to secure effective final relief for consumers .................................... 32

  1. The conduct provisions in the proposed TRO are narrowly tailored to prevent ongoing consumer injury ........................... 32

  2. *Ex parte* relief is appropriate under the circumstances ......... 34

  3. An asset freeze is essential to preserve the possibility of effective final relief for victimized consumers ......................... 35

4. Immediate access to the Debt Collectors' business premises and limited expedited discovery are also necessary to prevent irreparable harm........................................................................ 36

VI. CONCLUSION..................................................................................... 37

# TABLE OF AUTHORITIES

## CASES

*Abercrombie & Fitch Trading Co. v. 7starzone.com*, 0:14-cv-60087, TRO, ECF 9, 2014 WL 352184 (S.D. Fla. Jan. 31, 2014) ............................................. 34, 36

*AT&T Broadband v. Tech Commc'ns, Inc.*, 381 F.3d 1309 (11th Cir. 2004) .. 33

*Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60 (2d Cir. 1993) ............... 17

*Boyko v. Am. Inter. Grp., Inc.*, 2009 WL 5194431 at *7, Civil No. 08-2214, (D.N.J. Dec. 23, 2009) ......................................................................................... 18

*CFPB v. Gordon*, 2:12-cv-06147, TRO, ECF 12 (C.D. Cal July 18, 2012) ....... 34

*CFPB v. Gordon*, 2:12-cv-06147, Mins. and Order 4, ECF 180 (C.D. Cal. June 26, 2013) ............................................................................................................ 22

*CFPB v. Harper, et al.*, 4:14-cv-80931, TRO, ECF 13 (S.D. Fla. July 16, 2014) ................................................................................................................... 34

*CFPB v. Jalan*, 8:12-cv-02088, TRO, ECF 14 (C.D. Cal. Dec. 4, 2012) .......... 34

*CFPB v. Moseley, et al.*, 4:14-cv-00789, TRO, ECF 8 (W.D. Mo. Sept. 9, 2014) ................................................................................................................... 34

*City of New York v. Golden Feather Smoke Shop, Inc.*, 597 F.3d 115 (2d Cir. 2010) ................................................................................................................... 30

*Edwards v. Niagara Credit Solutions, Inc.*, 586 F. Supp. 2d 1346 (N.D. Ga. 2008), *aff'd on other grounds*, 548 F.3d 1350 (11th Cir. 2009) ........................ 15

*FTC v. Affordable Media*, 179 F.3d 1228 (9th Cir. 1999) ................................. 31

*FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564 (7th Cir. 1989) .......................... 36

*FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611 (6th Cir. 2014) ....................... 28

*FTC v. Gem Merch. Corp.*, 87 F.3d 466 (11th Cir. 1996) ........................... 22, 32

*FTC v. Global Mktg. Grp., Inc.*, 594 F. Supp. 2d 1281 (M.D. Fla. 2008) ........ 21

*FTC v. H.N. Singer, Inc.*, 668 F.2d 1107 (9th Cir. 1982) .................................. 32

*FTC v. IAB Mktg. Assoc., LP*, 972 F. Supp. 2d 1307 (S.D. Fla. 2013)....... 31, 32

*FTC v. Mallett*, 818 F. Supp. 2d 142 (D.D.C. 2011) ......................................... 31

*FTC v. Nat'l Urological Grp., Inc.*, 645 F. Supp. 2d 1167 (N.D. Ga. 2008)...........................................................................................20, 22, 28, 29

*FTC v. Pinnacle Payment Servs., LLC, et al.*, 1:13-cv-03455, *Ex parte* TRO, ECF 7 (N.D. Ga. Oct. 21, 2013) .................................................................... 33, 35

*FTC v. Tashman*, 318 F.3d 1273 (11th Cir. 2003) ........................................... 19

*FTC v. University Health, Inc.*, 938 F.2d 1206 (11th Cir. 1991) ..................... 31

*FTC v. Windward Mktg., Ltd.,* No. Civ. A. 1:96–CV–615F, 1997 WL 33642380 (N.D. Ga. Sept. 30, 1997) .................................................................................. 21

*Frazier v. Absolute Collection Serv., Inc.*, 767 F. Supp. 2d 1354 (N.D. Ga. 2011) ............................................................................................................ 14, 19

*Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423 (1974) ............ 34

*Gresham v. Windrush Partners, Ltd.*, 730 F.2d 1417 (11th Cir. 1984)........... 30

*Jeter v. Credit Bureau, Inc.*, 760 F.2d. 1168 (11th Cir. 1985) ................... 16, 18

*LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185 (11th Cir. 2010) .............. 16

*McMillan v. Collection Prof's., Inc.*, 455 F.3d 754 (7th Cir. 2006) .................. 18

*Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032 (11th Cir. 2011).... 14

*Porter v. Warner Holding Co.*, 328 U.S. 395 (1946) .................................... 32, 33

*Scott v. Roberts*, 612 F.3d 1279 (11th Cir. 2010).............................................. 14

*SEC v. Apuzzo*, 689 F.3d 204 (2d Cir. 2012)...................................................... 26

*SEC v. ETS Payphones, Inc.*, 408 F.3d 727 (11th Cir. 2005) .......................... 36

*SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082 (2d Cir. 1972) ................... 35

*Smith v. Encore Capital Grp. Inc.*, 966 F. Supp. 2d 817 (E.D. Wis. 2013) ..... 16

*Swanson v. S. Oregon Credit Serv., Inc.*, 869 F.2d 1222 (9th Cir. 1988) ........ 17

*U.S. v. Diapulse Corp. of Am.*, 457 F.2d 25 (2d Cir. 1972) .............................. 32

*U.S. v. Hayes Int'l. Corp.*, 415 F.2d 1038 (5th Cir. 1969) ................................ 30

*West v. Costen*, 558 F. Supp. 564 (W.D. Va. 1983) ........................................... 15

**FEDERAL STATUTES**

12 U.S.C. § 5481(5) .......................................................................................... 21

12 U.S.C. § 5481(6) .......................................................................................... 21

12 U.S.C. § 5481(6)(A) ..................................................................................... 21

12 U.S.C. § 5481(12) ...........................................................................................3

12 U.S.C. § 5481(14) ...........................................................................................3

12 U.S.C. § 5481(15)(A)(x) ............................................................................... 21

12 U.S.C. § 5481(25)(B) ................................................................................... 21

12 U.S.C. § 5481(25)(C) ................................................................................... 22

12 U.S.C. § 5491(a) .............................................................................................3

12 U.S.C. § 5531 .......................................................................................... 1, 3

12 U.S.C. § 5531(c)(1) ...................................................................................... 20

12 U.S.C. § 5536 ............................................................................................... 13

12 U.S.C. § 5536(1)(B) .................................................................................. 22

12 U.S.C. § 5536(a) ........................................................................................1

12 U.S.C. § 5536(a)(1)(B) ............................................................................ 21

12 U.S.C. § 5536(a)(3) .................................................................................. 26

12 U.S.C. § 5564(a) ................................................................... 3, 30, 32, 36

12 U.S.C. § 5564(a)-(b).................................................................................. 13

12 U.S.C. § 5565.............................................................................................. 30

12 U.S.C. § 5565(a)(2) ............................................................................. 13, 32

15 U.S.C. § 78t(e) ........................................................................................... 26

15 U.S.C. § 1692-1692p ........................................................................... 1, 3

15 U.S.C. § 1692a(6) ...................................................................................... 14

15 U.S.C. § 1692c(b)....................................................................................... 17

15 U.S.C. § 1692d........................................................................................... 15

15 U.S.C. § 1692d(6) ..................................................................................... 15

15 U.S.C. § 1692e ..................................................................................... 15, 16

15 U.S.C. § 1692e(2)(A).................................................................................. 16

15 U.S.C. §1692e(4)........................................................................................ 17

15 U.S.C. § 1692e(5)....................................................................................... 17

15 U.S.C. § 1692e(7)................................................................................. 17, 18

15 U.S.C. § 1692e(10)..................................................................................... 18

15 U.S.C. § 1692e(11)..................................................................................... 19

15 U.S.C. § 1692e(14) .......................................................................................... 18

15 U.S.C. § 1692g ................................................................................................ 19

## FEDERAL RULES

Fed. R. Civ. P. 65(b) ........................................................................................... 34

## I. PRELIMINARY STATEMENT

The Consumer Financial Protection Bureau ("Bureau") asks this court to bring an immediate halt to an unlawful debt collection scheme that threatens and harasses consumers and causes consumers to pay purported debts that, in numerous cases, are not owed. Since 2011, the debt collectors – Universal Debt & Payment Solutions, LLC; Universal Debt Solutions, LLC; WNY Account Solutions, LLC; WNY Solutions Group, LLC; Check & Credit Recovery, LLC; Credit Power, LLC; S Payment Processing & Solutions, LLC; Marcus Brown; Mohan Bagga; Sarita Brown; Tasha Pratcher; Varinderjit Bagga; Sumant Khan (collectively, "Debt Collectors") – have violated the Consumer Financial Protection Act ("CFPA"), 12 U.S.C. §§ 5531, 5536(a), and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p, and defrauded consumers out of millions of dollars. The Debt Collectors' conduct is ongoing. (*See* PX1, January 2015 consumer payments to WNY).

As alleged in the Bureau's complaint, the Debt Collectors were able to victimize hundreds of thousands of consumers due to the material assistance of an automated telephone service, provided by defendant Global Connect, LLC, and payment processors, including defendants Global Payments, Inc.; Frontline Processing Corp.; Pathfinder Payment Solutions, LLC; and Francis David Corp. To stop ongoing consumer harm and preserve assets and

1

evidence, the Bureau seeks preliminary relief narrowly tailored to apply to the Debt Collectors.

The Debt Collectors use threats and harassment to collect "phantom" debt from consumers. The Debt Collectors threaten consumers with litigation and arrest if they do not agree to pay the Debt Collectors, when in fact, the collectors have no intention or authority to take such action. The Debt Collectors make allegations of check fraud, threaten "financial restraining orders," and threaten to notify the consumer's employer of the alleged fraud or debt.

In numerous cases, if not all, the consumer does not owe any debt. Yet the Debt Collectors deceive consumers into believing their threats are legitimate by verifying the consumer's personal information, such as date of birth, social security number, names of family members, and employment information.

When consumers ask, the Debt Collectors refuse to identify the issuer of the debt, but falsely promise to provide that information after the consumer makes payment. The Debt Collectors accept payment by debit or credit card, and in numerous cases, have debited consumer accounts without authorization.

## II.   RELIEF REQUESTED

The Bureau requests that this Court issue an *ex parte* temporary restraining order ("TRO") with an order to show cause why a preliminary injunction should not issue. The proposed TRO would enjoin the Debt Collectors' illegal practices, prevent the dissipation of assets, and provide the Bureau with immediate access to the Debt Collectors' business premises and expedited discovery to preserve evidence. The requested relief is necessary to prevent ongoing harm to consumers, protect against the risk of asset dissipation and destruction of crucial evidence, and thereby preserve this Court's ability to provide effective final relief for consumers whom the Debt Collectors have victimized.

## III.   PARTIES

### A. Plaintiff

The Bureau is an independent agency charged with regulating the offering and providing of consumer financial products or services under federal consumer financial laws, including the CFPA and FDCPA, 12 U.S.C. §§ 5481(12), 5481(14), 5491(a), and 5531; and 15 U.S.C. §§ 1692-1692p. It has the authority to bring civil actions against persons violating federal consumer financial laws and to "seek all appropriate legal and equitable relief including a permanent or temporary injunction as permitted by law." 12 U.S.C. § 5564(a).

3

## B. Defendants

As described in the Bureau's complaint, the Debt Collectors unlawfully threaten and harass consumers and use several interrelated limited liability companies to conceal their conduct and their assets. The Bureau's motion for temporary restraining order applies only to the Debt Collectors, whose conduct is ongoing and demonstrates a threat to dissipate assets and destroy evidence.

The "Debt Collector LLCs" are:

### 1.  Universal Debt & Payment Solutions, LLC ("UDPS")

UDPS is Georgia limited liability company registered at a UPS Store at 3939 Lavista Road, Ste. 312, Tucker, Georgia. (PX2, UDPS 2014 Corporation Annual Registration). Mohan Bagga formed UDPS in Georgia in November 2011. (PX3, UDPS Articles of Organization). UDPS operated from 1401 Peachtree St., Ste. 238, Atlanta, Georgia. (PX4, Office Lease Agreement Between Midtown Two TSO, LLC and UDPS). Sarita Brown and Marcus Brown are officers of UDPS. (PX2; PX5, UDPS Answers to CID Interrogatories, ¶ 2). Mohan Bagga controlled the bank account for UDPS. (PX6, UDPS Bank of America Signature Card). Through UDPS, the Debt Collectors collected consumers' payments, distributed funds among the other Debt Collectors, and paid for payment processing accounts. (PX7, UDPS Merchant Agreement with Frontline Processing; PX8, Bowra Decl. ¶4).

4

### 2.  Universal Debt Solutions, LLC ("UDS")

UDS is a New York limited liability company registered at 142 Stratford Rd., Buffalo, New York, which is Marcus Brown's and Tasha Pratcher's home address. (PX9, UDS Articles of Organization; PX10, Investigational Hearing of Marcus Brown, p. 9:7-9:17). Sarita Brown managed UDS's bank account, which received deposits nearly exclusively from the other Debt Collectors. (PX8, ¶5; PX11, UDS Account Opening Resolution). Through UDS, the Debt Collectors made payments to themselves and collectors, purchased debt and consumers' personal information, and rented office space. (PX8, ¶5).

### 3.  WNY Account Solutions, LLC and WNY Solutions Group, LLC (collectively, "WNY")

WNY Account Solutions, LLC is a New York limited liability company registered at 5140 Main St., Ste. 303, Williamsville, New York. (PX12, WNY Account Solutions, LLC Articles of Org.). WNY Solutions Group, LLC is a limited liability company registered at 140 Chatham Ave., Buffalo, New York. (PX13, WNY Solutions Group, LLC Articles of Organization). These entities are indistinct and utilize a bank account in the name of "WNY Account Solutions Group," which is a fictitious amalgamation of the two names. (PX14, WNY Account Solutions Group Account Opening Resolution). According to its website, as it appeared on May 28, 2014, WNY is a "Debt

5

Collection Agency" located at 3939 Lavista Rd., Tucker, Georgia. (PX15, WNY website, accessed May 28, 2014).

WNY is owned by Varinderjit Bagga and operated from 1401 Peachtree St., Ste. 238A, Atlanta, Georgia. (PX16, WNY Merchant Agreement with Vantiv, LLC). Sarita Brown, who was president of WNY, managed the WNY bank account, which received deposits nearly exclusively from the other Debt Collectors. (PX8, ¶6; PX14).

Through WNY, the Debt Collectors maintained accounts with Global Connect, a telephone message broadcasting service, which enabled the Debt Collectors to distribute threatening voice messages to consumers. (PX17, Global Connect LLC's Written Response to CID). The Debt Collectors also used WNY to maintain accounts with payment processors, to purchase debt and consumers' personal information, and to rent office space. (PX8, ¶6). Most withdrawals from the WNY account were distributed to the Debt Collectors and other collectors. (PX8, ¶6).

### 4. Check & Credit Recovery, LLC ("Check & Credit Recovery")

Check & Credit Recovery is a Georgia limited liability company registered at 50 Executive Park Drive South, Suite 5010, Atlanta, Georgia. (PX18, Check & Credit Recovery's Articles of Organization). Check & Credit Recovery is engaged in the collection of debt. (*Id.*). Marcus Brown is the sole officer of Check & Credit Recovery. (*Id.*). Through Check & Credit Recovery,

6

the Debt Collectors maintained an account with Global Connect that enabled the Debt Collectors to broadcast threatening collection calls to consumers. (PX19, Global Connect User Agreement).

### 5. Credit Power, LLC ("Credit Power")

Credit Power is a Georgia limited liability company registered at 6375 White Stone Pl., Jones Creek, Georgia, Mohan and Varinderjit Bagga's home address. (PX20, Credit Power 2014 Corporation Annual Registration; PX21, Investigational Hearing of Mohan Bagga, p. 8:4-18). Mohan Bagga is an officer of Credit Power and maintained Credit Power's bank account. (PX22, Credit Power Account Registration). Credit Power was organized to engage in the collection of debt. (PX23, Credit Power Articles of Org.). Through Credit Power, the Debt Collectors received deposits of consumers' money from payment processors, maintained accounts with Global Connect and telephone service providers, paid security guards, and distributed money to themselves. (PX8, ¶ 7; PX24, Credit Power Merchant Agreement with Frontline).

### 6. S Payment Processing & Solutions, LLC ("SPPS")

SPPS is a Georgia limited liability company registered at 3008 Oak Park Circle, Atlanta, Georgia, Sumant Khan's home address. (PX25, SPPS Articles of Organization). Sumant Khan is an officer of SPPS, which operated from 1401 Peachtree St., Ste. 238, Atlanta, Georgia. (PX26, SPPS Merchant Agreement with PaidSuite). Through SPPS, the Debt Collectors maintained

additional accounts with payment processors to collect consumers' money. (PX26). SPPS dispersed consumers' funds among the other Debt Collectors. (PX8, ¶8).

The individual defendants are:

### 7. Marcus Brown

Marcus Brown is an officer of UDPS and Check & Credit Recovery. (PX3; PX5; PX18). Brown controlled, or was able to control, all aspects of the debt collection business. Brown purchased consumer debt and personal information (PX27, Investigational Hearing of Marcus Brown, p. 166:19-169:1); controlled accounts with credit reporting agencies used to verify and update consumer information ("skip tracing") (PX28, UDPS Agreement for Services with CBCInnovis; PX29, CBCInnovis Sales Notes); controlled the telephone lines under his alias, Marcus Middlebrooks (PX30, RingCentral User Information); controlled the entities' mailbox (PX31, Mailbox Service Agreement); controlled the message broadcasting service used to contact victims (PX17; PX19); and leased office space for the Debt Collectors (PX2). The Debt Collectors distributed significant funds to Marcus Brown in connection with the debt collection scheme. (PX8, ¶¶4-8).

### 8. Mohan Bagga

Mohan Bagga is an officer of UDPS and Credit Power. (PX3; PX5; PX20). He controlled bank accounts in the names of UDPS and Credit Power

8

that the Debt Collectors used to operate the debt collection enterprise. (PX6; PX8, ¶¶4,7; PX22). Mohan Bagga opened and controlled the skip tracing (PX28) and Global Connect accounts (PX32, Global Connect Confidentiality Agreement); and guaranteed the lease for the Debt Collectors' office space at 1401 Peachtree St., Atlanta, Georgia (PX2). The Debt Collectors distributed significant funds to Bagga in connection with the debt collection scheme. (PX8, ¶¶4,6,7).

### 9. Sarita Brown

Sarita Brown is an officer of UDPS. (PX2). Sarita Brown controlled bank accounts for WNY and UDS from which she and Marcus Brown paid expenses for the Debt Collectors. (PX8, ¶¶5,6; PX11; PX14). The Debt Collectors distributed significant funds to Sarita Brown in connection with the debt collection scheme. (PX8, ¶5).

### 10. Tasha Pratcher ("Pratcher")

Pratcher is Marcus Brown's wife, and contributed financing to the common enterprise, including making rent payments for the Debt Collectors' office space. (PX8, ¶¶ 5,6; *e.g.*, PX33, Pratcher 8/15/14 Rent Payment). The Debt Collectors distributed significant funds to Pratcher in connection with the debt collection scheme. (PX8, ¶¶5,6).

### 11.   Sumant Khan ("Khan")

Khan created and controlled SPPS for the purpose of processing payments for the Debt Collectors. (PX25; PX34, Agreement Between Marcus Brown and Khan). The Debt Collectors distributed significant funds to Khan in connection with the debt collection scheme. (PX8, ¶¶4,5,6,8).

### 12.   Varinderjit Bagga

Varinderjit Bagga opened and controlled a payment processing account for WNY, through which the Debt Collectors took consumers' money. (PX16; PX35, WNY Collection Contingency Agreement). The Debt Collectors distributed significant funds to Varinderjit Bagga in connection with the debt collection scheme. (PX8, ¶¶4,6,7).

## IV.   THE DEBT COLLECTORS' UNLAWFUL CONDUCT

The Debt Collectors obtained consumers' personal information from debt portfolios and payday loan leads they purchased. (PX27, p. 166:19-169:1; PX36, Payment from UDS to Lead Publisher). The Debt Collectors obtained the consumer's name, address, place of employment, social security number, telephone numbers, and bank account information. (PX37, Shipe Decl., ¶16; PX38, Green Decl. ¶ 5). The Debt Collectors also obtained contact information for the purported debtor's friends and relatives, who may have co-signed or served as a reference for a loan. (PX37, ¶16). Using credit reporting services,

the Debt Collectors performed skip tracing to verify and update consumers'

contact information. (PX28).

The Debt Collectors used an automated telephone service to broadcast

their threats to millions of consumers. (PX17). Review of a call log Global

Connect provided the Bureau shows that Global Connect placed millions of

calls on behalf of the Debt Collectors. (PX37, ¶9) The Debt Collectors

broadcasted the following message, among others:

> We are contacting [First, Last] in reference to an allegation of check or
> bank fraud. It is imperative that we speak to you regarding this
> allegation. Our office has been mandated to contact your employer to
> verify your employment to issue paperwork for you to appear in court.
> If you wish to stop said action, press 9 or call 202-803-[####]. Once
> again, contact us at 202-803-[####]. You have until the close of business
> today.

(PX37, ¶8(a)). The pre-recorded voice message does not identify the caller or

that the purpose of the call is to collect a debt. The Debt Collectors concealed

their identity by causing "000-000-0000" to appear on the consumer's caller

identification when he or she received this call. (PX17). If the consumer called

the phone number in the message, or pressed "9" during the message, the call

was directed to phone numbers registered to the Debt Collectors. (PX37, ¶10).

When a consumer responded to this automated message, the Debt

Collectors threatened the consumers with legal process, including arrest, that

the Debt Collectors were not authorized, and did not intend, to pursue.

(PX39, Mohler Decl., ¶¶2, 5-7; PX40, Mason Charge Dispute; PX41, Muff

Charge Dispute; PX42, Honetor Charge Dispute). The Debt Collectors also contacted purported debtors' family members, ex-spouses, and employers and warned that a consumer would be arrested if he or she failed to pay. (PX39, ¶¶6-7). The callers used fictitious names, like "LRS Litigation Services" and "IRS Equity." (PX38, ¶2; PX43, Thomas Decl., ¶2; PX44, Zamoramendez Charge Dispute; PX45, Ballemy Charge Dispute). When a consumer, out of fear, authorized transactions, the Debt Collectors withdrew funds from the consumer's account. (PX39, ¶16; PX42, ¶2; PX41; PX45; PX46, Simpson Charge Dispute; PX47, Reynolds Charge Dispute). In numerous cases, the debts were not owed. (PX38, ¶3; PX41; PX44, ¶2; PX 45; PX48, Murphy Consumer Dispute; PX49, Wallace Consumer Dispute). In numerous cases, UDPS and Credit Power withdrew even more than the amounts the Debt Collectors deceived their victims to pay. (PX38, ¶7; PX45).

As described in the Bureau's complaint, the Debt Collectors utilized payment processors to collect millions of dollars of consumers' money, which enabled the Debt Collectors to immediately and efficiently collect payment by bank or credit card. (PX7; PX37, ¶20; PX16; PX23).

## V. ARGUMENT

The Bureau seeks restitution for consumers, a permanent injunction, and other equitable relief, to protect consumers from future harm and to redress the injury defendants have caused. To preserve its ability to

effectuate final relief and prevent the defendants from further violating the law during the pendency of this action, the Court should grant this application for an *ex parte* TRO, including an asset freeze and immediate access to the Debt Collectors' business premises.

## A. The Consumer Financial Protection Act authorizes this Court to grant the requested relief.

The CFPA vests the Bureau with the authority to prevent violations of federal consumer financial law, including the FDCPA, by commencing a civil action seeking all appropriate equitable relief, including a permanent or temporary injunction. 12. U.S.C. §§ 5536, 5564(a)-(b). The CFPA authorizes this Court to order any appropriate equitable relief, including restitution, and disgorgement of ill-gotten gains or compensation for unjust enrichment. 12 U.S.C. § 5565(a)(2).

## B. The Court should grant the requested TRO and Preliminary Injunction.

The Court should grant this motion because the Bureau meets the standard for preliminary relief. A plaintiff must establish four elements to obtain a temporary restraining order:

> (a) there is a substantial likelihood of success on the merits; (b) the TRO or preliminary injunction is necessary to prevent irreparable injury; (c) the threatened injury outweighs the harm that the TRO or preliminary injunction would cause to the non-movant; and (d) the TRO or preliminary injunction would not be averse to the public interest.

*Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034-35 (11th Cir. 2011). When the government is a party, courts will combine the third and fourth elements, weighing harm to the public interest as a hardship on the government. *See Scott v. Roberts*, 612 F.3d 1279, 1290 (11th Cir. 2010). In this case, the Bureau readily meets each element of the standard and presents ample evidence to justify the entry of a TRO and preliminary injunction.

### 1. The Bureau is likely to succeed on the merits of its case.

#### a. The Bureau will likely succeed on the merits of its claims under the FDCPA.

WNY, UDPS, UDS, Credit Power, Check & Credit Recovery, and SPPS are debt collectors subject to the FDCPA because they use mail, email, and telephones – instrumentalities of interstate commerce – in a business the principal purpose of which is the collection of debts, and because they collected or attempted to collect debts owed or due, or asserted to be owed or due, another. *See* 15 U.S.C. § 1692a(6). The Debt Collectors' pre-recorded voice messages and subsequent communications with consumers were attempts to collect a debt. *See Frazier v. Absolute Collection Serv., Inc.*, 767 F. Supp. 2d 1354, 1361-63 (N.D. Ga. 2011) (holding telephonic communications that did not identify the caller or the purpose of the call, but asked the consumer to return an "important courtesy call," constituted collection

14

activity subject to FDCPA). Under the FDCPA, the entities may be held liable for the violations of their collection agents. *See, e.g., West v. Costen*, 558 F. Supp. 564, 573 (W.D. Va. 1983) (holding corporation liable for employees' collection activities).

The FDCPA prohibits conduct the natural consequence of which is to "harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Conduct that violates § 1692d includes placement of telephone calls without meaningful disclosure of the caller's identity. 15 U.S.C. § 1692d(6). The hundreds of thousands of automated messages that Global Connect broadcast on behalf of the Debt Collectors, which failed to identify the caller or that the call was for the purpose of collecting a debt, constitute a failure to meaningfully disclose the caller's identity. *See Edwards v. Niagara Credit Solutions, Inc.*, 586 F. Supp. 2d 1346, 1352-53 (N.D. Ga. 2008), *aff'd on other grounds*, 548 F.3d 1350 (11th Cir. 2009) (granting summary judgment for plaintiff under § 1692d(6) where collector left pre-recorded messages that did not reveal that the calls were from a debt collector or that their purpose was to collect debt). The telephone broadcast messages violate the FDCPA's prohibition of harassing, oppressive, or abusive telephone calls.

The FDCPA also prohibits the use of any false, deceptive, or misleading representation or means in connection with the collection of any debt. 15

U.S.C. § 1692e. In determining whether the Debt Collectors'

misrepresentations were deceptive, the Court should consider whether the

conduct would mislead the "least sophisticated recipients of the debt

collector's letters and telephone calls." *Jeter v. Credit Bureau, Inc.*, 760 F.2d.

1168, 1175 (11th Cir. 1985) (holding least sophisticated consumer standard

applied to prohibition on use of a false representation or deceptive means to

collect a debt); *accord LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1193

(11th Cir. 2010). Section 1692e includes a non-exhaustive list of false,

deceptive, or misleading representations that are prohibited. The Debt

Collectors utilized numerous of these specifically prohibited practices to

collect purported debt from consumers:

- In violation of 15 U.S.C. § 1692e(2)(A), the Debt Collectors falsely
  represented the character, amount, or legal status of the debt, when
  they sought to collect debts that were not owed, or were not owed to the
  Debt Collectors. *See Smith v. Encore Capital Grp. Inc.*, 966 F. Supp. 2d
  817, 825-26 (E.D. Wis. 2013) (holding consumer stated § 1692e(2)(A)
  claim where collector's representation that consumer owed debt when
  debt was "non-existent," irrespective of whether collector's
  misrepresentation was intentional); *see also LeBlanc*, 601 F.3d at 1190
  ("The FDCPA does not ordinarily require proof of intentional violation
  and, as a result, is described by some as a strict liability statute.")

16

- In violation of 15 U.S.C. §§ 1692e(4) and (5), the Debt Collectors implied that nonpayment would result in arrest, garnishment, or other action where they had no intent or ability to take such action. The Debt Collectors' pre-recorded message references allegations of fraud and states that the consumer has "until the close of business today" to stop the issuance of "paperwork" that would require the consumer's appearance in court. The Bureau's search of Georgia state court dockets found that the Debt Collector LLCs have never taken legal action against a consumer. (PX37, ¶21). The implication that legal proceedings were imminent, when in fact, that was not the case, violates the FDCPA. *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993). The Debt Collectors' threat to contact the consumer's employer concerning a debt – a threat that cannot legally be carried out because 15 U.S.C. § 1692c(b) prohibits such communication – also violates the FDCPA. *See Swanson v. S. Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1227-28 (9th Cir. 1988) (holding collector's threat to make "complete investigation concerning your employment" was a threat to take action that cannot legally be taken).

- In violation of 15 U.S.C. § 1692e(7), the Debt Collectors falsely represented to consumers that the consumer had committed the crime of check fraud, to disgrace and threaten the consumer. In numerous, if

17

not all, instances, the Debt Collectors' allegations of "bank or check fraud" were false. By implying that the consumer committed a crime, or was dishonest, the Debt Collectors violated § 1692e(7). *See McMillan v. Collection Prof's., Inc.*, 455 F.3d 754, 763 (7th Cir. 2006) (holding debt collector's questioning consumer's honesty could shame or humiliate the consumer in violation of 15 U.S.C. § 1692e(7)).

- In violation of 15 U.S.C. § 1692e(10), the Debt Collectors used false representations and deceptive means, by making allegations of fraud and threatening imminent legal action, to collect or attempt to collect any debt. *See Jeter*, 760 F.2d at 1177-8.

- In violation of 15 U.S.C. §§ 1692e(10) and (14), the Debt Collectors used business names other than the true name of the debt collector's business when, among other names, it used "LRS Litigations," "Worldwide Requisitions," and "Arbitration Resolution." (PX37, Att. B; PX39, ¶1; PX43, ¶2; PX44; PX45; PX47). These are not registered trade names or fictitious names assigned to the Debt Collectors, and thus the Debt Collectors violated the FDCPA's disclosure requirements. *See Boyko v. Am. Inter. Grp., Inc.*, 2009 WL 5194431 at *7, Civil No. 08-2214, (D.N.J. Dec. 23, 2009) (noting failure to use corporate name or licensed name in collections is per se deceptive practice).

- In violation of 15 U.S.C. § 1692e(11), the Debt Collectors failed to disclose in their initial communication with consumers that they were debt collectors attempting to collect a debt. (PX37, ¶8). *See Frazier*, 767 F. Supp. 2d at 1365 (finding message that did not identify it was from a debt collector plainly violated statute).

The Debt Collectors also failed to validate debts, as required by the FDCPA. Section 809(a) of the FDCPA requires that debt collectors provide a written notice to a consumer, within five days after the initial communication, containing information including the amount of the debt, the name of the creditor to whom the debt is owed, and the consumer's right to dispute the alleged debt. 15 U.S.C. § 1692g. In numerous, if not all, instances, the Debt Collectors never provided this information to consumers. (PX38, ¶4; PX37, ¶8; PX37, Atts. A & B; PX39, ¶17; PX43; ¶8; PX45; PX46; PX47). Therefore, the Debt Collectors violated 15 U.S.C. § 1692g.

### b. The Bureau will likely succeed on the merits of its claims under the CFPA.

#### i. The Debt Collectors' conduct was deceptive.

A representation, omission, act, or practice is deceptive when "(1) there was a representation; (2) the representation was likely to mislead consumers acting reasonably under the circumstances; and (3) the representation was material." *FTC v. Tashman*, 318 F.3d 1273, 1277 (11th Cir. 2003). A

19

misrepresentation is material if it is important to consumers and likely to affect their conduct. *FTC v. Nat'l Urological Grp., Inc.*, 645 F. Supp. 2d 1167, 1190 (N.D. Ga. 2008).

The Debt Collectors lied to consumers that they had been accused of a crime, that the Debt Collectors would take legal action against the consumer, that payment to the Debt Collectors would result in settlement of a debt, and, in many cases, that any debt was owed at all. (PX37, ¶8; PX39, ¶2; PX41; PX42; PX43, ¶2; PX44; PX45; PX46; PX48). When the Debt Collectors made these representations, they were able to provide personally identifiable information about the consumer, such as the consumer's place of work and social security number, which would lead a reasonable consumer to believe that the collection effort and threats were legitimate. (PX37, Atts. A & B; PX45). The Debt Collectors' threats of legal action and arrest were material to consumers' decisions to make payments to the collectors. (PX40; PX41; PX42).

### ii.    The Debt Collectors' conduct was unfair.

Under the CFPA, an act or practice is unfair when (1) it causes or is likely to cause substantial injury to consumers; (2) the injury is not reasonably avoidable by consumers; and (3) the injury is not outweighed by countervailing benefits to consumers or to competition. 12 U.S.C. § 5531(c)(1). Substantial injury may include monetary harm, such as the consumers'

payment to the collectors for debts that were not owed or did not result in the

settlement of any debt. *See, e.g., FTC v. Global Mktg. Grp., Inc.*, 594

F. Supp. 2d 1281, 1288-89 (M.D. Fla. 2008). The harm to consumers was not

reasonably avoidable because consumers did not authorize the payments, or

authorized the payment under duress. *See FTC v. Windward Mktg., Ltd.,* No.

Civ. A. 1:96–CV–615F, 1997 WL 33642380 at *11 (N.D. Ga. Sept. 30, 1997)

(noting in determining whether the consumer injury could have reasonably

been avoided, the court focuses on whether the consumer had free and

informed choice). And the harm consumers' suffered, for which they received

no benefit, is not outweighed by any countervailing benefit to consumers or

competition.

### c. The individual defendants are individually liable.

It is unlawful for any covered person, such as persons engaged in

collecting debt, to engage in an unfair, deceptive, or abusive act or practice.

12 U.S.C. §§ 5481(6)(A), 5536(a)(1)(B). The Debt Collector LLCs and

individual defendants are covered persons because they are engaged in the

collection of consumer debt. *See* 12 U.S.C. §§ 5481(5), (6) & (15)(A)(x).

Additionally, the CFPA provides that "related persons" are deemed "covered

persons" subject to the CFPA's prohibition of unfair, deceptive, or abusive

acts or practices. 12 U.S.C. § 5481(25)(B). Related persons are defined to

include those who "materially participate" in the conduct of an entity's affairs

21

and those "charged with managerial responsibility for" an entity. *See* 12
U.S.C. § 5481(25)(C).

The CFPA prohibits covered persons from "engag[ing] in" unfair,
deceptive, or abusive acts and practices. 12 U.S.C. § 5536(1)(B). Engagement
is evidenced by a person's directly participating in the conduct at issue,
specifically directing the conduct at issue, designing or implementing the
plan that involved the conduct at issue, knowing of and approving the
conduct at issue, and managing the day-to-day operations of the entity
responsible for the conduct, specifically including the conduct at issue.

These factors are similar to those that courts apply under the Federal
Trade Commission ("FTC") Act for determining individual liability. *See CFPB
v. Gordon*, 2:12-cv-06147, Mins. and Order 4, ECF 180 (C.D. Cal. June 26,
2013) (applying FTC Act in granting CFPB's motion for summary judgment
against individual defendants for violations of CFPA). Under the FTC Act
standard, to establish individual liability the FTC must show: (1) the
corporate defendant violated the FTC Act, (2) the individual defendants
participated directly in the wrongful acts or practices or the individual
defendants had authority to control the corporate defendants; and (3) the
individual defendants had some knowledge of the wrongful acts or practices.
*Nat'l Urological Grp., Inc.*, 645 F. Supp. 2d at 1207 (citing *FTC v. Gem
Merch. Corp.*, 87 F.3d 466, 470 (11th Cir. 1996)). Each individual debt

collector named as a defendant in this action played an essential role in the unlawful collection activities alleged, and "engaged" in the deceptive practices described here.

Each of the Debt Collectors materially participated in the debt collection scheme.

Marcus Brown is an officer of UDPS and Check & Credit Recovery, LLC. (*See supra*, Part III.B.3.). All the Debt Collector LLCs are registered to addresses associated with Marcus Brown, including a post office box that is registered to him. (*Id*). Brown controlled, or was able to control, all aspects of the Debt Collectors' business: he purchased consumer debt and personal information, he controlled the skip tracing accounts used to obtain consumers' current personal information, he controlled the accounts for telephones and automated telephone broadcasting service, and he leased office space for the collectors. (*Id*). He managed the Debt Collector LLCs' day-to-day operations and controlled the entities' finances. (*Id*). Marcus Brown received payments for the collection scheme from WNY, UDS, Credit Power, UDPS, and SPPS. (*Id*).

Mohan Bagga is an officer of Credit Power and UDPS and controlled bank accounts in the names of those entities. (*See supra*, Part III.B.8). Mohan Bagga used the bank accounts to receive deposits from the payment processors of funds taken from consumers; to pay for consumer debt and

23

personal information, skip tracing, telephone services, payment processing services, and the mailbox registered to Marcus Brown; and to distribute funds generated by the collection scheme to Marcus Brown, Sumant Khan, Varinderjit Bagga, UDS, WNY, and Credit Power. (*Id*). Mohan Bagga opened and controlled the payment processing accounts for Credit Power and UDPS and provided a financial guarantee of the lease for the Debt Collectors' office space. Mohan Bagga received payments for the collection scheme from UDPS and Credit Power. (*Id*).

Sarita Brown is an officer of UDPS. (*See supra*, Part III.B.9). Sarita Brown controlled bank accounts for WNY and UDS from which she and Marcus Brown paid expenses for the collection scheme, including purchasing consumer information, paying collectors and managers who carried out the collection activities, and renting office space. (*Id*). Sarita Brown received payment for the collection scheme from WNY and UDS. (*Id*)

Tasha Pratcher provided financing for the scheme, including paying the rent for office space, and received significant payments generated by the collection scheme from WNY and UDS. (*See supra*, Part III.B.10).

Sumant Khan created and controlled SPPS, the sole purpose of which was to process payments for the collection scheme. (*See supra*, Part III.B.11). He controlled processing accounts used to process payments from consumers. (*Id*.) He also controlled associated bank accounts used to receive consumer

24

funds from the collection scheme and to pay payment processors and other expenses related to the collection scheme. (*Id*.) Kahn also used the bank accounts to distribute consumers' money to Marcus Brown and WNY. (*See supra*, Part III.A.6). Khan received payment for the collection scheme from SPPS, WNY, UDS, and UDPS. (*See supra*, Part III.B.11).

Varinderjit Bagga was the owner of WNY and opened and controlled a payment processing account for the entity. (*See supra*, Part III.B.12). She used this account to collect and distribute consumer funds generated by the collection scheme. *(Id.)* Varinderjit Bagga provided financing for the collection scheme, and is the owner of the residence that the Debt Collector LLCs, at various times, used as their principal place of business, 6375 Whitestone Place. (*Id*.; PX50) Varinderjit Bagga also created a limited liability company with Khan, VS Payment Solutions LLC, for the sole purpose of processing payments for the collection scheme. (PX51, VS Payment Solutions Articles of Org.; PX52, Agreement between Marcus Brown and Varinderjit Bagga). Varinderjit Bagga received payment for the collection scheme from WNY, Credit Power, and UDPS. (*See supra*, Part III.B.12).

Each individual defendant can be held jointly and severally liable for the illegal debt collection scheme.

### d. Each Debt Collector provided substantial assistance to the other Debt Collectors' unfair or deceptive conduct.

25

Each Debt Collector is liable for providing substantial assistance to the other Debt Collectors' unfair or deceptive conduct. Under the CFPA, it is unlawful for "any person to knowingly or recklessly provide substantial assistance to a covered person or service provider in violation of the provisions of section 1031 ... [and] the provider of such substantial assistance shall be deemed to be in violation of that section to the same extent as the person to whom such assistance is provided." 12 USC § 5536(a)(3). The Court may look to the Securities Exchange Act of 1934 ("Exchange Act") for guidance. Section 20(e) of the Exchange Act provides that "any person that knowingly or recklessly provides substantial assistance to another person in violation of a provision of this chapter ... shall be deemed to be in violation of such provision to the same extent as the person to whom such assistance is provided," which language is very similar to the CFPA's. *See* 15 U.S.C. § 78t(e).

Under the Exchange Act, providing "substantial assistance" may mean showing that the defendant "in some sort associate[d] himself with the venture, that he participate[d] in it as in something that he wishe[d] to bring about, [and] that he [sought] by his action to make it succeed." *SEC v. Apuzzo*, 689 F.3d 204, 206 (2d Cir. 2012).

Each individual defendant had actual knowledge of, or demonstrated a reckless indifference to, the high likelihood that his or her associates and the

corporate entities they controlled were acting unlawfully. Given Marcus

Brown's known history of illegal debt collection, these individuals should

have known that his collection agencies were engaging in unlawful conduct.

(*See* PX53, Attorney General Cuomo Announces Criminal Charges Against 12

Buffalo Debt Collectors). Mohan Bagga continued to do business with and on

behalf of Marcus Brown after the Bureau took Bagga and Brown's

investigational hearings and confronted them with allegations of their illegal

conduct, in April 2014.

Also after the investigational hearings of Brown and Mohan Bagga,

Khan and Varinderjit Bagga opened payment processing accounts on Marcus

Brown's behalf. Khan, Varinderjit Bagga, and Marcus Brown entered an

indemnity agreement that stated, "Any investigation by the FTC commission

or the Consumer Financial Protection Bureau (CFPB) for any violations will

be the responsibility for [sic] Marcus Brown and he will indemnify the

company and Mr. Sumant Khan and Ms. Veena Bagga in case of any

violations, including violations for processing payments and any fines

assessed based on a Civil Investigative Demand by CFPB." (PX52; *see also*

PX32). Tasha Pratcher, who in 2005 pleaded guilty, along with Brown, for

her role in a credit card fraud and identity theft scheme, was at least

recklessly indifferent to the other Debt Collectors' use of her financial

contributions to the ongoing collection scheme and to the source of the

hundreds of thousands of dollars she collected from the debt collection scheme. (PX 54, Certificates of Conviction, New York v. Brown and Pratcher, May 5, 2005). Sarita Brown knowingly, or at least recklessly, provided substantial assistance to the illegal acts of the other debt collectors by opening bank accounts and signing hundreds of checks for the Debt Collector LLCs. (*See supra* Part III.B.9)

### e. The Debt Collectors operate a common enterprise.

Because the Debt Collectors operated as a common enterprise, each individual and corporate collector may be held liable for the unlawful conduct of the others. *See FTC v. E.M.A. Nationwide, Inc.,* 767 F.3d 611, 637 (6th Cir. 2014) (adopting common enterprise theory where corporate and individual parties made up "messy maze" of interrelated entities, with overlapping employees and management and frequent transfer of funds among entities); *Nat'l Urological Grp., Inc.*, 645 F. Supp. 2d at 1182 (finding when corporations act as common enterprise, each may be held liable for deceptive acts and practices of the other). In determining whether entities are liable as a common enterprise, the court will consider the pattern and framework of the whole enterprise. *Id.* Relevant factors include "common control; the sharing of office space and officers; whether business is transacted through a maze of interrelated companies; the commingling of corporate funds and failure to maintain separation of companies . . . and evidence that reveals

28

that no real distinction exists between the corporate defendants." *Id.* All of these factors are present here.

The Debt Collector LLCs shared common ownership because they are controlled and managed by one or more of the individual defendants. (*See supra* Part III.A.1-6). Corporate filings, bank documents, and other records show that Marcus Brown controlled or owned all the Debt Collector LLCs, while Sarita Brown controlled or owned at least WNY, UDS, and UDPS; Mohan Bagga owned or controlled at least UDPS and Credit Power; Varinderjit Bagga owned or controlled at least WNY and UDPS; Khan owned or controlled at least SPPS; and Pratcher owned or controlled at least WNY, UDPS, and UDS. (*Id.*).

At various times, the Debt Collectors all shared office space and post office boxes, telephone numbers, fax numbers, and email addresses. (*See supra* Part III.A.1-6).

The Debt Collectors commingled funds. Bank account records show that monies collected from consumers and deposited into WNY, Credit Power, UDPS, and SPPS accounts were moved to UDS and WNY accounts. (PX8, ¶¶ 4-8).

For these reasons, the Debt Collectors are jointly and severally liable as a common enterprise.

**2. The TRO is necessary to prevent irreparable harm.**

It is likely that consumers will suffer irreparable injury if the Court does not issue the TRO. In law enforcement actions like this, unlike with private litigants, courts presume irreparable injury where an injunction is authorized by statute, the statutory conditions are satisfied, and the injunction is sought by the agency to which enforcement has been entrusted. *Gresham v. Windrush Partners, Ltd.*, 730 F.2d 1417, 1423 (11th Cir. 1984) (citing *U.S. v. Hayes Int'l. Corp.*, 415 F.2d 1038, 1045 (5th Cir. 1969)). "[I]rreparable injury should be presumed from the very fact that the statute has been violated." *Gresham*, 730 F.2d at 1423 (quoting *Hayes*, 415 F.2d at 1045); *see also, City of New York v. Golden Feather Smoke Shop, Inc.*, 597 F.3d 115, 121 (2d Cir. 2010) ("Requiring party seeking a statutorily-sanctioned injunction to make additional showing of irreparable harm, therefore, is not required."). The Court should find that the Bureau has established the Debt Collectors' violation of the CFPA and the FDCPA, for which the Bureau is authorized to seek injunctive relief. *See* 12 U.S.C. §§ 5564(a), 5565. Thus, the Court should presume that consumers have suffered irreparable injury, which they will continue to suffer without the requested relief.

Even without the presumption of irreparable harm, the Bureau has established that irreparable harm will likely result without the TRO. The

Debt Collectors operate a maze of interrelated entities and bank accounts among which they routinely transferred assets in an effort to conceal them. The Debt Collectors used multiple post office boxes and business addresses to conceal their identity, and relocated their central call center in October 2014. (PX31; PX55, Settlement Agreement and Lease Termination). Without the requested relief, the Debt Collectors are likely to continue to dissipate or conceal assets, which would irreparably hinder this Court's ability to secure effective final equitable relief.

### 3. The public interest and balance of hardships support the TRO.

The relief the Bureau requests is in the public interest, and the balance of hardships favors the Bureau. There is a strong public interest in halting the Debt Collectors' unlawful conduct and enforcing the law. *See FTC v. University Health, Inc.*, 938 F.2d 1206, 1225 (11th Cir. 1991); *FTC v. Mallett*, 818 F. Supp. 2d 142, 149 (D.D.C. 2011) ("[T]he public interest in ensuring the enforcement of federal consumer protection is strong[.]"). Likewise, there is a strong public interest in preserving the Debt Collectors' assets for victim restitution. *See FTC v. Affordable Media*, 179 F.3d 1228, 1236 (9th Cir. 1999) (noting that the public interest in preserving illicit proceeds for restitution victims is great). Equity favors preserving assets to protect consumers rather than allowing defendants to use likely ill-gotten assets. *FTC v. IAB Mktg.*

*Assoc., LP*, 972 F. Supp. 2d 1307, 1314 (S.D. Fla. 2013) (denying defendants'
motion to unfreeze assets to pay living expenses). In contrast, the defendants
"can have no vested interest in business activity found to be illegal." *U.S. v.
Diapulse Corp. of Am.*, 457 F.2d 25, 29 (2d Cir. 1972).

### C. The scope of the proposed TRO is appropriate and necessary to secure effective final relief for consumers.

#### 1. The conduct provisions in the proposed TRO are narrowly tailored to prevent ongoing consumer injury.

The Bureau's proposed TRO would immediately halt the Debt
Collectors' illegal practices and preserve assets and evidence. This relief is
necessary to prevent further harm to consumers and to preserve the status
quo.

The CFPA authorizes the Court to grant the requested relief, and any
appropriate legal or equitable relief including restitution, disgorgement of ill-
gotten gains, and limits on the activities or functions of a defendant.
12 U.S.C. §§ 5564(a), 5565(a)(2). Once the Bureau invokes a court's equitable
powers, the full breadth of the court's authority is available, including the
power to grant such additional preliminary relief as is necessary to preserve
the possibility of providing effective final relief. *FTC v. H.N. Singer, Inc.*, 668
F.2d 1107, 1112-13 (9th Cir. 1982). When the public interest is at stake, as it
is here, the exercise of the court's broad equitable authority is particularly
appropriate. *Gem Merch. Corp.*, 87 F.3d at 469 (quoting *Porter v. Warner*

*Holding Co.*, 328 U.S. 395, 398 (1946) (when the public interest is implicated, the court's "equitable powers assume an even broader and more flexible character than when only a private controversy is at stake")); *AT&T Broadband v. Tech Commc'ns, Inc.*, 381 F.3d 1309, 1316 (11th Cir. 2004). This Court has broad authority to grant the Bureau's requested relief.

In a similar FTC action, this Court recently granted relief, including an *ex parte* TRO, preliminary injunction, asset freeze, immediate access, and appointment of a receiver. In *FTC v. Pinnacle Payment Services, LLC*, the FTC alleged violations of the FTC Act and the FDCPA in connection with individual and corporate defendants' debt collection robo-calls to consumers claiming that a lawsuit had been filed against the consumer. *FTC v. Pinnacle Payment Servs., LLC, et al.*, 1:13-cv-03455, *Ex parte* TRO, ECF 7 (N.D. Ga. Oct. 21, 2013) (order granting *ex parte* temporary restraining order). The debt collectors threatened arrest or other action if the consumer did not send funds to satisfy a purported debt. The FTC alleged, similar to the Bureau's allegations in the instant matter, that consumers did not owe the purported debt or, in situations where consumers did have an outstanding debt, the defendants had no authority to collect it. In the *Pinnacle* matter, the Court granted broader *ex parte* relief than the relief the Bureau requests here, enjoining illegal conduct, freezing assets, appointing a receiver, and allowing immediate access to the defendants' business premises. *Id.*

33

Courts have also granted the Bureau similar relief in actions enforcing consumer financial laws and regulations: *CFPB v. Harper, et al.*, 4:14-cv-80931, TRO, ECF 13 (S.D. Fla. July 16, 2014) (ordering asset freeze, appointment of temporary receiver, immediate access to defendants' business premises, expedited discovery, and other relief); *CFPB v. Moseley, et al.*, 4:14-cv-00789, TRO, ECF 8 (W.D. Mo. Sept. 9, 2014) (same); *CFPB v. Gordon*, 2:12-cv-06147, TRO, ECF 12 (C.D. Cal July 18, 2012); *CFPB v. Jalan*, 8:12-cv-02088, TRO, ECF 14 (C.D. Cal. Dec. 4, 2012).

### 2. *Ex parte* relief is appropriate under the circumstances.

*Ex parte* relief is warranted in this case to ensure that the Debt Collectors' assets and possible evidence are preserved for consumers' redress and to protect consumers from further injury. *See* Fed. R. Civ. P. 65(b). A TRO may issue without notice to the adverse party if "immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." *Id.* An *ex parte* TRO serves the "underlying purpose of preserving the status quo and preventing irreparable harm." *Granny Goose Foods, Inc. v. Bhd, of Teamsters*, 415 U.S. 423, 439 (1974); *Abercrombie & Fitch Trading Co. v. 7starzone.com*, 0:14-cv-60087, TRO, ECF 9, 2014 WL 352184 (S.D. Fla. Jan. 31, 2014). Courts may grant *ex parte* TROs when defendants are likely to dissipate or conceal assets. *E.g.,*

34

*Pinnacle,* No. 1:13-cv-03455, TRO Order at ¶ 4, ECF 7 (likely dissipation of assets). For this reason, *ex parte* relief is appropriate.

The Debt Collectors are likely to dissipate and conceal assets if they receive notice before an order is entered. The Debt Collectors freely move money between accounts and use these accounts for personal expenses. (PX8, ¶¶4-8). Moreover, courts have held, and experience has shown, that defendants who engage in deceptive practices are likely to waste assets – or transfer assets beyond the reach of law enforcement – before the action resolves. *See SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1106 (2d Cir. 1972) (affirming district court asset freeze order and observing that "Because of the fraudulent nature of the [defendants'] violations, the court could not be assured that [defendants] would not waste their assets prior to refunding [victims'] money.").

### 3. An asset freeze is essential to preserve the possibility of effective final relief for victimized consumers.

The Bureau seeks restitution for the victims of the Debt Collectors' illicit scheme. To preserve the possibility of such relief, the Bureau asks the Court to freeze the Debt Collectors' assets and to order an immediate accounting to prevent concealment or dissipation of assets pending a final resolution. The Court's authority to grant "all appropriate legal and equitable relief" includes the equitable remedy of restitution and disgorgement, for

35

which an asset freeze is justified. *See* 12 U.S.C. § 5564(a); *SEC v. ETS Payphones, Inc.*, 408 F.3d 727, 734 (11th Cir. 2005)(holding asset freeze justified as a means of preserving funds for the equitable remedy of disgorgement). Courts have frozen individual defendants' assets where, as here, the individuals controlled – or had constructive knowledge of – the deceptive practices at issue. *ETS Payphones, Inc.*, 408 F.3d at 735; *see FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564, 574 (7th Cir. 1989) (affirming freeze of individual defendants' assets). An asset freeze is appropriate here to preserve the status quo, ensure that funds are not dissipated during the course of this action and preserve assets for consumer redress.

### 4. Immediate access to the Debt Collectors' business premises and limited expedited discovery are also necessary to prevent irreparable harm.

The proposed TRO would also grant the Bureau immediate access to the Debt Collectors' business locations to locate assets, identify potential additional defendants, and locate and preserve evidence. Consistent with this objective, the TRO would allow the Bureau to engage in limited expedited discovery about the nature and location of assets and documents. This relief is appropriate, on an *ex parte* basis, because providing notice to the Debt Collectors would enable them to destroy relevant evidence. *See AT&T Broadband*, 381 F.3d at 1319 (upholding *ex parte* search and seizure).

36

During the course of the Bureau's investigation, the Debt Collectors have provided incomplete and misleading responses to the Bureau's civil investigative demands ("CIDs") and demonstrated a willingness to conceal evidence. For example, at their investigational hearings, Marcus Brown and Mohan Bagga denied having any knowledge of the debt collection operation. (PX56, Brown IH, 94:18-20; PX57, Bagga IH, 34:7). When the Bureau's CID asked Sumant Khan to identify all payment processing accounts, he only identified one of at least two active accounts operating in his name. (PX58, Khan Response to CID Interrogatories ¶8). UDPS provided a response to the Bureau's CID that answers requests for documents and a written report with reference to "the attached jump drive." (PX4, Response to Request for Written Report). But defendants did not attach a jump drive to their response and, despite the Bureau's repeated requests, still have not provided the Bureau with a jump drive or the requested report. (PX37, ¶¶11-17 ). And Credit Power did not provide any response to the Bureau's CID to that entity. (PX37, ¶18). The requested relief is necessary to prevent the Debt Collectors from continuing to conceal evidence.

## VI. Conclusion

For the reasons discussed above, the Court should enter the proposed TRO, on an *ex parte* basis, to protect the public from further harm and help ensure effective relief for those harmed.

Dated: _3/20/15_

Respectfully Submitted,

Attorneys for Plaintiff

Consumer Financial Protection Bureau:

ANTHONY ALEXIS
Enforcement Director

FRANK KULBASKI
Acting Deputy Enforcement Director for
Litigation

JONATHAN B. ENGEL (MA bar #664518)
DAVID DUDLEY (WI Bar #1062812)
ENFORCEMENT ATTORNEYS
1700 G Street NW
Washington, DC 20552
Phone (Engel): 202-435-9037
Phone (Dudley): 202-435-9284
Email: *Jonathan.Engel@cfpb.gov*
Email: *David.Dudley@cfpb.gov*
Fax: 202-435-7722

And

Local Counsel
JOHN A. HORN
ACTING UNITED STATES ATTORNEY

LENA AMANTI
ASSISTANT U.S. ATTORNEY
Georgia Bar No. 666825
600 Richard B. Russell Federal Bldg.
75 Spring Street, S.W.
Atlanta, GA 30303
Telephone: (404) 581-6225
Facsimile: (404) 581-6163
Email: lena.amanti@usdoj.gov

38

## CERTIFICATE OF COMPLIANCE

The undersigned attorney hereby certifies, pursuant to LR 7.1.D, NDGa., that the foregoing Memorandum was prepared in Century Schoolbook 13 point font.

Jonathan B. Engel
Enforcement Attorney