**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>Plaintiff,<br><br>v.<br><br>UNIVERSAL DEBT & PAYMENT SOLUTIONS, LLC; *et al.*,<br><br>Defendants. | Case No. 1:15-cv-0859 |

**PATHFINDER PAYMENT SOLUTIONS, INC.'S**
**REPLY IN SUPPORT OF MOTION TO DISMISS**

# TABLE OF CONTENTS


INTRODUCTION ....................................................................................3

ARGUMENT AND CITATIONS OF AUTHORITY ...................................7

A. The Bureau Does Not Provide Any Explanation Concerning the Complaint's Failure to Allege Substantial Assistance. .................7

B. The Complaint Fails to Satisfy the Recklessness Pleading Standard. ............................................................................ 11

C. The Bureau Concedes a Fatal Flaw in Count IX............................. 12

1. The Bureau Admits that the Complaint Fails to Allege the Essential Element of a Consumer Transaction. ................... 13

2. The Complaint Admittedly Fails to Plead that Pathfinder Is a Covered Person. ........................................................ 14

3. Pathfinder Is Not a Service Provider......................................... 16

4. The Complaint Does Not Allege that Pathfinder Committed an Unfair, Deceptive, or Abusive Act..................... 19

D. The Bureau's Characterization of the Complaint Is Intentionally Misleading.................................................................. 22

CONCLUSION........................................................................................ 23

## INTRODUCTION

The title of Plaintiff's opposition brief—the Consolidated Opposition to Pathfinder, Global Payments, and Frontline's Motions to Dismiss—is instructive. Although Plaintiff Consumer Financial Protection Bureau (the "Bureau") evidently *opposes* Pathfinder's Motion to Dismiss, it neither presents nor attempts a *response* to many of Pathfinder's arguments.

Pathfinder's Motion to Dismiss shows that Count IX of the Complaint fails as a matter of law. Among other things, Count IX does not allege the necessary element that Pathfinder's conduct have been connected to a consumer transaction.[1] The Bureau plainly admits that Count IX is fatally flawed: "***[W]hile they may not interact directly with consumers***, Pathfinder and Frontline both play a key role . . . ."[2] It cannot rescue Count IX by attempting to substitute an extra-statutory standard in place of the one it has admittedly failed to meet. The Consumer Financial Protection Act (the "Act") does not prohibit a party from playing a "key role" in anything. Nor is playing a "key role" prohibited under any of the authority cited by the Bureau. The

---

[1] Pathfinder Mot. to Dismiss ("Mot.") at 13; Consol. Opp. to Pathfinder, Global Payments, and Frontline's Mots. to Dismiss ("Opp. Br.") at 5.

[2] Opp. at 5 (emphasis supplied).

Bureau's position that the Court should engraft this "key role" standard onto the Act's requirements is not warranted by existing law.

Pathfinder's Motion also demonstrates that Count VIII against it fails as a matter of law, in part, because the Bureau has not—and cannot—satisfy the requirement to show substantial assistance set forth by the United States Court of Appeals for the Second Circuit.[3] The Opposition ***does not provide any response*** to this argument. Instead, the Bureau argues that the Complaint alleges that Pathfinder, *among others*, "assisted" (though noticeably not "substantially") in prohibited conduct and played a "critical role" in the Debt Collectors' scheme.[4] The Opposition presents no authority for the proposition that playing a purportedly "critical role" has any bearing on a party's liability under the Act. Even if the Bureau could prove that Pathfinder played a "critical role," it would still not be entitled to judgment.

The Complaint, like its Opposition, reflects the Bureau's apparently distant relationship with pleading standards and formal requirements. Just as the Bureau's shotgun Complaint indiscriminately lumps in Pathfinder with

---

[3] Mot. at 7-8.

[4] Opp. at 22-23.

Global Payments, Inc. ("Global") and Frontline Processing Corporation ("Frontline") as the "Payment Processors," the Opposition presents arguments aimed at indeterminate targets. In fact, to try to establish that the Complaint's allegations against Pathfinder are sufficient to state a claim, the Opposition relies on portions of the Complaint that discuss neither conduct by Pathfinder nor by the "Payment Processors" as that term is defined in the Complaint. Instead, the Opposition points to "payment processors" in general – even nonparties.[5]

This leaves it to each Payment Processor, in drafting its Reply, to trawl the Opposition for any argument that might be addressed specifically to it. Pathfinder's effort in this task may be imperfect; that was likely the Bureau's aim in presenting a consolidated opposition brief. The Bureau could have filed a separate response in opposition to each of the three Payment Processors' motions to dismiss, but chose not to do so. Before filing the Complaint, the Bureau demanded production of and received from Pathfinder more than 21,000 pages of documents relating to nearly every aspect of its

---

5 *See, e.g.,* Opp. at n.33 (citing, *inter alia*, Compl. ¶ 145 ("Payment processors promote their service as providing increased sales and "enhanced business image.")).

business. Even after imposing this huge burden on Pathfinder and receiving a wealth of detailed information, the Bureau apparently only believes that it can state a claim if it groups Pathfinder with Global and Frontline and makes allegations indiscriminately about all three—and sometimes about the entire payment processing industry. The Court should not permit any plaintiff—much less a federal regulatory agency—to profit from its own vagueness. Nor should a defendant in a federal regulatory action be left to guess when an argument is made against it individually, against all defendants jointly, or against no one in particular.

Dismissal of the claims against Pathfinder is the only appropriate outcome. The Bureau has already imposed a crushing burden on a company that has only eight full-time employees. Allowing an insufficient Complaint to limp past a motion to dismiss, toward full-on discovery and summary judgment, would allow the Bureau a *de facto* victory. The Bureau should not be allowed to force Pathfinder into shouldering the crushing burden of discovery or to push companies out of business because they cannot afford to defend themselves against the full weight of the government.

## ARGUMENT AND CITATIONS OF AUTHORITY

### A. The Bureau Does Not Provide Any Explanation Concerning the Complaint's Failure to Allege Substantial Assistance.

In Count VIII, the Bureau claims that it is attempting to allege "substantial assistance" under 12 U.S.C. §§ 5536(a)(3). To avoid dismissal of its claim under this provision, the Bureau must plausibly allege: (1) a primary violation by another and (2) that Pathfinder "knowingly or recklessly provided substantial assistance" to that party's violation (the "Substantial Assistance Language").[6]

The Substantial Assistance Language of 12 U.S.C. § 5536(a)(3) has not been interpreted or applied as it is used in that part of the Dodd-Frank Act.[7] Pathfinder's Motion, however, makes clear that the Dodd-Frank Act included the Substantial Assistance Language in its amendment to Section 15 of the Securities Exchange Act. That language in the Securities Exchange Act must therefore be read *in pari materia* with the *exact same language* in the Act.[8]

---

[6] 12 U.S.C. § 5536(a)(3).

[7] Mot. at 5-6; Opp. at 15.

[8] 12 U.S.C. § 77t(e).

The Substantial Assistance Language was interpreted, defined, and applied in *SEC v. Apuzzo*.[9] In *Apuzzo*, the Second Circuit clarified that, in a regulatory enforcement action, the Substantial Assistance Language embodies the classic formulation of aiding and abetting liability originally set forth by Judge Learned Hand.[10] In order to withstand the motion to dismiss the substantial assistance claim, the *Apuzzo* complaint therefore had to allege plausibly that the defendant:

> in some sort associate[d] himself with the venture, that [the defendant] participate[d] in it as something that he wished to bring about, [and] that he [sought] by his action to make it succeed.[11]

As explained in Pathfinder's Motion, the Complaint falls well short of this standard. Its two-paragraph "formulaic recitation of the elements of a cause of action" does not plausibly state a claim.[12] Count VIII merits dismissal.

***The Bureau provides no substantive response to this argument***. Instead, it attempts to fill in the blank with its own new invented standards.

---

[9] 689 F.3d 204 (2d Cir. 2012).

[10] *Id.* at 212.

[11] *Id.* at 212 (citing *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir. 1938)).

[12] *Ashcroft v. Iqbal*, 556 U.S. at 678 (quotation marks and citation omitted).

The Opposition attempts to add an allegation that the Payment Processors played a "significant role" in the Debt Collectors' violations.[13] The Bureau contends—without citation to authority—that these violations were "possible only with the [apparently less than substantial] assistance of the Payment Processors" and were the "foreseeable result" of the Payment Processors' conduct.[14] The invented standards continue: the Payment Processors played a "critical role," were "extremely helpful," and the Debt Collectors' violations were "foreseeably" the result when the Payment Processors "continued to assist" them (although, again, apparently not "substantially").[15]

The Opposition provides no authority in the Act itself or in case law for the proposition that substantial assistance may be satisfied by any of the terms the Bureau would rather substitute into the statutory language. The Act does not prohibit parties from being "extremely helpful." Nor does the Act prohibit parties from playing a "critical role." It prohibits parties from "knowingly or recklessly providing substantial assistance" to a primary violation by another.

---

13 Opp. at 22.

14 *Id.*

15 *Id.* at 23.

*Apuzzo* applied this Substantial Assistance Language in 2012. The Bureau cites *Apuzzo* as authority in support of its own argument on a separate point, but entirely ignores *Apuzzo*'s holding concerning the Substantial Assistance Language.[16] Indeed, the portion of the argument in the Opposition that addresses substantial assistance (Section C.3) makes no reference to Pathfinder at all—except to toss Pathfinder under the catch-all term, "Payment Processors."[17]

As demonstrated in the Motion, allowing the Bureau to replace the standards required by the statute with those of its own creation would make the Act so broad that the Bureau could name practically any arm's-length service provider as a defendant. The use of electricity was, no doubt, "extremely helpful" to the Debt Collectors' scheme. But the Bureau has not (yet) sought to add Georgia Power as a defendant under such a theory. Congress did not write the Act this broadly. The Court should decline the Bureau's invitation to read it this way.

---

[16] *Id.* at 21.

[17] *Id.* at 20-23.

## B. The Complaint Fails to Satisfy the Recklessness Pleading Standard.

Having presented no remedy for the Complaint's failure to allege substantial assistance, the Opposition spends five pages meditating on whether Count VIII sufficiently pleads that "the Payment Processors" were *knowing or reckless* in providing "substantial assistance" to the Debt Collectors.[18] Further, although the Opposition presents *SEC v. Big Apple Consulting USA Inc*. as helpful to its arguments (or, at least, "not to the contrary"), *Big Apple* is in fact *controlling, adverse* authority.[19] The Bureau cites nothing to distinguish *Big Apple* or to support its argument that *Big Apple* does not embody the applicable scienter requirement.

*Big Apple* states directly that the Eleventh Circuit's "definition of severe recklessness is identical to that used by other courts to describe what conduct they considered reckless."[20] Congress, in the Dodd-Frank Act, expressly incorporated the recklessness formulation used by most federal courts, which is substantively the same as what the Eleventh Circuit calls

---

18 Opp. at 15-20.

19 783 F.3d 786 (11th Cir. 2015).

20 *SEC v. Big Apple*, No. 6:09-cv-1963, 2011 WL 3753581, at *10, n.11.

"severe recklessness." The Bureau presents nothing to suggest that Congress intended to respond to the Eleventh Circuit's precedent on this point or to modify how courts anywhere interpret recklessness. To satisfy "recklessness" under the Dodd-Frank Act—which is also known as "severe recklessness" in the Eleventh Circuit—the Bureau must allege facts sufficient to show that Pathfinder engaged in highly unreasonable conduct that was an extreme departure from the standards of ordinary care.[21] The Complaint's allegations regarding Pathfinder do not approach this lofty standard. And the Bureau does not argue that they do—it only seeks to escape application of *Big Apple*.

**C. The Bureau Concedes a Fatal Flaw in Count IX.**

To avoid dismissal of Count IX and allege an Unfair Practices claim, the Bureau must plausibly allege: (1) that the defendant is a covered person or service provider; (2) that the defendant committed some unfair, deceptive, or abusive act; and (3) that this act was carried out ***in connection with a transaction with a consumer*** for a consumer financial product or service or the offering of a consumer financial product or service.[22]

---

[21] *See, e.g., SEC v. Imperiali*, 594 F. App'x 957, 960 (11th Cir. Dec. 2, 2014).

[22] 12 U.S.C. § 5531(a), (c)(1) (the "Prohibited Acts Provision").

### 1. The Bureau Admits that the Complaint Fails to Allege the Essential Element of a Consumer Transaction.

The third element of an Unfair Practices claim reflects Congress's intent to limit the application of the Act to certain parties. It should be read strictly so as not to enlarge the defendant class beyond the congressional intent.[23] This element must be satisfied *regardless* as to whether the Complaint alleges that the defendant is a covered person or a service provider. The Opposition concedes that the Complaint fails on this element: "***[W]hile they may not interact directly with consumers***, Pathfinder and Frontline both play a key role . . . ."[24] Accordingly, this element fails as a matter of law as to Pathfinder. Where there is no consumer transaction, the Court's inquiry should end: A claim has not been plausibly alleged as required by *Twombly* and *Iqbal*.

The Bureau nonetheless attempts to rescue Count IX by saying that it meets a lesser, inapplicable, invented standard. The Bureau has drawn its

---

23 *See Central Bank, N.A. v. First Interstate Bank, N.A.*, 511 U.S. 164, 179 (1993) (holding that it is "anomalous to impute to Congress an intention in effect to expand the defendant class . . . beyond the bounds delineated for comparable express causes of action").

24 Opp. at 5 (emphasis supplied).

"key role" standard out of whole cloth; it is not derived from the Act or from any applicable authority. Neither the Complaint nor the Opposition presents any argument about why the Bureau's "key role" language should be engrafted onto the Act. That the Bureau freely admits this fatal flaw suggests that it brought the Complaint knowing that it was defective.

### 2. The Complaint Admittedly Fails to Plead that Pathfinder Is a Covered Person.

As articulated in Pathfinder's Motion, a "covered person" under the Act is: "any person that engages in offering or providing a consumer financial product or service" or any such person's affiliate (meaning one who "controls, is controlled by, or is under common control" with a service provider).[25] The Complaint alleges no common ownership or control involving Pathfinder. Accordingly, the second portion of this definition cannot be satisfied. Further, the Bureau fails to establish that Pathfinder "engages in offering or providing a consumer financial product or service." In fact, the Bureau freely admits that Pathfinder does not "interact directly with consumers."[26]

---

[25] 12 U.S.C. § 5481(26)(6).

[26] Opp. at 5.

The Bureau again attempts to replace a standard that the Complaint does not and cannot meet with an unsupported, invented, lower standard that the Bureau must believe it can satisfy. Protesting irrelevantly, the Bureau asserts that Pathfinder "*play*[ed] *a key role* in the consumer payment processing network."[27] But this is not the applicable standard. The Bureau presents no authority to suggest that it is. The "key role" language the Bureau seeks to apply bears no relation to the Act and is not warranted by existing law. As a matter of law, the Complaint does not allege that Pathfinder is a Covered Person under the Act.

The Bureau, however, continues its remonstrations on this topic—showcasing exactly the type of flawed logic identified by Pathfinder in its Motion. After admitting that Pathfinder never "directly contacted the Debt Collectors' victims," the Bureau speculates that holding Pathfinder liable is appropriate because its work "enabled consumers to pay the Debt Collectors with bank and credit cards."[28] This perfectly encapsulates the Bureau's Mad-Libs approach to the Act. If simple *but-for* causation could make a party a

[27] *Id*. (emphasis supplied).

[28] *Id*. at 6.

Covered Person, the Bureau's charge would be much easier. It could pursue the telephone company without whom the Debt Collectors could not have made calls; the electric company without whom the Debt Collectors could not have conducted business; and the janitorial services that gave the Debt Collectors the "air of legitimacy" associated with clean offices. Reading the Act in such a way would allow the Bureau nearly unfettered authority, contravene the Act's text, and thwart the manifest intent of Congress.

**3. Pathfinder Is Not a Service Provider.**

The Act provides two exceptions to the definition of a Service Provider. The Complaint must allege that these exceptions are not applicable in order to state a claim. The Bureau does not contest this point. The Act excludes from the definition of "Service Providers": (1) those who "unknowingly or incidentally" transmit financial data; and (2) those who provide a "support service of a type provided to businesses generally or a similarly ministerial service."[29] The Complaint does not contain any of this language. In fact, the allegations in the Complaint demonstrate that the exceptions *are* applicable. The Opposition's efforts to rescue the Complaint after the fact fail.

---

[29] 12 U.S.C. § 5481(26)(A)(ii) (emphasis supplied).

It is clear on the face of the Complaint that the services allegedly provided by Pathfinder here were "of a type provided to businesses generally or a similarly ministerial service."[30] The Payment Processors are alleged to have provided "services that enable merchants to accept check, card, and electronic payments at a point of sale."[31] Such services are provided to nearly every type of business and are not alleged to be specific to debt collection, or consumer financial products or services. Lawyers even pay for their PACER accounts with credit/debit cards. Under the Bureau's expansive view of its authority under the Act, it could file suit against payment processors because an attorney used a credit card to pay for the filing of a complaint that was made in bad faith.

As with any argument to which it has no response or cannot invent a standard it would rather apply, the Bureau does not address it at all. Instead, it opts to include a new "factual" allegation in its Opposition that the services provided by the Payment Processors were "not ministerial."[32] This allegation

---

30 Compl. at ¶¶ 80-81.

31 *Id*. at ¶ 144.

32 Opp. at 7.

appears nowhere in the Complaint. In making this new allegation, the Opposition cites portions of the Complaint in which the Payment Processors' services are alleged to have been—as a general matter—important to the success of the Debt Collectors' scheme.[33] To be sure, the Complaint does not employ the language used in either exception—the "offered to businesses generally" or the "ministerial" standards.

Whether a defendant is, to use the Opposition's language, "critical to the success" of an unlawful scheme is not the standard imposed by the Act or any other cited authority. That a service was "critical" does nothing to undercut whether it is "ministerial" in nature. Nor does the "criticalness" of a service have any bearing on whether it is of a type offered to businesses generally.

Further, because the Complaint never alleges that Pathfinder did anything more than "unknowingly or incidentally transmit[ ] or process[ ] financial data," the first exception to the definition of a Service Provider is also met.[34] Paragraph 147 of the Complaint alleges only that Pathfinder and

---

[33] Opp. at n.33.

[34] 12 U.S.C. § 5536(a)(1).

the Payment Processors captured credit card information through a point of sale terminal card reader and "transmitted" that information to a payment network. The Complaint is bare of any allegation that Pathfinder examined this financial information—only that it unknowingly transmitted or processed it. The Complaint does not discuss the language from the exceptions at all. The Opposition presents nothing capable of rescuing the deficient allegations against Pathfinder. Because the Complaint makes no effort to avoid the applicable exceptions and actually pleads directly into them, dismissal of Count IX is required.

#### 4. The Complaint Does Not Allege that Pathfinder Committed an Unfair, Deceptive, or Abusive Act.

There is no aiding and abetting liability for violations of the Prohibited Acts Provision of the Act. Pathfinder made this argument in its Motion; the Bureau provides *no response* to it.[35] Aiding and abetting liability under the Act exists exclusively in 12 U.S.C. § 5536(a)(***3***). The Bureau may not ask, and the Court is not permitted, to read aiding and abetting liability into Subsection (a)(***1***).[36] The Complaint alleges only that Pathfinder aided

35 Mot. at 20-22.

36 *See Central Bank*, 511 U.S. at 179.

purported violations by Global. It does not assert that Pathfinder ever entered into any transaction with a consumer.[37] The Bureau has not alleged a direct violation and it cannot allege aiding and abetting liability.

Rather than address Pathfinder's argument, the Bureau simply *assumes* that aiding and abetting liability is statutorily permissible. The Opposition's argument that aiding and abetting liability is appropriate here is supported entirely by analogy to cases applying different law to actions instituted by a different regulatory agency.

The Opposition relies on four FTC cases. Those cases, however, serve only to illustrate the Complaint's deficiencies. For example, while the Bureau attempts to rely on *FTC v. Windward Marketing, Inc.*, the Complaint's allegations pale beside the facts of that case.[38] In *Windward*, a defendant (Saleem) did more than simply allow customers to swipe credit cards; it "clearly controlled the day-to-day activities" of its codefendant.[39] In fact,

---

[37] Compl. at ¶ 80.

[38] 1997 U.S. Dist. LEXIS 17114 (N.D. Ga. Sept. 30, 1997).

[39] *Id*. at *13.

Saleem had such intimate knowledge of and involvement in its codefendant's violations that the court concluded:

> Defendant Saleem specifically had the authority to control all of the precise actions which comprised the unfair practices for which Plaintiff FTC contends that Defendant Wholesale should be held liable.[40]

Such a defendant truly could be said to have associated himself with the violation, participated in it as something he wished to bring about, and sought by his action to make it succeed—and, likely, to have committed a primary violation.

Comparison to the facts in *Windward* does the Complaint no favors. Pathfinder is not alleged to have had control over any aspects of the Debt Collectors' scheme or to have approached such intimate involvement in it.

Other cases cited by the Bureau are as easily distinguished from the facts alleged here. In *FTC v. Wells*, the defendant directly facilitated unauthorized consumer transactions and received direct reports of actual fraud.[41] The Complaint here merely alleges that Pathfinder should have

---

[40] *Id*. at *16.

[41] 385 F. App'x 712 (9th Cir. 2010).

investigated whether transactions unauthorized by the cardholder were carried out as the result of high-pressure telephone calls.

In *FTC v. Neovi*, the defendant operated a website that allowed users to create and deliver unverified checks to draw from accounts that were not their own.[42] The defendant, then, offered a service manifestly intended to facilitate blatantly fraudulent, unauthorized transfers from consumer accounts. Pathfinder is alleged to have done nothing of the sort.

In *FTC v. Global Marketing Group, Inc.*, the defendant directly reviewed telemarketers' deceptive scripts and actively sought to hide the underlying fraud from law enforcement. There are no allegations in the Complaint that Pathfinder engaged in any such conduct. The authorities cited by the Bureau only highlight how thin the Complaint's allegations truly are.

### D. The Bureau's Characterization of the Complaint Is Intentionally Misleading.

Pathfinder's Motion demonstrates that the Complaint does not plausibly state a claim against it. The Bureau attempts to defend the Complaint by referring to specific paragraphs and then arguing that the facts

---

[42] 604 F.3d 1150 (9th Cir. 2010).

alleged in those paragraphs *do* state a claim. It does this, however, with either reckless sloppiness or the intent to mislead.

In support of the proposition that the Complaint alleges that "[t]hese service [*sic*] were not merely ministerial, but rather, critical to the success of the Debt Collectors' unlawful conduct" the Opposition cites several paragraphs in the Complaint.[43] Not a single one of the cited paragraphs asserts that the services provided by Pathfinder were "not ministerial." Further, certain of the cited paragraphs contain only allegations about "payment processors" in general[44]—not about the specifically-defined term "**P**ayment **P**rocessors," which includes Pathfinder, Global, and Frontline. These paragraphs contain nothing more than generalizations about an entire industry. They cannot prevent dismissal of the Bureau's claims against Pathfinder.

## **CONCLUSION**

The Bureau attempts to use the vagueness of the Complaint to its advantage, making shotgun allegations about "the Payment Processors,"

---

43 Opp. at 7.

44 *See* Compl. ¶¶ 144, 145, 147, 148, 149, 150. ¶

"payment processors" in general, and, on rare occasions, Pathfinder itself. The Opposition leverages this vagueness, referring to paragraphs that only include general observations as if they contained detailed and plausible factual allegations about Pathfinder. Although the Bureau appears to have an agenda against payment processors, it has, at every turn, failed to state claims against Pathfinder—at times, freely admitting as much in the Opposition. The Bureau's attempt to continue the discredited tactics of Operation Choke Point should not be permitted.

Federal regulatory agencies have a duty to wield their enormous authority judiciously, and only when justified. The Bureau has not done so here. The results have been catastrophic for Pathfinder. The Court should not permit such abuse to continue.

For all of the foregoing reasons and those stated in Pathfinder's Motion to Dismiss, Pathfinder respectfully requests that the Court dismiss Counts VIII and IX against it and dismiss Pathfinder as a defendant in this action.

/s/ Kristina M. Jones

John Da Grosa Smith
jdsmith@smithlit.com
Georgia Bar No. 660946
Kristina M. Jones
kjones@smithlit.com
Georgia Bar No. 435145

*Attorneys for Defendant Pathfinder Payment Solutions, Inc.*

SMITH LLC
1320 Ellsworth Industrial Blvd.
Suite A1000
Atlanta, GA 30318
Tel: 404-605-9680
Fax: 404-935-5226

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), the undersigned counsel certifies that the foregoing ***PATHFINDER PAYMENT SOLUTIONS, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS*** was prepared in Times New Roman, 14 point font, in accordance with Local Rule 5.1.

/s/ Kristina M. Jones

Kristina M. Jones
kjones@smithlit.com
Georgia Bar No. 435145

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

CONSUMER FINANCIAL PROTECTION BUREAU,

Plaintiff,

v.

UNIVERSAL DEBT & PAYMENT SOLUTIONS, LLC; *et al.*,

Defendants.

Case No. 1:15-cv-0859

**CERTIFICATE OF SERVICE**

I, Kristina M. Jones, hereby certify that on July 7, 2015, I caused to be electronically filed the foregoing ***PATHFINDER PAYMENT SOLUTIONS, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS*** with the Clerk of Court using the CM/ECF system, which will automatically send email confirmation of such filing to all counsel of record.

/s/ Kristina M. Jones

Kristina M. Jones
Georgia Bar No. 435145
kjones@smithlit.com