**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA,**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>Plaintiff,<br><br>v.<br><br>UNIVERSAL DEBT & PAYMENT SOLUTIONS, LLC; et al.<br><br>Defendants. | ) | CASE NO. 1:15-CV-0859-RWS |

# REPLY IN SUPPORT OF GLOBAL PAYMENTS' MOTION TO DISMISS COMPLAINT WITH PREJUDICE


Michael A. Caplan (Bar No. 601039)
Benjamin W. Cheesbro (Bar No. 648368)
**CAPLAN COBB LLP**
Suite 880
1447 Peachtree Street, N.E.
Atlanta, GA 30309
Phone: (404) 596-5610

J. Douglas Baldridge (*pro hac vice*)
Leonard L. Gordon (*pro hac vice*)
Allyson B. Baker (*pro hac vice*)
Michael P. Bracken (*pro hac vice*)
**VENABLE LLP**
575 7th Street, N.W.
Washington, DC 20004
Phone: (202) 344-4000

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

I. The CFPB Fails to Allege Facts to Support the Conclusory Allegation that Global Knowingly or Recklessly Provided Substantial Assistance to the Debt Collector Defendants ........ 3

A. Global Did Not Know or Recklessly Avoid Knowing That the Debt Collector Defendants Were Engaged in Fraud ........ 3

B. There Are No Well-Pled Facts That Global Provided Substantial Assistance ........ 5

II. The CFPB Fails To Point To Any Facts in the Complaint that Allege Unfair Acts Or Practices By Global ........ 7

A. Global Is Not A Covered Person ........ 7

B. Global Did Not Cause Substantial Consumer Injury ........ 9

III. The Complaint's Lumping Together of *Payment Processors* Does Not Satisfy Rule 9(b) ........ 14

CONCLUSION ........ 15

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Am. United Life Ins. Co. v. Martinez,* 480 F.3d 1043 (11th Cir. 2007)...................15

*F.T.C. v. Swish Mktg.*, No. C 09-03814 RS, 2010 WL 653486 (N.D. Cal. Feb. 22, 2010)..........................................................................................15

*FTC v. Global Marketing*, 594 F. Supp. 2d 1281 (M.D. Fla. 2008)........9, 10, 11, 12

*FTC v. InterBill, Ltd.*, No. 2:06-cv-01644-JCM-PAL (D.Nev.) [D.E. 25, 26] ..........................................................................................10

*FTC v. Neovi, Inc.,* 604 F.3d 1150 (9th Cir. 2010) ............................................9, 10

*FTC v. Wells*, 385 Fed. Appx. 712 (9th Cir. 2010) ...............................9, 10, 11, 12

*FTC v. Windward Marketing, 1*:96-cv-615F, 1997 WL 33642380 (N.D. Ga. Sept. 30, 1997) ...................................................9, 10, 11, 12

*Graham v. SEC*, 222 F.3d 994 (D.C. Cir. 2004) .......................................................7

*In re Musicland Holding Corp.*, 398 B.R. 761 (Bankr. S.D.N.Y. 2008)................15

*McAdams v. Greenberg Traurig, LLP*, No. CIV.1:06-CV-1778-JTC, 2007 WL 2310112 (N.D. Ga. Aug. 9, 2007) .......................................................14

*SEC v. Apuzzo*, 689 F.3d 204 (2d Cir. 2012)..........................................................6

*SEC v. Subaye*, No. 13 CIV. 3114 PKC, 2014 WL 448414 (S.D.N.Y. Feb. 4, 2014) ..........................................................................................4, 6

*Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273 (11th Cir. 2006) ..........................................................................................15

## TABLE OF AUTHORITIES
## (CONT'D)

**Page(s)**

**Statutes**

12 U.S.C. §5481(15)(A)(vii) ....................8

12 U.S.C. §5481(26)....................7, 8

12 U.S.C. §5481(6)....................8

12 U.S.C. §5481(6)(A) ....................8

12 U.S.C. §5531 ....................9

12 U.S.C. §5536 ....................9

12 U.S.C. §5536(6)....................9

12 U.S.C. §5536(a)(3) ....................4

Securities Exchange Act of 1934 (§20(e)) ....................3

**Rules**

Fed.R.Civ.P. 9(b)....................14, 15

## INTRODUCTION

In its motion to dismiss, Global Payments Inc. ("Global") demonstrated that the CFPB's Complaint fails to assert any cognizable claim against Global. In its Opposition, the CFPB argues that Global substantially assisted the Debt Collector Defendants with their fraudulent scheme because those merchants used Global's payment processing technology platform in the course of committing fraud. But processing payments is a routine, largely automated task, and Global is not charged under the Consumer Financial Protection Act with guaranteeing that every payment submitted by any of its 1.5 million merchants complies with federal law. This Court should not sanction the CFPB's unprecedented attempt to legislate a strict liability standard under which a payment processor like Global must serve as an insurer of the conduct of other businesses.

Global's limited role in this case is obvious and undisputed. Global had no direct dealings with the Debt Collector Defendants or consumers. The applications signed by the Debt Collector Defendants emphasized and highlighted the ISO's name—Frontline and Pathfinder—not Global's.[1] Based on its agreements with the ISOs, Global relied on the ISOs to source, underwrite, service, monitor, and

---

[1] *See, e.g.,* UDPS Merchant application to Frontline (D.E. 97-3); Credit application to Frontline (D.E. 97-4).

communicate with the Debt Collector Defendants.[2]

Further, the ISOs set the pricing to be charged for payment processing and were fully financially responsible for any liability stemming from chargebacks instituted by consumers.[3] The ISOs' financial responsibility for chargebacks reflects that it was the ISOs, not Global, that were closest to and ultimately responsible for the behavior of merchants including the Debt Collector Defendants.[4] That the ISOs controlled the relationships with the Debt Collector Defendants is further demonstrated by the fact that the ISOs could assign their customers (including the Debt Collector Defendants) to a different payment processor at the conclusion of the ISOs' agreements with Global.[5]

In its motion to dismiss, Global demonstrated that:

- The complaint fails to plead facts to support any plausible inference that Global acted knowingly or recklessly or that Global provided substantial assistance to the Debt Collector Defendants.
- Global did not cause the requisite consumer injury to support an

[2] *See* Master Services Agreement ("MSA") between Global and Pathfinder at §§ A, B.2, B.4, and B.7 (D.E. 93-3); MSA between Global and Frontline at §§ A, B.3, and B.5 (D.E. 93-4).

[3] *See* MSA between Global and Pathfinder at §§ B.3(a) and E (D.E. 93-3); MSA between Global and Frontline at §§ B.4(a) and E (D.E. 93-4).

[4] Indeed, the CFPB, at ¶218, notes that Frontline promoted its relationship with UDPS and defendant Mohan Bagga on its website.

[5] *See* MSA between Global and Pathfinder at § F.4 (D.E. 93-3); MSA between Global and Frontline at § F.4(D.E. 93-4).

allegation that its conduct was unfair.

- The CFPB's allegations that Global somehow participated in the Debt Collector Defendants' alleged fraud fail to provide the requisite particularity; and, instead, any allegations against Global are lumped in with improper general allegations.

The CFPB's Opposition simply points the Court to the same flawed, general, and conclusory allegations that Global already demonstrated were insufficient as a matter of law and seeks to impute allegations made against the ISOs to Global. Accordingly, Global's motion to dismiss should be granted.

## I. The CFPB Fails to Allege Facts to Support the Conclusory Allegation that Global Knowingly or Recklessly Provided Substantial Assistance to the Debt Collector Defendants.

### A. Global Did Not Know or Recklessly Avoid Knowing That the Debt Collector Defendants Were Engaged in Fraud.

The CFPB does not cite to a single allegation that plausibly pleads that Global knowingly or recklessly provided substantial assistance to the Debt Collector Defendants. The CFPB spends numerous pages arguing about the proper definition of "recklessness" but in doing so ignores the precedent cited by Global. "Recklessly" means "conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *SEC v. Subaye*, No. 13 CIV. 3114 PKC, 2014 WL 448414,

*6 (S.D.N.Y. Feb. 4, 2014) (internal quotations and citations omitted). In *Subaye,* the court defined "recklessly" in connection with its analysis of the substantial assistance provision of the Securities Exchange Act of 1934 (§20(e)), as amended by the 2010 Dodd-Frank Act, which the CFPB concedes is informative for analyzing the nearly identical substantial assistance provision in §5536(a)(3), which is also found in the 2010 Dodd-Frank Act. *See, e.g.,* D.E. 4-1 at 26.

In its Opposition, the CFPB mentions three sets of general allegations to support its conclusion that Global acted recklessly. First, the CFPB cites to complaint paragraphs that describe Global's policies generally, but that do not allege that Global violated these policies. (Opp. at 18, n. 72 citing ¶¶152-163). Second, the CFPB cites to paragraphs that allege Global was responsible for performing standard investigations of chargebacks but contain no allegations that Global actually reviewed consumer complaints for Credit Power and UDPS, nor that a "standard investigation" of a chargeback requires that the processor review the merits of the underlying customer complaint. (Opp. at 18, n. 73 citing ¶¶220, 221). Every merchant that accepts credit and debit cards has chargebacks, and every chargeback is reflective of a dissatisfied customer. The CFPB does not (and could not plausibly) allege that Global's standard investigation of chargebacks involves the review of the underlying information for each of the approximately

11,000 chargeback requests that it transmits each week or that Global somehow is charged with the knowledge of the substance of each chargeback. Third, the CFPB cites to a conclusory statement found at ¶329 of the Complaint that the "Payment Processors" approved merchant applications "replete with indicia of fraud and ignor[ed] warnings from industry and consumers" about Credit Power and UDPS' fraud. (Opp. at 18, n. 71). However, that conclusory statement is contradicted by more specific allegations in the Complaint as well as the ISO agreements relied upon therein that make clear that the ISOs, not Global, were responsible for underwriting and monitoring these accounts. *See* Motion to Dismiss at 6-7 (setting forth Complaint allegations about the ISOs' roles in underwriting and monitoring).

To survive this motion to dismiss, the CFPB must allege more than bald conclusions or formulaic recitations about Global's alleged "recklessness." A review of the facts alleged in the Complaint that are particular to Global, not facts about the ISOs or recitations of policies that were not violated, demonstrates that the Complaint fails to plausibly plead that Global's ministerial processing of payments for Credit Power and UDPS was done recklessly.

### B. There Are No Well-Pled Facts That Global Provided Substantial Assistance.

The Opposition fails to reference a single paragraph in the Complaint that plausibly pleads that Global substantially assisted the Debt Collector Defendants'

fraudulent scheme. Numerous courts have found that proximate cause is required to show substantial assistance, but even in each case relied on by the CFPB where proximate cause was not deemed necessary, the court ruled that substantial assistance requires a showing that (1) the defendant associated himself with a violation of the Act, (2) participated in it as something that he wished to bring about, and (3) sought by his actions to make the violation succeed. *See SEC v. Apuzzo*, 689 F.3d 204, 206 (2d Cir. 2012)*; see also Subaye*, 2014 WL 448414 at *9 (applying same test to post-2010 amendment of the Dodd-Frank Reform Act).

Here, the Complaint does not, and cannot, allege that Global participated in the Debt Collector Defendants' fraudulent scheme as something that Global wished to bring about and sought by its actions to make succeed. There are no allegations that Global knew about the illegal acts of the Debt Collector Defendants, let alone that it sought to further those illegal acts with knowledge of their illegality. Global provided a technology platform to process payments, the same ministerial function that it provided for its 1.5 million other merchants.

To the extent the CFPB is claiming that Global caused consumer harm by "taking millions of dollars from the consumers' accounts," (Opp. at 11) such an allegation is not contained in the Complaint and is patently false. As demonstrated by the chart found at ¶150 of the Complaint, Global does not take money from

consumers' accounts. Consumers' banks (identified as the card issuer in the chart) perform that function. Global simply moves transactions along the payment chain.

The CFPB concedes that the knowledge element of an aiding and abetting claim and the substantial assistance element are inversely related. (Opp. at 21). The CFPB then claims that even a merely ministerial act can constitute aiding and abetting when the alleged abettor ignores red flags of illegal conduct. But as discussed above, the Complaint does not allege any well-pled facts about "red flags" that were transmitted to and ignored by Global. Moreover, the case cited by the CFPB for its statement that even ministerial acts can constitute substantial assistance does not stand for that proposition. To the contrary, in that case, the court found that the defendant's acts were not ministerial. *Graham v. SEC*, 222 F.3d 994, 1004 (D.C. Cir. 2004).

Here, there are no allegations that Global knew about the underlying violations and, therefore, the CFPB must make an even greater showing of substantial assistance. The CFPB fails to clear this high hurdle.

## II. The CFPB Fails To Point To Any Facts in the Complaint that Allege Unfair Acts Or Practices By Global.

### A. Global Is Not A Covered Person.

In Count IX, the CFPB alleges that Global "provided material services" to a covered person (acted as a service provider under 12 U.S.C. §5481(26)), but does

not allege that Global engaged in offering or providing a consumer financial product or service (acted as a covered person under 12 U.S.C. §5481(26)). Contrary to the Complaint, in its Opposition Brief, the CFPB now states that it seeks to hold Global liable as both a service provider **and** a covered person. Putting aside that the salient focus is what the Complaint alleges, and not what the CFPB now "says," under the plain language of §5481(6) and the Complaint, Global itself cannot be a "covered person."

The CFPA defines "covered persons" as "any person that engages in offering or providing a consumer financial product or service." 12 U.S.C. §5481(6)(A). The CFPA defines a consumer financial product or service to include "providing payments or other financial data processing products or services ***to a consumer*** by any technological means…." *Id.* §5481(15)(A)(vii) (emphasis added). The Complaint does not allege, nor could it, that Global provides payment processing products or services ***to consumers***. Rather, the Complaint alleges only that Global provides payment processing services to the Debt Collector Defendants acting as businesses. The CFPB now asks the Court to ignore the plain language of the statute (and its Complaint) and instead rule that anyone who "plays a key role in the consumer payment processing network," regardless of whether they provide services ***to*** consumers, should be considered a

"covered person." The CFPB's distortion of the unambiguous language of §5536(6) should be rejected and is nothing more than an over-zealous agency's attempt to legislate a standard not adopted by Congress.

### B. Global Did Not Cause Substantial Consumer Injury.

In response to Global's argument that the Complaint fails to plead that Global ***caused*** substantial consumer injury, the CFPB once again treats the acts of the ISOs as if they were the acts of Global and fails to cite to any well-pled facts that demonstrate causation by Global. In order to prove an unfairness claim, the CFPB must prove that Global ***caused*** substantial consumer injury. According to the CFPB, under the never-before-adjudicated "unfairness" standard found in §§5531 and 5536, alleging that a defendant processed payments when it had reason to know the underlying transactions were illegal is sufficient to plead causation. (Opp. at 11). In support of this argument, the CFPB cites to four readily distinguishable cases: *FTC v. Neovi*, *FTC v. Wells*, *FTC v. Windward Marketing*, and *FTC v. Global Marketing*. None of these cases involved a payment processor that, because of the intervening role played by an ISO, had no direct contact with the fraudulent merchant(s) and thus the facts of the four cases are distinguishable.

*FTC v. Neovi, Inc.,* 604 F.3d 1150 (9th Cir. 2010) involved a website that provided software that allowed registered users to electronically send checks to

third parties. The defendant in *Neovi* created and hosted this new method of payment that quickly became a tool for "con artists and fraudsters." *Id.* at 1154. In the website's six-year existence, the defendant: (1) directly received and ignored hundreds of letters and thousands of telephone calls from consumers, banks, and law enforcement agencies about unauthorized checks; (2) allowed more than $400 million in fraudulent checks to be drawn from consumers' accounts—an amount that was ***more than half*** of the total funds drawn using the website; and (3) was aware of an overall unauthorized return rate of 40%. The defendant in *Neovi* created a new tool to be used by fraudsters and was not even a payment processor. That case has no relevance here.

In *FTC v. Wells*,[6] *FTC v. Windward Marketing,*[7] and *FTC v. Global Marketing*[8] the payment processor defendants were closely involved in many aspects of the underlying merchants' businesses, including:

- Directly receiving and responding to consumer complaints and providing customer service (*Wells* and *Global Marketing*);

[6] 385 F. App'x 712 (9th Cir. 2010). The *FTC v. Wells* opinion does not go into the underlying facts of the case. The facts provided herein are taken from the Motion for Summary Judgment briefing. *See FTC v. InterBill, Ltd.*, No. 2:06-cv-01644-JCM-PAL (D. Nev.) [D.E. 25, 26].

[7] 1:96-cv-615F, 1997 WL 33642380, at *13 (N.D. Ga. Sept. 30, 1997).

[8] 594 F. Supp. 2d 1281 (M.D. Fla. 2008).

- Fulfilling consumer orders on behalf of the merchant (*Global Marketing*);

- Advocating for the merchant when the acquiring bank raised concerns (*Wells*);

- Making payments payable directly to the payment processor (*Wells*);

- Setting up bank accounts on the merchants' behalf (*Windward*); and,

- Being in contact with the merchants on a daily basis (*Windward*).

Furthermore, the payment processors in these cases ignored direct warnings of unauthorized transactions including:

- Being contacted directly by government investigators about unauthorized debits and serious misrepresentations being made by the merchants (*Windward*);

- Receiving a letter directly from an affiliated merchant bank informing the payment processor that it was closing its bank account because of numerous consumer complaints of unauthorized drafts (*Windward*); and

- Overall and/or sustained unauthorized return rates of 40% and 70% (*Windward* and *Wells*)

Finally, the payment processors in these cases received a significant percentage of the funds (6-8%) from the transactions processed, which reflected their high level of involvement with the merchant. Here, Global, consistent with its limited role, received a few cents on each transaction processed, which was a

small fraction of what the ISOs and card issuer made on those transactions. The Complaint cannot allege otherwise.

Here, there are no allegations that Global knew or consciously avoided knowing about the Debt Collector Defendants' fraud. Global had no involvement in the Debt Collector Defendants' businesses. Further, unlike the payment processors in *Wells, Windward Marketing*, and *Global Marketing*, Global contracted with and relied on the ISOs to be responsible for due diligence and monitoring of merchants. In fact, the CFPB, recognizing the paucity of allegations against Global, seeks to impute allegations it made against the ISOs to Global. For example, at ¶178 of the Complaint, the CFPB alleges that Pathfinder, not Global, received a MATCH alert for UDPS and another merchant. The CFPB does not allege that this MATCH alert was ever transmitted to Global. Yet, in its Opposition at page 12 and 14, the CFPB points to this MATCH alert as evidence that Global knew or should have known of the Debt Collector Defendants' fraud.

The CFPB is unable to point to any well-pled facts alleging that Global had knowledge of the Debt Collector Defendants' illegal acts. Instead, the CFPB simply claims in conclusory fashion that the Complaint adequately pleads that the payment processors as a group knew or should have known that Debt Collector Defendants were engaged in illegal conduct, turned a blind eye to their role in the

Debt Collectors' fraudulent scheme, and blew past warning signs during underwriting and ignored reports of fraud. However, the Complaint paragraphs cited relate to the ISOs' conduct and not that of Global. (Opp. at 11-12 citing Complaint at ¶¶165-218; s*ee also* Motion to Dismiss at 7 (complaint allegations ¶¶165-218 state facts about the ISOs' conduct, not Global's)).

The only Complaint allegations specific to Global allegedly "ignoring reports of fraud" are that Global should have further investigated the Debt Collector Defendants due to high chargeback rates in July and August 2013 and due to consumer complaints contained in chargeback requests. Complaint ¶¶192, 225-246. However, with respect to the high chargeback rates in July and August 2013, Global explained in its Motion, and the CFPB does not dispute, that these rates were anomalies based on low transaction numbers during those two months. And with respect to the consumer complaints contained in chargeback requests, the Complaint never alleges, nor could it, that Global ever reviewed the underlying chargeback consumer complaints discussed in ¶¶225-246, nor that Global had an obligation to do so. Global's only role in the chargeback process was to conduct a standard investigation of the chargeback, which involved making sure it was formatted correctly and passing the chargeback on to the merchant to see if the merchant would be disputing the chargeback, a process that is largely automated.

Moreover, the CFPB ignores that the ISOs, not Global, were 100% financially responsible for any losses stemming from chargebacks. As a result of that financial responsibility, the ISOs, not Global, had operational responsibility for monitoring chargebacks. *See* Motion to Dismiss at 6.

## III. The Complaint's Lumping Together of "Payment Processors" Does Not Satisfy Rule 9(b).

The Complaint casually alleges that Global facilitated fraud, but in doing so fails to plead Global's conduct with the specificity required by Rule 9(b). By lumping Global's alleged facilitation of the Debt Collector Defendants' fraud with that of Frontline and Pathfinder, the CFPB fails to sufficiently state the "who, what, when, where and how" required by Rule 9(b). The law is clear on this point. "Rule 9(b) does not allow a complaint to merely 'lump' multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant." *McAdams v. Greenberg Traurig, LLP*, No. CIV.1:06-CV-1778-JTC, 2007 WL 2310112, at *6 (N.D. Ga. Aug. 9, 2007) (citations omitted).

In its Opposition, instead of addressing this "lumping" problem, the CFPB attempts to sidestep the issue with a red herring argument about whether Rule 9(b) pleading is required when pleading a deception claim under Section 5 of the FTC Act. That is not the issue. Rather, the issue is that the CFPB asserts claims that sound in fraud but fails to plead them with particularity. Because the claims

against Global are inextricably intertwined with the fraud claims against the Debt Collector Defendants, the claims against Global "sound in fraud" and therefore must meet the particularity requirement of Rule 9(b) even though fraud is not a required element of those claims. *In re Mirant Corp. Sec. Litig.*, No. CIV.A. 1:02-CV-1467-RWS, 2009 WL 48188, at *10 (N.D. Ga. Jan. 7, 2009).[9] Furthermore, allegations that a defendant facilitated or aided and abetted fraud must meet the heightened pleading standards. *Am. United Life Ins. Co. v. Martinez,* 480 F.3d 1043, 1064–65 (11th Cir. 2007) (holding that Rule 9(b)'s particularity requirement for fraud applies equally to a claim for aiding and abetting fraud). The CFPB has failed to meet this standard.

## **CONCLUSION**

For the foregoing reasons, Global Payments Inc. requests that the CFPB's Complaint against it be dismissed with prejudice.

---

[9] Courts consistently hold that Rule 9(b) applies when a plaintiff alleges facts that amount to fraudulent conduct even when fraud is not a necessary element of the plaintiff's claims. *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1280 (11th Cir. 2006); *F.T.C. v. Swish Mktg.*, No. C 09-03814 RS, 2010 WL 653486, at *2 (N.D. Cal. Feb. 22, 2010) ("where a complaint alleges conduct which in effect amounts to fraud, defendants are entitled for policy reasons to the enhanced reliability and notice that accompany more detailed pleadings") (citations omitted); *In re Musicland Holding Corp.*, 398 B.R. 761, 773 (Bankr. S.D.N.Y. 2008) ("Even where fraud is not an element of the claim, the allegations must satisfy Fed. R. Civ. P. 9(b) if the claim is based on fraudulent conduct") (citations omitted).

Dated: July 7, 2015

Respectfully submitted,

/s/ Michael A. Caplan

Michael A. Caplan (Bar No. 601039)
Benjamin W. Cheesbro (Bar No. 648368)
**CAPLAN COBB, LLP**
Suite 880
1447 Peachtree Street, N.E.
Atlanta, GA 30309
Phone: (404) 596-5610

J. Douglas Baldridge (*pro hac vice*)
Leonard L. Gordon (*pro hac vice*)
Allyson B. Baker (*pro hac vice*)
Michael P. Bracken (*pro hac vice*)
**VENABLE LLP**
575 7th Street, N.W.
Washington, DC 20004
Phone: (202) 344-4000

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), the undersigned counsel certifies that the foregoing REPLY IN SUPPORT OF GLOBAL PAYMENTS INC.'S MOTION TO DISMISS was prepared in Times New Roman, 14 point font, in accordance with Local Rule 5.1.

/s/ Michael A. Caplan
Michael A. Caplan

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing REPLY IN SUPPORT OF GLOBAL PAYMENTS INC.'S MOTION TO DISMISS to be delivered this 7th day of July 2015, to all counsel of record through the Court's ECF filing system

/s/ Michael A. Caplan
Michael A. Caplan