UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA,
ATLANTA DIVISION

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br>        Plaintiff,<br>                    v.<br>UNIVERSAL DEBT & PAYMENT SOLUTIONS, LLC, *et al.*,<br>        Defendants. | **Civil Action No.<br>1:15-CV-0859-RWS** |

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR
PROTECTIVE ORDER AGAINST GLOBAL PAYMENTS'
RULE 30(B)(6) DEPOSITION NOTICE**

The Bureau has declared its commitment to prepare a deposition witness to testify about the facts supporting its claims against Global Payments (GP). That commitment is borne out by the more than 150 man-hours it has already invested in preparing the Bureau's witness to testify about the facts supporting its case against GP and other defendants. GP ignores this and devotes several pages and several hundred words of its Response to arguing that the Bureau refuses to sit for a deposition.[1]

---

[1] *See* Dkt. No. 333, at p. 2 ("The CFPB's actions appear to be part of a routine and unsuccessful practice . . . to resist, delay, or avoid completely any Rule 30(b)(6) deposition."); p. 4 (referencing "The CFPB's Continuing Refusal to Designate a Rule 30(b)(6) Witness"); p. 7 ("[The CFPB] routinely objects to

The Bureau does not refuse to sit for a deposition. Instead, its Motion respectfully requests that the Court consider the concrete burdens and risks the Bureau confronts as it prepares its witness to testify. It makes this request not to avoid a deposition but to manage the deposition's scope and prevent questions that seek only privileged opinions and conclusions of Bureau lawyers. This is not, as GP contends, a request for special treatment under the Federal Rules; rather, it's a request for protection from improper discovery on grounds provided by the Federal Rules and supported by substantial case authority. Once the Court excises the red herrings and mischaracterizations of the Bureau's positions from GP's brief, little substantive argument remains.[2] The Bureau addresses that remaining argument below.

---

designate [sic] a witness for any Rule 30(b)(6) topic, even, as is the case here, topics seeking facts and the factual bases for the CFPB's pleaded allegations."); and p. 19 (referencing "the CFPB's argument that it is entitled to a blanket work product privilege that would effectively bar deposition testimony as to the facts underlying its claims").

[2] GP's Response also violates L.R. 7.4, which says "[c]ounsel shall not provide the court with copies of correspondence between themselves relating to matters in dispute." GP's lawyers provided not only one-sided correspondence from this case but also correspondence related to a discovery dispute between the Bureau in a different case involving different parties and pending in a different forum. This is part of a pattern of vexatious conduct by GP's lawyers, in which they create (or selectively compile) a false record in

**A.      Topic 1 should be narrowed because Rule 30(b)(6) does not require the Bureau to hunt for unspecified evidence on its opponent's behalf.**

GP's topic 1 seeks testimony on "any and all facts that the CFPB obtained about Global through its investigation and/or that the CFPB pleaded in its Complaint." The Bureau objected that the topic imposes an undue burden because it seeks testimony on the full contents of the Bureau's investigative file. The Bureau also objected to the topic as duplicative of previous discovery because the Bureau has already produced all of its documentary evidence and provided comprehensive narrative answers to GP's contention interrogatories.

GP recasts the Bureau's objection as a refusal to testify about supposed "exculpatory" evidence in its possession. The insinuation is that the Bureau knows of exculpatory evidence but refuses to testify about it. This is not true. In fact, when the parties conferred the Bureau asked GP to identify documents, statements, or other evidence it believed was exculpatory, and GP's lawyers were unable (or unwilling) to do so.

Moreover, whether a fact is exculpatory is an inherently legal question, the answer to which would require divulging the legal opinions and

correspondence which they then submit to this Court as fact – all in an apparent effort to tarnish the credibility of the Bureau and its lawyers.

conclusions of Bureau lawyers. To avoid this, the only way the Bureau could prepare a witness to testify on this topic is to educate him about the entire contents of the agency's investigative file. This enlarges the Bureau's burden, while providing for discovery of no additional, non-privileged evidence, and the Federal Rules don't allow it.

Instead, the rules allow discovery "that is relevant to any of the party's claims or defenses and proportional to the needs of the case."[3] The "needs of the case" require courts to consider, among other things, "the parties' relative access to relevant information" and "whether the burden or expense of the proposed discovery outweighs its likely benefit."[4] Here, the proportionality analysis called for by the rules favors narrowing topic 1 as the Bureau has requested. GP already has all of the information it seeks in the form of (a) all non-privileged portions of the Bureau's investigative files, and (b) comprehensive, detailed answers to its interrogatories. GP is also in a superior position to the Bureau to assess what evidence in the Bureau's investigative file, if any, support its defenses.

---

[3] Fed. R. Civ. P. 26(b)(1).

[4] *Id.*

Further, GP incorrectly asserts there is no authority to narrow topic 1 as the Bureau has requested. But, in addition to the ample authority the Bureau cites in its Motion, there are also numerous decisions circumscribing or prohibiting the same type of "all-facts" discovery GP seeks here.[5] And the need to prevent parties from pursuing "all-facts" discovery is particularly acute in the context of a Rule 30(b)(6) deposition. This is so because of the additional burdens and risks inherent to preparing a witness to testify knowledgeably about "all facts," especially when, as here, those facts must be selected, compiled, and provided to the witness by Bureau lawyers. Indeed, these risks and burdens are even greater here because topic 1, by GP's own

---

[5] *See, e.g., Trustees of Boston Univ. v. Everlight Elecs. Co.*, 2014 WL 5786492, at *1-3 (D. Mass. Sept. 24, 2014) (striking 30(b)(6) topics seeking "all facts" as "not described with reasonable particularity" and overly broad); *TV Interactive Data Corp. v. Sony Corp.*, 2012 WL 1413368, at *1 (N.D. Cal. Apr. 23, 2012) (holding that topic seeking testimony on "all facts and contentions for each of Funai's affirmative defenses and counterclaims" was vague and overly broad); *Bituminous Cas. Corp. v. Scottsdale Ins. Co.*, 2013 WL 1411544, at *1 (E.D. Mo. Apr. 8, 2013) (interrogatory seeking "any and all facts" supporting a party's contention was overly broad and unduly burdensome; limiting interrogatory to the "material" or "principal" facts that support its contention); *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC,* 273 F.R.D. 367, 369 (S.D.N.Y. 2010) ("Defendants' requests, insofar as they seek every fact, every piece of evidence, every witness, and every application of law to fact—rather than, for example, certain principal or material facts, pieces of evidence, witnesses and legal applications—supporting the identified allegations, are overly broad and unduly burdensome.").

admission, reaches well beyond the facts supporting the Bureau's allegations and into "any and all facts obtained about Global," period.

Further, none of GP's cited cases support the "any-and-all-facts" deposition it proposes. Some of GP's cases stand for the unremarkable proposition that the government can't use the work-product privilege as both a sword – to use information obtained from third-party witnesses to support its allegations – and as a shield – to withhold those facts and not answer interrogatories asking for them.[6] These cases are inapposite because the Bureau has already disclosed the facts it relies on to support its claims in its answers to GP's interrogatories, and has already agreed to produce a witness to testify about those facts at a deposition.

The only case GP cites that explicitly deals with exculpatory evidence is distinguishable. In *E.E.O.C. v. Jewel Food Stores, Inc.*,[7] the court premised its order compelling an answer to an interrogatory seeking the identities and information held by third-party fact witnesses on the recognition that this

---

[6] *See U.S. Dean Foods Co.*, 2010 WL 3980185, at *3 (E.D. Wis. Oct. 8, 2010) (overruling government's objection to disclosing information obtained from third-party witness in answers to interrogatories); *In re Theragenics Corp. Securities Litig.*, 205 F.R.D. 631, 634 (N.D. Ga. 2002) (same); *U.S. v. Dentsply Int'l, Inc.*, 187 F.R.D. 152, (D. Del. 1999) (same).

[7] 231 F.R.D. 343 (N.D. Ill. 2005).

would not require the responding party "to categorize what information might be helpful or harmful to the claims or defenses of the parties."[8] But GP's ongoing refusal to identify what information it believes to be exculpatory places the onus on the Bureau to do just that to prepare a witness to testify.

GP also attempts to make great hay with the order allowing a Rule 30(b)6 deposition of the Bureau in *CFPB v. Borders & Borders*,[9] but that effort was wasted. In fact, the *Borders* decision, while not controlling authority, has guided the Bureau's approach in this case. As in the *Borders* matter, the Bureau does not contend that it's exempt from sitting for a Rule 30(b)(6) deposition.[10] The *Borders* court held, "Defendants are entitled to know the factual basis for each of the alleged violations . . . ."[11] The Bureau has agreed to do that here, and has not asked this Court to take a different position.

---

[8] *Id.* at 346.

[9] Dkt. No. 333, Exhibit A.

[10] *Id.* at 11.

[11] *Id.* at 13.

Instead, the Bureau asks this Court to consider each topic individually and, like the *Borders* court, strike topics that pursue irrelevant matters or involve purely legal questions.[12] Although the *Borders* court told the Bureau to assert its privileges on a question-by-question basis at the deposition, the more expansive topics at issue in this case counsel against that approach here. The Bureau requests that the Court spare it from preparing a witness to testify on topics that inherently intrude into privileged areas, and provide parameters to govern as many as six different depositions.

**B.     Topic 3 should be struck because the Bureau has no more non-privileged information about its damages calculations to give GP.**

GP argues that topic 3 merely seeks (a) the Bureau's theory of damages, and (b) the factual bases for its damages calculations. But if this were true, then GP would already have everything it seeks in the form of an interrogatory answer. Specifically:

<u>**Answer to Interrogatory 3**</u>: The Bureau seeks damages from defendant in the form of restitution, disgorgement, and civil money penalties. Against Global Payments, the Bureau seeks to recover restitution of the amount Global Payments processed on behalf of persons or entities that illegally collected debt from consumers, including payments Global Payments processed for Universal Debt & Payment Solutions, LLC (UDPS) and Credit Power, LLC (CP), less refunded amounts consumers actually received. The Bureau estimates that Global Payments unlawfully processed at least $3,467,878.92 for UDPS and CP. Further discovery is needed to identify all

---

[12] *Id.* at 11.

payments Global Payments processed for other debt collectors, including affiliates of UDPS and CP.

The Bureau's damages theory is simple: the Bureau seeks recovery of all amounts GP processed for the debt collector defendants and their affiliates, minus any amounts already refunded to consumers. GP does not need to depose a Bureau witness to test the legal or factual sufficiency of the Bureau's theory or measure of damages.

But GP wants something more than this. GP never challenged the adequacy of the Bureau's answer or sought clarification of what it meant. Any additional questions GP may have about the Bureau's theory or method of calculating damages would require Bureau lawyers divulge opinion work product – for example, by applying the Bureau's legal theory to a never-ending series of factual hypotheticals like the ones posed in GP's Response. This an improper use of a Rule 30(b)(6) deposition and this Court should not allow it.

**C.   Topic 4 should be struck because the Bureau's interrogatory answers already provide all of the discoverable facts that GP seeks.**

Topic 4 seeks testimony about "the complete factual basis for the CFPB's responses and objections to Global's First Set of Interrogatories, as supplemented, in this action." The Bureau tried to suss out what more GP

wants from an examination on this topic, other than the opinions and theories of Bureau lawyers. GP has refused to provide this information. GP can't identify a single, additional piece of information it hopes to obtain by examining a Bureau witness about the Bureau's interrogatory answers. Nor has GP identified any information encompassed by topic 4 that isn't already covered by the Bureau's agreement to testify about the facts supporting its claims against GP.

While GP insists topic 4 seeks only testimony about discoverable facts, it neglects to mention that many of the interrogatories at issue are contention interrogatories. The Bureau provided all facts to support its central contentions against GP in a 35-page narrative answer, and it has agreed to testify about those facts at a deposition. What the Bureau can't do without divulging opinion work product is explain "how" or "why" the facts it has identified support the legal theories it has pursued in this case.

This does not mean that the Bureau's obligations under the Federal Rules are any different from those of an ordinary litigant. Rather, it acknowledges that unlike a private litigant, who has direct, personal, and independent knowledge of the facts underlying the claims at issue in a case, the Bureau relies entirely on the fact-gathering of its lawyers to develop its claims. Questions seeking the "complete factual basis" for answers to

contention interrogatories thus seek the opinions, conclusions, and legal theories of Bureau lawyers.[13]

GP fails to address the cases cited in the Bureau's Motion holding that a Rule 30(b)(6) deposition is not the proper vehicle for discovering a party's contentions, except to try to dismiss them as "minority, outlier" authorities. But even GP's own cases acknowledge that "[c]ourts have split [on] whether to allow parties to use 30(b)(6) depositions to explore facts underlying legal claims and theories."[14] This split favors the Bureau's position here because the Bureau has already agreed to testify about the facts supporting its claims against GP.

In none of the cases GP cites did the court allow a 30(b)(6) deposition on "the complete factual basis" of every statement in each answer and objection to multiple contention interrogatories. In fact, some of GP's own authorities offer a cautionary tale about the risks inherent in such an omnivorous

---

[13] *See*, *e.g.*, *Gossar v. Soo Line R. Co.*, 2009 WL 3570335, at *4 (S.D. Ind. Oct. 27, 2009) (granting protective order against 30(b)(6) topics seeking "all facts supporting your answer" to an interrogatory and "all facts" supporting objections to various discovery requests because they "seek legal conclusions about how [the defendant] answered certain interrogatories" and thus "implicate matters of attorney-client privilege/work product.").

[14] *Radian Asset Assur., Inc. v. Coll. of the Christian Bros. of New Mexico*, 273 F.R.D. 689, 691 (D.N.M. 2011) (collecting cases).

11

approach. In *SEC v. Merkin*, the same court that allowed a 30(b)(6)

deposition of the government to go forward later found – after the SEC

instructed its witness not to answer a string of improper questions – that

"almost all of the disputed questions" were, among other things, "problematic

because they would require the disclosure of privileged information."[15]

Similarly, in *A.R. ex rel. Root v. Dudek*, the same court that allowed a 30(b)(6)

deposition of the government to go forward later clarified that questions

about facts that embraced the government's "contentions or legal theories"

were improper.[16]

Further, the concerns animating the Bureau's cited authorities are

entitled to greater weight here because, again, the Bureau has no

independent knowledge of the facts. This makes the risk of disclosing

privileged matters at a deposition even greater. The Bureau recognizes this

Court's earlier ruling that it sit for a deposition, but it respectfully requests

that the Court police against questions that invade the Bureau's privileges.

Because GP can't identify any additional information sought by topic 4 that

isn't already (a) included in the Bureau's interrogatory answers, or (b)

---

[15] *See SEC v. Merkin*, 2012 WL 5449464, at *2 (S.D. Fla. Aug. 13, 2012).

[16] *See A.R. ex rel. Root v. Dudek*, 2015 WL 9450617, at *1 (S.D. Fla. June 26, 2015) (quoting *U.S. ex rel. Baklid-Kunz v. Halifax Hosp. Med. Ctr.*, 2012 WL 3537070, at *4 (N.D. Fla. Aug. 14, 2012)).

covered by the Bureau's agreement to testify about the facts supporting its claims, topic 4 should be struck.

**D.    Topic 5 should be struck because the Bureau should not have to make its trial presentation until trial.**

Topic 5 seeks testimony on "information or facts that will be the subject of any fact testimony to be introduced by the CFPB at trial of this action." GP's argument on this topic is difficult to follow because it summarizes the information sought by this topic as "the facts learned by the CFPB, if any, post filing its complaint." GP also accuses the Bureau of "intentionally misstat[ing]" what topic 5 seeks – namely, the functional equivalent of the Bureau's trial playbook – and argues that the Bureau objects to this topic without citing any authority.

Of course, the Bureau's objection is based on the plain meaning of the words GP used in topic 5, and the Bureau's motion cited the local rules of this Court as authority for that objection. Rather than address this objection, GP attempts to recast what topic 5 says. GP pleads that it seeks "the underlying factual basis for the CFPB's claims that it will introduce at trial, and the facts, if any, obtained by the CFPB during its investigation," and that the Bureau "is required to disclose the factual basis for its allegations that will be produced at trial." This only further obfuscates what topic 5 seeks.

If all topic 5 seeks is the factual bases for the Bureau's pleaded allegations, then the Bureau has no objection to preparing a witness to testify about those facts. It has, in fact, already agreed to do so. But if what topic 5 seeks is the Bureau's trial presentation – its witness lists, exhibits, and pre- and post-trial briefing – then the topic is objectionable. GP can't use a Rule 30(b)(6) deposition as one-stop shopping for its trial preparation. And the rule doesn't give GP license to rewrite this Court's local rules and scheduling order entirely to its own advantage.

**E.    Topic 6 should be struck because neither the Bureau's claims nor GP's defenses depend on the existence or content of any Bureau publications.**

Topic 6 seeks testimony about "the CFPB's publications regarding debt collectors, debt collection practices, and consumers' avoidance of fraudulent or deceptive practices." The Bureau objected that none of this was relevant to the parties' claims or defenses and that, even if it were, GP's refusal to identify a single relevant publication would make having to prepare a witness on this topic unduly burdensome.

GP argues in its Response that because the Bureau could rely on such publications as established public policies under the unfairness doctrine, GP should be allowed to examine a Bureau witness about them. GP further contends that the Bureau, not it, should have to identify which of these

publications it could use to support its claims and which of them GP could use to support its defenses. GP then concludes that unless the Bureau is willing to admit that harm to consumers was reasonably avoidable, it should be obligated to identify its publications and testify about them. None of this makes any sense.

The Bureau's claims have not placed any publications about debt collectors, debt collection, or consumers' avoidance of fraudulent or deceptive practices at issue. Further, it's incredible for GP to argue that any Bureau publications support the notion that consumers can avoid injury from paying a phantom debt collector who threatens and harasses them. If that's the substance of GP's defense, and the premise on which it bases its claimed need for testimony about Bureau publications, then the Court should, at a minimum, require GP to identify the publications that support this novel theory and explain how they do so. Only then can the Court assess whether discovery on topic 6 is proper.

Dated: December 7, 2016 Respectfully Submitted,

         Attorneys for Plaintiff

         Consumer Financial Protection Bureau:

         ANTHONY ALEXIS
         Enforcement Director

         DAVID RUBENSTEIN
         Deputy Enforcement Director for Litigation


         */s/ John Thompson*
         _____
         Jonathan B. Engel (MA bar #664518)
         Mary Warren (NY bar #2557684)
         John Thompson (NM bar #139788)
         ENFORCEMENT ATTORNEYS
         1700 G Street NW
         Washington, DC 20552
         Phone (Engel): 202-435-9037
         Phone (Warren): 202-435-9284
         Phone (Thompson): 202-435-7270
         Email: *Jonathan.Engel@cfpb.gov*
         Email: *Mary.Warren@cfpb.gov*
         Email: *John.Thompson@cfpb.gov*
         Fax: 202-435-7722

         And

         Local Counsel
         JOHN A. HORN
         UNITED STATES ATTORNEY

         LENA AMANTI
         ASSISTANT U.S. ATTORNEY
         Georgia Bar No. 666825
         600 Richard B. Russell Federal Bldg.

75 Spring Street, S.W.
Atlanta, GA 30303
Telephone: (404) 581-6225
Facsimile: (404) 581-6163
Email: lena.amanti@usdoj.gov

## CERTIFICATE OF COMPLIANCE

The undersigned attorney hereby certifies, pursuant to LR 7.1.D, that the foregoing Motion was prepared in Century Schoolbook 13 point font.

*/s/ John Thompson*

_____          Dated:          December 7, 2016
John Thompson
Enforcement Attorney

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on this day a true and correct copy of Plaintiff's Reply in Support of its Motion for Protective Order Against Global Payments' Rule 30(b)(6) Notice was filed with the clerk of court using the CM/ECF system, which will automatically send email notification of the filing to all attorneys of record.

*/s/ John Thompson*

_____          Dated:          December 7, 2016
John Thompson
Enforcement Attorney