UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA,
ATLANTA DIVISION

CONSUMER FINANCIAL
PROTECTION BUREAU,
     Plaintiff,
          v.
UNIVERSAL DEBT & PAYMENT
SOLUTIONS, LLC, *et al.*,
     Defendants.

**Civil Action No.
1:15-CV-0859-RWS**

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR PROTECTIVE ORDER AGAINST
GLOBAL CONNECT'S RULE 30(b)(6) DEPOSITION NOTICE**

## I.    PRELIMINARY STATEMENT

This Court's September 22nd Order established parameters for any

Rule 30(b)(6) deposition of the Bureau. The Order prohibited questioning on

privileged matters – including the "mental impressions, case strategies, or

legal opinions" of Bureau lawyers – while allowing questions about the

Bureau's factual allegations.[1] The Order also invited the parties to confer on

specific topics to which the Bureau had objections.

Global Connect (GC) and the Bureau did so on October 13, but that

effort was wasted. Despite the Bureau's willingness to compromise – e.g., by

agreeing to provide testimony about the facts supporting each of its claims

---

[1] Dkt. No. 316.

against GC – GC refused to withdraw or otherwise limit any of its original fifteen noticed topics. Rather, the amended notice GC issued to the Bureau on November 23 had swollen to twenty-three topics – most of them inscrutable – and included several new document requests (attached as **Exhibit A**).

GC's amended notice seeks testimony about, for example: every fact obtained by the Bureau "about or concerning" GC (Topic 2); the contents of thousands of documents and numerous lines of testimony (Topics 15, 16, and 22); and an early disclosure of the Bureau's trial presentation (Topic 23).

The Federal Rules don't allow GC to use a Rule 30(b)(6) deposition of the Bureau as one-stop shopping for its entire defense. GC's notice leaves almost no conceivable line of inquiry about the company, the Bureau's legal theories, and a host of irrelevant matters outside the proposed scope of examination. The Bureau therefore requests that the Court enter a protective order that narrows the scope of GC's noticed topics, or forbids certain questioning altogether, for the reasons set forth below.

## II.    RELIEF REQUESTED

The Bureau requests that the Court enter a protective order under

Rule 26(c) as follows:

| Topic No. | Privilege | Particularity | Burden/ Duplicative | Relevance | Relief Requested |
|---|---|---|---|---|---|
| 1 | X | X | X | | Narrow scope |
| 2 | X | X | X | | Narrow scope |
| 3 | X | | | | Strike |
| 4 | X | | | | Strike |
| 5 | | | | | No objection |
| 6 | X | | | | Strike |
| 7 | X | | X | | Strike |
| 8 | X | | X | | Strike |
| 9 | X | | | | Strike |
| 10 | | | | | No objection |
| 11 | X | | | | Strike |
| 12 | X | X | X | X | Strike |
| 13 | X | X | X | X | Strike |
| 14 | X | X | X | X | Strike |
| 15 | X | | X | | Strike |
| 16 | X | | X | | Strike |
| 17 | X | | | X | Strike |
| 18 | | | | | No objection |
| 19 | | | | | No objection |
| 20 | | | | | No objection |
| 21 | | | | | No objection |
| 22 | X | | X | | Strike |
| 23 | | | X | | Strike |

## III.   ARGUMENTS & AUTHORITIES

**A.   The Court should narrow topics 1 and 2 because they don't describe the matters for examination with "reasonable particularity," impose an undue burden, duplicate previous discovery, and intrude into privileged areas.**

Topics 1 and 2 seek testimony about:

- "The factual bases for, [sic] each and every one of the CFPB's allegations or contentions set out in the Complaint pleaded against Global Connect, including, but not limited to, those in Paragraphs 92, 93, 108, 109, 111-119, and 337-342; including identifying the sources of those facts and whether the source is a [sic] written or verbal. For those factual bases where there is a writing evidencing same, said writing should be identified. For those factual bases which rely solely on verbal testimony the identity of the party providing the information should be identified and whether the testimony has been reduced to writing." (Topic 1); and

- "All facts supporting the CFPB's claims regarding the CFPB's claims [sic] regarding Global Connect's provision of 'material services,' 'substantial assistance,' or participation in designing, operating, maintaining, managing, directing or participating in the business of any debt collectors or the 'scheme' plead in the Complaint, including but not limited to all facts that the CFPB obtained about or concerning Global Connect." (Topic 2).

**1.   Topics 1 and 2 do not describe the matters for examination with the "reasonable particularity" required by Rule 30(b)(6) and impose an undue burden.**

Rule 30(b)(6) requires that the deposition topics describe the matters for examination with "reasonable particularity."[2] Courts enforcing this requirement focus on whether a notice provides the responding party with

---

[2] Fed. R. Civ. P. 30(b)(6).

the ability to designate witnesses and prepare them to answer questions that would fall within the noticed subject matter.[3] Topics 1 and 2, which seek the factual bases for each and every one of the Bureau's pleaded allegations against GC and "all facts that the CFPB obtained about or concerning Global Connect," fail this basic test.

Courts routinely prohibit this all-consuming approach to discovery, holding that 30(b)(6) topics or interrogatories that seek "all facts" supporting a party's pleaded allegations are overly broad, unduly burdensome, and don't describe the matters for examination with reasonable particularity.[4] GC's

---

[3] *See, e.g., Murphy v. Kmart Corp.*, 255 F.R.D. 497, 506 (D.S.D. 2009); *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 638 (D. Minn. 2000).

[4] *See, e.g., Megdal Assocs., LLC v. La-Z-Boy,* Inc., 2016 WL 4503337, at *5 (S.D. Fla. Feb. 1, 2016) (prohibiting interrogatory seeking "the factual and legal bases for all allegations in Plaintiff's Complaint" because it was "not tailored to any specific claim or allegation" in the complaint); *Trustees of Boston Univ. v. Everlight Elecs. Co.*, 2014 WL 5786492, at *1-3 (D. Mass. Sept. 24, 2014) (striking 30(b)(6) topics seeking "all facts" as "not described with reasonable particularity" and overly broad); *Bituminous Cas. Corp. v. Scottsdale Ins. Co.*, 2013 WL 1411544, at *1 (E.D. Mo. Apr. 8, 2013) (interrogatory seeking "any and all facts" supporting a party's contention was overly broad and unduly burdensome; limiting interrogatory to the "material" or "principal" facts that support its contention); *TV Interactive Data Corp. v. Sony Corp.*, 2012 WL 1413368, at *1 (N.D. Cal. Apr. 23, 2012) (holding that topic seeking testimony on "all facts and contentions for each of Funai's affirmative defenses and counterclaims" was vague and overly broad);; *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC,* 273 F.R.D. 367, 369 (S.D.N.Y. 2010) ("Defendants' requests, insofar as they seek every fact, every piece of evidence, every witness, and every application of law to fact—rather than, for example, certain principal or material facts, pieces of evidence, witnesses and legal applications—supporting the identified allegations, are overly broad and unduly burdensome.").

second topic is even broader than the requests courts have consistently prohibited, because it encompasses literally every fact obtained "about or concerning" GC, not just the facts supporting the Bureau's pleaded allegations against it.

The need to prevent parties from pursuing "all-facts" discovery is particularly acute in the context of a Rule 30(b)(6) deposition because of the burdens and risks inherent in preparing a witness to testify knowledgeably about "all facts." To testify about topics 1 and 2 would require the Bureau's witness to learn and testify knowledgeably about countless facts contained in thousands of documents and numerous lines of testimony.[5]

### 2.   Topics 1 and 2 duplicate previous discovery.

Rule 26(b)(1) allows discovery "that is relevant to any of the party's claims or defenses and proportional to the needs of the case."[6] The "needs of

---

[5] *Lipari v. U.S. Bancorp*, N.A, 2008 WL 4642618, at *5 (D. Kan. Oct. 16, 2008) ("An overbroad Rule 30(b)(6) notice subjects the noticed party to an impossible task" because "'the responding party is unable to identify the outer limits of the areas of inquiry noticed ...."); *see also Burke v. Glanz*, 2013 WL 4521172, at *1 (N.D. Okla. Aug. 26, 2013) ("[A] Rule 30(b)(6) notice that uses 'omnibus' descriptions such as 'concerning' or 'relating to'" or 'referencing' may be found to be unacceptably vague or overbroad."); *Action Ink, Inc. v. Anheuser-Busch, Inc.*, 2012 WL 6673125, at *2 (E.D. La. Dec. 20, 2012) (affirming magistrate judge's holding that topic seeking "facts" *related to* certain defenses failed to "describe with reasonable particularity the matters for examination") (emphasis added).

[6] Fed. R. Civ. P. 26(b)(1).

the case" require courts to consider the parties' relative access to relevant information and to weigh the burden and expense of the proposed discovery against its likely benefit.[7]  Courts must limit discovery where it is "unreasonably cumulative or duplicative" or can be obtained from a more convenient, less burdensome source.[8]

Here, GC already has all of the non-privileged information these topics seek in the form of (a) all non-privileged portions of the Bureau's investigative file, and (b) detailed answers to GC's interrogatories. In other words, GC already has the exact same access as the Bureau to this information. In fact, GC arguably has better access to this information since the Bureau obtained much of it directly from GC. The Bureau, unlike GC, has no independent knowledge of these facts.

The Bureau has now handed all of these facts over to GC in the exact same format as it received them. GC has been unable (or unwilling) to identify what possible non-privileged information a Rule 30(b)(6) deposition on these topics could add to the document production and written discovery

---

[7] *Id.*

[8] Fed. R. Civ. P. 26(b)(2)(C)(i).

responses it has already received. Given this, "the burden or expense of discovery" on topics 1 and 2 "outweighs its likely benefit."[9]

### 3. Topics 1 and 2 intrude into privileged areas.

Topics 1 and 2 require the Bureau's witness to disclose how its lawyers intend to marshal the full body of proof for the Bureau's case in chief from an investigative and discovery record that GC already has. This is an improper attempt to probe the opinion work product of Bureau lawyers, whether or not the topics purport to discover only "facts." Numerous courts have held that how Bureau lawyers intend to marshal the evidence in their possession, and the inferences they believe can be drawn from that evidence, is protected from disclosure at a Rule 30(b)(6) deposition.[10]

---

[9] Fed. R. Civ. P. 26(b)(1).

[10] *See, e.g., CFPB v. The Mortgage Law Group, LLP*, 3:14-cv-513-bbc (W.D. Wis. July 30, 2015) (quashing 30(b)(6) deposition; requiring supplemental answers to interrogatories) (attached as **Exhibit B**); *SEC v. Buntrock*, 217 F.R.D. 441, 444 (N.D. Ill. 2003) (finding 30(b)(6) notice to SEC was an inappropriate attempt to depose opposing counsel and to delve into the theories and opinions of its attorneys); *In re Independent Sales Orgs. Antitrust Litig.*, 168 F.R.D. 651, 654 (D. Kan. 1996) (finding government "is not required to have counsel marshal all of its factual proof and prepare a witness to be able to testify on a given [claim]"); *SEC v. Morelli*, 143 F.R.D 42, 48 (S.D.N.Y. 1992) (barring 30(b)(6) deposition of SEC, granting defendant leave to serve contention interrogatories); *United States v. District Council of New York City*, 1992 WL 208284, at *15 (S.D.N.Y. Aug. 19, 1992) ("However liberal the discovery rules are, they could not reasonably be construed as requiring a party in a case such as this to make a Rule 30(b)(6) deponent, who is an investigator assisting counsel, the repository of all information known to counsel so that she could then provide it to an

For example, in *SEC v. Monterosso*,[11] the court granted the SEC's request for a protective order against topics that sought testimony about the substance of the SEC's documentary evidence, which it had gathered during the course of its investigation, and about which it had no independent knowledge. The court reasoned that because the SEC had already produced its investigative file, "the only remaining knowledge" the defendant could be seeking "is the importance the SEC gives to each document."[12] The court recognized that, unlike a private litigant whose actual conduct is at issue, the SEC had "no independent knowledge of these documents."[13] It concluded: "How the SEC intends to marshal facts, documents and testimony in its possession is protected from disclosure, pure and simple."[14]

The same reasoning applies here and the Court should narrow these topics to the facts the Bureau relies on to support its claims against GC. This is an even more modest form of protection than the Bureau's cited authorities would otherwise justify.

---

adversary.").

[11] 2009 WL 8708868 (S.D. Fla. June 2, 2009).

[12] *Id.* at *1.

[13] *Id.*

[14] *Id.*

**B.  The Court should strike topics 3, 4, and 6 because they intrude into privileged areas.**

Topics 3, 4, and 6 seek the following testimony:

- "The identity of the witnesses and/or potential witnesses the CFPB interviewed or otherwise contacted in connection with the CFPB's investigation of the Debt Collectors and/or Global Connect in this action, and any statements made by the witnesses or potential witnesses relating to Global Connect or services provided by Global Connect to Debt Collectors, including providing the Debt Collectors with 'material services' or 'substantial assistance' or 'materially contribut[ing]' to Debt Collectors' 'scheme.'" (Topic 3);

- "Whether any specific complaints relating to Global Connect made by individuals were investigated and the results of same." (Topic 4); and

- "Any 'consumer complaint' naming or referring to any 'telephone broadcast service providers' or 'telephone service providers' or to Global Connect, including complaints or communications from any third party, if any, that the CFPB received or obtained concerning Global Connect. Where the aforementioned "consumer complaints' have previously been produced, they should be identified and where the 'consumer complaints' which the Bureau is relying on are verbal, they must be identified along with the identity of the source." (Topic 6).

The Bureau's initial disclosures identify the consumer victims of the defendants' unlawful debt collection scheme as a defined category of individuals likely to have discoverable information. These disclosures then specifically identify the nine consumers who submitted declarations in support of the Bureau's TRO application. The Bureau produced those declarations with its TRO papers. Later, in response to several different

requests for production from GC, the Bureau produced all consumer

complaints it has concerning its claims against GC.

Questions on topics 3, 4, and 6 that delve beyond what the Bureau has

already produced would require the Bureau's witness to divulge the mental

impressions, conclusions, opinions, or legal theories of Bureau lawyers.

Topics 3 and 4 implicate the tactical choices of Bureau lawyers about (a)

which potential witnesses to interview or consumer complaints to investigate,

(b) what questions to ask them, and (c) what information gleaned from each

interview to record. And the notes of interviews of potential witnesses

prepared by or at the direction of Bureau lawyers is attorney work product

and protected from disclosure.[15] Topic 6 references consumer complaints that

GC has already received and about which the Bureau has no independent

---

[15] *See, e.g., Martin v. Office of Special Counsel, Merit Sys. Prot. Bd.*, 819 F.2d
1181, 1187 (D.C. Cir. 1987) ("[A]ttorney notes taken during witness
interviews are, for all practical purposes, always privileged); *Dir. of OTS v.
Vinson & Elkins, L.L.P.*, 168 F.R.D. 445, 446–47 (D.D.C. 1996), *aff'd sub nom.
Dir., OTS v. Vinson & Elkins, LLP*, 124 F.3d 1304 (D.C. Cir. 1997)
("Interview notes … are properly treated as opinion work product because, in
choosing what to write down and what to omit, a lawyer necessarily reveals
his mental processes."); *Dukes v. Wal-Mart Stores, Inc.*, 2013 WL 1149754, at
*4 (N.D. Cal. Mar. 19, 2013) (denying motion to compel discovery request
"cover[ing] interview notes and witness summaries drafted by counsel which
would clearly be subject to attorney work product protection"); *F.T.C. v. Hope
Now Modifications, LLC*, 2011 WL 2634029, at *3 (D.N.J. July 5, 2011) (FTC
"interview notes are covered by the work product doctrine"); *SEC v. Strauss*,
2009 WL 3459204, at *4 (S.D.N.Y. Oct. 28, 2009) ("To the extent the
interview notes and memoranda were prepared by counsel, they easily fit
within the protection of the work-product doctrine.").

knowledge. Questions on topic 6 would necessarily require the Bureau to disclose its work product and divulge how its lawyers intend to marshal its evidence.[16] GC isn't allowed to exploit the investigative efforts and industry of Bureau lawyers for its own advantage.

## C. The Court should strike topics 7 and 8 because they duplicate previous discovery and intrude into privileged areas.

Topics 7 and 8 seek testimony about:

- "All damages that the CFPB seeks in this matter which it claims Global Connect should be liable for and the components and complete basis for each component of such damages." (Topic 7); and

- "All equitable relief, including the nature, extent, and, as applicable, a computation of each category of relief, and the basis upon which the CFPB seeks injunctive relief." (Topic 8).

These topics duplicate previous discovery with no apparent justification. The Bureau has already explained its theory of damages and equitable relief in its answers to GC's interrogatories. Specifically:

**Interrogatory No. 2**: Identify and describe with specificity all relief you seek against Global Connect, and provide a complete factual basis for all such relief.

After referencing several documents that provide the factual bases for its claim for relief under Rule 33(d), the Bureau answered, in pertinent part, as follows:

---

[16] *See Monterosso*, 2009 WL 8708868, at *1.

**Answer to Interrogatory No. 2**: The Bureau seeks damages from Global Connect in the form of restitution, disgorgement, and civil money penalties. The Bureau seeks to recover restitution of the amount paid by persons receiving the Debt Collectors' illegal messages recorded and broadcast by Global Connect, less any refunded amounts consumers actually received. The Bureau estimates that affected consumers paid at least $5 million in response to the Debt Collectors' messages recorded and broadcast by Global Connect. Further discovery may be necessary to identify all such payments.[17]

The Bureau's theory of damages is straightforward: it seeks restitution for consumers measured as the amounts they paid to the debt collector defendants in response to messages recorded and broadcast by Global Connect. GC could not explain to the Bureau what additional, non-privileged information a deposition could add to the information set forth in the Bureau's interrogatory answer.

Even if these topics weren't duplicative, they would nevertheless intrude into privileged areas, too. These topics seek the "complete basis" – including the legal bases – for the Bureau's claims for relief. In other words, they require the Bureau's witness to apply the legal standards underlying its theories of relief to the facts of the case. This sort of contention discovery, which demands the witness apply law to facts, necessarily delves into the

---

[17] The Bureau then explained that it sought civil money penalties, costs of prosecution, and injunctive relief against GC's unlawful conduct.

core opinion work product of Bureau lawyers.[18] Such contention discovery is particularly disfavored in the context of a Rule 30(b)(6) deposition of a government agency, which has no independent knowledge of the relevant facts.[19]

**D.    The Court should strike topic 9 because it intrudes into privileged areas, seeks discovery of irrelevant matters, and imposes an undue burden.**

Topics 9 seeks testimony about:

- "The specific procedures, actions, or practices that the CFPB contends that Global Connect failed to implement with respect to underwriting, investigating, or auditing its users prior to allowing them to use Global Connect's services, under statutes or regulations in effect at any time during the investigation and litigation of this matter."

Topic 9 seeks testimony about the "procedures, actions, or practices" that GC could have employed with respect to "underwriting, investigating, or auditing" its users to avoid violating literally any "statutes or regulations in effect at any time during the investigation and litigation" of this case. This is a request for compliance counseling and the Bureau isn't required to provide it. The only people who can formulate answers to this question are Bureau lawyers, and answering it would necessarily entail divulging their mental

---

[18] *See infra* Section III.F. and notes 26-28.

[19] *See Monterosso*, 2009 WL 8708868, at *1.

impressions, opinions, and legal theories. This is core opinion work product entitled to near absolute protection from disclosure.[20]

Further, because it encompasses all "statutes or regulations in effect at any time," topic 9 also seeks irrelevant information and makes compliance impossible. Telephone broadcast service companies are subject to a wide array of laws and regulations, some of which are not even within the Bureau's regulatory purview.  To testify on this topic would require the Bureau's witness to learn about irrelevant bodies of law that have nothing to do with the parties' claims or defenses in this case.

**E.    The Court should strike topics 12, 13, and 14 because they  do not describe the matters for examination with "reasonable particularity," impose an undue burden, seek discovery of irrelevant matters, and intrude into privileged areas.**

Topics 12, 13, and 14 seek testimony about:

- "Any pronouncements, statements or communications made by the CFPB which the CFPB contends pertain to or tend to provide notice to companies (including Global Connect) which [sic] provide telephone broadcast services or telephone service or related practices." (Topic 12);

- "Any announced, published, final or proposed rules; notice or advice of contemplated regulatory activity; hearings, workshops, reports, or studies in advance of rulemaking which the CFPB contends pertain to, or tend to provide notice to, companies providing telephone broadcast services or telephone service to third parties." (Topic 13); and

---

[20] Fed. R. Civ. P. 26(b)(3)(B).

- "Any comments or requests for information; blog posts; suggestions or guidelines or concerns about industry practice, regarding companies providing telephone broadcast services or telephone service to third parties, including interviews or articles by CFPB personnel on same." (Topic 14).

These topics collectively seek testimony about every statement, pronouncement, communication, or suggestion of a Bureau representative that "provide notice to," "pertain to," or "regard[]" companies that provide "telephone broadcast services." Because their outer limits are undefined, these topics don't describe the matters for examination with "reasonable particularity."

For example, topics 12 and 13 ask for "any" statements or other possible sources of information that the Bureau contends "pertain to" or "tend to provide notice to" companies that provide telephone broadcast services. The Bureau doesn't know what GC means for statements to "tend to provide notice to" such companies, much less to "pertain to" them.[21] Similarly, topic 14 asks for, among other things, "comments," "suggestions," "guidelines," and "concerns" about "industry practice" that "regard[]" telephone broadcast services companies. It's also unclear whether GC believes these sources of information to be distinct from the "pronouncements, statements, or communications" referenced in topic 12 and, if so, how.

---

[21] *See supra* n. 5.

This lack of reasonable particularity also means that the topics impose an undue preparation burden. Because the topics reference every statement, communication, pronouncement, suggestion, comment, guideline, workshop, hearing, and actual and contemplated rulemaking, they require Bureau lawyers to scour the agency's full institutional history to search for responsive information. The Federal Rules, animated by principles of proportionality, don't allow GC to impose this burden on the Bureau.

Nor could GC ever explain why any of this information was relevant to the parties' claims or defenses. Given the substantial burden of preparing a witness on these topics, and their irrelevance to the Bureau's claims or GC's defenses, the "burden or expense of" discovery on topics 12, 13, and 14 "outweighs its likely benefit."[22]

Finally, most of the information these topics seek is privileged. For example, topic 13 expressly calls for testimony about "contemplated regulatory activity" and "studies in advance of rulemaking" – information that is protected from disclosure by the deliberative process privilege.[23] And

---

[22] *Id.*

[23] The deliberative process privilege protects the decisionmaking process of government agencies from disclosure. *See, e.g., Miccosukee Tribe of Indians of Florida v. U.S.*, 516 F.3d 1235, 1263 (11th Cir. 2008); *Georgia Aquarium, Inc. v. Pritzker*, 134 F. Supp.3d 1374, 1379 (N.D. Ga. 2014). But because GC has refused to identify any specific rulemakings or other "regulatory activit[ies]" about which it wants the Bureau's testimony, the Bureau is unable to submit

topics 12 and 14 would require the Bureau to divulge the opinions and conclusions of its lawyers regarding which Bureau statements provide notice to companies like GC and how. These opinions and conclusions are entitled to near absolute protection from disclosure, especially in light of the fact that none of the Bureau's claims or GC's defenses have placed Bureau statements at issue.[24]

**F.    The Court should strike topics 15, 16, and 22 because they impose an undue burden, duplicate previous discovery, and intrude into privileged areas.**

Topics 15, 16, and 22 seek testimony about:

- "The CFPB's Answers and Supplemental Answers and objections to each of Global Connect's First Set of Interrogatories, in this action, including the CFPB's efforts to preserve, search for, and collect facts or data responsive to Global Connect's Requests" (Topic 15);

- "The CFPB's responses and objections to each of Global Connect's First Set of Requests for Production of Documents, including all supplemental responses, in this action, including the CFPB's efforts to preserve, search for, and collect documents responsive to Global Connect's Requests" (Topic 16); and

- "The identity of any and all documents referred to in Plaintiff's responses to Global Connect's First Set of Requests for Production or Answers to First Set of Interrogatories" (Topic 22).

These topics impose an enormous burden on the Bureau. They require a Bureau witness to review and testify knowledgeably about every one of

---

a formal declaration of the deliberative process privilege.

[24] Fed. R. Civ. P. 26(b)(3)(B).

thousands of documents the Bureau produced in response to GC's discovery requests. Courts consistently prohibit this sort of blunderbuss approach to discovery, particularly in the context of a Rule 30(b)(6) deposition.[25]

These topics are also duplicative, as they seek testimony about the full sum and substance of the Bureau's previous discovery responses. GC can't explain what additional, non-privileged information a deposition could add to the information contained in the document production and written discovery responses it has already received.

Further, these topics intrude into privileged areas, as they seek testimony about contentions that were formulated by Bureau lawyers.[26] GC's interrogatories ask the Bureau, among other things, to provide "all facts" supporting a variety of contentions, including the central legal conclusions that GC substantially assisted and materially contributed to the debt collectors' unlawful scheme.

A Rule 30(b)(6) deposition is not the proper tool for exploring the factual bases for the Bureau's contentions. This is especially so because the

---

[25]*See supra* Section III.A and n. 4.

[26] *See Gossar v. Soo Line R. Co.*, 2009 WL 3570335, at *4 (S.D. Ind. Oct. 27, 2009) (granting protective order against 30(b)(6) topics seeking "all facts supporting your answer" to an interrogatory and "all facts" supporting objections to various discovery requests because they "seek legal conclusions about how [the defendant] answered certain interrogatories" and thus "implicate matters of attorney-client privilege/work product").

Bureau lacks independent knowledge of the relevant facts and has already outlined the bases for its contentions in its answers to GC's contention interrogatories. Further discovery of the facts supporting the Bureau's answers to these contention interrogatories thus would be intertwined with the opinions and conclusions of Bureau lawyers about why and how those facts have certain legal consequences.[27] Consequently, any deposition of a Bureau witness on these topics creates an unmanageable risk of disclosure of Bureau work product. Numerous courts have adopted this reasoning and forbidden using 30(b)(6) depositions for the type of contention discovery GC seeks here.[28]

---

[27] *See Fidelity Management & Research Co. v. Actuate Corp.*, 275 F.R.D. 63, 64 (D. Mass. 2011) (terminating oral deposition and allowing follow-on deposition on written questioning about party's damages claims and affirmative defenses, reasoning those topics made it "extremely difficult to distinguish between 'facts' (not protected) and the issue of why those facts have legal consequences, which usually has a work-product (lawyers' mental impressions) dimension").

[28] *See, e.g., JP Morgan Chase Bank v. Liberty Mut. Ins. Co.*, 209 F.R.D. 361, 362 (S.D.N.Y. 2002) ("[D]epositions, including 30(b)(6) depositions, are designed to discover facts, not contentions or legal theories, which, to the extent discoverable at all prior to trial, must be discovered by other means."); *McCormick-Morgan, Inc. v. Teledyne Indus. Inc.*, 134 F.R.D. 275, 286 (N.D. Cal. 1991) (rejecting use of Rule 30(b)(6) deposition to discover party's contentions because "no one human being can be expected to set forth, especially orally in deposition, a fully reliable and sufficiently complete account of all the bases for the contentions made and positions taken by a party"), *overruled on other grounds by*, 765 F. Supp. 611 (N.D. Cal. 1991); *Monterosso*, 2009 WL 8708868, at *1 (granting protective order against topics seeking "factual basis" for SEC's contentions); *SmithKline Beecham Corp. v.*

Given the risks of disclosing privileged information that a Rule 30(b)(6) deposition poses under these circumstances, and the fact that GC has already propounded and received answers to its contention interrogatories, the Court should strike these topics.

## G.    The Court should strike topic 17 because it seeks discovery of irrelevant matters and intrudes into privileged areas.

Topic 17 seeks testimony about:

- "Any Civil Investigative demands issued to any 'telephone broadcast service providers' or 'telephone service providers' other than Global Connect."

The Bureau's other investigations of telephone broadcast service providers, if any, are irrelevant to the parties' claims or defenses in this case. GC could not explain why this information was relevant when the parties conferred about this topic. Even if the Bureau's other investigations were relevant, questions about the Bureau's CIDs to unidentified non-parties would necessarily invade the Bureau's deliberative process and law

---

*Apotex Corp.*, 2004 WL 739959, at *1-*4 (E.D. Pa. Mar. 23, 2004) (preventing deposition on party's legal contentions but allowing discovery through interrogatories); *Oklahoma v. Tyson Foods, Inc.*, 262 F.R.D. 617, 631-32 (N.D. Okla. 2009) (noting that contention interrogatories are more convenient, less burdensome alternative to 30(b)(6) deposition for exploring opposing party's contentions); *In re Independent Sales Orgs. Antitrust Litig.*, 168 F.R.D. at 654 (opining that although there was nothing objectionable about party's attempt to discover the facts upon which opponent relied for its defenses, use of a 30(b)(6) deposition to do so was "overbroad, inefficient, and unreasonable"); *TV Interactive Data Corp.*, 2012 WL 1413368, at *2-*3 (finding contention interrogatories more appropriate discovery method to explore facts underlying legal contentions in patent infringement case).

enforcement privileges. The deliberative process privilege protects the Bureau's internal decisionmaking about the subjects of its CIDs and the information that is requested of them.[29] The law enforcement investigative privilege is meant "to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise prevent interference with an investigation."[30]

To testify about topic 17 would require the Bureau to disclose its pre-litigation decisionmaking process and its internal policies, effectively providing a road map for law violators seeking to evade a law enforcement action. At issue is whether defendants, including Global Connect, violated the law, not how the Bureau chose to conduct this or any other investigation.

**H.    The Court should strike topic 23 because it requires the Bureau to hand over its trial presentation and subverts this Court's established procedures for pre-trial disclosures.**

Topic 23 seeks testimony about:

- "Information or facts that will be the subject of any fact testimony to be adduced by the CFPB at trial of this action."

---

[29] *See, e.g., Miccosukee Tribe of Indians of Florida v. U.S.*, 516 F.3d 1235, 1263 (11th Cir. 2008); *Georgia Aquarium, Inc. v. Pritzker*, 134 F. Supp.3d 1374, 1379 (N.D. Ga. 2014).

[30] *In re Dep't of Investigation*, 856 F.2d 481, 484 (2d Cir. 1988).

This topic seeks the full sum and substance of the Bureau's trial presentation – including the documents Bureau lawyers will introduce and the testimony Bureau lawyers will elicit from trial witnesses. GC can't use a Rule 30(b)(6) deposition to circumvent this Court's established procedures for pre-trial disclosures and re-write the Court's scheduling order for its own advantage.[31]

This topic also makes compliance impossible. The Bureau hasn't yet determined – and isn't yet required to determine – what exhibits it will introduce at trial, or who its trial witnesses will be, or the substance of their testimony. And it's likely that motions for summary judgment and in limine will change the triable issues after any deposition of the Bureau has occurred. This makes it impossible for the Bureau to prepare a witness to testify about the facts and information it intends to present at trial right now.

---

[31] L.R. 16.4.

Dated: December 30, 2016     Respectfully Submitted,

Attorneys for Plaintiff

Consumer Financial Protection Bureau:

ANTHONY ALEXIS
Enforcement Director

DAVID RUBENSTEIN
Deputy Enforcement Director for Litigation


*/s/ John Thompson*
_____

Jonathan B. Engel (MA bar #664518)
Mary Warren (NY bar #2557684)
John Thompson (NM bar #139788)
ENFORCEMENT ATTORNEYS
1700 G Street NW
Washington, DC 20552
Phone (Engel): 202-435-9037
Phone (Warren): 202-435-9284
Phone (Thompson): 202-435-7270
Email: *Jonathan.Engel@cfpb.gov*
Email: *Mary.Warren@cfpb.gov*
Email: *John.Thompson@cfpb.gov*
Fax: 202-435-7722

And

Local Counsel
JOHN A. HORN
UNITED STATES ATTORNEY

LENA AMANTI
ASSISTANT U.S. ATTORNEY
Georgia Bar No. 666825
600 Richard B. Russell Federal Bldg.
75 Spring Street, S.W.
Atlanta, GA 30303

24

Telephone: (404) 581-6225
Facsimile: (404) 581-6163
Email: lena.amanti@usdoj.gov


## CERTIFICATE OF COMPLIANCE

The undersigned attorney hereby certifies, pursuant to LR 7.1.D, that the foregoing Motion was prepared in Century Schoolbook 13 point font.


*/s/ John Thompson*
_____          Dated:        December 30, 2016
John Thompson
Enforcement Attorney


## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on this day a true and correct copy of Plaintiff's Memorandum in Support of its Motion for Protective Order Against Global Connect's Rule 30(b)(6) Notice was filed with the clerk of court using the CM/ECF system which will automatically send email notification of the filing to all attorneys of record.

*/s/ John Thompson*
_____          Dated:        December 30, 2016
John Thompson
Enforcement Attorney