**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>Plaintiff,<br><br>v.<br><br>UNIVERSAL DEBT & PAYMENT SOLUTIONS, LLC, *et al.*,<br><br>Defendants. | Civil Action No. 1:15-cv-0859-RWS |

**MOTION FOR RECONSIDERATION**

COMES NOW Defendant Frontline Processing Corporation ("Frontline") and moves the Court to reconsider its September 1, 2015 Order denying Frontline's Motion to Dismiss in the above-captioned case. D.I. 149. In denying Frontline's Motion, this court relied, *inter alia*, on *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. __, 134 S. Ct. 1377 (2014), and found that the Consumer Financial Protection Bureau's ("CFPB") Complaint adequately pled an injury proximately caused by Frontline because the alleged consumer injury was "a plausible consequence" of Frontline's alleged conduct. D.I. 149 at 57. Last month, however, the Supreme Court revisited its *Lexmark* decision, and held that, in the context of a federal statutory cause of action, "foreseeability alone is not sufficient

to establish proximate cause." *Bank of America Corp. v. Miami*, 581 U.S. __ (2017) (slip op. at 10). Instead, a plaintiff must plead "some direct relation between the injury asserted and the injurious conduct alleged." *Id*. Further, "the general tendency in these cases, in regard to damages at least, is not to go beyond the first step" of causation. *Id.* at 12 (internal citations omitted). Frontline submits that, just as foreseeability alone is insufficient, plausibility alone is insufficient to establish proximate cause. The CFPB has not pled, and cannot plead, any actual or likely consumer injury directly related to Frontline's alleged conduct. Accordingly, the CFPB's claim against Frontline for Unfair Acts and Practices (Count IX) should be dismissed for failure to state a claim. Moreover, the dismissal should be with prejudice, as the CFPB has acknowledged that it cannot adequately plead any actual or likely consumer injury proximately caused by Frontline.

## **ARGUMENT**

"Under the Local Rules of this Court, '[m]otions for reconsideration shall not be filed as a matter of routine practice[,]' but rather, only when 'absolutely necessary.'" *Hunt v. Nationstar Mortgage LLC*, 1:14-cv3649-RWS (N.D. Ga. April 19, 2016)(quoting LR 7.2(E), N.D. Ga.). "Such absolute necessity arises where there is '(1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact.'" *Id.* (*quoting Bryan v. Murphy*, 246 F. Supp. 2d 1256, 1258-59 (N.D. Ga. 2003)).

Frontline submits that a motion for reconsideration is 'absolutely necessary' in this instance because of 'an intervening development or change in controlling law.' Specifically, the Supreme Court has clarified the standard for adequately pleading proximate cause in a federal statutory cause of action. The CFPB's Complaint does not meet the Supreme Court's newly-announced standard.

### A. The Supreme Court's *Bank of America v. Miami* Decision

On May 1, 2017, the Supreme Court issued its decision in *Bank of America Corp. v. Miami*, 581 U.S. __ (2017). There, the majority opinion rejected the Eleventh Circuit's holding that a complaint satisfies the common law requirement of proximate cause where the complaint "plausibly alleged that [Plaintiff's] financial injuries were foreseeable results of the [Defendant's] misconduct." *Id.*, slip op. at 10. Instead, the Court found, "foreseeability alone is not sufficient to establish proximate cause." *Id*. A plaintiff must plead "some direct relation between the injury asserted and the injurious conduct alleged." *Id*. Further, "the general tendency in these cases, in regard to damages at least, is not to go beyond the first step" of causation. *Id.* at 12 (internal citations omitted).

The Court's holding directly addressed causes of action under the Fair Housing Act, but also cited its *Lexmark* decision which addressed Lanham Act causes of action, and its decisions in *Holmes v. Securities Investors Protection Corporation*, 503 U.S. 258, 268 (1992), *Anza v. Ideal Steel Supply Corp.*, 547 U.S.

451 (2006) and *Hemi Group, LLC v. City of New York, NY*, 130 S. Ct. 983 (2010) all of which addressed RICO causes of action. *Id.*, slip op. at 10-11. Further, the Court stated that it has "has repeatedly applied [common law] directness principles to statutes with common law foundations." *Id*. The Supreme Court has also since cited its own Bank of America opinion in holding that common law tort notions of proximate cause must be applied in civil rights actions under 42 U.S.C. § 1983. *See County of Los Angeles v. Mendez*, 581 U.S. __ (2017)(slip op. at 10-11)(criticizing lower court opinion for requiring "only a murky causal link between the [illegal conduct] and the injuries attributed to it.").

Here, the CFPB did not dispute that proximate cause is required in order to state a claim for Unfair Acts or Practices Causing Substantial Consumer Injury. D.I. 149 at 50. This Court thus correctly found that proximate cause is under the CFPA, and Frontline does not challenge that holding. Instead, Frontline contends that this Court incorrectly found that the proximate cause requirement was satisfied by the CFPB's complaint.

This Court's earlier decision relied heavily on *FTC v. Neovi, Inc.*, 604 F.3d 1150 (9th Cir. 2010). D.I. 149 at 52. This Court held that the *Neovi* decision "stands for the proposition that a defendant may be liable for actions that facilitate, or contribute to, ill intentioned schemes if the injury was a predictable consequence of those actions." D.I. 149 at 54. But the "predictable consequence" standard

articulated in *Neovi* is arguably a higher bar than the "foreseeable results" analysis rejected by the Supreme Court in *Bank of America.* This Court's "plausible consequence" standard arguably sets an even lower bar, and was thus also implicitly rejected by the Supreme Court. Instead, in order to satisfy the proximate cause requirement, the harm must be direct, and "not go beyond the first step." *Bank of America v. Miami*, 581 U.S. __, slip op. at 12.

**B. The CFPB's Complaint Does Not Allege an Injury Proximately Caused by Frontline**

As this Court correctly found, the question of proximate cause is "whether the harm alleged has a sufficiently close connection to the conduct the statute prohibits." D.I. 149 at 51 (quoting *Lexmark*, 134 S.Ct. at 1390). The Supreme Court's Bank of America decision reaffirmed this holding. *Bank of America v. Miami*, 581 U.S. __, slip op. at 10 (also quoting *Lexmark*, 134 S.Ct. at 1390).

Here, the 'conduct the statute prohibits' that has been alleged against Frontline amounts to "failure to investigate [alleged] warning signs that the debt collectors are illegitimate businesses." D.I. 149 at 57. But even assuming those allegations are true,[1] Frontline's alleged conduct not the direct, proximate cause of any alleged consumer injury. Instead, even under the CFPB's allegations, there are numerous other intervening causes. Perhaps most importantly, the alleged actions

[1] The CFPB's allegations are not true, but Frontline recognizes that for purposes of a motion to dismiss the court must assume they are.

of the Debt Collectors themselves serve as an intervening cause of the consumer injury. It is the Debt Collectors, not Frontline, who were allegedly "engaged in a scheme to defraud consumers by using threats, intimidation, and harassment to collect 'phantom' debts." D.I. 1 (Complaint) at ¶ 2. It is the Debt Collectors, not Frontline, who allegedly made threats and false statements to consumers and their families. *Id*. It is "[b]ecause of the Debt Collectors' [alleged] threats and false statements," not any conduct by Frontline, that "consumers collectively paid millions of dollars to the Debt Collectors." Id. at ¶ 3. Indeed, Frontline is not alleged to have engaged in any of the conduct alleged to have directly harmed consumers, specifically: ¶¶ 94-99 of the Complaint (entitled "The Debt Collection Scheme"),[2] ¶¶ 101-106 (entitled "Obtaining consumers' information"), or ¶¶ 107-119 (entitled "Contacting consumers"), or ¶¶ 120-143 (entitled "The individual defendants were personally engaged in the unlawful scheme"). These are the actions that allegedly caused consumer harm, and Frontline is not found anywhere among them. Frontline is not even alleged to have any connection with most of the accused Debt Collectors, including Universal Debt Solutions, LLC; WNY Account Solutions, LLC; WNY Solutions Group, LLC; Check & Credit Recovery, LLC; S

[2] Paragraph 101 alleges that "the Payment Processors" – a term which is defined to include Frontline – "facilitated the withdrawal of funds from consumer's account and deposit of funds into the Debt Collectors' accounts." But the Complaint later makes clear that "Global Payments [not Frontline] deposited monies processed through these accounts into bank accounts opened and maintained by Mohan Bagga in the name of UDPS and Credit Power." D.I. 1 at ¶ 216.

Payment Processing & Solutions, LLC; Sarita Brown; Tasha Pratcher; Varinderjit Bagga; or Sumant Khan. Nor is Frontline alleged to have any connection with Francis David Corp. d/b/a Electronic Merchant Systems, or Global Connect, LLC. Nor is Frontline alleged to have any connection with the two UDPS and Credit Power merchant accounts opened on applications referred to Global Payments by Pathfinder.

Frontline is also not alleged to have directly taken any money from any consumer, or provided any money to the Debt Collectors. The CFPB's Complaint makes clear that "[p]ayment processors, like Global Payments and EMS, provide services that enable merchants to accept check, card, and electronic payments at a point of sale." D.I. 1 at ¶ 144. Notably, this allegation uses the lower-case 'payment processors,' rather than the defined term "Payment Processors," and specifically identifies Global Payments and EMS. This allegation is thus not stated against Frontline. Similarly, the lower-case, undefined term "payment processors" is used in the CFPB's allegations in Paragraphs 145, and 147-150, which are thus not stated against Frontline. Independent Sales Organizations (ISOs) like Frontline do not even appear in the CFPB's "Illustrative Transaction Flow" set forth in ¶ 150, because they have no role in the transaction flow. With respect to the deposit of money to the Debt Collectors, the CFPB alleges that "Global Payments [not Frontline] deposited monies processed through these accounts into bank accounts

opened and maintained by Mohan Bagga in the name of UDPS and Credit Power." D.I. 1 at ¶ 216. The CFPB's allegations are phrased this way because ISOs like Frontline do not "process payments." They do not take money from consumers, and they do not provide money to merchants. That function is performed by "payment processors like Global Payments and EMS." D.I. 1 at ¶ 144.

Nor is Frontline alleged to have failed in monitoring either UDPS or Credit Power. Instead, the CFPB alleges that Global Payments, not Frontline, was responsible for handling chargebacks, that Global Payments processed chargebacks indicating illicit activity, and that Global Payments failed to do anything about it. D.I. 1 at 219-244.[3] There is no allegation that Frontline had any obligation to monitor UDPS or Credit Power, much less that it failed to do so.

As this Court previously found, the unfair acts or practices stated against Frontline are limited to an alleged "failure to investigate warning signs" while pre-screening merchant applications for UDPS and Credit Power. D.I. 149 at 57. But, as the CFPB's Complaint makes clear, this conduct did not *directly* cause any consumer harm. In fact, Frontline's alleged conduct did not even directly enable

[3] After alleging these facts related to chargebacks against Global Payments alone, the CFPB inexplicably alleges that Global Payments, Pathfinder and Frontline should have been alerted to factoring (D.I. 1 at ¶ 245), and that Global Payments, Pathfinder and Frontline "ignored these red flags" (D.I. 1 at ¶ 246). But these allegations make no sense as the CFPB has correctly alleged that Global Payments, not Frontline, was responsible for managing and processing chargebacks. *See also* D.I. 1 at ¶ 84 (alleging that Frontline "agreed to market Global Payments' services to merchants and prescreen merchants for compliance with Global Payments' credit criteria," but omitting any allegation that Frontline agreed to or was otherwise obligated to monitor chargebacks or other merchant processing activity).

UDPS or Credit Power access to a merchant processing account. The CFPB's Complaint makes clear that "Global Payments also approved the UDPS application" (D.I. 1 (Complaint) at ¶ 207), a necessary step before the Debt Collectors could use their merchant processing accounts. There are thus multiple intervening steps between Frontline's allegedly deficient prescreening and any consumer injury – specifically, Global Payments had to review and approve the same UDPS and Credit Power applications, the Debt Collectors had to make harassing, threatening or otherwise illegal calls to consumers, consumers had to provide bank card information to the Debt Collectors, the Debt Collectors had to submit that bank card information to "payment processors" like Global Payments and EMS," and those payment processors – not ISOs like Frontline – had to remove money from consumers' accounts and deposit money into the Debt Collectors' accounts. On these facts, Frontline cannot be the proximate cause of any consumer injury without going well "beyond the first step," which the Supreme Court has clarified is improper.

### C. The CFPB's Unfair Acts and Practices Claim Against Frontline Should Be Dismissed With Prejudice

The CFPB may argue that it should be granted an opportunity to amend its Complaint to properly plead proximate cause under the Supreme Court's new standard. Frontline disagrees. The CFPB has demonstrated through discovery that it cannot, under any circumstances, plead that Frontline is the proximate cause of

any actual or likely consumer injury. In fact, the CFPB cannot even identify which consumers it alleges were injured by Frontline. For example, the CFPB's Complaint alleges that "[i]n most, if not all, cases" where the Debt Collectors attempted to collect a debt, "consumers did not owe any debt the Debt Collectors had a right to collect." D.I. 1 at ¶ 2. But the CFPB has since admitted in deposition that UDPS and Credit Power regularly purchased debt portfolios (D.I. 397-3 at 217:10-15), that the CFPB does not know whether these debt portfolios contained debts that consumers actually owed (D.I. 397-3 at 217:16-19), and that in fact the CFPB does not know whether any of the Debt Collectors ever collected on a debt that was actually owed to them (D.I. 397-3 at 221:8-13). The CFPB's case is about an alleged scheme to collect 'phantom' debt, but it admits it has no idea how many of the debts at issue were 'phantom' debt versus debts legitimately owed to the Debt Collectors. If the CFPB cannot even identify which debts are 'phantom' debts, there is no possible way for the CFPB to plead that Frontline (and not the Debt Collectors, or Pathfinder, or Global Payment, or EMS, or Global Connect) was the proximate cause of consumer injury arising from any attempt to collect on such debt.

The CFPB even admits that it has no idea whether the Debt Collectors engaged in any illegal activity in connection with the only payment transactions which bear any relationship to Frontline. Specifically, the CFPB contends that

UDPS and Credit Power made 7,640 payment transactions using the two accounts which were opened based on applications referred to Global Payments by Frontline. (D.I 397-3 at 80:21-82:16). But the CFPB admits it does not know whether any of the cardholders in those 7,640 transactions agreed to make a payment because of a harassing or threatening telephone call, as alleged in the Complaint. (D.I 397-3 at 222:25-223:9). It does not know whether any of these 7,640 cardholders received any auto-dialed call from Global Connect as alleged in the Complaint. (D.I 397-3 at 86:5-18; 97:12-15). The CFPB does not know how many times, if any, UDPS or Credit Power refused to validate the debt for these 7,640 cardholders as alleged in the Complaint. (D.I 397-3 at 222:17-24). The CFPB does not know how many of those same cardholders submitted any kind of complaint to anyone as alleged in the Complaint. (D.I 397-3 at 87:1-25; 105:13-17). This is at least in part because, as the CFPB has admitted, it has not been able to match specific consumer complaints to specific Payment Processor defendants. (D.I. 397-3 at 90:9-91:7). The CFPB does not know how many of those 7,640 cardholders received a refund in the form of a credit. (D.I 397-3 at 121:24-122:2). The CFPB does not know how many of those same cardholders submitted a chargeback, but did not receive a return of their money. (D.I 397-3 at 122:8-24).

Taking all that the CFPB does not know into consideration, the CFPB cannot even plead that any specific consumer was *indirectly* injured by Frontline, much less

that Frontline was the proximate cause of any actual or likely injury to any consumer. These admissions by the CFPB demonstrate that any effort to amend its Complaint would be futile, and its claim for Unfair Acts and Practices against Frontline should be dismissed with prejudice.

## CONCLUSION

The Supreme Court recently raised the bar for pleading proximate cause. The CFPB's Complaint fails to adequately plead that Frontline proximately caused consumer injury under this new standard, and its claim for Unfair Acts and Practices should be dismissed. Further, the CFPB has admitted in discovery that it cannot identify consumers who were even indirectly harmed by Frontline's alleged conduct. Any attempt to amend its Complaint would thus be futile, so the dismissal should be with prejudice.

Dated: June 5, 2017

Respectfully submitted,

*/s/ Joseph J. Gleason*

Joseph J. Gleason
Georgia Bar No. 297202
**GLEASON LAW LLC**
780 Morosgo Drive #14084
Atlanta, Georgia 30324
Telephone: (404) 594-3550
Email: joe@gleason.legal

ATTORNEY FOR DEFENDANT FRONTLINE PROCESSING CORPORATION

**CERTIFICATE OF SERVICE**

I hereby certify that on June 5, 2017, I electronically filed the above document with the Clerk of Court using CM/ECF which will send electronic notification of such filing to all registered counsel.

*/s/ Joseph J. Gleason*
Attorney for Frontline Processing Corp.