**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|  |  |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, <br><br>     Plaintiff, <br><br> v. <br><br> UNIVERSAL DEBT & PAYMENT SOLUTIONS, LLC, *et al.*, <br><br>     Defendants. | Civil Action No. 1:15-CV-0859-RWS |

**<u>GLOBAL PAYMENTS INC., FRONTLINE PROCESSING CORP.,
AND PATHFINDER PAYMENT SOLUTIONS, INC.'S CONSOLIDATED
REPLY IN SUPPORT OF THEIR MOTION FOR RULE 37 SANCTIONS
AND MEMORANDUM IN SUPPORT</u>**

Global Payments Inc. ("Global Payments"), Frontline Processing Corporation ("Frontline"), and Pathfinder Payment Solutions ("Pathfinder"), (together, "Noticing Defendants") respectfully submit this Consolidated Reply in further support of their Consolidated Motion for Rule 37 Sanctions, ("Consolidated Motion," ECF No. 397), and in response to the CFPB's Opposition to the Consolidated Motion, ("Opposition," ECF No. 404).

If the CFPB's Opposition has a familiar ring to it, that is because it is familiar. In its Opposition, the CFPB makes a backdoor effort to have this Court reconsider the Court's consistent holdings to date, which began with the Court's denial of the CFPB's motion for protective order entered nine (9) months ago.  Notwithstanding the CFPB's efforts to complicate and misdirect the Court in response to the Consolidated Motion, the CFPB's Opposition actually demonstrates that the issues for the Court are quite simple:

- Did the Court mean what it said when it twice ordered the CFPB to sit for a deposition?
- Did the Court mean what it said it when it held twice that defendants were entitled to elicit testimony regarding facts and that facts are not protected by the work product doctrine?
- Did the Court mean what it said it when it held that questions seeking facts supporting statutory elements of the CFPB's claims are "fair questions" which have "got to be answered," including whether the CFPB was aware of facts indicating that the Noticing Defendants had actual knowledge of the Debt Collectors' wrongful acts versus recklessly disregarding them (and vice versa)?

- Did the Court mean what it said it when it held twice that documents produced and responses to contention interrogatories were not sufficient to comply with the CFPB's Rule 30(b)(6) obligations?

- Did the Court mean what it said it when it held twice that the CFPB was required to testify to all relevant facts, not just those that it relied upon or supported its claims?

- Did the Court mean what it said it when it rejected the CFPB's burden argument, explaining that the CFPB was free to prepare multiple witnesses to ease the burden?

If the answer to *any* of these questions is yes, then the CFPB defied this Court's order and Rule 37 sanctions are warranted. But because the answer to *all* of these questions is presumably yes, sanctions are required. The audacity of the CFPB's Opposition in rehashing arguments the Court has repeatedly rejected only confirms the CFPB's bad faith, justifying severe sanctions.

## I.   The CFPB's Opposition Recycles the Same Arguments that the Court Has Already Rejected.

The CFPB's Opposition presents nothing new for the Court to consider. Rather, the CFPB continues to recycle the same arguments that the Court has repeatedly rejected, demonstrating not only bad faith, but an intentional disregard for the Court's clear orders.

***Work-Product Doctrine.*** First, the CFPB argued that it did not need to sit for a deposition or be subjected to questions about the factual bases for its claims because it "lacks independent, first-hand knowledge of the relevant facts," and

therefore "examination topics that purport to seek only 'facts' actually invade the Bureau's work product and other privileges." (ECF No. 368-1 at 4-5).[1] <u>The Court rejected this argument,</u> holding that "factual matters are subject to inquiry," (ECF No. 316 at 3), and that "[f]actual support for contentions is an area of inquiry that's appropriate, it's not protected by work product," (Hr'g Tr. 26:19-25, Apr. 12, 2017, ECF No. 397-5). <u>Now, after defying the Court's orders</u> and consistently instructing the witness not to answer questions seeking factual information on work product grounds, the CFPB retreats to rearguing that its work product objections and refusal to answer questions regarding factual bases were justified because its "only 'knowledge' of a case comes from the agency's lawyers' review of information collected from defendants and third parties," (Opp. at 3), and "require[ing] the Bureau's witness to organize and marshal the Bureau's proof on a claim-by-claim basis" is impermissible because "[t]he assignment of facts to legal contentions is quintessential attorney work product," (Opp. at 31; *see also* Opp. at 31 n.53, citing the exact same cases that it cited in its Motion for a Protective Order (ECF No. 327-1 at 11-13) for the proposition that no deposition of an agency could go forward, which

---

[1] Where there is a discrepancy between a document's page number in the footer and the ECF-stamped page, the page number in the footer is used.

the Court of course rejected).  The Court has already correctly rejected these arguments.

***Reliance on Written Discovery.***  First, the CFPB argued that because it already provided answers to interrogatories including a "35-page narrative response in support of the Bureau's central contentions," (ECF No. 327-1 at 10), and the defendants "already ha[ve] all of the information [they] seek[] from these topics in the form of (a) all non-privileged portions of the Bureau's investigative file, and (b) detailed answers to [defendants'] interrogatories," (ECF No. 342-1 at 7), it need not answer deposition questions regarding the factual bases for its claims.  The Court rejected this argument, holding that documents produced and responses to contention interrogatories were not sufficient to comply with the CFPB's Rule 30(b)(6) obligations and that "factual matters are subject to inquiry even if those matters have been disclosed in interrogatory responses."  (ECF No. 316 at 3).  Now, after defying the Court's orders to provide testimony regarding factual matters, the CFPB is merely swapping out one written discovery instrument for another, claiming that its scripts (a.k.a. "memory aids") are sufficient to satisfy its 30(b)(6) obligations because it "has produced to Defendants all non-privileged portions of its entire investigative file, including all of the documents and deposition testimony in the Bureau's possession," and "Defendants have all of the documents and deposition testimony in

the Bureau's possession" and therefore "they had no need to 'discover' these facts

from the Bureau." (Opp. at 2, 15-16). The Court has already correctly rejected these

arguments.

***Supportive Facts Only***. <u>First, the CFPB argued</u> that the Noticing Defendants'

topics should be narrowed to "encompass[] only the facts the Bureau relies on to

support its pleaded claims." (*E.g.* ECF No. 327-1 at 3). <u>The Court rejected this</u>

<u>argument</u>, holding that the CFPB was required to provide a witness prepared to

testify regarding "*all facts relevant to Plaintiff's claims* against [Noticing

Defendants]," including exculpatory facts, not just those that it relied upon or

supported its claims. (ECF Nos. 371, 375, 392). <u>Now, after defying the Court's</u>

<u>orders</u> by preparing a witness who could only read from scripts that only

incorporated selective facts that the CFPB relied upon to support its claims, the

CFPB claims that it was not required to testify as to certain (undisputedly) relevant

facts because the CFPB does not consider them to be exculpatory. (Opp. at 14-16;

*see also* Opp. at 5-7, citing memory aids as including the facts that the Bureau relies

on for its claims and those that support its claims of missed red flags). The Court has

already correctly rejected these arguments.

***Burden***. <u>First, the CFPB argued</u> that preparing a witness to testify regarding

all relevant facts would impose a "mammoth burden" that would make it "impossible

for the Bureau to comply."  <u>The Court rejected this argument</u>, holding that the CFPB was required to prepare a witness or witnesses like any other litigant, and that it was free to prepare multiple witnesses to ease the burden.  <u>Now, after defying the Court's orders</u> by preparing no witnesses at all, and instead sitting a representative able only to locate a section of a script (often not responsive to the question) and read, the CFPB complains that questions about the factual bases for its claims were "wholly unreasonable demand[s] to make of a live witness."  (Opp. 32-33).  The Court has already correctly rejected these arguments.

***Actual Knowledge vs. Reckless Disregard.***  <u>First, the CFPB argued</u> that a fact witness need not "make a distinction between facts that support knowledge versus recklessness."  (Hr'g Tr. 36:9-11).  <u>The Court rejected this argument</u>, holding that the witness was in fact required to do exactly that and that the Court "expect[ed] the question to be answered."  (Hr'g Tr. 39:-40:15).  <u>Now, after defying the Court's orders</u> by refusing to draw the very distinction that the Court ordered was required, the CFPB asks the Court to reconsider, arguing that the Court's prior decision was made "in a vacuum," and that the Bureau somehow satisfied its responsibilities under Rule 30(b)(6) because it "provided Defendants with the facts . . . that would support either inference."  (Opp. at 11-14).  The Court has already correctly rejected these arguments.

In essence, the CFPB asked the Court's permission (three times), did not receive it, and *now*, in opposition, asks for the Court's forgiveness based on the same arguments.  This is the very definition of bad faith and the CFPB's willful flouting of this Court's orders warrants severe Rule 37 sanctions.

## II.     The CFPB Justifies Its Refusal to Answer Questions Based on Frivolous Privilege Claims.

The CFPB's most flagrant defiance of the Court's orders is the CFPB's unprincipled assertion of a work product privilege that has already been rejected by this Court.  The CFPB continues, despite clear direction from the Court, to assert privilege objections that have no basis in the law.

The CFPB's refusal to identify any facts demonstrating that the Noticing Defendants had *actual knowledge* of (as well as whether they were severely reckless in disregarding) the debt collectors' alleged illegal activity is particularly instructive. When the Court held a telephonic hearing on April 12, 2017, the following exchange occurred:

> MR. GLEASON:  The example that I wanted to raise was a question yesterday where Global Payments asked the witness what facts does the Bureau rely on to establish that Global Payments **knew** that the debt collectors were collecting debt illegally.
> To that question, the witness was instructed not to answer on the basis of work product.

The next question was what facts does the Bureau rely on to establish that Global Payments **recklessly disregarded** the facts that the debt collectors were collecting debt illegally.

To that question, there was an objection on the basis of work product and again the witness was instructed not to answer.

Now, that is the most fundamental contention with respect to the substantial assistance claim, and because the witness was not handed a piece of paper that had the right annotations on it the witness was instructed not to answer those questions.

Now, I would submit that **if the Bureau is going to instruct a witness not to answer questions on the basis of privilege, that at the very least the Bureau is going to be precluded from introducing evidence or testimony on the subjects on which it instructed its witness not to answer**.

And in that case the result from yesterday's deposition, I would submit, would be that **you have to strike the substantial assistance claim against Global Payments**.  I frankly was shocked when these objections were being made.

THE COURT:  Mr. Engel, why would the witness or why would a witness not have to answer a question for the facts that – on which you're relying to establish that there was actual knowledge on the part of [defendants]?

MR. ENGEL:  If a deposition notice had asked for that information the witness would have been prepared to provide it.  But this witness was a fact witness who is not in a position to make a distinction between facts that support knowledge versus recklessness.

. . .

THE COURT:  To me, to ask, if the claim is that the defendant either knew or recklessly disregarded information or facts, if that's the contention, then to ask, well, what facts show that they actually knew, it

seems to me to be a question directed specifically at the claim.  It then asks, well, any facts that support that they recklessly disregarded.

I realize what you're – I guess what you're saying is that's asking the witness to figure out which facts show which of those matters.  But **those are essential elements of those claims** and so if one were going to testify about the facts supporting the claim – you know, I guess we could debate whether if the witness put the wrong fact under the wrong claim whether you could use it for either, I'm guessing I'd probably let you do that. But the fact is that would be a fact that would be relevant.

I don't know that we can plow through every one of these questions but the point is that those are facts – I think  what you do is when the question is asked, you look at what it goes to, and **if it goes to an element of the claim, then that is a fair question**.  If it's asking the witness to analyze it beyond offering the facts then you're getting out of bounds and you're arguably getting over into work product or you're getting into questions that the witness is not qualified to answer and that are subject to legitimate objections.

But so long as the inquiries are into facts that are within the knowledge of the Bureau and that are within the scope of the notice, then **I think they've got to be answered**.  And the notice did include the facts related to the claims against, and limited to the claims, against that defendant.  And so I think **the example that was just given would be one where I would expect the question to be answered**.

(Hr'g Tr. at 35:1-40:15) (emphasis added).  The following day, counsel for Frontline posed the precise questions that the Court had, just the day prior, held that the CFPB was required to answer.  (CFPB Dep. (Frontline) at 17:21-24, ECF No. 397-3).  The CFPB refused and interposed the same objection and instruction not to answer that the Court had rejected only a day earlier.  (*Id.* at 17:25-18:1).

The CFPB now claims that case law militates a different result.  Procedurally, an opposition to a motion for sanctions is not the proper mechanism to request that the Court reconsider a prior ruling.  Substantively, the CFPB once again argues in its Opposition that the Court erred in holding that it needed to answer the question regarding what facts go to actual knowledge, as opposed to severe recklessness, because a fact-finder need not draw that distinction when determining whether the Noticing Defendants acted with scienter.  This argument is nonsense.

First, whether the CFPB has any facts showing actual knowledge of wrongdoing is plainly relevant to its claims.  As this Court found in its Order on the Noticing Defendants' Motions to Dismiss, "if a defendant has 'a high degree of actual knowledge, this lessens the burden [the CFPB] must meet in alleging substantial assistance.'"  (ECF No. 149 at 39, citing *SEC v. Apuzzo*, 689 F.3d 204 (2d Cir. 2012)).  Thus, if this case were to proceed, this Court on summary judgment and ultimately a fact-finder would need to assess what "degree of actual knowledge" the CFPB has demonstrated in order to determine the burden that the CFPB must meet in showing substantial assistance.  *Id.*  This sliding-scale is irreconcilable with the CFPB's recent claims that whether Noticing Defendants had actual knowledge of alleged wrongdoing as opposed to recklessly disregarding alleged wrongdoing is not directed at an element of the CFPB's claims.  (Opp. at 11-14).

Second, incredibly, the CFPB disclaims any responsibility for proving that each of the Noticing Defendants acted knowingly while seeking relief that is *only available* if the CFPB proves exactly that.  The CFPB seeks civil money penalties against Noticing Defendants under 12 U.S.C. § 5565(c)(2)(C) for their "*knowing* violations of Federal consumer financial law."  (ECF Nos. 405-1, 405-6, 405-10; "knowing violations" also alleged in interrogatory responses) (emphasis added).  The statute itself provides different penalties for *reckless* as opposed to *knowing* violations ($25,000 per day vs. $1,000,000 per day, respectively).  12 U.S.C. § 5565(c)(2)(B)-(C).  In other words, for the CFPB to be entitled to the relief it seeks it must prove that the Noticing Defendants acted with actual knowledge.  One must wonder—did the CFPB merely forget that it was seeking more than a billion dollars in civil money penalties from the Noticing Defendants?

Further, by refusing to identify which facts (if any) support severe recklessness, the CFPB prevented the Noticing Defendants from asking follow-up questions related to the Court's adopted standard for severe recklessness.  (*See* ECF No. 149 at 22).  For example, for each such fact:  What is the "standard of ordinary care" from which the Noticing Defendants were extreme in departing?  How did each such "extreme departure" present a danger of misleading buyers and sellers?  Does the CFPB have any facts to demonstrate that the Noticing Defendants actually knew

11

of this danger?  If not, what facts demonstrate that the danger was so obvious that the Noticing Defendants must have been aware of it?  These are all things the CFPB must prove in order to establish severe recklessness, but its improper objections and instructions not to answer prevented the Noticing Defendants from discovering these crucial facts.

Moreover, the CFPB's position that because a pattern jury instruction on scienter does not draw a distinction between actual knowledge and recklessness those facts then somehow become protected by the work product doctrine has no basis in the law.  The fallacy of the CFPB's position on this issue is illustrated by comparing the CFPB's answers to the same questions at different depositions.  First, at the depositions noticed by Global Payments, Frontline, and Pathfinder, the CFPB refused to answer any questions about whether it has facts demonstrating that Global Payments, Frontline, and Pathfinder had actual knowledge of the underlying conduct it alleges was wrongful, claiming that drawing the distinction even in response to yes-or-no questions was protected by the work product doctrine.  (*See* Consolidated Mot. at 18-19).  This persisted even after the Court held that these lines of inquiry were not protected and needed to be answered.  (*Id.*).  However, one month later when similar questions were posed by counsel for EMS, there was no work product objection.  Instead, the CFPB found a new way to frustrate the purpose of this line of

questioning, this time answering that *every fact* contained in the hundreds of pages of EMS memory aids demonstrated EMS's actual knowledge of the Debt Collectors' alleged wrong doing. (ECF No. 407 at 3).  The CFPB's witness then answered that *every fact* contained in the hundreds of pages of EMS memory aids also demonstrated that EMS was severely reckless in disregarding the Debt Collectors alleged wrong doing.  (*Id.*).  Aside from effectively refusing to answer the question, the CFPB's witness testified that the exact same facts demonstrated both that EMS actually knew, and that EMS should have known, that the debt collector defendants were engaged in unlawful conduct.  (*Id.*).  Now, however, the CFPB is back to claiming that questions about facts showing actual knowledge are "improper attempts to elicit the opinion work product of the Bureau's lawyers [and t]he Bureau's objections should therefore be sustained."  (Opp. at 14).

These contradictory responses typify the CFPB's unprincipled work product objections throughout the deposition.  The CFPB cannot distinguish among what it is claiming is irrelevant, what it is claiming it need not educate a witness about, and what it thinks is privileged.  But whatever the rationale randomly selected by the

13

CFPB, the result is the same—the CFPB refuses to provide a responsive answer to straightforward questions going to the basic elements of the claims it has brought.[2]

The CFPB makes hay of the Court's comments that this dispute involves a "gray area," but the CFPB consistently instructed the witness not to answer questions that are black and white, and many of its instructions are specifically counter to the Court's orders.  For example, although recognizing that a number of its privilege claims were improper, the CFPB continues to assert privilege over the following questions that could not conceivably be protected and fall into any "gray area":

- "Is there any connection between Frontline Processing and [CFPB's representative consumers]?"
- "Do you know how the Bureau searched for [exculpatory evidence]?"
- "When did you first learn of the existence of an investigation by the CFPB against the defendants in this case?"
- "Are you prepared to testify about whether the Bureau contends that Pathfinder is a payment processor?"
- "What does the phrase 'an air of legitimacy' mean [as used by the CFPB in its Complaint]?"
- "As used in the Complaint, does the term "MATCH alert" mean [an] alert that comes from MasterCard?"
- "[A]re you aware of any facts that in November 2012 Mastercard issued a MATCH alert for UDPS and RSB [as alleged in the Complaint]?"

---

[2]  The CFPB's contention that it need not answer questions on a claim-by-claim basis is also contrary to law, the Court's orders, and logic.  The CFPB's position appears to be that the Noticing Defendants may only ask the witness one question: "Please read all of the facts that you say support your claims."

(*See* Chart of Objections and Responses, attached as **Exhibit 1**, at Nos. 34, 37, 145, 186, 193, 196).  There is nothing uncertain or gray about these questions, which seek nonprivileged factual information.  That the CFPB continues to defend these absurd objections and instructions further evidences its bad faith.

The CFPB even refused to testify regarding the "representative harm" that it expressly relies upon.  The CFPB argues in its Opposition (albeit after a lengthy irrelevant discussion regarding the legal the merits of its harm case) that it can rely on "representative proof of harm."  (Opp. at 24).  But the CFPB improperly refused to identify any information about its allegedly representative proof of harm, specifically refusing to offer any information about the purportedly "representative" consumer complaints it identified in interrogatory responses as relating to Frontline, as well as others in its initial disclosures.  The CFPB cannot rely on "representative harm" while thwarting any effort by the Defendants to explore that very proof.  The CFPB improperly objected, repeatedly, to perfectly fair questions from the Noticing Defendants seeking facts supporting the CFPB's allegations of consumer harm.  (*See, e.g.* Ex. 1 at Nos. 127, 129, 134, 135, 137, 237, 238, 248).  It cannot now introduce such evidence either on summary judgment or at trial, meaning it cannot succeed on its Count IX for Unfair Acts and Practices.  This Count should be dismissed as to the Noticing Defendants.

As explained in the Consolidated Motion, the CFPB's improper privilege objections pervaded the entire deposition and were consistently asserted to avoid answering questions that go to essential elements of all of the CFPB's claims against the Noticing Defendants—questions that this Court specifically held did not call for privileged information.  (Consolidated Mot. at 32-38).  The CFPB's Exhibit H, which purports to provide the support for the CFPB's dubious privilege claims, only reinforces that there is no basis in the law for the CFPB's privilege claims.  As described in more detail in the attached Exhibit 1, the CFPB continues to claim privilege as to questions that were specifically deemed proper by the Court, asserts privilege over simple yes-or-no questions that cannot conceivably reveal the mental impressions of counsel, refuses to answer questions about the factual bases for its allegations, and cites the same law that the Court held does not protect the information sought by the questioner.  (Ex. 1).  And in the cases where the CFPB admits it improperly instructed the witness not to answer, it merely cites to a written document as if that were sufficient to satisfy its Rule 30(b)(6) obligations, a position that the Court has repeatedly rejected.

When a party refuses to testify at a deposition on the basis of a specious claim of privilege, the usual course is that the party will be precluded from introducing evidence on that issue at trial.  *See Galaxy Computer Servs., Inc. v. Baker*, 325 B.R.

16

544, 559 (E.D. Va. 2005) (surveying case law from throughout the country and explaining that "[t]he weight of authority" indicates that to permit [a party] to testify to issues which she refused to testify to during her deposition based on privilege would allow the [parties] to use the attorney-client privilege as both a shield and a sword"). Here, the CFPB's repeated refusal to testify regarding the essential elements of its claims against Noticing Defendants requires the dismissal of those claims.

## III.   The CFPB Offers No Explanation for the Witness's Inability to Answer Basic Questions.

The CFPB commits a great deal of the Opposition to arguing the merits of its claims and emphasizing that it "properly refused to adopt either their opinions of the evidence or their theories of exculpation." (Opp. at 14). But this is another red herring, and is merely an attempt by the CFPB to justify its failure to comply with Court orders by arguing that which is not actually at issue.

As explained in the Consolidated Motion, the Court rejected the CFPB's argument that it need only produce a witness prepared to testify regarding facts that it "relies on to support the Bureau's claims," instead ordering the CFPB to prepare a witness to testify regarding *all relevant facts*. (Consolidated Mot. at 39-40). It is not whether the CFPB "adopts Noticing Defendants opinions of the evidence" or "their theories of exculpation" that the Noticing Defendants take issue with, it is the

17

deliberate refusal to educate the witness about facts that are clearly relevant because the CFPB does not view them favorably.  This is yet another issue where the CFPB argued, lost, and ignored the Court's orders.

For example, it is indisputable that the supposed 2012 MATCH hit is relevant to the CFPB's claims—the CFPB included it in its Complaint, and the Court relied upon the CFPB's allegation in denying the payment processors' motion to dismiss. (*See* Consolidated Mot. at 23-24 (citing Complaint and Court's order)).  Yet, the witness was unable to (and instructed not to) testify about *any* details related to the MATCH allegations.  (Consolidated Mot. at 23-25).  In fact, the witness had never even seen the only documentary evidence on the subject—an email reflecting that the match hit was not in fact sent by MasterCard as alleged, did not come from the MasterCard MATCH system which Noticing Defendants were allegedly required to consult, but instead came from an entirely separate entity known as the Merchant Acquirers Committee ("MAC").  (CFPB Dep. (Global Payments) at 157:17-19, 162:15-17, ECF No. 397-2)).  Whether one calls them exculpatory or not, the CFPB shirked its responsibility to provide a witness knowledgeable about these relevant facts and countless others.

Not only was the CFPB's witness unknowledgeable, he was exceptionally uncooperative.  The Opposition boldly suggests that the CFPB's witness answered

questions responsively and did not time-waste.  (Opp. at 2, 48-50).  Conspicuously

omitted from the CFPB's discussion is the example cited in the Consolidated Motion

in which the witness read completely nonresponsive passages from his script for

more than one hour, and when the CFPB finally wilted and allowed for pages of the

script to be incorporated by reference, the witness testified that he would have read

*more*

*than 90 pages* of similarly non-responsive script to Global Payments' discrete

question.  (Consolidated Mot. at 7-9).  The CFPB's nonresponsiveness, time-wasting,

and obstructionist behavior is more fully described in the Consolidated Motion.  (*See*

Consolidated Mot. at 7-9, 47-57).

**IV.    The CFPB's Claims that its Conduct Is Excusable Because It Provided
         Written Responses Through Its "Memory Aid" Is Inconsistent with the
         Purpose of Rule 30(b)(6) and the Court's Orders.**

The CFPB twice argued that written responses were sufficient to satisfy its

Rule 30(b)(6) obligations.  (*See* ECF No. 316-1 at 3 (arguing that the depositions

should be quashed because the deposing party "could glean no facts beyond those

already provided"); ECF Nos 327-1, 342-1, 368-1 (arguing that deposition topics

sought "information already provided in answers to interrogatories")).  Each time the

Court rejected the argument.  (ECF Nos. 316, 371, 375, 392).  As the Court explained

more than one year ago, it was "obvious" that the defendants would take the

deposition of the CFPB in order to "lock down the contentions and positions that the Bureau is taking as to each of them."  (Hr'g Tr. 33:18-23, June 10, 2016, attached as **Exhibit 2**).

Yet, in another example of déjà vu, the CFPB continues to claim that it has satisfied its Rule 30(b)(6) obligations by incorporating written responses into its answers.  (*See generally* Opp., arguing that sanctions are unwarranted because the CFPB provided Noticing Defendants with "all of the facts" by virtue of written discovery, including the "memory aids").  This runs directly counter to the Court's orders and the purpose of Rule 30(b)(6).  *See Strategic Decisions, LLC v. Martin Luther King, Jr. Ctr. for Nonviolent Soc. Change, Inc.*, No. 1:13-CV-2510-WSD, 2015 WL 2091714, at *9 (N.D. Ga. May 5, 2015) (citation omitted) ("[T]he purpose behind Rule 30(b)(6) undoubtedly is frustrated in the situation in which a corporate party produces a witness who is unable/unwilling to provide the necessary factual information on the entity's behalf."); *Hall v. Clifton Precision*, 150 F.R.D. 525, 528 (E.D. Pa. 1993) (purpose of deposition to provide the deposing party with a question-and-answer session); *W. Reserve Oil & Gas Co. v. Key Oil, Inc.*, 626 F. Supp. 948, 950 (S.D. W. Va. 1986) ("[A deposition] allows a party to 'lock in' an adverse witness's testimony and prepare to meet potential problems in advance of trial.").

First, not only does the CFPB's approach ignore that a deposition is meant to be a question-and-answer session during which the deposing party is entitled to responsive answers and the ability to ask follow-up questions, it ignores the fact that neither the Noticing Defendants nor the CFPB's witness could make sense of the content of the written materials.  The documents include citations that are undecipherable, and when asked to what the citations referred, the CFPB's witness repeatedly answered that he did not know.  (Consolidated Mot. at 51-52).  The result was that the Noticing Defendants were frustrated at every stage and in every way, and were unable to achieve the hallmarks of a constructive deposition—receiving responsive answers, asking follow-up questions, and, where appropriate, getting admissions, including admissions that the CFPB lacks evidence of key elements of its claims.

Second, the CFPB now recognizes that a number of its instructions not to answer were improper and withdraws nearly 50 objections, (*see* ECF No. 405-19), but claims that any prejudice is now cured by answering in the form of references to paragraphs of the Complaint, interrogatory answers, or portions of the scripts. Setting aside that the CFPB merely incorporates its written responses in response to these questions—an approach this Court has specifically rejected—this post-hoc admission does not enable the Noticing Defendants to probe the responses and

21

completely thwarts Noticing Defendants' opportunity to have a meaningful question-and-answer session, including asking follow-up questions.  The CFPB does not offer to sit for additional questioning, and even if it did, given its course of conduct in this case there is no reason to believe that it would provide meaningful, responsive answers to any questions posed.  On the contrary, the CFPB has already had such a chance, after the Court's instructions during the April 12 telephonic hearing, and again at subsequent depositions taken by EMS and Global Connect.  The CFPB's conduct in these depositions suggests that it would only find some new way to avoid answering the defendants' legitimate questions, in disregard of the Court's orders.

## V.    Lesser Sanctions Are Not Appropriate.

The CFPB continues to refuse to comply with the Court's orders, the Federal Rules of Civil Procedure, and settled law.  This course of conduct has now lasted well over a year.  First, it was the refusal to answer contention interrogatories.  Next it was the misuse of Rule 33(d).  Then it was the flat-out refusal to sit for a deposition at all.  Next it was the claim that nearly every topic identified by every defendant sought to invade privileges.  Then it sat a witness that was unprepared to do anything but read nonresponsive facts from a script, and refused to answer basic questions relying on frivolous claims of privilege.  And now it is the post-hoc claim that its

actions were excusable because Noticing Defendants "have everything they need" in writing. As one court explained,

> If there has been an isolated instance of non-compliance, such as a failure on one occasion to provide interrogatories on a timely basis, preclusive sanctions are generally viewed as excessive, especially where the circumstances suggest that the failing may not have been willful. If, however, a single omission is not corrected over an extended period of time, **dismissal or preclusion may well be appropriate, and an extended pattern of discovery failings or misconduct plainly will justify such a result, absent a compelling justification for the errant party's conduct**.

*Askhinazi v. Sapir*, No. 02-cv-2RCCMHD, 2005 WL 545205, at *5 (S.D.N.Y. Mar. 8, 2005) (emphasis added) (citations omitted). Here, the CFPB's extended pattern of discovery failings and misconduct is unmistakable, unapologetic, and unabated.

Noticing Defendants have had "a huge cloud hanging over [their] head[s]," (Hr'g Tr. 4:25-5:6, June 6, 2016, ECF No. 287), since the CFPB filed suit more than two years ago. Now, three years after it began its investigation and two years after it filed suit, the CFPB remains unwilling or unable to provide the facts that support its claims. The CFPB has taken more than twenty depositions (including investigational hearings) in this case. Yet, the CFPB's obstructionist tactics have for a year now denied the Noticing Defendants their fundamental discovery right to a meaningful deposition. This has deprived the Noticing Defendants the basic features of a deposition to which a defendant is entitled when deposing a plaintiff—the

opportunity to explore the basis of the allegations in the complaint, and the opportunity to demonstrate that a plaintiff lacks evidence on certain points. The prejudice that Noticing Defendants continue to suffer is easily sufficient to warrant preclusive sanctions. *See Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 105 (D.N.J. 2006) ("Prejudice need not be irremediable, even in the context of dismissal or default, and may include the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy and the burden a party must bear when forced to file motions in response to the strategic discovery tactics of an adversary."); *see also Jankins v. TDC Mgmt. Corp.*, 21 F.3d 436, 444-45 (D.C. Cir. 1994) (rejecting defendants' claim that delay in discovery compliance caused plaintiff no prejudice, and holding that the "remarkable pattern of delay and obfuscation" warranted preclusive sanctions).

The CFPB's Opposition only underscores the appropriateness of preclusive sanctions in this case. Nowhere in its Opposition does the CFPB acknowledge that *any* sanctions are warranted, and does not even offer to reopen the deposition at the CFPB's expense. Rather, it merely incorporates more written pleadings and discovery and claims that as a result, the Noticing Defendants have not suffered any prejudice. (Opp. at 15-16, 23; ECF No. 405-19). This is the precise approach that

the court in *Scott v. District of Columbia*, 246 F.R.D. 49 (D.D.C. 2007) found

forfeited the opportunity to seek lesser Rule 37 sanctions:

> The defendants also argue that the sanction requested by plaintiff and granted by the court is unduly harsh. They contend that if the plaintiff was harmed at all, the injury can be cured "by extending Plaintiff time to complete any discovery of the experts she deems necessary and to reimburse the costs of the motion, for reconsideration." This argument is both too late and too little. Defendants did not raise the issue of a lesser or alternative sanction in their opposition. Rather, they argued only that their failure to timely disclose was harmless. If defendants wanted a lesser sanction to be considered as an alternative to the plaintiff's request to strike the experts, the time to argue that point was in opposition, before the decision was made in the first instance, not in a motion for reconsideration after a ruling was issued. . . . Defendants' suggestion that an alternative sanction is more appropriate is both too little and too late.

*Id.* at 52. The same is true here. After more than a year of shirking its discovery

responsibilities the CFPB merely throws up its hands and claims that these

deficiencies were harmless. This is insufficient to mitigate the level of sanctions.

## CONCLUSION

The CFPB's actions predating, during, and postdating the Rule 30(b)(6)

depositions demonstrate a concerted, willful, and bad faith refusal to comply with the

Federal Rules of Civil Procedure, governing law, and the Court's orders. Nothing in

the CFPB's Opposition indicates otherwise. Accordingly, the preclusion of evidence

and striking of Count VIII (Substantial Assistance) and Count IX of the Complaint

(Unfair Acts and Practices) against the Noticing Defendants is warranted.

25

Respectfully submitted this 23rd day of June 2017.


/s/ Michael A. Caplan
Michael A. Caplan
GA Bar No. 601039
Benjamin W. Cheesbro
GA Bar No. 648368
**CAPLAN COBB LLP**
75 Fourteenth Street NE
Suite 2750
Atlanta, GA 30309
Tel: (404) 596-5610
Fax: (404) 596-5604
*mcaplan@caplancobb.com*
*bcheesbro@caplancobb.com*


J. Douglas Baldridge (*pro hac vice*)
Leonard L. Gordon (*pro hac vice*)
David L. Feinberg (*pro hac vice*)
Benjamin E. Horowitz (*pro hac vice*)
**VENABLE LLP**
600 Massachusetts Ave. NW
Washington, DC 20001
Tel: (202) 344-4000
*jbaldridge@venable.com*
*llgordon@venable.com*
*dlfeinberg@venable.com*
*behorowitz@venable.com*

*Counsel for Defendant Global
Payments Inc.*


/s/ Joseph J. Gleason
Joseph J. Gleason
Georgia Bar No. 297202
GLEASON LAW LLC
780 Morosgo Drive #14084
Atlanta, Georgia 30324
Telephone: (404) 594-3550
Email: joe@gleason.legal

*Counsel for Defendant Frontline
Processing Corporation*


/s/ John Da Grosa Smith
John Da Grosa Smith
Georgia Bar No. 660946
jdsmith@smithlit.com
Kristina M. Jones
kjones@smithlit.com
Georgia Bar No. 435145
SMITH LLC
1320 Ellsworth Industrial
Boulevard
Suite A1000
Atlanta, GA 30318
Tel: 404-605-9680
Fax: 404-935-5226

*Counsel for Defendant Pathfinder
Payment Solutions, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing has been prepared in compliance with Local Rule 5.1(B) in 14-point Times New Roman typeface.

This the 23rd day of June, 2017.


<u>/s/ Michael A. Caplan</u>
Michael A. Caplan
GA Bar No. 601039

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day filed a true and correct copy of the within

and foregoing with the clerk of court using the CM/ECF system which will

automatically send email notification of such filing to all attorneys of record.

This the 23rd day of June, 2017.

/s/ Michael A. Caplan
Michael A. Caplan
GA Bar No. 601039
**CAPLAN COBB LLP**
75 Fourteenth Street, NE, Suite 2750
Atlanta, GA 30309
(404) 596-5600 – Office
(404) 596-5604 – Fax
*mcaplan@caplancobb.com*
