# Exhibit 2

```
 1                 IN THE UNITED STATES DISTRICT COURT
                  FOR THE NORTHERN DISTRICT OF GEORGIA
 2                         ATLANTA DIVISION

 3

 4

 5   CONSUMER FINANCIAL              )
     PROTECTION BUREAU,              )
 6                                   )
              Plaintiff,             )
 7                                   ) Civil Action
     -vs-                            ) No. 1:15-CV-859-RWS
 8                                   )
                                     )
 9   UNIVERSAL DEBT & PAYMENT        )
     SOLUTIONS, LLC, et al,          )
10                                   )
              Defendants.            )
11

12

13

14              Transcript of the Proceedings in Chambers
                 Before the Honorable Richard W. Story
15                United States District Court Judge
                           June 10, 2016
16                        Atlanta, Georgia

17

18

19

20

21

22
     Reported stenographically by:
23   Amanda Lohnaas, RMR, CRR
     Official Court Reporter
24   United States District Court
     Atlanta, Georgia
25   (404) 215-1546
```

```
 1    APPEARANCES OF COUNSEL:

 2    On behalf of
      the Plaintiff:              Jonathan B. Engel, Esq.
 3                                Lena Amanti, Esq.


 4
      On behalf of Defendant
 5    Marcus Brown:               Linda Heary Joseph, Esq.
                                  (Appearing telephonically)
 6
      On behalf of Defendant
 7    Global Payments Inc.:       James Douglas Baldridge, Esq.
                                  (Appearing telephonically)
 8
                                  Benjamin Eric Horowitz, Esq.
 9                                (Appearing telephonically)

10                                Michael A. Caplan, Esq.
                                  (Appearing telephonically)
11
                                  Benjamin Wayne Cheesbro, Esq.
12

13    On behalf of Defendant
      Pathfinder Payment
14    Solutions, Inc.:            Kristina Michele Jones, Esq.
                                  (Appearing telephonically)
15

16    On behalf of Defendant
      Francis David Corp.:        Benjamin Ockner, Esq.
17                                (Appearing telephonically)

18    On behalf of Defendant
      Global Connect, LLC:        Bradley M. Elbein, Esq.
19
      On behalf of Defendant
20    Varinderjit Bagga:          Carolyn Cain Burch, Esq.

21
      On behalf of Defendant
22    Frontline Processing Corp.: Joseph John Gleason, Esq.

23

24

25
```

1          (Friday, June 10, 2016, 9:30 a.m.; proceedings in

2     chambers.)

3          THE COURT:  Let me get the announcements of folks who

4     are present in the room.  Let's start here.

5          MR. ELBEIN:  Brad Elbein for Global Connect.

6          MR. CHEESBRO:  Ben Cheesbro for Global Payments.

7          MS. BURCH:  Tippy Burch, might be listed on there as

8     Carolyn Burch, for Varinderjit Bagga.

9          MR. GLEASON:  Joe Gleason for Frontline Processing

10    Corporation.

11         MS. AMANTI:  Lena Amanti, local counsel for CFPB.

12         MR. ENGEL:  I'm Jonathan Engel for Consumer Financial.

13         THE COURT:  Hello, this is Judge Story.  Ms. Joseph, are

14    you present?

15         MS. JOSEPH:  Yes, I am, Your Honor.

16         THE COURT:  Wonderful, okay.

17         And Mr. Baldridge, are you with us?

18         MR. BALDRIDGE:  Yes, sir.  And Ben Horowitz is also on

19    the line from my firm.

20         THE COURT:  Okay.  And, Mr. Caplan, are you with us?

21         MR. CAPLAN:  Yes, Your Honor, Mike Caplan is here.  And

22    Ben Cheesbro should be at the courthouse as well on behalf of

23    Global Payments.

24         THE COURT:  We haven't seen Ben, I don't know where he

25    is.

1          Just kidding.  Mr. Cheesbro is here.

2          Ms. Jones?

3          MS. JONES:  Yes, Your Honor.

4          THE COURT:  And Mr. Ockner?

5          MR. OCKNER:  Yes, Your Honor.

6          THE COURT:  Great.  Did I miss anybody who is on the

7    phone?  Is there anyone else on the phone that I missed?

8    Okay, thank you very much.

9          We set this down for a conference this morning because

10   there have been requests for extension of discovery.  There's

11   been negotiation back and forth about perhaps agreeing to

12   some limited degree of discovery, which then caused questions

13   to arise about discovery that may not have been completed yet

14   and a desire to see how that's going to get done.  And so I

15   thought it might be helpful for us to meet and try to lay out

16   a plan to move this along.  Let me say just a couple of very

17   brief introductory remarks.

18         First, my understanding of the concerns of the parties

19   are that, at least from the plaintiff's perspective, a desire

20   to acquire more information, you're seeking more information,

21   you feel that you've moved expeditiously to try to get some

22   things, you were dealing with some third parties and so forth

23   and you're still trying to get some information you feel that

24   you need to get.

25         From the defendants' perspective, you've got a huge

 1   cloud hanging over your head, you'd like to see this moved as

 2   quickly as possible because certainly, I would expect, it's

 3   affecting your business, and you feel that they've had time

 4   to do it all, but also that you have asked for some things

 5   that you feel should have been produced by now and have not

 6   been.

 7        So that causes me to think where we need to start with,

 8   or what I would like to start with is hearing from the

 9   plaintiff about what it is you would like to accomplish if

10   given more time for discovery.  As specifically as possible,

11   what are the things you feel you still need to accomplish to

12   be able to close the door on discovery in the case?

13        MR. ENGEL:  Sure.  And at the outset, Your Honor, let me

14   apologize for not expressly stating in our initial letter the

15   positions of each of the parties with respect to the requests

16   for the extension.  It was certainly not our intention to

17   mislead the Court.  It was our expectation that each of the

18   parties would have the opportunity to present their position.

19   So, again, I apologize.

20        THE COURT:  That's fine.

21        MR. ENGEL:  On the merits, Your Honor, from the Bureau's

22   position, we have not had as much time to complete discovery

23   as it may seem.  This complaint was filed and we sought and

24   obtained a TRO and a preliminary injunction back in March and

25   April of last year.  That order allowed us to conduct

1    expedited discovery for certain defendants for certain

2    limited purposes.

3        We diligently pursued that discovery.  We issued over 30

4    subpoenas and conducted half a dozen or so depositions.  So

5    we moved as quickly as we could.

6        Discovery did not open with respect to what I'll call

7    the service provider defendants until about October.  October

8    1st, I think, was the date that it opened, of 2015.

9        Within weeks thereafter, the Bureau issued the vast

10   majority of its written discovery.

11       There was then some delay, that the Bureau had not

12   anticipated when it initially set the schedule, of about

13   three months as the parties worked out and negotiated and

14   there was some motions practice concerning the protective

15   order.

16       I went back and kind of looked at, tried to figure out

17   why it took so long to get that together, and I think Global

18   Payments and the Bureau both exchanged initial drafts of that

19   order as early as early November of last year.  There were

20   practically daily e-mails going back and forth negotiating

21   the scope.  And then we filed a proposed order early

22   December.  There was a cross motion.  Your Honor then heard

23   oral arguments concerning that and promptly issued the order

24   thereafter in early January.

25       So only at that point did the documents really start to

 1   flow.  That's not to say we didn't have anything before then,

 2   but we didn't want to start taking depositions until we were

 3   comfortable that we had what we needed to go forward.

 4        As soon as we had documents and were comfortable that we

 5   had what we needed to take those depositions, we began trying

 6   to schedule them, and that was the cause for another kind of

 7   round of unanticipated delay.

 8        And I don't suggest that any party in particular has

 9   been obstructionist or dilatory, but there are a lot of

10   parties and a lot of schedules to manage.

11        With respect to Global Connect, for example, we first

12   reached out to try to schedule that deposition in February

13   and we weren't able to get it on the books until mid April.

14        With respect to Frontline, we reached out to them in

15   early March to try to meet and confer about some documents we

16   believe are outstanding.  Because counsel was new to the

17   case, understandably, he needed some time to get up to speed.

18   But as a result, that deposition could not take place until

19   the end of May.

20        We've also issued some third-party discovery and have

21   tried to work cooperatively without getting the Court

22   involved to obtain what we need from those third parties.

23        And just by way of an update in that regard, the two

24   outstanding responses from HSBC and Discover, I'm told that

25   we will have those responses, I think today or early next

1   week.  It will take us some time to even be able to view

2   those documents and then to review them.

3       But third parties, including Visa and Wells Fargo, who

4   we subpoenaed months ago, and have been working to negotiate

5   30(b)(6) topics, they cannot make their witnesses available

6   until July.

7       Similarly, Pathfinder issued notices to Global Payments

8   on June 1st, and Global Payments has indicated that those

9   witnesses will not be available until September.

10      So this is not a matter of any party necessarily

11  obstructing or lacking a diligent pursuit of discovery, but

12  it's really just the pragmatic result of having numerous

13  parties and numerous schedules and trying to accommodate

14  those schedules to set depositions.

15      So what we'd like to do going forward is, primarily,

16  schedule those depositions.  There is --

17      THE COURT:  Are they primarily 30(b)(6) depositions?

18      MR. ENGEL:  I think they'll primarily be 30(b)(6)

19  depositions, and it will be of those parties who we have not

20  yet deposed and also, I think, four or five other third

21  parties.

22      THE COURT:  Are the third parties generally parties or

23  entities like Visa and Wells Fargo?

24      MR. ENGEL:  Yes, yes.  And we recognize that the number

25  of depositions we're seeking exceeds the ten that we're

1    permitted under the rules, so we'll need to come back to the

2    Court and address that at some point too.  But we have not

3    issued notices for those depositions because none of them

4    could occur within the originally scheduled time frame.

5        So it has not been for lack of diligence we haven't

6    noticed those depositions, it's just I'm not going to send a

7    notice for deposition in July when that's outside the Court's

8    authorized discovery parameter.

9        THE COURT:  Let me ask you this, and I'm not going to

10    hold you to this, I'm just looking for a close, good

11    estimate, how many depositions are we talking about?

12        MR. ENGEL:  Ten to 12 is my estimate at this point.

13        THE COURT:  And that would be total of the parties, as

14    well as --

15        MR. ENGEL:  Total remaining depositions, yes.  And let

16    me add perhaps a caveat, within the last week we have

17    obtained thousands of e-mails from Marcus Brown's individual

18    personal e-mail account.  Our review of those e-mails may

19    cause us to seek additional depositions, but at this point I

20    don't know what's there so we're not seeking those

21    depositions right now.

22        THE COURT:  Okay.

23        MR. ENGEL:  With respect to Ms. Bagga, and, frankly, all

24    the debt collector defendants, although the Court's

25    preliminary injunction would permit us to basically take

1    those depositions again, because the depositions we took in

2    expedited discovery did not count against our limit, in

3    recognition of the limited resources of those defendants, and

4    with the hopes that we may preserve assets for hopeful and

5    potential consumer restitution, we have not pursued

6    additional discovery against those defendants.  And with the

7    caveat that I just mentioned, pending our review of those

8    e-mails, we don't intend to take those -- to revisit that

9    discovery.

10        Just as an illustration of our willingness to

11   accommodate those defendants, about a month ago some

12   questions were raised in our document review about

13   Ms. Bagga's involvement with some transactions.  So I

14   approached counsel and I said we can schedule deposition or

15   we can get Ms. Bagga on the phone and see what she has to say

16   about this, and we did the latter.  Rather than burden her

17   with the additional deposition, we said let's see if we can

18   get the information we need in a short phone call.

19   Unfortunately, it raised more questions than it answered, but

20   at least we demonstrated a willingness to pursue that route.

21        THE COURT:  Aside from those depositions, in terms of

22   any document requests or discovery of that type, particularly

23   from the parties, is that fairly complete?

24        MR. ENGEL:  Yes.  We don't anticipate issuing another

25   round of interrogatories or requests.  We would like to

1    reserve any rights we have to -- for example, we just got the

2    transcripts from the Frontline deposition, so we'd like the

3    opportunity to review those, and if it turns out there were

4    documents or seems there were documents relied on by the

5    witness that we don't have, we would like to pursue that if

6    that event does arise.

7         THE COURT:  I was trying to keep up as you went through

8    some of these folks and when they would or would not be

9    available for depositions.  And the last one you mentioned, I

10   wrote September but it may have been actually later than that

11   that person was going to be available.  Was it --

12        MR. ENGEL:  I think Global Payments has indicated that

13   its witnesses would be available either the first week in

14   September, or the last week?

15        MR. CHEESBRO:  I believe that's right.

16        THE COURT:  All right.  So what I'm looking for is --

17   and have there been communications with most of the folks

18   that are in this potential 10 to 12 list to have a sense that

19   the outside time within which you think you would be,

20   assuming you could get them lined up and get all the parties

21   on board for it -- I mean, would the end of September be

22   possible or is October -- I know you'd want a little cushion,

23   obviously, but --

24        MR. ENGEL:  We have not had conversations yet with all

25   of the parties.  We have had conversations with most of the

1     third parties.  But it will be, particularly in light of July

2     and August being typical vacation months, it will be a mad

3     dash, frankly, to schedule what we need to schedule.

4          THE COURT:  All right, let me hear from the defendants.

5     I think at two levels I'd like to hear from the defendants,

6     one in terms of your response to the depositions that have

7     been outlined that the plaintiff wishes to take.  And let me

8     say I'm happy to hear from you on this but I think I

9     appreciate the positions everyone has about your contention

10    that there was an investigation begun before the suit was

11    filed and the government's had, or the Bureau or agencies

12    have had an opportunity for further discovery, and I'm happy

13    to hear from you on that.

14         I'm going to allow some depositions, and I don't think

15    that will surprise anyone, but I want to make it reasonable

16    and I want to make it as expedited as we can to move us

17    forward.

18         So what I'm even more interested in is your views about

19    the depositions that the plaintiff is suggesting they wish to

20    take.  And then I would like to hear from you about your

21    feeling that your requests have not been met in terms of

22    discovery, if there are outstanding matters.  And finally,

23    what other discovery you anticipate from your side that you

24    can at least foresee at this time.

25         I don't know who wants to go first.

1      MR. BALDRIDGE:  Your Honor, if I may, Doug Baldridge for

2   Global Payments, trying to address the three issues you did

3   in that order.

4      As to each specific deposition identified by counsel,

5   I'm not entirely sure whether these are needed or not needed.

6   And I really, on behalf of Global Payments, don't have a

7   dispute as to that, nor do we have a dispute with a

8   four-month extension, which is what the Bureau has requested.

9      What we do have, however, is this, what I consider a

10  highly practical problem.  And the practical problem is that

11  if we aren't granted -- excuse me, if we don't receive the

12  information we've asked for, we're going to be back here

13  again in four months with the burden on my client to seek a

14  further extension, and that's something nobody wants.

15     Our view of the issue is that, you know, the government

16  here, at least as to Global Payments, has asserted what I

17  would call a novel theory.  And in my view and my client's

18  view, they have a heightened duty to know what they're saying

19  before they assert that novel theory.  And they've had the

20  means, through a two-year investigation, through two

21  investigatory hearings, and, as counsel mentioned, the

22  expedited discovery they took with the TRO to get, for lack

23  of a better word, their stuff together, and know what their

24  case is against Global Payments, which, incidentally, is a

25  victim of the debt collectors' practices, in our view, and

1    not a primary actor.

2          Now, how does that pan out in moving into your other

3    issues?

4          There are three major things that I think there really

5    shouldn't be much dispute about that we have hanging in the

6    balance before we can understand the extent of the discovery

7    we need and before we can get ready for, you know, a rather

8    quickly approaching discovery deadline.

9          And the first thing is take a look at the privilege log

10   we filed that the CFPB has used.  It doesn't meet any

11   standard.  I don't think that there's a whole lot that needs

12   to be said that a bulk log of documents, it's insufficient

13   under any ruling, whether it be your ruling in *Tanner versus*

14   *Gorilla* or anything else, it is a 26(b)(5)(A) privilege log

15   that doesn't identify a document.  It has only six entries.

16   There is no basis whatsoever for us to ascertain whether we

17   have any dispute whatsoever as to these documents, or even

18   need these documents, because there's no identification of

19   the common categories of information that every single civil

20   litigant has to put in a privilege log.

21         The CFPB cites an inapplicable advisory committee note

22   from Rule 34 and the privilege log issues are governed by

23   Rule 26, as you know.  We need to get a real privilege log.

24   That's number one.

25         Number two, we've asked for, among other things, the

1    investigatory file or investigator file of the CFPB.  They've

2    asserted a number of categories of typical governmental

3    privileges without identifying any specificity but just

4    simply saying deliberate privilege or investigatory privilege

5    and so on and so forth.  And then they bootstrap that or

6    attach through a Rule 33(b) response without any specificity,

7    that says basically you've got some documents, go find it.

8    It's not even a close call, what 33(b) requires.  It requires

9    you specific -- specify by category and location the

10   documents that answer the interrogatories under 33(b).  It is

11   undisputed they have not done that.  We need to do that

12   before we can figure out the extent to which we need further

13   discovery and what we need.

14        We also need the investigatory file.  I haven't dealt

15   with the CFPB in the past, quite frankly, in litigation, but

16   I do know from the FTC cases, you get that file.  There may

17   be redactions, there may be certain things withheld, but you

18   don't -- you're not deprived of the factual information that

19   the government has allegedly put together to assert a claim

20   against your client.  We don't have that.

21        Now, getting to the interrogatories more generally,

22   there are contention interrogatories in this case.  The

23   government has simply said, well, we're not going to give you

24   any information there because it's premature.

25        Well, if there's additional information that's going to

1   be discovered through this additional discovery that the

2   Court is going to allow, they can supplement their answers.

3   But right now, after the investigation, the two investigatory

4   hearings, the preliminary depositions, and the TRO, there has

5   to be some information they can provide to give us the

6   factual bases for their contentions in this case.  They're

7   wholesale refusing to provide that on the basis it's

8   premature.  I don't think that's a close call, either, and we

9   need that information.

10          So that's where we are in this.  Again, four months is

11  fine with us, but we are going to be back to you with the

12  burden on my client, unfairly, asking for additional time if

13  the government doesn't get moving on these things, which, in

14  my view, they have a heightened duty to get moving on given

15  the allegations they made.

16          So that's generally our position and we're hoping we can

17  break the logjam today.

18          MR. GLEASON:  Your Honor, Global Payments has addressed

19  the third point that you asked the defendants to address; I'd

20  like to address the first.

21          THE COURT:  Okay.

22          MR. GLEASON:  For those on the phone, this is Joe

23  Gleason for Frontline Processing.

24          With respect to CFPB's request for these additional

25  depositions, I think you've indicated that you're going to

 1    allow them to conduct some of these depositions.

 2         What I would ask the Court to consider is limiting the

 3    scope of any extended discovery to the discovery that the

 4    CFPB has identified here today.  And specifically in their

 5    letter they identify deposition discovery that they would

 6    like to conduct against four party defendants, and they

 7    identify 30(b)(6) deposition discovery that they would like

 8    to conduct against, I believe, six nonparty defendants.

 9         Frontline Processing is not on that list and the CFPB

10    has indicated that they are done with deposition and

11    interrogatories -- interrogatory and document discovery.  So

12    it would seem anyone who is not on this list can have

13    discovery closed against them.  And if the -- obviously, if

14    the Court and the parties want to agree to extend discovery

15    against the parties for whom we have identified additional

16    discovery that needs to be conducted, I don't think there's

17    any reason for the defendants against whom additional

18    discovery is not sought to be included in this discovery

19    extension.

20         The other thing that I would raise, though, is I don't

21    think we have any of these nonparties on the phone today, and

22    I don't know whether the nonparties have been notified that

23    discovery in the case is closed and that effectively these

24    30(b)(6) depositions that the CFPB is negotiating with them,

25    they really don't have the authority to conduct those

1    depositions at this point.

2         So I would suggest that if the Court does extend the

3    scope of -- extend the time for discovery, limit the scope,

4    and, frankly, that before it extend the scope of discovery to

5    include nonparties that it obligate -- that it oblige the

6    CFPB to reach out to these nonparties and ascertain their

7    positions.

8         THE COURT:  Are you suggesting to give them a say on

9    whether we extend discovery in the case?

10        MR. GLEASON:  I'm suggesting that any discovery

11   extension be limited in scope, and before you broaden the

12   scope to include this third-party discovery we should seek

13   the opinions of these third parties as to whether the

14   extension should be granted as to them.

15        THE COURT:  Let me say on that, I probably would not do

16   that.  It would be unlikely that I would let nonparties

17   engage in telling us how we should try your case.  And I

18   understand and appreciate they may have reasons not to wish

19   to be deposed or have to submit to discovery, which I would

20   let them submit and I would consider on the merits outside a

21   timing issue, only because I think you folks and I should

22   control the timing of the litigation.  So I probably would

23   not be inclined to open the door for that.

24        Certainly if I allow the extended discovery, the third

25   parties would reserve all rights that they would have to

1    raise objections to any matters.  But, and this is just

2    reacting, I would not typically be inclined to -- well,

3    except to the extent that, obviously, and I think Mr. Engel

4    has acknowledged this, he can't do that until I do extend and

5    that's why he's not noticed them.

6         So I think from the plaintiff's perspective I've heard

7    an acknowledgement that they're awaiting authorization from

8    me to be able to do that through an extension.  So once I

9    decided after hearing from the parties to grant an extension,

10   then, from my perspective, that part would be resolved and

11   then the parties could raise any other objections they

12   wanted.  But I appreciate, I understand, I think, fully your

13   other contentions there.

14        MR. GLEASON:  Thank you, Your Honor.

15        THE COURT:  Okay.

16        MR. GLEASON:  The other issue that I wanted to address,

17   you asked how long should the extension be.

18        THE COURT:  Right.

19        MR. GLEASON:  The depositions that have been discussed

20   so far where Global Payments has indicated that their

21   witnesses won't be available until September, those are not

22   depositions that have been noticed by the CFPB; those are

23   depositions that have been noticed by Pathfinder.  And so I

24   don't think that is part of the CFPB's request.

25        And, frankly, Frontline would, if we're going -- would

1    appreciate, if we're going to extend discovery, that we not

2    extend it by 50 percent of the discovery period that has

3    already been had, but rather that we extend it by some

4    shorter period so that we can get to summary judgment.

5         THE COURT:  Let me just put this out there, and I'll let

6    everyone react to it but I'll let you go first because we're

7    talking about this.

8         When we extend discovery, and especially in instances

9    where we extend the discovery with a limited scope, as is

10   being suggested here, that can sometimes have unintended

11   consequences because, as was suggested by Mr. Engel when he

12   was talking about the things that they're just now getting

13   and need to review and what doors that may open, typically in

14   this instance we would be extending the discovery so they

15   could accomplish these matters that have been outlined.

16   Well, typically the defendants don't want the door closed to

17   them should things arise in this that cause them to need

18   additional information and would rather not have to revisit

19   the Court, and I would rather you not have to revisit me if

20   such things arise.

21        So in fashioning the order it becomes a little delicate

22   in terms of how do we state the scope so as to not unfairly

23   prejudice a party who may very legitimately have additional

24   needs that are unknown today.  Because I'm assuming

25   everyone's going to attend all the depositions, you go to the

1    deposition and all of a sudden you learn something new that

2    you need to follow up on, and if I said discovery is closed

3    but for ten depositions, then we're back up here again and

4    you're justifying that.

5         And I realize if it's an obvious thing, hopefully you

6    all could agree to that and submit a consent order to me,

7    which I would sign.

8         But I just say that to say that while I certainly want

9    to be -- to confine this to the necessities, at the same time

10   it's sometimes helpful to at least allow some flexibility

11   that allows the parties to meet the needs as they arise.  And

12   it may be that that can be just done, to provide that the

13   parties have the authority to consent or to submit consent

14   requests for adjustments as may be required based on the

15   information that you receive.  I just put that out there as a

16   matter that you might want to think about.

17        All right, who's next?

18        MS. BURCH:  I'll go next.  Tippy Burch for Defendant

19   Varinderjit Bagga.

20        Ms. Bagga objects to the extension of any discovery.  I

21   acknowledge that we're not likely to be successful on that

22   point, but we objected to the eight-month period in the first

23   place.  Her deposition was taken during expedited discovery

24   and she is very much in a position where she is ready to get

25   to summary judgment as quickly as possible and put this

1    behind her as quickly as possible.

2         As Mr. Engel mentioned, they have reached out to us and

3    we did get Ms. Bagga on the phone, I think within days of the

4    request, and, you know, believe that there are no outstanding

5    discovery requests of Ms. Bagga, none have been sent during

6    the discovery period.

7         So, quite frankly, you know, I think, given the position

8    that she's in, she is ready for this to just be cut off.  And

9    as we've all acknowledged, we don't know what's going to come

10   up in these depositions and that's why we take the position

11   that we're ready for discovery to be over altogether.

12        I understand why Mr. Engel has not sent the deposition

13   notices, given that the depositions are likely to occur

14   outside of the allowed discovery period, but I don't know if

15   any of those topics will include my client.  So it makes it

16   difficult for me to be agreeable to any extension where I

17   don't know whether or not -- you know, I appreciate that he

18   does not plan to take the deposition of my client, but I

19   don't think that that necessarily relieves me or my client

20   from having to worry about these that are on the list.

21        THE COURT:  And let me say, I think your position has

22   been consistent from the beginning as you stated, and I do

23   appreciate and understand, quite honestly, your position.

24   And it is your position that's one of the factors that caused

25   me early on to say we need to bring this to some degree of

1    closure.

2        Let me add this.  It's probably premature now,

3    especially since there is the possibility of additional

4    discovery and not knowing the scope of that until you see the

5    30(b)(6) notices, but certainly you're not required to wait

6    till the close of discovery to file a motion for summary

7    judgment.

8        Again, I'm not suggesting that you do that now, but

9    certainly while these other folks may be squabbling some

10   more, there may be an earlier time that Ms. Bagga could have

11   her issues put before the Court.  But I just make that point.

12   All right.

13       MS. JOSEPH:  Your Honor, this is Linda Joseph.

14       Obviously, you know, we have a really serious problem

15   with regard to funding.  You know, I'm considerably in

16   arrears on being paid and it's a big problem.

17       On the other hand, you know, in listening to this this

18   morning and your comment, Your Honor, about the need for

19   flexibility, I was somewhat upset to hear that, you know,

20   there were interviews being conducted, for example, of

21   Ms. Bagga over the phone without the other parties involved.

22   That really creates kind of, it seems to me, an unfairness,

23   that we're hearing that Ms. Bagga is going to file a motion

24   for summary judgment.

25       You know, I guess I'm a little bit troubled by that and

```
1    I think that that sort of thing should be taken into account

2    too in making whatever decision Your Honor feels should be

3    made here.

4         Obviously, all this discovery with respect to the

5    corporate defendants is really, you know, kind of, I won't

6    say irrelevant to my client, but it seems to be raising

7    issues that are far removed, from my perspective, the Fair

8    Debt Collection Act and the Consumer Financial Protection

9    Act.

10        So those are just my thoughts on it to share with you.

11        THE COURT:  Okay, thank you.

12        MR. BALDRIDGE:  Your Honor, Doug Baldridge, Global.  Is

13   it my turn?

14        THE COURT:  Yes, sir.

15        MR. BALDRIDGE:  I really very much agree with

16   Mr. Gleason's sentiment, I'll say, but I don't know how

17   practical it is because I think there needs to be some

18   flexibility, perhaps some kind of mechanism within the order

19   where parties can seek additional follow-up discovery,

20   depending on what is learned.

21        However, I do want to make it clear that my client is

22   going to need to take a 30(b)(6) equivalent-type deposition

23   of the CFPB itself and cannot do that until we get this other

24   information.  So I want to put a marker down for that as

25   well.  But I think we can limit the scope but we have to have
```

1   a mechanism or an escape hatch, given that I don't have

2   enough information now to even complete a discovery plan.

3          THE COURT:  All right.

4          MR. ENGEL:  Can I address the Global's request for

5   additional information?

6          THE COURT:  Hold on just a second.

7          Mr. Elbein, did you want to be heard?

8          MR. ELBEIN:  Your Honor, I think our letter and the

9   arguments of counsel have well represented what we wanted to

10  say.  I just wanted to make a couple of points.

11         One is that we are, my client is distressed by the

12  inaccuracies in the CFPB's letter.

13         We did not know until this moment that there were

14  interviews taking place of parties under the table without

15  our knowledge; we have no idea what the content is.  I'm

16  frankly -- well, it is beyond my experience in all my

17  experience in practicing law.  And I hope that will be

18  addressed in some manner; I'll talk to counsel about it.

19         In answer to your question about what discovery we need,

20  to express it in general terms, Global Connect is not a debt

21  collector, we're not a payment processor.  We're unlike every

22  other defendant in the case.  All we did is provide a service

23  that was completely message neutral.

24         And we want to know in general terms from the CFPB why,

25  how you assert that your CID provides notice to my client

1    that there was something foul going on.

2        So we need a CID of -- excuse me, we need a 30(b)(6) of

3    the CFPB to determine what their theory is.  It doesn't make

4    sense to us.  And, of course, that will have to wait until

5    all of this discovery is done.

6        We're sitting back watching discovery and letters and

7    conversations, wondering when something will come up that

8    relates to us.  So far nothing has.  So we'll need a 30(b)(6)

9    of the CFPB.

10       MS. JONES:  Your Honor, this is Kristina Jones for

11   Defendant Pathfinder.

12       We share the concerns the defendants have said, other

13   defendants have said about the CFPB conducting interviews.

14   And I believe we will also want a 30(b)(6) deposition of the

15   CFPB.

16       We currently have discovery requests outstanding and are

17   beginning the meet and confer process.  We have previously

18   indicated, I think in the submission that the CFPB made to

19   extend the discovery deadline, we do not object to the

20   four-month extension.  And I think that, while I understand

21   the proposal Frontline has made, I'm not sure that that is

22   actually workable in practice.

23       THE COURT:  Thank you.

24       I'm going to let plaintiff respond to these points in

25   just a moment.

1      But I've noted the reaction to the phone conversation

2   with Ms. Bagga, and I guess I'm bothered that it didn't

3   strike me the way it struck everyone else and so maybe I've

4   missed something.  I mean, an attorney can interview

5   witnesses.  This was not a deposition, this isn't testimony

6   that's been, as far as I know -- or is it?  I thought you

7   just called and talked to her on the phone.

8      MR. ENGEL:  We just called and talked to her on phone.

9      THE COURT:  I think a lawyer can talk to witnesses even

10  if they're parties and not necessarily include everyone in

11  it.

12      But, now, I've been a judge for so long, not a lawyer,

13  so maybe I'm slipping on my code of professional conduct and

14  someone can educate me.  But I just say that because there

15  was a level of outrage there that was a little surprising to

16  me, and if we're getting off the tracks ethically or

17  professionally in this thing, I definitely want to bring us

18  back in.  But it didn't strike me as that because, as I said,

19  I think that lawyers routinely go out and interview witnesses

20  and don't share it with the other side, and even witnesses

21  who are parties, and don't share it with the other parties.

22      While that may arise in discovery in terms of

23  information you have that ultimately has to be produced in

24  response to a discovery request, I can see that arising and

25  that certainly one is not permitted to hide the ball.  And if

1   that's what the concern was, I don't mean to suggest that

2   people are permitted to hide the ball, but just the fact of

3   having a conversation does not strike me as inappropriate,

4   but I may have missed something.

5        MS. JOSEPH:  Your Honor, this is Linda Joseph.

6        You know, I guess what surprised me about it was it

7   sounded as though the CFPB was saying that that was a

8   substitute for what would have otherwise been a deposition

9   and that's what bothered me about it.  And I understand that

10  people do interviews and such, but if it's meant to be a

11  substitute for a deposition, I guess that's what kind of

12  surprised me, was it was being characterized as saving time

13  by substituting this for a deposition.

14       THE COURT:  I took it as we didn't have to take a

15  deposition because we took this and figured out that we would

16  have been wasting time to take a dep, but that they're going

17  to investigate other things and we may see something more as

18  a result of it.  I don't need to speak for you but --

19       MR. ENGEL:  No, I think that's right, Your Honor.  But

20  I'd also note that we are not uniquely allowed to notice

21  someone's deposition.  Ms. Joseph could certainly take

22  Ms. Bagga's deposition if she thought that was appropriate.

23       We were certainly trying to be efficient.  There's

24  nothing on the record, and to the extent we discovered

25  substance that is responsive to discovery requests, we'll, of

1    course, provide that information.

2         MR. GLEASON:  I'm sorry, Your Honor.

3         MR. BALDRIDGE:  Your Honor, this is --

4         THE COURT:  Just a moment.

5         Go ahead.

6         MR. GLEASON:  Your Honor, part of the problem is -- part

7    of the problem goes back to what Mr. Baldridge was saying on

8    behalf of Global Payments, which is that the CFPB has not

9    been providing their contentions, they've not been providing

10   the substance.  And the discovery responses that we have now

11   are the same discovery responses we've had for months and

12   months and months.  Those haven't been updated, they haven't

13   been changed, so that's why we're not learning about them.

14        THE COURT:  And that's where I was moving.  I want to

15   work down the list of the concerns that have been raised by

16   various counsel for defendants and just work down the list

17   and take them up.  I wrote them in an order and it would be

18   easier for me to take my notes as we go.

19        The first one was the privilege log, and certainly I

20   will confess to you I did not review the privilege log before

21   today's hearing but I did read what was commented about it,

22   and I do think the rule is pretty specific in terms of what

23   needs to be disclosed.  There has to be specific information

24   for the opposing party to know if they should be challenging

25   the privilege or not, and so let me get you to respond to

1   that.

2         MR. ENGEL:  Sure.  I would encourage you to look at the

3   log, Your Honor.  And I suggest that we have, although we

4   have not itemized each communication, for example, we have

5   sufficiently described it in the log, to the extent that

6   Global Payments would be able to determine the validity of

7   that claim.

8         For example, we've listed, I think, six categories of

9   information here.  And we've provided, to the extent we've

10  claimed law enforcement and deliberative process privilege,

11  we've also provided a declaration from Bureau of Management

12  that they have reviewed these documents and claimed the

13  privilege, as it requires.

14        But, for example, category one, where we've asserted law

15  enforcement, attorney work product and deliberative process

16  privilege, we've described opening memos, investigative

17  plans, internal memos, and work product and internal

18  communications regarding the same.

19        Regardless of when those -- who were the parties to

20  those and when they were written, those are privileged.  And

21  we suggest that the same applies to, for example, category

22  two, where we've claimed privilege to civil investigative

23  demands and related communications.

24        We take the position that those documents are

25  categorically privileged, regardless of when they were

1    written.  And that is a point of disagreement, I think,

2    between Global Payments and the Bureau.

3        And I will say this, Your Honor, that to the extent the

4    Court is inclined to require a line-by-line itemized

5    privilege log, that would impose a great burden on the Bureau

6    that we think is not commensurate with the value it would

7    provide to Global Payments to enable them to assess the

8    privilege, and we would like the chance to fully brief that

9    if the Court is entertaining that possibility.

10       THE COURT:  It seems to me the privilege that you're

11   asserting as to these in terms of the investigative file is

12   one that is the second or third thing I had on my list that

13   had been raised by Mr. -- by someone, but one of the

14   attorneys raised the concern about the privilege based on

15   investigative file and the concern that either it's being

16   read too broadly or that there's not an understanding of

17   exactly what the scope of that is.

18       And so it may well be that that is enough to alert us

19   that's the issue and the Court needs to resolve what is the

20   breadth and applicability of that privilege.

21       MR. ENGEL:  Sure.  And let me address the investigative

22   file question.

23       They have everything in the investigative file that is

24   not a communication between an investigator that is either

25   work product or law enforcement privileged, or a

1    communication between an attorney and an investigator.  But

2    as to the substance, all the documents we received in

3    response to civil investigative demands, that has all been

4    produced.  We are not withholding the substance of the

5    investigative file.

6        THE COURT:  Okay.

7        MR. ENGEL:  What we are withholding is our analysis of

8    that file.

9        THE COURT:  What about the contention interrogatories?

10       MR. ENGEL:  Again, Your Honor, I'd ask that you review

11   the interrogatories, because to suggest that we have

12   wholesale objected to responding is completely inaccurate.

13   These, I think, six interrogatory answers that Global

14   Payments identifies as being insufficient, we rest on those

15   answers.  We think that at this point in time, without having

16   yet taken Global Payments' depositions, these are our

17   contentions and we have set those forth, notwithstanding our

18   objection that they are premature.

19       We have answered those interrogatories.  They may not

20   like the answer, they may want more, but we believe that we

21   have satisfied our obligations in that regard.

22       THE COURT:  Let me say that, without going into the

23   specifics of each of them, I do think that the point is well

24   taken that a premature objection is not necessarily a good

25   objection because I think what is required is what you know

1   now and what you have now, and certainly you are not boxed in

2   by that because you have the right to supplement as you

3   proceed with discovery and discover additional information

4   that would supplement those contentions or those responses.

5       But I think at this point I will simply say, and I'm not

6   saying you haven't done it, I'm just saying I think the

7   obligation is to disclose what you have now and not -- and

8   reserving, obviously, the right to supplement as additional

9   information comes in.  But I think by saying it's premature

10  suggests we know things and we're not telling you now because

11  we don't know everything yet.

12      MR. ENGEL:  I think when Your Honor has the opportunity

13  to review the answers you'll find that that is how -- we

14  objected that they were premature, but notwithstanding that

15  objection we answered our contentions, we provided our

16  contentions based on the information we had at that point in

17  time.

18      THE COURT:  There was also the suggestion, and this goes

19  to some extent to the issue of contention, contention

20  interrogatories, but the possibility, obviously, that one or

21  more of the defendants will anticipate a 30(b)(6) of the

22  plaintiff where those contentions would be further explored

23  as this develops.

24      So I think, going back to the point we were discussing

25  about the scope of the discovery, it seems obvious to me that

1    one or more of the defendants anticipate discovery from their

2    end in terms of at least a 30(b)(6) of the plaintiff to lock

3    down the contentions and positions that the Bureau is taking

4    as to each of them.

5        MR. ENGEL:  I suggest -- and we'll address those notices

6    on the merits when they arise.  But if -- we have to complete

7    discovery to fully state our contentions.

8        THE COURT:  Well, I think that was Mr. Baldridge's -- I

9    think that's the position he took, he needs to know exactly

10   where you are, which you are not going to know until you

11   finish your discovery, which means that 30(b)(6) is probably

12   the last thing that happens in discovery, is my guess.

13       MR. ENGEL:  I think that's right, and I can't fathom

14   accomplishing that within four months, frankly.

15       THE COURT:  Any other points you want to make?

16       MR. ENGEL:  On the question of our use of Rule 33(b) to

17   designate documents, I do think that we have sufficiently

18   specified documents by title, for example.  We haven't said,

19   as counsel suggests, there are a bunch of documents, you find

20   the answer.  They may want more specificity but we do believe

21   we have satisfied our obligation to answer pursuant to that

22   rule by identifying documents and that the burden for Global

23   Payments identifying the answer is equal as it would be upon

24   the Bureau.

25       THE COURT:  Are those documents produced in some type of

1    searchable format?

2         MR. ENGEL:  They are, yes.

3         THE COURT:  Are the kinds of representations you're

4    making as to the documents, I mean is it the kind of thing

5    that would allow you to search and find those documents?  I

6    mean, those are fairly broad terms and I can imagine that

7    would involve a lot of documents.  Is there --

8         MR. ENGEL:  I believe that is true, Your Honor.  And

9    I'll further note that most of these documents are Global

10   Payments own documents, not all of them, but a lot of them

11   are.

12        THE COURT:  Yes?

13        MR. GLEASON:  Your Honor, I think that the suggestion

14   that they have sufficiently identified documents under Rule

15   33(d) is grossly misleading.  And if you -- the very first

16   interrogatory that Global Payments has identified, their

17   interrogatory number 4, they're seeking essentially the

18   complete factual basis for the CFPB's contention that Global

19   knew or should have known the debt collectors were engaged in

20   unlawful conduct.

21        In response to that interrogatory, instead of an

22   explanation of what facts arose or what omissions or --

23        (Music playing.)

24        THE COURT:  Hold on a second.

25        (Pause.)

1          THE COURT:  Okay.

2          MR. GLEASON:  Instead of an answer to the question, what

3     we get is a long list of categories of documents that are

4     extraordinarily broad, including things like card network

5     policies, procedures, rules, and agreements.

6          What does that mean in the context of the interrogatory?

7     You know, Global Payments' own policies, procedures, rules,

8     and agreement.  Again, what could that possibly mean in the

9     context of this interrogatory?

10          Now, obviously, I represent Frontline, not Global

11     Payments, but Frontline has exactly the same issue because

12     we're getting exactly the same answers to these kinds of

13     interrogatories.  And, in fact, Global's interrogatory

14     number 5 asks for the CFPB's complete factual basis for what,

15     if anything, Pathfinder and Global Payments did wrong.

16          So Frontline for that reason has an interest in getting

17     a real answer to that question rather than a long list of

18     broad categories of documents that -- I mean, when you

19     identify the card association network rules, operating

20     agreements, that's thousands and thousands of pages of

21     documents.  It's impossible, even if they are Global's own

22     documents, for any party to sift through that and ascertain

23     what is the CFPB's contention that actually answers the

24     interrogatory.

25          MR. ENGEL:  To the extent that argument applies to

1    Frontline, this is the first time that Frontline has raised

2    any dispute with respect to our answers to interrogatories.

3        We have just completed taking depositions of Frontline

4    and just received those transcripts and I expect that based

5    on our review it's going to be time for us to supplement

6    those answers with our contentions to the extent they've

7    evolved based on that testimony.

8        But like I said, this was the first time that Frontline

9    has raised this issue and we'll certainly address it.

10       THE COURT:  But I have to say that based on the response

11   that he read then, I think the defendants are entitled to

12   some degree of specificity to know what it is they're facing

13   here.  And to be this far into the litigation, the Bureau has

14   to have some sense of the nature of the violations that were

15   occurring here.

16       MR. ENGEL:  I completely agree, Your Honor, and I'll

17   highlight another answer to an interrogatory.

18       THE COURT:  Okay.

19       MR. ENGEL:  Where, for example, Global has complained

20   about our answer to interrogatory 6, which asks to list all

21   indicators that the collectors were committing fraud.

22       We answered with reliance on 33(d), and then enumerated,

23   let's say three pages of detail specifying the indicators of

24   fraud.  And we think that that answer is sufficient.

25       THE COURT:  Will you just read me an example of a

1   specific indicator just so we've got it on the record.

2       MR. ENGEL:  Yes.  The first paragraph, so I say:  More

3   specifically, but without limitation, the Bureau answers that

4   Global Payments knew or recklessly disregarded the following

5   indicators that Universal Debt & Payment Solutions and Credit

6   Power were committing fraud.  Global Payments knew or

7   recklessly disregarded that Universal Debt & Payment

8   Solutions and Credit Power were prohibited high-risk

9   merchants.  Global Payments knew or recklessly disregarded

10  that Universal Debt & Payment Solutions' name included terms

11  that Global Payments' policy recognized as indicators of

12  prohibited factoring or aggregating.  Global Payments knew or

13  recklessly disregarded that a Credit Power officer had

14  recently finished a sentence for drug trafficking and shared

15  an address with Mohan Bagga.

16      THE COURT:  Defendants --

17      MR. BALDRIDGE:  Your Honor?

18      THE COURT:  Yes.

19      MR. BALDRIDGE:  When you're ready I'd like to be heard

20  again if I may.

21      THE COURT:  I'm ready.  Is this Mr. Baldridge or is

22  this --

23      MR. BALDRIDGE:  Yes, it is, sir.

24      THE COURT:  Okay.

25      MR. BALDRIDGE:  These issues are intertwined, and one

1    reason is that the specificity that's required has not been

2    provided, in part because of the assertion of these

3    privileges in a nonspecific manner without the government

4    having even met its burden.  So I want to start with the

5    privilege log itself.

6        Mr. Engel encouraged you to look at it.  Boy, do I

7    encourage you to look at it.  It wouldn't take very long

8    because it's about a page and a half or two pages -- I don't

9    have it in front of me -- and I don't think anything more

10   need be said than there is no civil litigant that you would

11   allow to submit a privilege log of this type.  And the

12   government plays -- has to play by the same rules as any

13   other civil litigant.

14       What Mr. Engel said to you about that privilege log is

15   take my word for it, Judge, we gave him the stuff that's not

16   this or not that.

17       Well, you know what?  He doesn't have the right to do

18   that.  He has to give us enough information to challenge a

19   document on a document-by-document basis based on sender,

20   recipient, general description, just like any other Rule 26

21   privilege log.

22       It cannot be disputed that that has been done, it hasn't

23   been done, and we don't have to take the government's word

24   for it on this.  They need to present a privilege log like

25   every other civil litigant and allow us to challenge these

1    things.  And once these things come out, if they do, that is

2    necessarily going to impact the interrogatory answers.

3         Now moving to the 33(b) part of the interrogatory

4    answers.  The law says you must specify by category and

5    location where the documents are that are specifically

6    responsive to the interrogatory answer.

7         You have yet to hear any answer that does that because

8    they have not done that.  They have not provided a basic

9    33(b) response that you would require every other civil

10   litigant to provide.  And, again, we don't have to take their

11   word for it.

12        Now, contention interrogatories, you're absolutely

13   right, we're at least entitled to all of what they know now,

14   actually.  That would include what they now claim to be

15   privileged if they don't successfully assert that privilege.

16        And, you know, I'm beside myself because they've been in

17   this for two years, and that's the best they can do is what

18   these answers are?  Look at them.  If that's all that

19   supports their contentions we shouldn't be here.  And they

20   need to let us know what the facts are they rely on fully

21   before we get into further discovery or we're going to be

22   asking for four more months at the end of this four months.

23        Going to the specific privileges they assert.  Law

24   enforcement privilege, they assert it very generically, very

25   generally.  Now, that requires the government to demonstrate

1    the disclosure of the information, such as law enforcement

2    techniques and protocols, would jeopardize future

3    investigations.  That's the law.  They haven't even tried to

4    do that.

5         Going to deliberate process privilege, they have to

6    establish that it's predecisional.  It's very clear that all

7    documents that relate to a decision aren't privileged simply

8    because they were created.  There has to be enough

9    information to determine the timing and the general contents.

10        For example, are they advisory opinions,

11   recommendations, deliberations that involve government

12   policy?  They haven't done that at all so we can't challenge

13   it.

14        Common interest privilege is another one they've

15   asserted.  You don't get a privilege because you have a

16   common interest.  The common interest privilege gives you a

17   privilege over information that is otherwise privileged

18   without constituting a waiver that more than one party has

19   shared it.  It just simply is unsupported on this record.

20        So what I want to encourage you to do is just what

21   Mr. Engel did, look at the information.  It speaks for

22   itself.  The government has to comply with the rules just

23   like anyone else; they haven't done so.  And we're shooting

24   in the dark trying to deal with this novel theory they've

25   come up with to extend liability beyond the principal

1    wrongdoers, in our case we believe the only wrongdoers, if

2    there are wrongdoers at all, and we're supposed to guess over

3    the next four months where their case is.

4         And then we're going to show up with you in October, on

5    October 7th, and they want to say, Judge, well, they finally

6    let something out of the bag but they're still holding this

7    back on an unestablished privilege and we need four more

8    months.  Thanks.

9         THE COURT:  Thank you.  Anyone else?

10        MS. JONES:  Your Honor, Kristina Jones for Pathfinder.

11        I think we share a lot of the concerns that have been

12   expressed by the other defendants with regard to deficiencies

13   in the CFPB discovery responses.

14        But one thing I did want to note with regard to the

15   interviews that the CFPB has done, conducting.  I think the

16   problem is not that it necessarily violates the ethics rule;

17   it's that a party is taking a deposition in the case.  That

18   deposition has to be noticed, all the parties get notice of

19   that deposition.  What's happening here is CFPB has

20   represented that these are the (inaudible) people (inaudible)

21   deposition for efficiency purposes without providing notice

22   to the other party.

23        THE COURT:  Thank you.  Anyone else?  Yes?

24        MR. GLEASON:  Your Honor, this is Joe Gleason again for

25   Frontline Processing.

1          And I just wanted to address a point that Mr. Engel

2     raised where he was reading some more specific allegations

3     that are written in responses to different interrogatories.

4          First, I would say that that doesn't obligate -- that

5     doesn't obviate the requirement the CFPB provide complete

6     answers to all of the interrogatories.

7          But the other thing I would say is even these, you know,

8     what appear to be more complete responses are still pretty

9     vague.

10          For instance, you have identifications of, you know,

11     Credit Power's principal was an ex-felon.  Well, throughout

12     Credit Power's existence there were several principals.  Who

13     are we talking about here?  You know, we have an

14     identification of, oh, there were these chargeback documents

15     that suggested these problems.

16          Well, which chargeback documents are we talking about?

17     We should be able to identify those by Bates number by now

18     and we're not.  We're still, even in these more detailed

19     responses, there's still a level of detail that exists and

20     has not yet been provided.

21          THE COURT:  Very well.

22          MR. GLEASON:  Thank you.

23          THE COURT:  All right, I will take a close look at the

24     responses that you -- and you've provided those to me in your

25     letters, I know several of those are incorporated in those

1   and I will take a look at those.

2        The manner in which I handle discovery disputes such as

3   this is what we're doing here, which means you've not filed

4   motions or briefs so there's not a motion to compel, and so

5   the process that I use is, having had this meeting, I will

6   issue an order based upon the hearing and the letters that

7   were submitted by the parties.  I typically then actually

8   file those letters as a part of the record so that it's clear

9   what was presented to me when I made the decision and there's

10  a complete record.

11       What I typically do then in that order is say, I may

12  impose requirements on parties, and will then say if a party

13  fails, now that the Court has directed in this manner, the

14  other parties are authorized to file a motion to compel,

15  which means you then don't have to jump through the hoop of

16  coming and meeting with me.  You still have to confer in good

17  faith, obviously, before filing any motion to compel.  But I

18  may set out requirements that I would expect to be met and I

19  will not impose sanctions because this is not a formal motion

20  to compel but it's an opportunity to get things squared up

21  and heading in the right direction.

22       I will issue that order and then the guidelines are set

23  and if someone fails to comply with that on either side, then

24  that party can file a motion to compel, we'll brief it, and

25  we'll do it in the normal course of how we do these things.

1      I am going to extend the discovery.  At this point I'm

2  going to extend it for four months, hoping that we can push

3  things as quickly as possible.

4      And I realize, Mr. Baldridge, your concern about that

5  30(b)(6), and Mr. Engel's concern of whether the 30(b)(6) of

6  plaintiff can be accomplished in that time; hopefully it can.

7  If it cannot, certainly I will give the same consideration to

8  the defendants that I've given to the plaintiff in being able

9  to accomplish what you want while being mindful at all times

10 that at least, I think for all the parties, being expeditious

11 is important, but particularly for some of the individual

12 defendants, that is the primary concern at this point, so

13 trying to move it to the point that those parties, if they

14 want to tee up some issues they'd be able to, and we could

15 move the case forward.

16     MR. ENGEL:  Your Honor, with respect to the privilege

17 log issue, the Bureau has not had the opportunity to address

18 that legal issue in writing pursuant to the Court's typical

19 process.  I wonder if we might have the opportunity, a brief

20 window to present in writing our argument with respect to the

21 adequacy of the privilege log.

22     THE COURT:  You may if you'll do it by next Friday.

23     MR. ENGEL:  Yes, sir.

24     MR. BALDRIDGE:  And, Your Honor, we would, of course,

25 want to prepare a quick reply.

1        THE COURT:  You may.  I won't rule before the end of --

2    two weeks from now.

3        MR. BALDRIDGE:  Thank you.

4        MR. ENGEL:  Thank you, Your Honor.

5        THE COURT:  Anything else?

6        MR. GLEASON:  Your Honor, will there be any limit on the

7    scope of the discovery in the extended period?

8        THE COURT:  That will be in my order.

9        MR. GLEASON:  Thank you.

10        THE COURT:  But I will tell you now I intend to make it

11    be the scope of what we've described here today.  What I will

12    make it is the scope will be what has been described here

13    today and discovery that is necessarily required by that.

14    That's the door I'll leave open for you and hope that you

15    guys can work that out on that point.  But if you can't, then

16    you can come back to me.  And those are the kind of things

17    we'll still do by phone conference.  You don't need to file a

18    motion to do that.  If there's a disagreement about whether

19    someone should be permitted to do something additionally,

20    then call Mr. Goss, let's set up a phone conference about it.

21        Let me say in advance, as I said to Mr. Baldridge when

22    he raised the issue about the 30(b)(6) from his perspective,

23    that if we get pushed up to the wall in getting everything

24    completed from the plaintiff's perspective, I will grant the

25    request for a brief extension for the defendants to be able

1    to accomplish their 30(b)(6).

2        MR. BALDRIDGE:  Thank you, Your Honor.

3        THE COURT:  All right.  If there's nothing further,

4    thanks to everyone.  I think the meeting has been helpful, it

5    certainly helped me, and we will get an order out to

6    hopefully give some direction.

7        Let me just close with this.  I really do think it's

8    important from the plaintiff's perspective to get as much on

9    the table as we can as quickly as we can because, as a matter

10   of fairness, defending a case, these folks have got to know

11   what they're really defending against to know what to go

12   after.  So the sooner we can get that on the table, the

13   sooner we can get this thing really ready to get to the legal

14   issues and get it concluded, and I think that's what we all

15   want to have accomplished.

16       I believe firmly in the right and the obligation of a

17   party to supplement discovery responses and I don't think I

18   have ever precluded a party from supplementing a discovery

19   response.  I would, if I thought there were bad faith in play

20   or they were trying to game the case by holding back or

21   whatever, I'm not saying I wouldn't, but typically I realize

22   that cases evolve and that things arise, so things may be

23   presented later.  But I say that to you to encourage as much

24   disclosure as possible as quickly as possible.

25       And I also recognize that things change.  I mean, what

1    looks one way at one point can change, and the fact that you

2    point out something as a contention and don't stay with it

3    doesn't mean I'm going to make you eat it.  I mean, things

4    can change and that's all right.

5         But I think we're all better served if we can have as

6    much open disclosure here as possible and as much

7    transparency as possible so everyone can get to the

8    information.

9         And this cuts both ways.  I'm not just talking to

10   plaintiffs, I'm talking to defendants as well, because on the

11   privilege log matter, I think Mr. Engel's point is well

12   taken, we may be looking at a delay if they've got to put

13   resources into a tremendously specific privilege log, but at

14   the same time there's got to be enough there so you folks on

15   the defense side know what to raise.

16        But there's some pretty clear issues that are there, to

17   me, that I can see without a whole lot more specificity, and

18   those are just the breadth of these privileges that you are

19   addressing, Mr. Baldridge, the arguments that you made just a

20   moment ago.  And it may be that you're in a position, even

21   with the privilege log stated like it is now, to challenge

22   some of these matters on that basis.  You may need more

23   specificity to be able to show that there are specific

24   documents that fall outside the privilege as it should be

25   defined, but especially if you feel the plaintiff is

1   overstating the privilege or asserting it in a more broad

2   fashion than it's entitled to, we can get that issue teed up

3   and try to move on it perhaps more quickly.

4       But I'll try to give you some structure that will allow

5   you to get those issues before me if you need to.

6       All right, thanks to everyone for being here this

7   morning and thanks to folks on the phone.  We'll adjourn.

8   Thank you.

9       (Proceedings concluded at 10:35 a.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E.

2

3

4    UNITED STATES DISTRICT COURT:

5    NORTHERN DISTRICT OF GEORGIA:

6

7             I hereby certify that the foregoing pages, 1

8    through 49, are a true and correct copy of the proceedings in

9    the case aforesaid.

10            This the 11th day of July, 2016.

11

12

                         /s/ *Amanda Lohnaas*
13            _____

14                       Amanda Lohnaas, CCR-B-580, RMR, CRR
                         Official Court Reporter
15                       United States District Court

16

17

18

19

20

21

22

23

24

25