**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

CONSUMER FINANCIAL                  :
PROTECTION BUREAU,                  :
                                    :
    Plaintiff,                       :
                                    :    CIVIL ACTION NO.
    v.                               :    1:15-CV-859-RWS
                                    :
UNIVERSAL DEBT                      :
SOLUTIONS, LLC, *et al.*,           :
                                    :
    Defendants.                      :
                                    :
                                    :

## ORDER

This case comes before the Court on Defendant Pathfinder Payment

Solutions, Inc.'s ("Pathfinder") Motion for Sanctions [352]; Defendants

Frontline Processing Corp. ("Frontline"), Global Payments, Inc. ("Global

Payments"), and Pathfinder's Motion for Sanctions [397]; Defendant Electronic

Merchant Systems, Inc.'s ("EMS") Joinder in Consolidated Motion for Rule 37

Sanctions [407]; Frontline's Motion for Reconsideration [409]; and Defendant

Global Connect, LLC's ("Global Connect") Joinder in Consolidated Motion for

Rule 37 Sanctions [418]. After reviewing the record, the Court enters the

following Order.

## Background

The Consumer Financial Protection Bureau ("CFPB") brings this suit against numerous individuals and entities in connection with a massive debt-collection scheme.  According to the CFPB, several individuals ("Debt Collectors") created limited liability companies in Georgia and New York to perpetrate a debt-collection scheme targeting millions of consumers.  The Debt Collectors allegedly used the telephone broadcast services of Defendant Global Connect to broadcast millions of threatening and false statements to consumers in telephone calls and messages.

When consumers provided their payment information, the Debt Collectors then used several payment processors to withdraw funds from the consumers' accounts.  Those payment processors include Defendants Global Payments, Pathfinder, Frontline, and EMS (collectively, "Payment Processors").  The CFPB accuses the Payment Processors, along with Global Connect, of violating the Consumer Financial Protection Act ("CFPA"), 12 U.S.C. §§ 5531, 5536(a), by providing substantial assistance to the debt collectors' unfair or deceptive conduct (Counts VIII and X), and by engaging in unfair acts or practices (Counts IX and XI).

2

AO 72A
(Rev.8/82)

Presently pending are a number of sanctions motions filed by Defendants. One of those motions—Pathfinder's Motion for Rule 11 Sanctions [352]—stands on its own. The remaining motions seek sanctions under Federal Rule of Civil Procedure ("Rule") 37 for issues arising out of Defendants' Rule 30(b)(6) depositions of the CFPB. The Court will provide a brief background for each of those motions.

## I.   Pathfinder's Motion for Rule 11 Sanctions

In May 2015, only two months after this case was filed, Pathfinder served on the CFPB a motion for sanctions under Rule 11. (See Dkt. [352-3].) Pathfinder contended that the CFPB's case against Pathfinder lacked a basis in law and fact, and that it was merely an exercise in government overreach. Over eighteen months later, and with fact discovery complete, the CFPB was still asserting its claims against Pathfinder. As a result, on January 4, 2017, Pathfinder filed its Motion for Rule 11 Sanctions [352] with the Court. While the particular content of the motion has changed since Pathfinder served it on the CFPB, the overarching argument is the same: the CFPB's claims against Pathfinder are frivolous and warrant dismissal.

## II.    Defendants' Rule 30(b)(6) Depositions of the CFPB and Subsequent Motions for Rule 37 Sanctions

By August 2016, several Defendants had served the CFPB with Rule 30(b)(6) deposition notices.  The CFPB objected to those notices, arguing that the Court should not require it to sit for 30(b)(6) depositions for three reasons: (1) the CFPB had already provided the information that Defendants were seeking in written responses to Defendants' contention interrogatories; (2) the noticed topics included inquiry into topics protected by the law enforcement and deliberative process privilege; and (3) the depositions were an improper attempt to depose the CFPB's counsel as to counsel's mental impressions and anlyses.  (See Dkt. [316-1] at 2.)  The Court rejected those arguments and refused to categorically bar depositions of the CFPB.  (See generally Dkt. [316].)  The Court noted that Defendants could not depose the CFPB regarding its counsels' mental impressions, case strategies, or legal opinions, but that—at the same time—factual matters were within the bounds of inquiry.  (Id. at 2-3.)

Before long, the Payment Processors and Global Connect had all served the CFPB with 30(b)(6) deposition notices.  The CFPB responded with motions for protective orders, arguing that the vast majority of Defendants' noticed

topics should be stricken or narrowed.  In those motions, the CFPB recycled

many of the same arguments it had used in opposing the depositions in the first

place.  For example, it asserted that many topics were duplicative because they

sought information the CFPB had already outlined in its responses to

defendants' contention interrogatories.  The CFPB also asserted that many

topics intruded into privileged areas and would require it to divulge

information protected by the work product doctrine.  The CFPB was

particularly concerned about being asked to marshal its evidence and to link its

allegations to the specific facts that support those allegations.

In ruling on the motions for protective orders, the Court consistently

permitted topics that sought the facts relevant to the CFPB's claims.  To give a

few examples, the Court permitted the following topics in full:

- The facts relating to the CFPB's claim that EMS knowingly
  provided substantial assistance to the unlawful conduct of
  the Debt Collectors by approving merchant applications
  from the Debt Collectors that were replete with indicia of
  fraud.  (See Dkt. [343-2, 374].)

- The factual bases, including the source of those facts, for
  each and every allegation pleaded against Frontline in the
  CFPB's Complaint.  (See Dkt. [342-2, 375].)

- The factual bases, for each and every one of the CFPB's

allegations or contentions set out in the Complaint pleaded against Global Connect . . . , including identifying the sources of those facts . . . . (See Dkt. [348-2, 376].)

The Court also permitted the following topics, but narrowed them to "all facts relevant to [the CFPB's] claims against [the pertinent Defendant], including all facts that [the CFPB] could reasonably identify as exculpatory."

- Any and all facts that the CFPB obtained about Global through its investigation and/or that the CFPB pleaded in its Complaint. (Dkt. [327-2, 371].)

- The CFPB's investigation of Frontline regarding Frontline's processing of transactions for the Debt Collectors, including all facts that the CFPB obtained about or concerning Frontline. (Dkt. [342-2, 375].)

- All facts within the CFPB's knowledge related to Pathfinder's processing of transactions for the Defendant Debt Collectors or other persons who collect debt. (Dkt. [368-2, 392].)

Each of these rulings reinforced the Court's earlier finding that Defendants were entitled to question the CFPB about the factual underpinnings of its allegations against them.

On April 11, 2017, Global Payments took the first 30(b)(6) deposition of the CFPB. Global Payments, Frontline, and Pathfinder all took issue with the CFPB's responses during that deposition. Because Frontline and Pathfinder

6

were scheduled to take the CFPB's deposition later that week, the Court held a

telephone conference on the very next day, April 12, 2017.  Defendants raised

two broad objections to the CFPB's deposition responses.  First, they objected

to the CFPB witness's use of "memory aids" to deliver rote, sometimes

unresponsive answers to Global Payments' questions.  Second, they objected to

the CFPB's counsel's extensive use of privilege objections to prevent the

witness from answering questions about the facts the CFPB was relying on to

support its allegations.

Responding to the second concern, the Court again reiterated that

"factual support for contentions is an area of inquiry that's appropriate, it's not

protected by work product."  (Dkt. [397-5] at 27:24-25.)  Later, the Court

further clarified that point, hoping to provide guidance for the upcoming

depositions:

> [W]hen the question is asked, you look at what it goes to, and if it
> goes to an element of the claim, then that is a fair question.  If it's
> asking the witness to analyze it beyond offering the facts then
> you're out of bounds and you're arguably getting over into work
> product . . . .

(Dkt. [397-5] at 41:1-5.)  Over the following weeks, the CFPB was deposed by

Frontline, Pathfinder, EMS, and Global Connect.  Defendants contend that,

during each of those depositions, the problems identified during the telephone conference persisted.

As a result, there are now three motions for Rule 37 sanctions pending. The first is Global Payments, Frontline, and Pathfinder's Consolidated Motion for Rule 37 Sanctions [397], while the second and third are EMS and Global Connect's joinders in that consolidated motion [407, 418]. Together, Defendants argue that the CFPB's conduct was contrary to the Court's instructions and prevented them from taking meaningful depositions. They contend that the Court should sanction the CFPB's conduct by striking Counts VIII, IX, X, and XI.

## Discussion

## I.   Pathfinder's Motion for Rule 11 Sanctions [352]

Pathfinder moves for sanctions under Federal Rule of Civil Procedure ("Rule") 11, which says:

> By presenting to the court a pleading . . . an attorney . . . certifies that to the best of the [attorney's] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

AO 72A
(Rev.8/82)

> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support . . . .

FED. R. CIV. P. 11(b)(1)-(3).  Rule 11 empowers courts to "impose an appropriate sanction" when they determine that Rule 11(b) has been violated. FED. R. CIV. P. 11(c)(1).

Pathfinder begins by noting the crux of the CFPB's claims against it: Pathfinder should have noticed the debt collectors' excessively high chargeback rates for particular months and should have heeded those and other ongoing warning signs of fraudulent activity.  It then argues that neither the CFPB's pre-suit investigation nor discovery have revealed evidence to support those allegations.  Instead, Pathfinder contends, support for the CFPB's allegations is limited to a misleading selection of a single month of chargeback data for certain debt collectors.  Pathfinder argues that the evidence clearly shows that its monitoring conduct, viewed properly as a whole, met industry standards and practices, and that the CFPB's maintenance of its claims therefore warrants sanctions.

As the Advisory Committee Notes for Rule 11 explain, "Rule 11 motions

9

. . . should not be employed . . . to test the legal sufficiency or efficacy of allegations in the pleadings" or "to emphasize the merits of a party's position." FED. R. CIV. P. 11 advisory committee's notes (1993 Amendments). Yet Pathfinder's motion does just that. It reflects a disagreement with the CFPB about its view of the evidence and the application of that evidence to the relevant law. A Rule 11 motion filed in advance of any ruling on summary judgment is not the proper procedural mechanism for the Court to resolve such a disagreement. As a result, Pathfinder's motion is **DENIED.**

## II.   Defendants' Motions for Rule 37 Sanctions [397, 407, 418]

### A.   Legal Standard

The pending motions implicate both Rule 37(b) and Rule 37(d). Rule 37(b) provides that a district court may impose sanctions upon a party for failure to comply with a discovery order. It says:

> If a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders. They may include the following:
>
> . . .
>
> (iii) striking pleadings in whole or in part . . . .

10

Fed. R. Civ. P. 37(b)(2)(A).  Rule 37(b) gives district courts broad discretion to fashion appropriate sanctions for the violation of discovery orders.  See Malauetea v. Suzuki Motor Co., Ltd., 987 F.2d 1536, 1342 (11th Cir. 1993).  At the same time, that discretion is not unlimited, and an extreme sanction requires "a willful or bad faith failure to obey a discovery order."  Id.  But "when a defendant demonstrates flagrant bad faith and callous disregard of its responsibilities, the district court's choice of the extreme sanction is not an abuse of discretion."  Emerick v. Fenick Indus., Inc., 539 F.2d 1379, 1381 (11th Cir. 1976).

As for Rule 37(d), it similarly provides that a court may order sanctions when "a party . . . or a person designated under Rule 30(b)(6) . . . fails, after being served with proper notice, to appear for that person's deposition."  A failure to appear includes circumstances where the witness "is not knowledgeable about relevant facts, and the principal has failed to designate an available, knowledgeable, and readily identifiable witness."  Resolution Trust Corp. v. Southern Union Co., Inc., 985 F.2d 196, 197 (5th Cir. 1993).  The breadth of sanctions available under Rule 37(d) is the same as those available under Rule 37(b).  See FED. R. CIV. P. 37(d)(3).

B.    Analysis

Across their motions, Defendants raise two arguments in support of sanctions: (1) the CFPB did not present a knowledgeable witness under Rule 30(b)(6); and (2) the CFPB's privilege and work product objections were highly improper and obstructed Defendants from receiving answers to questions that the Court had expressly identified as fair territory.  Global Payments, Pathfinder, and Frontline insist that reopening the depositions would be futile, and that the only appropriate sanction is striking the claims against them.  EMS and Global Connect join that position, but argue alternatively that the Court reopen their 30(b)(6) depositions.  As discussed more thoroughly below, the Court finds that the CFPB's pattern of conduct warrants substantial sanctions.

A.    The CFPB's Failure to Produce a Knowledgeable Witness

Defendants first argue that the CFPB consistently failed to produce a knowledgeable witness.  Specifically, they argue that the witness's heavy—if not exclusive—reliance on various memory aids was improper.  The CFPB responds to this argument by repeatedly noting the Court's comment during the April 12 telephone conference that the 30(b)(6) depositions were not to be

12

conducted as memory tests.  (See Dkt. [397-5] at 4:20-25.)[1]  The CFPB further

contends that, given the volume of facts and documents in this case, testimony

without memory aids was impossible.

Reviewing the various deposition transcripts reveals, however, that these

"memory aids" are more properly characterized as scripts.  At one point, Global

Payments asked the CFPB's witness to explain the CFPB's factual

understanding of what happened in Pathfinder's underwriting of Credit Power,

one of the Debt Collectors' entities.  (See Dkt. [397-2] at 68:25-69:14.)  The

witness then proceeded to read directly from the memory aid.  (Id. at 69:15.)

Though he was frequently interrupted by counsel, the time stamps show that

the witness's response to this single question lasted nearly forty minutes and

was read, in its entirety, from the memory aid.  This was hardly an isolated

incident.  To give another example, Global Payments' counsel later asked the

witness the following:

> Q      Okay.  So for the first, that Global Payments knew that
>        UDPS and CP were prohibited and high-risk merchants.
>        What facts does the Bureau have that Global had actual
>        knowledge of that?

---

[1] The cited page numbers for all transcripts refer to the page numbers in the
CM/ECF headers, not the page numbers on the documents themselves.

(<u>Id.</u> at 206:1-5.)  The witness responded by reading, practically uninterrupted, for forty five minutes.  (<u>Id.</u> at 206:10-239:16.)  The parties took a break from the deposition, and returned fifteen minutes later.  The deposition resumed with an additional fifteen minutes of reading, and even that did not complete the witness's answer.  (<u>Id.</u> at 240:7-252:20.)  While these are the most egregious examples, similar ones abound throughout the transcripts.  Indeed, the witness was hardly able to offer any testimony at all beyond what he read off the memory aids.  And as the Defendants frequently pointed out, the readings were often unrelated to the question asked.

In the April 12 telephone conference, the Court repeatedly emphasized the importance of the witness's ability to provide a "human touch" by responding to Defendants' follow-up questions.  (<u>See, e.g.</u>, Dkt. [397-5] at 7:22-8:3.)  At one point, the Court said the following:

> So there's an allusion in Mr. Engel's e-mail to me today that the witness will be prepared by the CFPB to be able to address matters that aren't just memory tests, which some of the factual aspects of it are.  So my expectation is that the witness would answer those questions and, for lack of a better term, the human touch questions, but would be prepared to answer those and to represent the position of the CFPB.

(<u>Id.</u> at 28:1-7.)  Based on the transcripts, it is clear that the CFPB's witness was

not prepared to answer follow-up questions or to stray from the memory aids in any way. The Court was quite clear, both in its initial order that the CFPB sit for 30(b)(6) depositions and during the April 12 telephone conference: more was expected of the CFPB's witness than rote answers similar to what was already available to Defendants through contention interrogatories. By relying almost exclusively on the memory aids, the CFPB's witness failed to abide by the Court's instructions.

Turning away from the issue of the memory aids, Defendants also argue that the CFPB's witness was not knowledgeable because he was not prepared to testify as to any exculpatory facts. In several of the Orders ruling on the CFPB's motions for protective orders, the Court instructed the CFPB to be prepared to testify as to any facts that it "could reasonably identify as exculpatory." (See, e.g., Dkt. [371] at 2.) Despite those instructions, the CFPB repeatedly took the position that its investigation had not yielded a single exculpatory fact. For example, early in Global Payments' deposition, the following exchange took place:

> Q    The judge in his ruling said that the Bureau was to provide a
>      witness who would testify as to all facts the plaintiff could
>      reasonably identify as exculpatory. Are you familiar with

15

that part of the judge's ruling in your testimony here today?

A    Yes.

Q    What, if anything, did you do to identify exculpatory facts?

A    I didn't identify any.

Q    So in the 300 hours that you spent preparing for this, you didn't identify a single fact that was exculpatory as to Global Payments?

Mr. Engel:   Objection.  Asked and answered.

A    That's correct.

(Dkt. [397-2] at 24:2-17.)  This same issue cropped up again later, when the

CFPB's counsel said, "our view is that there aren't any exculpatory facts.  Your

view is different.  But we're not required beforehand to identify what you may

think is exculpatory and educate a witness to provide that testimony."  (Id. at

132:11-16.)  Similar exchanges occurred during both Pathfinder's deposition,

(see dkt. [397-4] at 80:19-23), and Global Connect's deposition, (see dkt. [418]

at 44:3-14).

    In other words, despite frequently reminding the Court of the immense

volume of documents and facts in this case, the CFPB's position is that not a

single fact is exculpatory to any of the Defendants.  In asserting that position,

the CFPB takes advantage of the Court's instruction to testify about any

exculpatory facts that *it* could reasonably identify.  It makes the CFPB's job

much easier if it simply claims to not be able to identify any such facts.  But the

CFPB's position is not a reasonable one.  Surely, in the mass of evidence in

this case, the CFPB could find *some* exculpatory evidence.  Its insistence that it

could not reflects an unwillingness to comply with the Court's instructions and

a bad faith attempt to frustrate the purpose of Defendants' depositions.  At the

very least, the CFPB's refusal to testify about any exculpatory evidence

amounts to a failure to present a knowledgeable witness.

> B.     The CFPB's Improper Objections

Defendants next argue that the CFPB improperly relied on privilege and

work product objections to prevent the witness from answering questions about

the factual bases of the CFPB's claims.  The CFPB responds that its production

of the memory aids accomplished the task the Court set out—to apprise

Defendants of what they would be up against at trial—and that anything more

amounted to the impermissible marshaling of evidence.

The questions to which the CFPB lodged work product objections are

too numerous to recount.  But here is a selection:

- What facts are you aware of that global Payments had actual knowledge of the allegation in Paragraph 299B of the complaint?  (Dkt. [397-2] at 191:4-9.)
- What facts is the Bureau aware of that Global recklessly disregarded the conduct described in Paragraph 299 of the complaint?  (Id. at 192:17-21.)

- Mr. Godard, on what facts does the CFPB rely to establish that Frontline's acts were unfair?  And maybe the best place to start is, which acts are we talking about?  (Dkt. [397-3] at 44:1-6.)

- Does the CFPB rely on any facts to demonstrate that Frontline's practices actually caused substantial consumer harm?  (Id. at 23:5-9.)

- Does the CFPB contend that Pathfinder knew that UDPS and Credit Power were collecting debts illegally?  (Dkt. [397-4] at 264:9-13.)

One crucial point is that Defendants took the CFPB's deposition in the following order: Global Payments, Frontline, Pathfinder, EMS, and Global Connect.  The April 12 telephone conference occurred immediately after Global Payments' deposition, and thus the Court's instructions during that conference should have guided the parties at the later depositions.

During the telephone conference, Frontline's counsel noted that the CFPB had been asked "what facts does the Bureau rely on to establish that Global Payments knew that the debt collectors were collecting debt illegally,"

18

and that the CFPB had instructed the witness not to answer on the basis of

work product.  (Dkt. [397-5] at 36:1-6.)  He then noted that the CFPB lodged

the same objection to a similar question asking about Global Payments' alleged

reckless disregard of the fact that the debt collectors were collecting debt

illegally.  (Id. at 36:7-13.)  The Court then had the following exchange with the

CFPB's counsel:

> THE COURT:  Mr. Engel, why would the witness . . . not have to
> answer a question for the facts that–on which you're relying to
> establish that there was actual knowledge on the part of Global
> Payments?"
>
> MR. ENGEL:  If a deposition notice had asked for that
> information the witness would have been prepared to provide it.
> But this witness was a fact witness who is not in a position to
> make a distinction between facts that support knowledge versus
> recklessness.
>
> . . .
>
> THE COURT:  To me, to ask, if the claim is that the defendant
> either knew or recklessly disregarded information or facts, if that's
> the contention, then to ask, well, what facts show what they
> actually knew, it seems to me to be a question directed specifically
> at the claim.  It then asks, well, any facts that support that they
> recklessly disregarded.
>
> I realize what you're – I guess what you're saying is that's
> asking the witness to figure out which facts show which of those
> matters.  But those are essential elements of those claims and so if

19

one were going to testify about the facts supporting the claim . . . the fact is that would be a fact that would be relevant.

I don't know that we can plow through every one of these questions but the point is that those are facts – I think what you do is when the question is asked, you look at what it goes to, and if it goes to an element of the claim, then that is a fair question.  If it's asking the witness to analyze it beyond offering the facts then you're getting out of bounds and you're arguably getting over into work product or you're getting into questions that the witness is not qualified to answer and that are subject to legitimate objections.

But so long as the inquiries are into facts that are within the knowledge of the Bureau and that are within the scope of the notice, then I think they've got to be answered.  And the notice did include the facts related to the claims against, and limited to the claims, against that defendant.  And so I think the example that was just given would be one where I would expect the question to be answered.

(Id. at 37:7-41:15.)  On the next day, despite the Court's instructions, when Frontline's counsel asked the very questions he used as examples at the telephone conference, the CFPB asserted the same objection and instructed the witness not to answer.  (Dkt. [397-3] at 19:21-20:8.)

That blatant disregard for the Court's instruction is reflective of a larger problem.  The parties have been litigating issues related to the CFPB's 30(b)(6) depositions for quite some time.  The Court has consistently held that the CFPB

was obligated to sit for those depositions, and that it needed to produce a witness prepared to apprise the Defendants of the facts they would face at trial. But the CFPB has put up as much opposition as possible at every turn. And in doing so, it has recycled many of the same arguments over and over. The deposition transcripts show that the CFPB's approach comes in two forms. The first is to bury the Defendants in so much information that it cannot possibly identify, with any reasonable particularity, what supports the CFPB's claims. The second is to assert privilege objections to questions that the Court has repeatedly ordered to be answered. Neither form is proper, and together they demonstrate a willful disregard of the Court's instructions.

C.      Conclusion

For the reasons above, the Court finds that the CFPB willfully violated the Court's repeated instructions to identify for Defendants the factual bases for its claims and that, in each deposition, it willfully failed to present a knowledgeable 30(b)(6) witness. In light of the CFPB's pattern of conduct in this case, the Court is not optimistic that reopening the depositions would be fruitful. That is especially true given the CFPB's continued use of privilege objections in response to questions that the Court expressly identified as

21

permissible.  Thus, Defendants' motions for Rule 37 sanctions [397, 407, 418] are all **GRANTED**.  Counts VIII, IX, X, and XI are **STRICKEN**.

### III.    Frontline's Motion for Reconsideration [409]

Frontline asks the Court to reconsider its September 1, 2015 denial of Frontline's Motion to Dismiss.  Because Count IX is now stricken, there is no need for the Court to reconsider its earlier ruling.  Frontline's motion is **DENIED as moot**.

### Conclusion

As discussed above, Pathfinder's Motion for Rule 11 Sanctions [352] is **DENIED**, but Defendants' Motions for Rule 37 Sanctions [397, 407, 418] are all **GRANTED**.  Accordingly, Counts VIII, IX, X, and XI of the Complaint are **STRICKEN**, and Frontline's Motion for Reconsideration [409] is **DENIED as moot**.  Having stricken all the claims against them, the following Defendants are hereby **DISMISSED** from this action: Frontline Processing Corp.; Global Payments, Inc.; Pathfinder Payment Solutions, Inc.; Electronic Merchant Systems, Inc.; and Global Connect, LLC.

22

**SO ORDERED**, this _25_ day of August, 2017.

RICHARD W. STORY
UNITED STATES DISTRICT JUDGE