**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>Plaintiff,<br><br>vs.<br><br>UNIVERSAL DEBT & PAYMENT SOLUTIONS, LLC, et al.,<br><br>Defendant. | : | CIVIL ACTION FILE NO.<br><br>1:15-cv-00859-RWS |

**DEFENDANTS SUMANT KHAN AND S PAYMENT PROCESSING & SOLUTIONS, LLC'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants Sumant Khan and S Payment Processing & Solutions LLC ("SPPS") submit this memorandum of law in opposition to Plaintiff Consumer Financial Protection Bureau's Motion for Summary Judgment.

## INTRODUCTION

If there is a single hallmark of this litigation, it is the overreach of Plaintiff, the Consumer Financial Protection Bureau. Overreach, by filing claims against five corporate defendants, claims this Court struck when Plaintiff could not answer their basic discovery questions. Overreach, by including in the list of defendants a

spouse with tenuous connections to Plaintiff's allegations, only to dismiss her on the eve of summary judgment.

And overreach by making claims against Mr. Khan and SPPS that are not supported by evidence. Plaintiff seeks to hold SPPS jointly and severally liable for other defendants' wrongful conduct on the basis of *one single letter* that Plaintiff alleges he sent in November 2011, and the authenticity of which is highly in dispute. On the basis of this single letter, Plaintiff contends that Mr. Khan "participated in or had the authority to control the LLC Defendants' illegal conduct," although Plaintiff's motion does not allege that Mr. Khan *so much as spoke to* any other defendant during the next 54 months.

With respect to SPPS, it is undisputed that Mr. Khan did not form SPPS until April 29, 2014. Nevertheless, Plaintiff seeks to tie SPPS to the "LLC Defendants" and hold it and Mr. Khan accountable for conduct taken by other defendants that occurred years before SPPS's formation.

That is the sum total of Mr. Khan and SPPS's alleged conduct as set forth in Plaintiff's motion. Thus, Plaintiff's motion fails to present undisputed evidence that Mr. Khan and SPPS violated the CFPA or FDCPA, and its motion should be denied in totality.

## ARGUMENT AND CITATIONS OF AUTHORITIES

### I. GENUINE ISSUES OF MATERIAL FACT REMAIN AS TO WHETHER SPPS OR MR. KHAN VIOLATED THE CFPA

Plaintiff's 47-page moving brief devotes 13 pages of those pages to its argument that the "LLC Defendants" violated the CFPA. (*See* Pl. Br. Part III, at 6–19.) As to SPPS, however, Plaintiff simply assumes that SPPS was an "LLC Defendant" and therefore should be responsible for the other defendants' conduct. Indeed, in the course of those thirteen pages, there are exactly ***eight sentences*** that contain specific factual allegations of conduct by SPPS or Mr. Khan. (*See id*. at 7, 8, 9, 10, 17.) SPPS and Mr. Khan, quite simply, are being tarred with the conduct of other individuals with whom they had little or no association.

As demonstrated below, Plaintiff is not entitled to summary judgment against SPPS because, although Plaintiff liberally group-pleads allegations against "the LLC Defendants" participating in a "common enterprise," it is undisputed that SPPS did not even exist during the vast majority of the time when the alleged conduct occurred. Even during the handful of months that SPPS was operating, every fact upon which Plaintiff's motion relies to tie SPPS to a "common enterprise" is either disputed, mischaracterized, or non-existent. But even assuming a common enterprise, Plaintiff has failed to present admissible evidence that ties any conduct by SPPS to a single unlawful consumer financial transactions,

and summary judgment must be denied on that basis alone. Furthermore, as to Mr. Khan personally, Plaintiff has failed to submit admissible evidence to show that he knew or should have known of any wrongdoing by other defendants or that he had any connection to the alleged debt-collection enterprise prior to April 2014.

### A. SPPS Was Not Formed Until April 29, 2014, and Therefore Is Not Implicated in Any Pre-Dating Conduct

While Plaintiff phrases its claims and allegations broadly against "the LLC Defendants," it is nonetheless undisputed that SPPS was not formed until April 29, 2014. (SJ 47;[1] Pl. Stmt. of Facts ¶ 39.) While Plaintiff attempts to circumvent this inconvenient fact by alleging a "common enterprise" with other Defendants, SPPS could not be a part of any common enterprise at a time when it did not exist. Indeed, Plaintiff concedes as much in the Thomas Declaration, which acknowledges that Plaintiff only alleges that SPPS was part of the "second stage of the LLC Defendants' activities." (SJ 4 ¶ 7b & n.2.)[2]

---

[1] Rather than burden the Court with a second set of exhibits, Defendants will refer to the exhibit set filed with Plaintiff's summary judgment motion.

[2] The Thomas Declaration nevertheless then proceeds to misleadingly present the alleged payments processed by SPPS by alleging in its chart in Paragraph 32. There, Thomas breaks the time periods of the alleged payments into the "Full Time Period" and "Second Stage Only." In doing so, the chart alleges that SPPS processed $660,430 in payments during "full time period (March 1, 2011 to March 31, 2015)," thereby implying that SPPS was active for the "full time period." (*Id.*) Of course, the chart then lists the *exact same amount* as processed during the "second time period only." (*Id.*) In doing so, Plaintiff has attempted to give the

Accordingly, by definition, SPPS cannot have liability for any alleged conduct that pre-dates April 29, 2014.

### B. Genuine Issues of Material Fact Exist As to the Existence of a "Common Enterprise"

Because Plaintiff uses the alleged common enterprise to make the bulk of its allegations simply against "the LLC Defendants" as a group, it is worth stepping back to examine the specific evidence that Plaintiff has submitted *as pertaining to SPPS* to allege that SPPS was part of the alleged common enterprise to begin with. When doing so, the Court will find an almost non-existent case against SPPS.

While these Defendants are not aware of any controlling law in this circuit as to what constitutes an common enterprise under the CFPA, courts have had occasion to consider the issue in context of the FTC Act. Typically, before finding a common enterprise, courts require a high degree of contact and coordination between defendants, such as when defendants "(1) maintain officers and employees in common, (2) operate under common control, (3) share offices, (4) commingle funds, and (5) share advertising and marketing." *Fed. Trade Comm'n v. Washington Data Res.*, 856 F. Supp. 2d 1247, 1271 (M.D. Fla. 2012); *see also Fed. Trade Comm'n v. Nat'l Urological Grp., Inc.*, 645 F. Supp. 2d 1167, 1182

---

impression that its allegations against SPPS are more extensive than they actually are.

(N.D. Ga. 2008).

Here, Plaintiff's evidence that SPPS was part of a "common enterprise" with other defendants amounts to a mere five allegations:

- SPPS shared office space with other defendants (Pl. Br. at 8);
- SPPS shared "telephone a technology services" with other defendants (*id.* at 9);
- SPPS "commingled funds" with other defendants (*id.*);
- Defendant Brown "caused SPPS to be created" (*id.* at 7–8); and
- Brown "named himself an 'independent contractor'" of SPPS (*id.*).[3]

As discussed below, each of these allegations is, at best, the subject of a factual dispute, and frequently, Plaintiff has offered no evidence to support them.

**i. Plaintiff cannot show undisputed facts demonstrating that SPPS had shared office space with other defendants**

Plaintiff alleges that "the LLC Defendants operated out of shared office space at 1401 Peachtree St., Atlanta, GA." (Pl. Br. at 8.) To support this claim,

[3]Two additional allegations are directed at conduct Mr. Khan purportedly took in his individual capacity—that he was an "agent" of UDS and helped incorporate and open skip trace accounts for UDPS—prior to the formation of SPPS. These allegations are addressed *infra* in response to Plaintiff's allegations against Mr. Khan. Suffice to say for present purposes, any action Mr. Khan took years before SPPS existed is not evidence that SPPS was part of a "common enterprise" prior to its formation.

Plaintiff has no account statements addressed to SPPS at this address. Plaintiff has no evidence of operations occurring at this address. Plaintiff has no witnesses who have testified that they saw Mr. Khan at this address or SPPS transacting any business at this address. In the voluminous compendium of (otherwise unauthenticated) documents that purport to have been found at that address (*see* SJ 19), not a single document purports to be a business record of SPPS.

This should not be surprising, as Mr. Khan has never even been to 1401 Peachtree Street. (Second Khan Decl. ¶ 5.)

Indeed, of the evidence Plaintiff cites to prove that SPPS operated at this location, the only citation that even purports to apply to SPPS is "SJ 169 at 495." This sole document (which has not been authenticated and should be rejected on that basis alone) purports to be a "Merchant Services Agreement" between SPPS and DBS, but contains a "signature" of Mr. Khan that has obviously been pasted on from some other source. (SJ 169 at 496.) Mr. Khan, moreover, testifies that he in fact did not sign this document (Second Khan Decl. ¶ 13), which is corroborated by the testimony of defendant Mohan Bagga (Bagga Aff. ¶ 3).

**ii. Plaintiff cannot show any facts demonstrating that SPPS shared telephone and technology with other defendants**

Plaintiff alleges that SPPS shared "key operational tools" with other defendants, namely "telephone and information technology services." (Pl. Br. at

9.) Not one piece of the cited evidence so much as *mentions* SPPS or Mr. Khan. (*See* SJ 2 ¶¶ 5, 8, 10, 12, 14; SJ 27 at 189:23 -194:2; SJ 46 at 016, 019–21; *see also* SJ 2 ¶¶ 8, 10 & 12.) The Court therefore should outright reject this claim as a basis to pull SPPS into a "common enterprise."

**iii. Plaintiff cannot show undisputed facts demonstrating that SPPS commingled funds with other defendants**

Plaintiff alleges that SPPS commingled funds with other defendants based on the "cash flow declaration" of CFPB employee Ryan Thomas. (*See* Pl. Br. at 9 & SJ 3 (the "Cash Flow Declaration").) Not only is this declaration inadmissible due to a lack of foundation, it being testimony offered to prove the content of writings, and consisting of inadmissible expert testimony offered by a lay witness,[4] the declaration alleges only that (1) WNYAS wrote a $2,500 check to SPPS (SJ 3 ¶ 20) and SPPS wrote a $149,000 check to WNYAS (*id.* ¶ 22).

Even if admissible, SPPS's two transactions[5] with a single entity simply does not constitute ***SPPS*** "commingl[ing] funds by paying for expenses out of the

[4]*See* Defendants' Response to Plaintiff's Statement of Facts, ¶ 359, submitted concurrently with this memorandum.

[5]Defendants will refer to the checks in the Thomas Declaration as "two transactions"; to be sure, there is no way of determining whether the Thomas Declaration is lumping several smaller transactions together, as Thomas does not submit any original documents, making his testimony inadmissible. Fed. R. Evid. 802, 1002.

WNYAS, UDPS, and UDS bank accounts, interchangeably, and by transferring money between the LLC Defendants at will." (Pl. Br. at 9.) Moreover, nothing in Plaintiff's brief evidences or even so much as suggests that these two transactions were related to the wrongful conduct that Plaintiff has alleged, or that they were not payment for completely legitimate goods or services. To the contrary, Mr. Khan testified at his deposition that he received a $2500 check, dated January 2014, for legal research he performed. (Khan Dep. 80:17–25.) Moreover, the undisputed evidence shows that SPPS had a legitimate contract to process payments for WNYAS, and WNYAS affirmatively represented and warranted that it "[would] not run any payments collected from leads through [SPPS], which is [sic] illegal or will not run any payments through [SPPS's] gateway which are illegal or violative [sic] of the Federal Debt Practices Act."[6] (SJ 48 at 525.)

Accordingly, nothing in Plaintiff's motion suggests that SPPS was not, or had reason to doubt that it was not, providing a legitimate service in exchange for

[6]English is Mr. Khan's second language (Second Khan Decl. ¶ 18.) Although the syntax is flawed, the quoted language SJ 48 at 525 constitutes a clear warranty from Brown that Brown would not engage in any unlawful activities, which was Mr. Khan's understanding of the language when he entered the contract (Second Khan Decl. ¶ 18.) To the extent that this warranty is not clear, Plaintiff's contention that the language evidences Mr. Khan's knowledge that Brown was engaged in unlawful activities would be a dispute of fact that cannot be resolved on Plaintiff's motion.

any funds it received. Plaintiff bears the burden of proof on this issue, but has utterly failed to submit any evidence to substantiate it.

**iv. Plaintiff cannot show undisputed facts demonstrating that SPPS had anything other than a legitimate contractual relationship with Brown or other LLCs**

Beyond the legitimate contractual relationship outlined in the previous section, Plaintiff has not shown undisputed facts demonstrating any other connection to the other defendants. In an attempt to link SPPS to other defendant entities, Plaintiff first asserts that "Khan organized SPPS at Brown's request for the sole purpose of providing Brown with access to a merchant processing account. SJ 55 ¶ 3." The cited document, however, has no "paragraph 3," and nothing in the document suggests that Mr. Khan was acting at "Brown's request." Moreover, Plaintiff's contention is flatly contracted by Mr. Khan's prior testimony and therefore certainly is not undisputed. (*See* Khan Decl. ¶ 4 (DK#450, attach. 2).)

Plaintiff's final attempt to link SPPS to Brown is a citation to interrogatory responses Mr. Khan gave Plaintiff after he received its Civil Investigative Demand. Mr. Khan's full response is as follows:

> Attorney is Ken Sokolov currently. Mr. Marcus Brown is an independent contractor. No documents are destroyed or deleted. Sumant Khan and S Payment Processing & Solutions LLC. is not in debt processing . The contract executed by Mr. Marcus Brown with S Payment

> Processing and Solutions LLC. is attached for your review.

(SJ 56 ¶ 11.) Aside from giving no indication as to what the question was to which Mr. Khan was responding (*see id.*), Plaintiff disingenuously cites this response as evidence that Brown was an "independent contractor" ***for SPPS***. (Pl. Br. 7–8 (citing SJ 56 ¶ 11).) In context, however, it is clear that Mr. Khan simply meant that he had a contract with Brown (Second Khan Decl. ¶ 17), not that Brown was an "independent contractor" as that term is used in the labor and employment law context.

**v. Summary**

Thus, the only undisputed facts that Plaintiff has put into evidence is that SPPS had a contract, beginning April 29, 2014, to perform a legitimate service for Brown and his related companies. There is, by contrast, no evidence that Mr. Khan/SPPS did business at the same location as—or even made a single visit to—Brown's alleged debt-collection boiler room. There is no evidence that he used, helped acquire, or even *touched* the telephone equipment that Plaintiff alleges was the debt collection scheme's "key operational tool[]." (Pl. Br. 9.) There is no admissible evidence of funds changing hands between SPPS and the "LLC Defendants," or any reason to believe that the sole (inadmissible) piece of evidence Plaintiff submitted of transactions between SPPS and WNYAS was not for a

legitimate purpose.

Coming on the heels of over two years of discovery, the lack of evidence connecting SPPS to Plaintiff's alleged expansive "common enterprise" is astounding. But at the very least, there are clear disputes of fact that preclude summary judgment for Plaintiff, and Plaintiff's motion should be denied.

### C. No Undisputed Evidence Supports Plaintiff's Contention That SPPS Processed Payments in Violation of the CFPA

Even if Plaintiff could show admissible, undisputed evidence of a "common enterprise" in which SPPS participated, there is no admissible, undisputed evidence that SPPS knowingly received or processed any proceeds from an unlawful enterprise.

Plaintiff alleges that "Brown used the SPPS merchant account to process approximately $630,000 in payments from consumers from May 2014 through August 2014." (Pl. Br. at 17–18.) The sole basis for this assertion is the Thomas Declaration, which, as discussed above, is inadmissible under the best evidence rule. But even aside from the best evidence rule, the Thomas Damages Declaration makes sweeping, unsubstantiated claims that the payments SPPS processed were "consumer payments." The records cited for these contentions, aside from being hearsay and unauthenticated, do not come close to supporting the contentions that any payments were "consumer payments"; that they were related to illegal debt

collections; or that even if they were, that any specific payment that moved through an SPPS account was the result of unlawful activity. (*See* SJ 4 at attach. A–K.)

Plaintiff, in short, has submitted no evidence that substantiates its claim that any monies received or processed by SPPS was the result of a violation of the CFPA, and Plaintiff's motion should be denied on this additional basis.

### D. Plaintiff Is Not Entitled to Summary Judgment on Its CFPA Claims Against Mr. Khan

#### i. Plaintiff Cannot Show that Mr. Khan Knew or Should Have Known Payments Processed Through SPPS Were the Result of Other Defendants' Wrongful Conduct

As to Mr. Khan individually, Plaintiff's theory of his liability is based on its allegation that Mr. Khan "participated in or had the authority to control the LLC Defendants' illegal conduct and he knew or should have known about that misconduct." (Pl. Br. at 33.) According to Plaintiff, his "*most important* roles" were (1) helping incorporating "two of the LLC Defendants";[7] and (2) establishing merchant processing accounts to collect payments. (*Id.* (emphasis added).)

With respect to incorporating "two of the LLC Defendants," Plaintiff's

[7]While characterizing it as one of Mr. Khan's "most important roles," Plaintiff's brief is silent which two of the "LLC Defendants" he helped incorporate.

If Mr. Khan's conduct in this regard truly was some of his "most important," it surely is unusual that Plaintiff has no evidence that it ever occurred.

statement is supported by no evidence. While it is undisputed that Mr. Khan formed the entity and was its sole member—and Plaintiff has unilaterally defined SPPS as an "LLC Defendant"— Plaintiff's brief appears silent as to the second entity. It is telling, then, that Plaintiff cannot submit *any* evidence as to a fact that it contends is one of Mr. Khan's "most important" contributions to the alleged enterprise.

Second, Mr. Khan did not "assist[] Bagga in applying for a merchant processing account for UDS." (*Id.* at 33.) Plaintiff's only support for this contention is a single, unauthenticated document that purports to be authored by Mr. Khan but was in fact not authored or signed by Mr. Khan (Second Khan Decl. ¶ 7), and if it was used by Brown, Bagga, or others to support applications for merchant accounts, that was done without his knowledge (*id.* ¶ 9).

The fact that this letter has not been (and cannot be) authenticated should end the inquiry, full stop. But even if the Court were to give it any credit, it is worth considering its contents, as there is nothing in the letter that suggests Mr. Khan had any knowledge of the other defendants' alleged wrongdoing. Plaintiff attempts to make the letter sound nefarious by saying it is on the letterhead of a "faked law firm"; to the contrary, that firm—Sharma Sokolov Yaskhi & Ishar, LLP—was an active New York limited liability partnership in 2011 (Second Khan

Decl. ¶ 8), using the space of one of its partners at 1126 Ponce de Leon Avenue (*id.*), and Mr. Khan was a law clerk for the firm after receiving his Juris Doctorate degree from Emory University School of Law (*id.* ¶ 16).[8] Moreover, there is nothing in the letter that suggests Mr. Khan (had he written it) knew that UDS was engaged in any untoward activities. Plaintiff scare-quotes language from the letter that UDS "will collect aggressively from third parties," but "collect[ing] aggressively" is not illegal, wrongful, or even unethical, and nothing in the letter suggests the author's actual or constructive knowledge of FDCPA violations.

This single, unauthenticated letter is the *only evidence* that Plaintiff offers of Mr. Khan's connection to the other defendants and their alleged wrongdoing between 2011 and April 29, 2014, when SPPS was incorporated.[9] Even if such evidence was admissible, this single letter, which does not even evidence actual or constructive knowledge of any wrongdoing, is not sufficient to implicate Mr. Khan in the alleged wrongful conduct of other defendants.

[8] Given these facts, it is entirely reasonable to conclude that Brown (whom Plaintiff alleges at great length to be entirely unethical and unscrupulous) obtained a letter Mr. Khan drafted in the course of his work for the firm and doctored its contents. (Second Khan Decl. ¶ 9; Bagga Aff. ¶ 3.)

[9] Elsewhere, Plaintiff does cite an unauthenticated email from March 13, 2014 that purports to be from Brown, and sent to Mr. Khan unsolicited, attaching court papers that are unrelated to any allegations in Plaintiff's complaint or this motion (SJ 155), which obviously evidences neither (a) any knowledge of Brown's alleged wrongdoing, or (b) alleged wrongdoing occurring between 2011 and 2014.

#### ii. There Are Genuine Issues of Material Fact As to Whether Mr. Khan Participated in the Pre-2014 Alleged Unlawful Conduct

Even if the Court were to credit Plaintiff's evidence that Mr. Khan knew or should have known of other defendants' wrongdoing, there are genuine issues of material fact that prevent summary judgment. As discussed above, the authenticity of the sole piece of evidence that Plaintiff uses to support Mr. Khan's pre-2014 knowledge is in dispute. (Second Khan Decl. ¶ 7.) Furthermore, while elsewhere in its motion, Plaintiff alleges that Mr. Khan was "an agent of UDS," this allegation is, again, supported by a single, unauthenticated (and undated) document (SJ 50), the authenticity of which Mr. Khan specifically disputes (Second Khan Decl. ¶ 12).

Because all evidence of Mr. Khan's participation in pre-2014 conduct is the subject of material factual disputes, Plaintiff's motion should be denied.

#### iii. There Are Genuine Issues of Material Fact As to Mr. Khan's Knowledge of Post-2014 Wrongful Conduct by Other Defendants

Even after the formation of SPPS on April 29, 2014, and SPPS undisputedly began offering processing services to Brown and his related entities, there still are genuine issues of material fact as to whether Mr. Khan knew that Brown was engaged in any wrongdoing and thereby can be said to have participated in or

offered substantial assistance to his alleged CFPA violations.

As discussed above, it is undisputed that Mr. Khan never visited the debt-collection "boiler room." (Second Khan Decl. ¶ 5.) He never personally made any debt collection calls, and he never employed anyone who did. (*Id.*) He did not pay for, help obtain, or use the telephone and technology services that Plaintiff calls the "key operational tool" of the alleged debt collection scheme. (*Id.*) Plaintiff alleges that Mr. Khan "oversaw the distribution of . . . money to the various participants in the scam," but the cited evidence reflects no such thing, only that transactions were made between SPPS and one other entity, (*see* Pl. Br. at 34 (citing SJ 41:23-42:7 [sic]; SJ 3 ¶¶ 8(c), 22)), presumably for what Mr. Khan believed was a legitimate service (Khan Decl. ¶ 5).

Mr. Khan's sole activity was to enter into a contract with Brown to process payments from Brown's business in which Brown specifically warranted that he was not engaged and would not engage in unlawful activity. (SJ 48 at 525–27.) Plaintiff's motion contains no undisputed evidence that Mr. Khan violated the CFPA or should be accountable for the violations of other defendants, and therefore it should be denied.[10]

[10]While Mr. Khan and SPPS did not move for summary judgment on Plaintiff's CFPA claims, as this memorandum details, there are not only disputes of fact that

## II. MR. KHAN AND SPPS WERE NOT "DEBT COLLECTORS" AND ARE NOT SUBJECT TO THE FDCPA

### A. Mr. Khan and SPPS Are Not Directly Liable Under the FDCPA

As demonstrated in Mr. Khan and SPPS's motion for summary judgment [DK# 450], neither of these Defendants was a "debt collector" as that term is used in the FDCPA. *See* 15 U.S.C. § 1692a(6). Nothing in Plaintiff's motion hear alters that analysis.

"The statutory text clearly states that, to qualify as a 'debt collector,' the 'principal purpose' of 'any business' must be 'the collection of any debts' or that the business must 'regularly collect[] or attempt[] to collect . . . debts.'" *Birster v. Am. Home Mortg. Servicing, Inc.*, 481 F. App'x 579, 583 (11th Cir. 2012) (quoting 15 U.S.C. § 1692a(6)).

As shown herein, the "principal purpose" of SPPS was not to collect debt but to process payment card transactions, and nothing in Plaintiff's motion contradicts this fact. Assuming that Brown was a "debt collector" who in turn was doing business with SPPS, nothing in the text of the FDCPA suggests that passive

---

underline key areas of Plaintiff's claims, but Plaintiff apparently is able to muster little-if-any admissible evidence as to key elements of its CFPA claims.

Accordingly, and if useful for the Court, Mr. Khan and SPPS would happily respond to an Order to Show Cause as to why summary judgment should be granted to these Defendants.

control of these sorts of finance functions falls within the definition of a "debt collector," and Plaintiff's brief contains no authority suggesting that it does.

Significantly, a finding that a company that happens to contract with a debt collector *also itself* becomes a debt collector would radically expand the scope of the FDCPA in ways that are not supported by the text of the statute. Unlike the CFPA, the FDCPA contains no provision for "common enterprise" liability, and entities that merely contract with debt collectors cannot be held liable if those debt collectors violate the FDCPA. Indeed, if Plaintiff's argument here is accepted, there is no limiting principal stopping *any* business that contracts with a debt collector from itself becoming a "debt collector" under the FDCPA.

Moreover, nothing in Plaintiff's brief suggests that Mr. Khan and SPPS specifically acted as "debt collectors" for the purposes of the FDCPA. (*See* Pl. Br. at 23.) As shown, Mr. Khan and SPPS made no collection calls, did not employ collection agents, and did not procure office space or equipment to make debt collections. They simply acted under a contract to process payments wherein they had obtained specific warranties of legal compliance.

Accordingly, Plaintiff's motion should be denied, and for these same reasons, these Defendants' motion should be granted.

### B. The CFPA Does Not Make SPPS Liable Under the FDCPA

Plaintiff appears to argue that "SPPS violated . . . the CFPA by violating the FDCPA," (Pl. Br. at 19), relying on a provision of the CFPA providing that "any act or omission in violation of a Federal consumer financial law," including the FDCPA, is also a violation of the CFPA, 12 U.S.C. § 5536(a)(1)(A). But as shown above, the plain text of the FDCPA does not extend to SPPS because SPPS is not defined as a "debt collector." *See* 15 U.S.C. § 1692a(6). Because it is, by definition, not covered by the FDCPA, the CFPA's provisions regarding "violation[s] of Federal consumer financial law" are inapplicable here.

## III. THERE ARE GENUINE ISSUES OF MATERIAL FACT CONCERNING THE ALLEGED AMOUNT OF MONETARY RELIEF PLAINTIFF SEEKS

### A. Whether Mr. Khan Is Jointly Liable for Other Defendants' Conduct Is a Question of Fact

As detailed throughout this memorandum, Plaintiff is not entitled to summary judgment on any of its claims against Mr. Khan or SPPS. Nevertheless, even if Plaintiff could show violations as a matter of law, there still would be significant questions of fact concerning the appropriate amount of monetary relief to which Plaintiff would be entitled.

Plaintiff contends that Mr. Khan should be joint and severally liable for all alleged "consumer harms" "from at least 2011 until the Complaint filing." (Pl. Br.

42.) A finding of joint and several liability typically requires a high degree of coordination and cooperation between the defendants, and evidence that they acted in a coordinated fashion. *See Fed. Trade Comm'n v. Williams, Scott & Assocs. LLC*, 2015 WL 12856779, at *15 (N.D. Ga. Nov. 4, 2015) (holding a defendant joint and severally liable for FDCPA violation when the FTC submitted evidence that he was "an active participant . . . provided skip tracing software and secured office space for" other defendants); *see also Gottlieb v. Green Oil, Inc.*, 1998 WL 469849, at *3 (S.D. Fla. May 8, 1998); *Teng v. Metro. Retail Recovery Inc.*, 851 F. Supp. 61, 67 (E.D.N.Y. 1994).

As Mr. Khan and SPPS have demonstrated herein, however, there is ***no undisputed evidence*** that links him to any alleged misconduct by other defendants that occurred prior to April 29, 2014. But even if the single November 30, 2011 letter (SJ 31) was attributed to him, Mr. Khan is still entitled to have the finder of fact determine if that single letter constitutes sufficient ties to the other defendants' conduct such that joint and several liability is appropriate.

**B. Plaintiff's Purported Damages Calculations Are Unsupported**

As touched upon above, the basis for Plaintiff's alleged damages are (1) the Thomas Cash Flow Declaration (SJ 3) and the Thomas Damages Declaration (SJ 4). As discussed above and in these Defendants' response to Plaintiff's

statement of facts, neither these declarations is admissible. (*See* Def. Resp. to Stmt. of Facts, ¶¶ 355–62.) These declarations, moreover, contain no supporting documentation to show that their calculations are reliable; Plaintiff claims that its calculations "were derived from aggregate merchant account records produced by . . . Global Payments, EMS, MerchantWorth, and PaidSuite," but such underlying "merchant account records" are hearsay and cannot support the Thomas Declarations. Fed. R. Evid. 802. Plaintiff's cannot obtain a money judgment based on such inadmissible evidence, and the Court should deny Plaintiff's motion as to its damages.

## IV. PLAINTIFF IS NOT ENTITLED TO THE ADDITIONAL RELIEF IT REQUESTS

### A. Plaintiff Seeks an Unduly Large Civil Penalty

Plaintiff seeks $750,000 in civil penalties from Mr. Khan and $1,000,000 from SPPS, setting forth its reasoning on page 45 of its memorandum. To support these outrageously large figures, Plaintiff contends that Mr. Khan "participated in the enterprise from 2011 until . . . 2015," a claim that, as exhaustively argued in this response, is not supported by any credible, admissible evidence.

Nor is there evidence that Mr. Khan was "heavily involved" in "incorporating the LLC Defendants" (other than SPPS) or in "managing merchant processing and bank accounts." (Pl. Br. at 45.) Moreover, following an

unsubstantiated allegation that SPPS "collect[ed]" $860,000, Plaintiff asks for a judgment that far exceeds this figure.

Given the limited nature of Mr. Khan's involvement—as simply facilitating payment card transactions—and the limited time period during which he and SPPS did so—which only spanned approximately May through November 2014—even if the Court find it appropriate to grant Plaintiff's motion for summary judgment, Mr. Khan respectfully submits that no civil penalty should be imposed against him or SPPS, or that a separate evidentiary hearing be convened to determine a reasonable amount.

**B. Plaintiff Seeks Unduly Punitive Injunctive Relief**

As set forth herein, the undisputed facts show only that Mr. Khan facilitated payment card transactions under a contract wherein he received representations and warranties of legal compliance with debt collection laws. He never set foot on the premises of the alleged debt-collection enterprise, never made collection calls, and never employed anyone who did so on his behalf. Moreover, he has no alleged history of involvement in the debt collection industry and no alleged history of misconduct.

Given the limited nature of his alleged conduct, (1) barring him for life from a wide swath of activities that, under Plaintiff's proposed order, might be

considered "debt collection"; and (2) imposing substantial record-keeping and compliance-monitoring obligations, is unduly punitive, and the Court should decline to enter Plaintiff's proposed order. To be sure, Mr. Khan is not currently engaged in any conduct covered by the Preliminary Injunction or Plaintiff's proposed order, and has no intention of engaging in the types of conduct in which Brown is alleged to have engaged. (Second Khan Decl. ¶ 19.) Nevertheless, although not presently a licensed attorney, he holds a law degree and in the future may be called upon to perform legal work that Plaintiff might argue fell within the ambit of the Proposed Order, given its expansive scope. The injunction Plaintiff contemplates would unjustly restrict Mr. Khan from earning a living in the future.

Accordingly, to the extent that the Court finds grounds to enter summary judgment, Mr. Khan respectfully requests that any injunction against him be narrowly tailored to the specific conduct in which he is alleged to have engaged.

## CONCLUSION

For the foregoing reasons, Mr. Khan and SPPS respectfully request Plaintiff's motion be denied.

Respectfully submitted this 14th day of December, 2017.

**/s/ Jason R. Edgecombe**
Jason R. Edgecombe
Ga. Bar No. 239606
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
3414 Peachtree Road NE
Suite 1600
Atlanta, Georgia 30326
404-577-6000 (ph)
404-221-6501 (fax)
jedgecombe@bakerdonelson.com

**ATTORNEY FOR DEFENDANTS SUMANT KHAN AND S PAYMENT PROCESSING & SOLUTIONS, LLC**

**LR 7.1 D CERTIFICATION**

Counsel hereby certifies that the foregoing was prepared in Times New Roman, 14-point font, in accordance with LR 5.1 C.

**/s/ Jason R. Edgecombe**
Jason R. Edgecombe

**CERTIFICATE OF SERVICE**

This is to certify that I have this day served a copy of the foregoing upon counsel for Plaintiff via the court's CM/ECF system, which will automatically generate a notice of filing to all attorneys of record.

This 14th day of December, 2017.

**/s/ Jason R. Edgecombe**
Jason R. Edgecombe