**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA,**
**ATLANTA DIVISION**

CONSUMER FINANCIAL PROTECTION BUREAU,

Plaintiff,

v.

UNIVERSAL DEBT & PAYMENT SOLUTIONS, LLC; *et al.*

Defendants.

Civil Action No. 1:15-CV-0859-RWS

**PLAINTIFF CONSUMER FINANCIAL PROTECTION BUREAU'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANTS SUMANT KHAN AND S PAYMENT PROCESSING & SOLUTIONS, LLC**

# TABLE OF CONTENTS

**I. SUMMARY OF ARGUMENT**......1

**II. NO GENUINE ISSUES OF MATERIAL FACT EXIST AS TO THE LIABILTY OF KHAN AND SPPS UNDER THE CFPA AND FDCPA**. ......2

**A. Khan Is A Covered Person Or, At the Very Least, Substantially Assisted Violations of the CFPA, Was Aware of the High Probability of Fraud by Brown and His Companies, and Avoided the Truth.** ......2

**1. Khan formed SPPS as a debt collector, not a "payment processing company."** ......2

**2. Khan knew that Brown and his "affiliated" "debt collection practice companies" were submitting "debt payments" for processing through SPPS's merchant accounts, which Khan opened or ratified.** ......4

**3. Khan and SPPS knowingly or recklessly allowed Brown and his companies to launder consumer debt payments from unlawful debt collection through SPPS's merchant processing accounts, and Khan used the resulting funds for his personal benefit.** ......7

**4. Khan's liability is not limited to the period of SPPS's operation in 2014.** ......10

**B. SPPS and Khan's Effort To Distance Themselves From the Debt Collection Enterprise is Unavailing.** ......12

**C. SPPS and Khan are Liable Under the FDCPA For the Debt Collection Activities That They Contracted For and Supported** ......15

**III. THE BUREAU'S SUMMARY JUDGMENT EVIDENCE IS AUTHENTIC AND ADMISSIBLE.** ......16

**IV. THE MONETARY AND INJUNCTIVE RELIEF PLAINTIFF SEEKS ARE WELL-GROUNDED AND APPROPRIATE**......18

# TABLE OF AUTHORITIES

## Cases


*CFPB v. The Mortgage Law Group, LLP*, No. 14-cv-513-wmc, 2017 WL 3581146 (W.D. Wis. Apr. 19, 2017)....................17

*CNH Capital Am., LLC v. Se. Aggregate, Inc.*, No. 608CV027, 2009 WL 3172353 (S.D. Ga. Oct. 1, 2009) ....................7

*FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564 (7th Cir. 1989) ....................17

*FTC v. Ewing*, No. 2:07-CV-00479-PMP-GWF, 2014 WL 5489210 (D. Nev. Oct. 29, 2014) ....................17

*FTC v. Figgie Int'l, Inc.*, 994 F.2d 595 (9th Cir.1993).................... 17-18

*FTC v. Magazine Solutions LLC*, Civ. No. 7-692, 2009 WL 690613 (W.D. Pa. Mar. 16, 2009) ....................17

*FTC v. Washington Data Res.*, 856 F.Supp.2d 1247 (M.D.Fla. 2012)....................13

*FTC v. WV Universal Mgmt*, 877 F.3d 1234 (11th Cir. 2017) .................... 19-20

*FTC v. Zamani*, No. SACV 09-0977-DOC(MLGx), 2011 WL 2222065 (C.D. Cal. June 6, 2011, as amended Sept. 28, 2011)....................17

*In re Int'l. Mgmt. Assocs., LLC*, 781 F.3d 1262 (11th Cir. 2015) ....................17

*Janetos v. Fulton Friedman & Gullace*, 825 F.3d 317 (7th Cir. 2016)....................16

*Munoz v. Pipestone Fin.*, 397 F. Supp. 2d 1129 (D. Minn. 2005)....................16

*Oakwood Acceptance Corp. v. Ahmad*, 271 Ga. App. 356 S.E.2d 700 (2005) .........7

*Paterson v. Equity Tr. Co.*, No. 11CA009993, 2012–Ohio–860, ¶ 21 (OH Ct. App. 9th Dist. Mar. 5, 2012)....................7

*Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379 (3d Cir. 2000)....16

*Scott v. Harris*, 550 U.S. 372 (2007) ....2, 5

*U.S. v. Dynamic Visions, Inc.*, 220 F.Supp.3d 16 (D.D.C. 2016)....5

**Federal Statutes**

12 U.S.C. § 5536(a)(1)....19

12 U.S.C. § 5536(a)(3).... 19-20

15 U.S.C. § 1692a(6) ....16

**Federal Rules of Evidence**

Federal Rule of Evidence 807....17

Federal Rule of Evidence 1006....17

**Other Authorities**

Securities and Exchange Act of 1934....19

The Consumer Financial Protection Bureau submits this reply in support of its Motion for Summary Judgment (ECF No. 451) (Motion) against Defendants Sumant Khan and S Payment Processing & Solutions, LLC.[1]

## I. SUMMARY OF ARGUMENT

Khan and SPPS try to avoid summary judgment by claiming forgery or inadmissibility as to most of the documentary evidence against them, denying their own inculpatory admissions, and disputing that SPPS and Khan were part of a common debt collection enterprise even though *Khan indisputably signed a contract for SPPS to facilitate collection of "debt payments" for Marcus Brown's "debt collection practice companies."* The Court should reject their effort and enter summary judgment against them. First, Khan and SPPS fail to create a genuine issue of material fact with their flimsy denials of involvement and claims of forgery as to several exhibits.[2] There is ample undisputed evidence that Khan participated in fraudulent debt collection, or at the least facilitated it while knowing that Brown and

[1] Short forms and capitalized terms not defined herein are used as defined in the Motion and its supporting brief (ECF No. 451-1) (SJ Brief). Khan and SPPS's brief in opposition to the Motion is referred to as "Brief" or "Br."

[2] In addition, the Court need not consider Khan's claims of forgery, as well as the other "facts" contained in his declarations submitted in connection with summary judgment, because Khan's declarations are unsigned. The Bureau is filing a notice of objection to his declarations concurrently with this Reply.

his companies were collecting debt, profiting from the proceeds, and recklessly avoiding asking any questions or receiving the details about it.[3] Second, the undisputed facts establish that Khan and SPPS were part of the debt collection enterprise. Third, Khan's blanket attacks on the Bureau's evidence are insufficient to overcome the Bureau's case. Finally, as to remedies, this Circuit's law is clear that Khan and SPPS can be held jointly and severally liable for all the consumer harm inflicted during the respective periods of their involvement, and their remaining arguments are meritless.

## II. NO GENUINE ISSUES OF MATERIAL FACT EXIST AS TO KHAN AND SPPS'S CFPA AND FDCPA LIABILITY.

### A. Khan Is A Covered Person Or, At the Very Least, Substantially Assisted Violations of the CFPA, Was Aware of the High Probability of Fraud by Brown and His Companies, and Avoided the Truth.

#### 1. Khan formed SPPS as a debt collector, not a "payment processing company."

Khan and SPPS assert that Khan organized SPPS to "perform a legitimate service," Br. 11, and ask the Court to conclude that SPPS was an innocent "payment processing company" hijacked by Brown for purposes of illegal debt collection

[3] Where "opposing parties tell two different stories, one of which is blatantly contradicted by the record . . . a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal citation omitted).

through no fault of Khan's. The undisputed evidence shows that the opposite is true: Khan formed SPPS as a debt collector to assist Brown and the other LLC Defendants in the debt collection enterprise. On April 29, 2014, Khan created SPPS and became its sole owner. SJ 47. On the same day, he signed a contract permitting Brown and his "debt collection practice companies" to utilize SPPS's merchant accounts to submit "debt payments" for processing. SJ 48 at 525 (preamble and § 3). Defendants have provided no evidence that SPPS had any business other than Brown and his "affiliated represented" companies. SJ 48 at 525 (§ 1).

Moreover, the contention that SPPS merely "facilitated payment card transactions" for Brown's companies, Br. 23, ignores the undisputed fact that such "facilitation" violated payment industry rules. The practice by which a merchant acts as an intermediary by allowing other entities to submit their transactions for processing through the merchant's account with a payment processor is known as "factoring" or "aggregating." SJ 191 at 950; SJ 192 at 21, 51; SJ 193 at 69:3-24; SJ 194 at 5-1. Factoring is prohibited because it is a form of laundering. *Id.* Factoring facilitates merchants' circumventing the screening process by masking their identity. SJ 195 at 104:1-21. Likewise, SPPS's merchant agreements with PaidSuite and EMS specifically prohibited SPPS from submitting transactions for processing for entities other than itself. SJ 196 at 149 ¶ 1; SJ 197, 54 at 108 ¶ 13 (j), (l).

Khan flouted the rules. Rather than providing a "legitimate service," SPPS engaged in factoring, opening the door for Brown and the other Defendants to conduct their fraudulent debt collection activities through it.

**2. Khan knew that Brown and his "affiliated" "debt collection practice companies" were submitting "debt payments" for processing through SPPS's merchant accounts, which Khan opened or ratified.**

It is undisputed that Khan knew that Brown and his "affiliated" companies were debt collectors and that they would be submitting "debt payments" for processing through SPPS's merchant accounts on behalf of "debt collection practice companies." Khan signed a contract with Brown stating exactly that. It is also undisputed that Khan opened a bank account for SPPS with PNC Bank, SJ 180 at 106:18-24, and that he received monthly statements showing transactions in the account, including the ACH deposits of the debt payments that the debt collection enterprise collected and processed through PaidSuite/DBS and EMS.[4]

Khan now claims that he didn't sign or submit the SPPS merchant processing applications or agreements with Paidsuite/DBS and EMS bearing his signature.

[4] *E.g.*, SJ 184 at 439-440 ("ACH Additions," including "Corporate ACH Merch Dep Ems" and "Corporate ACH Merch Dep Dbs Terminal"); SJ 185 at p.2 (same); SJ 186 at pp. 2-3 (same).

Second Khan Decl. ¶¶ 10-13 as to SJ 50, 54, 169.[5] Defendants apparently want the Court to conclude that they are not responsible for the debt payments processed through PaidSuite/DBS and EMS. The Court should decline the invitation. First, despite Khan's belated claim that he didn't sign or submit SJ 50 or 169 (the PaidSuite/DBS merchant application and agreement), there is no *genuine* dispute that Khan did open SPPS's merchant processing account with PaidSuite/DBS. Khan testified under oath that he opened this account. SJ 180 at 113:7-11 (Khan: "I didn't know who to contact to close it [the merchant account]. I contacted Paid Suite. I was under the impression they were the ones with the application, merchant application, because I opened it with them."); *see* SJ 211. Khan also admitted that he did so at

[5] The Court need not conclude that Khan's denials create a genuine issue of fact, as they are contradicted by the weight of the evidence and his own prior testimony. *Scott v. Harris*, 550 U.S. 372, 380 (2007). Moreover, the signatures on the documents that Khan claims he did not sign are consistent with Khan's signatures on his financial statement submitted to the Bureau and on his Georgia driver's license. *Compare* SJ 54 at 107 (signature page of SPPS application to EMS) *with* SJ 169 at 497 (Khan's signature on driver's license); *compare* SJ 31 (Nov. 2011 letter to Pathfinder) and SJ 169 at 496 (signature page of Vantiv/DBS agreement) *with* SJ 150 at pdf p. 31 (Khan's signature on financial statement). The affidavit submitted with Defendants' Brief by Khan's sometime-tenant Bagga contains no personal knowledge of any alleged forgery of Khan's signature. Bagga states that he saw Brown sign his sister's signature to documents; Sarita Brown has testified that she gave Brown permission to do so. SJ 86 at 36:15-37:5. Finally, the Court needs no handwriting expert's testimony to reject Khan's assertion of forgery. *See U.S. v. Dynamic Visions, Inc.*, 220 F.Supp.3d 16 (D.D.C. 2016) (conclusory allegations of defendants concerning forgery are no bar to summary judgment given other evidence).

Brown's request. SJ 55 at p. 3 (Khan Resp. to Interrog. No. 10) ("Initially, Marcus Brown contacted Sumant Khan and mentioned that he needed a merchant processing account. As a result, the account with PaidSuite was established.").[6] Finally, Khan produced SJ 50, the PaidSuite/DBS account application bearing his signatures, from his own files in response to the Bureau's Civil Investigative Demand (CID). SJ 204 ¶ 13. Second, as to SPPS's application to EMS, despite Khan's contention that he didn't sign SJ 54, he does not deny signing SJ 52, a shorter version of SJ 54, in either his Declaration or response to the Bureau's statement of material undisputed facts. *E.g.*, ECF No. 499 at ¶ 42 (Response).

But even if one were to credit Khan's claim that he did not sign any copies of the EMS merchant documents, that would create no issue of fact because the undisputed evidence shows that Khan and SPPS ratified both the EMS and PaidSuite/DBS merchant applications and agreements. A declaration claiming that a signature on a contract document was forged "does not create an issue of fact regarding its validity when one ratifies the signature, and thus the document, through

[6] Khan now pretends that he never gave this sworn interrogatory response, Br. 10, because the Bureau incorrectly pin cited to SJ 55, citing a "¶" 3 rather than a "p." 3. That simply underscores the eagerness of these Defendants to retreat from their own admissions. Additionally, Khan and SPPS were represented by counsel throughout the Bureau's investigation, SJ 56 ¶ 2.

his or her own actions.'"[7] Khan and SPPS ratified the PaidSuite/DBS and EMS merchant processing agreements by knowingly receiving thousands of dollars in ACH deposits from the two payment processors without question, and by allowing them to deduct payments and fees from SPPS's accounts without complaint.[8] Khan also ratified the agreement by lavishly spending the deposits from the payment processors. *See infra* Part II.A.3.

**3. Khan knowingly or recklessly allowed Brown and his affiliated companies to launder consumer debt payments from unlawful debt collection through SPPS's merchant processing accounts, and Khan used the resulting funds for his personal benefit.**

Khan's knowing or severely reckless behavior is manifested first in the undisputed fact that Khan did not bother to specify in the contract with Brown *which* "debt collection practice companies" would be using SPPS's merchant accounts. SJ 48 at 525; SJ 57 at 63:10-15. Khan simply turned over the use of his company and its

[7] *CNH Capital Am., LLC v. Se. Aggregate, Inc.*, No. 608CV027, 2009 WL 3172353, at *9 (S.D. Ga. Oct. 1, 2009), quoting *Oakwood Acceptance Corp. v. Ahmad*, 271 Ga. App. 356, 357, 609 S.E.2d 700 (2005) (applying Georgia law); *Paterson v. Equity Tr. Co.*, No. 11CA009993, 2012–Ohio–860, ¶ 21 (OH Ct. App. 9th Dist. Mar. 5, 2012) (applying Ohio law). The governing law of SPPS's contracts with EMS and PaidSuite/DBS was Ohio's. SJ 54 at 109 ¶ 27 (Disputes, Governing Law, Jurisdiction, and Venue) (EMS); SJ 169 at 494 ¶ 6 (Miscellaneous) (PaidSuite/Vantiv).

[8] *E.g.*, SJ 184 at 441 ("ACH Deductions" including "Corporate ACH Fees Ems" and "Corporate ACH Merch Chbk Ems"); SJ 185 at 3-4 ("ACH Deductions" including "Corporate ACH Fees Ems" and "Corporate ACH Preauthpmt Dbs Terminal").

merchant processing accounts to any entity that Brown chose. And he did so while knowing that at least one of Brown's affiliated companies, LLC Defendant UDPS, was under investigation by the Bureau for its debt collection practices. In fact, Khan participated in responding, on that Defendant's behalf, to a CID from the Bureau.[9]

Even more telling, the undisputed evidence shows that Khan *avoided* making any inquiry about or review of the transactions that Brown and the LLC Defendants were submitting for processing through SPPS's merchant accounts. The contract between Brown and SPPS required Brown to provide regular reports on the "debt payments being processed." SJ 48 at 525, § 2. Yet Khan testified that Brown never provided those reports to him and despite that failure, Khan did nothing to stop him from using the accounts. SJ 180 at 49:8-49:16, 115:5-13. Khan's failure to exercise basic diligence about the transactions that he was helping Brown and the LLC Defendants transmit through SPPS's accounts was, at a minimum, severely reckless.

In arguing that no unlawful debt collection can be tied to them, Br. 12-13, these Defendants seek to profit from Khan's failure to insist on reporting about the debts collected via SPPS and the enterprise's use of false business names. But the

[9] On March 12, 2014, the Bureau served a CID on LLC Defendant UDPS concerning its debt collection activities. SJ 178. In late March and early April of 2014, Khan communicated with Bureau attorneys on behalf of UDPS to coordinate the scheduling of investigational hearings related to the CID. SJ 179.

undisputed evidence described in the Bureau's opening brief and this Reply shows that Khan and SPPS directly participated in fraudulent debt collection (and at a minimum, that Khan substantially assisted in it). In addition, Defendants' assertion that no evidence proves that SPPS received proceeds from unlawful debt collection asks the Court to ignore the "debt payments" referred to in SJ 48, Brown's inability to identify any creditor that authorized him or an LLC Defendant to collect debt on its behalf, SJ 69 at 39-44, consumers' reports concerning the enterprise's lies and threats, SJ 1A,[10] and Defendants' failure to provide evidence that SPPS had any business other than its contract with Brown. In addition, Khan himself at one point had direct access to data about consumers and their debts. In response to the Bureau's CID, UDPS produced a spreadsheet authored by "Sumant" that contained a list of approximately 9,500 consumers, their social security numbers, contact information, and details of their alleged debts. SJ 14 ¶ 16; SJ 209.

Khan and SPPS also cannot rely on the representation from Brown in the contract that Brown would not "run" illegal payments through "SPPS's gateway," Br. 9, 17, to excuse them from the consequences of their actions. SPPS and Khan both have an independent and non-delegable duty not to violate the CFPA primarily or by substantial assistance, regardless of what a private contract might warrant. Khan's

[10] SJ 1 has been amended, as described in SJ 1A, which replaces SJ 1.

insistence that Brown provide such a representation only supports an inference that Khan recognized a high probability of fraud, particularly given Khan's contemporaneous awareness that one of Brown's companies, UDPS, was under investigation by the Bureau for its debt collection practices.[11]

Finally, Khan raised no issues of forgery or lack of authorization when he went on a spending spree with the consumer debt payments in SPPS's bank account. He admitted to using the SPPS debit card to pay for thousands of dollars in personal expenses.[12] The vast majority of these purchases were made after July 24, 2014, the date Khan was served with the Bureau's CID directed to him. SJ 180 at 108:23-109:9; SJ 188. Khan knew the jig was up, and he quickly drained SPPS's bank account for his own benefit.

#### 4. Khan's liability is not limited to the period of SPPS's operation in 2014.

[11] Contrary to Defendants' statement, Br. 9, WNYAS never represented anything to Khan or SPPS in the contract because WNYAS was not a signatory to the contract. Nor were any other of Brown's unspecified "affiliated" companies. Only Brown signed. *See* SJ 48 at 527. Defendants' attempted rewriting of the contract is contradicted by the facts.

[12] These include five plane tickets for personal flights to India totaling nearly $7,000; rent and renter's insurance for his residence; designer clothing; electronics; personal auto and health insurance premiums; and his personal cable bill. SJ 180 at 104:5-107:17; 108:23-111:15; SJ 186; SJ 185; SJ 184; SJ 183; SJ 182; SJ 181.

Khan's liability is not limited to the period in which SPPS was operating, contrary to the arguments in the Brief. *See* Br. 13-15, 16-17. In January 2012, Bagga listed Khan as a reference on UDPS's application for an account with CBC Innovis, a skip tracing service. SJ 22 at 014. Notably, Bagga's Affidavit does not deny using Khan as a reference for the CBC Innovis (CBC) account. *See* Bagga Aff. ¶ 3. The phone number and email address listed for Khan in the application match those in the financial statement that Khan submitted to the Bureau in this matter. SJ 22 at 014; SJ 150 at 1. The CBC internal notes summarizing its call with Khan indicate that he was with the "Smith White" law firm, which is the name of a law firm that Khan worked for. SJ 151 at 249; SJ 180 at 10:12-17. Given that CBC was provided with Khan's correct phone number and email address, Khan's carefully-worded assertion that he did not "*consent to be listed* as a 'business reference' on this document," Second Khan Decl. ¶ 14 (emphasis added), should be taken literally. He does not deny that he spoke to CBC or say that the statements attributed to him are false, and so he does not raise a genuine dispute that he served as a reference for UDPS.

Khan also claims to have nothing to do with the Nov. 2011 letter to Pathfinder (he asserts this document too was forged) seeking an additional processing account for Credit Power. But the letterhead is that of his former employer, SJ 150 at pdf p. 2, and among the common enterprise, Khan was the person with the most ready access

to the letterhead of his employer. Further, Bagga's Affidavit stating that Khan "never assisted me or provided any assistance in the approval of the Pathfinder merchant account" does not contradict that Khan assisted *Brown* with attempting to open Credit Power's second account.

Khan continued in this role, assisting the enterprise independent of the assistance he provided through SPPS. Khan participated in responding to the Bureau's CID directed to UDPS in late March and early April of 2014. *See supra* n.9. In July 2014, Khan emailed Brown a PowerPoint deck summarizing "Debt Collection laws in 50 states and alternative strategies of communication." SJ 153. Khan also promised Brown he would provide "more when I meet with you." *Id.* And in October 2014, Khan sent Brown additional information on the bonding and licensing requirements for debt collectors in North Carolina. SJ 152.

### B. SPPS and Khan's Effort To Distance Themselves From the Debt Collection Enterprise is Unavailing.

Khan and SPPS pick at pieces of the Bureau's evidence to distract from the inculpating whole of the Bureau's case, taking the position that the Bureau must prove their direct contact with every aspect of the common enterprise in order to establish their liability. *See* Br. 5-11. That is not the law, and the undisputed evidence establishes Khan's and SPPS's direct liability under the CFPA and FDCPA, and at a

minimum, Khan's substantial assistance under the CFPA. Additionally, the Court should hold that the common enterprise doctrine applies to SPPS.[13] First, the undisputed evidence shows common control as well as coordination and allocation of debt collection activities. Khan's signing of a contract with Brown on SPPS's behalf allowing any "debt collection practice company" of Brown's choice to collect "debt payments" through SPPS's merchant accounts evidences Khan's turning over control of SPPS's debt collection to Brown. A script for debt collector employees of the LLC Defendants states that consumers should be told their payments will be "handled" by "S Payment Processing." SJ 19 at 909. Khan admits that Brown was an "independent contractor" to SPPS, SJ 56 ¶ 11,[14] and that WNYAS was as well. *Id.* ¶ 2. In addition, Khan admits that he was compensated by WNYAS, SJ 55 at 515 (Resp. to Interrog.

---

[13] *FTC v. Washington Data Res.*, 856 F.Supp.2d 1247, 1272 (M.D.Fla. 2012) ("Accordingly, an act by one entity constitutes an act by each entity comprising the 'common enterprise.'") *See* SJ Br. 6-7.

[14] In yet another change of story, Khan now claims that he didn't mean what he wrote in his sworn responses to the Bureau's CID interrogatories and blames the Bureau for presenting his answer without "context." Br. 10-11. Khan doesn't provide any context, however; he just asserts that what he meant to say was he had a contract with Brown. *Id.* The context for Khan's answer was the following interrogatory: "Identify all your [defined as Khan's or SPPS's] employees, agents, representatives, consultants, attorneys, accountants, independent contractors, and other persons working for or on behalf of the foregoing who may have knowledge or information about your debt collection practices." SJ 188 at p. 2 (Defin. N) and p. 6 (Interrog. No. 11). Khan knew what his response meant when he swore to it under penalty of perjury.

No. 4) and that he caused SPPS to pay WNYAS. SJ 208 at 115:14-116:22. Khan admits he accepted payments from UDPS, allegedly because Bagga stayed at Khan's apartment. SJ 55 at 515 (Resp. to Interrog. No. 4). Those admissions show the very commingling of expenses and payments among the LLC Defendants that Khan and SPPS deny.

Khan and SPPS claim that there is no evidence that SPPS shared the office space at 1401 Peachtree Street with the other LLC Defendants, Br. 6, but they ignore the undisputed fact that in SPPS's merchant application to PaidSuite/DBS, which Khan produced, SPPS listed 1401 Peachtree Street as its business address. Twice. SJ 50 at 528, 529. Moreover, SPPS identified its landlord as the same entity that appeared on the lease that Brown signed at 1401 Peachtree Street. SJ 149 at 1 (pdf p. 2) (name of landlord is Midtown Two Tso, LLC); SJ 50 at 529 (SPPS's landlord identified as "Mid Tso").

As to the evidence of commingling funds, Khan and SPPS flail at the declaration of the Bureau's investigator Ryan Thomas, SJ 3, calling it inadmissible, Br. 8, but none of their objections have merit. Mr. Thomas's declaration is a permissible summary of voluminous evidence under Federal Rule of Evidence 1006, as discussed below. The evidence summarized in SJ 3 ¶¶ 20, 22, and Khan's testimony, SJ 208 at 115:14-116:22, show not only that WNYAS and SPPS wrote

multiple checks to each other, but that they did so without evidence of any payments to creditors for the alleged debts these companies were collecting. In addition, Khan and SPPS fail to address the undisputed fact that SPPS also wrote checks to Brown, SJ 3 ¶ 8(c), a fact entirely inconsistent with the notion that SPPS was returning consumers' debt payments to one of Brown's companies for payment to creditors.

Khan asserts that the check from WNYAS to SPPS for $2500 was for "legal research he performed," Br. 9, but that simply begs the question why SPPS, the alleged "payment processing company," received the check instead of Khan, the alleged legal researcher. Khan gave another explanation for the $2,500 deposit at his deposition; namely, that it was to be a reserve in the event there were consumer chargebacks deducted from SPPS's bank account. SJ 180 at 93:20-94:21. No matter which, if any, of Khan's stories about this money is true, they both show coordination and commingling of funds within the common enterprise. The undisputed facts establish that SPPS was a part of the common enterprise.

### C. Khan and SPPS Are Debt Collectors Liable For Their Role in the Enterprise's Unlawful Debt Collection Activities.

Khan and SPPS argue that they are not debt collectors because they made no collection calls and hired no employees. Br. 19. In other words, they claim that it is not an FDCPA violation to participate in a fraudulent debt collection scheme and collect hundreds of thousands of dollars in payments provided someone else makes

the threatening and false calls. Not so. As the Bureau argued in its opening brief, Khan and SPPS are debt collectors under both parts of the FDCPA's definition.[15] Debt collectors cannot escape liability under the FDCPA by outsourcing certain functions to third parties, including communicating with consumers.[16] Here, Khan and SPPS contracted with Brown and his "affiliated companies" to make the fraudulent debt collection calls that filled SPPS's bank account with consumer payments. They are liable for those unlawful calls.

## III. THE BUREAU'S SUMMARY JUDGMENT EVIDENCE IS AUTHENTIC AND ADMISSIBLE.

Khan and SPPS assert blanket objections to the authenticity or admissibility of nearly all of the Bureau's summary judgment exhibits relating to them, even where

[15] SJ Br. 19, 33. *See also* 15 U.S.C. § 1692a(6) (defining "debt collector" to include persons who collect debt "indirectly"); *Munoz v. Pipestone Fin*., 397 F. Supp. 2d 1129, 1133 (D. Minn. 2005) (company that communicated with consumer only through letters sent by its contractor was a "debt collector" under FDCPA because it "use[d] instrumentalities of interstate commerce or the mails in" a business whose principal purpose was debt collection).

[16] *E.g.*, *Janetos v. Fulton Friedman & Gullace*, 825 F.3d 317, 325 (7th Cir. 2016) ("A debt collector should not be able to avoid liability for unlawful debt collection practices simply by contracting with another company to do what the law does not allow it to do itself."); *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 405 (3d Cir. 2000) ("an entity that is itself a 'debt collector' - and hence subject to the FDCPA - should bear the burden of monitoring the activities of those it enlists to collect debts on its behalf").

Khan himself produced the documents. Their objections are meritless. First, Defendants fail to assert a specific reason to question the authenticity of any of the documents. Second, Defendants object to declarations submitted by the Bureau (*e.g.*, SJ 1-4), but they are summaries of voluminous evidence permitted under Federal Rule of Evidence 1006;[17] the Bureau addresses Defendants' blanket evidentiary objections to the underlying documents in SJ 204, and the Bureau is ready to produce the underlying documents to the Court if the Court desires.

The consumer declarations and complaints summarized in SJ 1A are admissible pursuant to case law admitting such declarations and complaints under Federal Rule of Evidence 807's residual exception to hearsay.[18] The declarations and

---

[17] *In re Int'l. Mgmt. Assocs., LLC,* 781 F.3d 1262, 1266 (11th Cir. 2015) (describing requirements for admitting such summaries); *Peat, Inc. v. Vanguard Research Inc*., 378 F. 3d 1154, 1159-60 (11th Cir. 2004) (same). *See also Nichols v. Upjohn Co.*, 610 F.2d 293, 294 (5th Cir. 1980) (affirming admission of testimony as summary of voluminous evidence under Fed. R. Evid. 1006 over objection that the testimony failed to satisfy the "best evidence rule" under Fed. R. Evid. 1002).

[18] *FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 608 (9th Cir.1993); *FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564, 576 (7th Cir. 1989); (*CFPB v. The Mortgage Law Group, LLP*, No. 14-cv-513-wmc, 2017 WL 3581146, at *2 (W.D. Wis. Apr. 19, 2017); *FTC v. Ewing*, No. 2:07-CV-00479-PMP-GWF, 2014 WL 5489210, at *2 (D. Nev. Oct. 29, 2014); *FTC v. Zamani*, No. SACV 09-0977-DOC(MLGx), 2011 WL 2222065, at *1 (C.D. Cal. June 6, 2011, as amended Sept. 28, 2011); *FTC v. Magazine Solutions LLC,* Civ. No. 7-692, 2009 WL 690613, at *3 (W.D. Pa. Mar. 16, 2009). Also, the complaints are authenticated. *See* SJ _ (BBB Declaration regarding complaints received); SJ 210 at 15-16 (Global Payments' Resp. to Interrog. No. 4 describing

complaints are evidence of material facts, namely the LLC Defendants' threats and misrepresentations to consumers, and consumer harm. The declarations are factual reports made under penalty of perjury from personal knowledge. The complaints too possess indicia of trustworthiness, having been submitted unsolicited by geographically diverse, unaffiliated, and identifiable consumers who described the LLC Defendants' debt collection practices based on their personal knowledge. Admitting this evidence would serve the interests of justice by making relevant evidence admissible. *Figgie Int'l*, 994 F.2d at 609. The Defendants had adequate notice of the declarants and complaints as they were disclosed during discovery. SJ 204 ¶¶ 17-18.

## IV. THE MONETARY AND INJUNCTIVE RELIEF PLAINTIFF SEEKS ARE WELL-GROUNDED AND APPROPRIATE.

Khan argues that he cannot be held jointly and severally liable for the damages inflicted by the debt collection scheme because a "finding of joint and several liability typically requires a high degree of coordination and cooperation between the defendants." Br. 21 (citing cases). Defendants substantially overstate what the case law requires. Khan provided a "front" (SPPS) for the debt collection enterprise, distributed proceeds from its unlawful collection, and furthered its activities both

---

chargeback advice notices); SJ 70 at 29:23 – 30:11; 41:5 – 22 (Pathfinder testimony regarding chargeback advice notices).

before and after SPPS was formed. Apportionment of damages among the enterprise's participants is not possible. SJ Br. 41-43.

But even if the Court finds that Khan only provided substantial assistance to the enterprise, the Eleventh Circuit has held that a defendant who substantially assists violations of federal consumer protection laws can be held jointly and severally liable for those violations—and the full amount of unjust gains—even if that defendant was not deemed part of the "common enterprise" that committed the primary violations. *FTC v. WV Universal Mgmt*, 877 F.3d 1234, 1240 (11th Cir. 2017). In *WV Universal*, the defendant payment processor was found liable for violations of the Telemarketing Sales Rule (TSR) and the FTC Act by providing merchant processing accounts to a fraudulent enterprise, TYS, "despite a slew of red flags indicating TYS was engaged in a fraudulent telemarketing scheme," and the court ruled the payment processor was jointly and severally liable for the total amount of unjust gains to *all* the defendants. *Id*. at 1239, 1243-44.

Similar to section 5 of the FTC Act, the CFPA prohibits unfair, deceptive, and abusive acts and practices, 12 U.S.C. § 5536(a)(1). And similar to the TSR, the CFPA includes a substantial assistance provision, 12 U.S.C. § 5536(a)(3), which is construed by this Court *in pari materia* with section 20(e) of the Securities and Exchange Act of 1934. ECF No. 146 (Order) at 16-22. Those principles, and the plain

text of the CFPA, make clear that a provider of substantial assistance should be held liable "to the same extent" as a principal violator. 12 U.S.C. § 5536(a)(3); *WV Universal Mgmt.*, 877 F.3d at 1241-42.[19]

Next, Khan argues that the proposed injunctive relief is too severe because he intends to become a barred lawyer in the U.S. and the injunction might restrict his future income. Br. 23-24. Khan's intention to become a U.S. barred lawyer, where he can use his license to collect on consumer debts, and also practice law without supervision, weighs in favor of rather than against the requested injunction. Khan participated in fraudulent debt collection. Khan violated industry rules and breached the terms of SPPS's contracts with payment processors by allowing factoring. He exhibited knowing or severely reckless behavior in allowing unspecified "debt collection practice companies" to utilize SPPS's merchant processing accounts. He allowed SPPS to take more than $630,000 in consumer payments, and then he shamelessly spent thousands of dollars of those payments on personal luxuries. The Court should approve the injunction as proposed. For the same reasons, the Court should approve the civil penalties proposed against Khan and SPPS.

[19] The Bureau has differentiated between the time Khan was involved in the illegal scheme - late 2011 through March 2015 - and the shorter period SPPS was involved - April 29, 2014 through March 2015. SJ 4 at p. 3 fn. 2 and ¶¶ 32-38. As a result, Khan is jointly and severally liable for $5,261,484 and SPPS for $1,539,858. *Id*. ¶ 36.

Dated: January 30, 2018

Respectfully Submitted,

Attorneys for Plaintiff
Consumer Financial Protection Bureau:

KRISTEN A. DONOGHUE
Enforcement Director

DAVID RUBENSTEIN
Deputy Enforcement Director

THOMAS KIM
Assistant Deputy Enforcement Director

*/s/ Mary K. Warren*

Mary K. Warren (NY bar #2557684)
John Thompson (NM bar #139788)
Rebecca Coleman (MD)
Maureen McOwen (DC bar # 976749)
ENFORCEMENT ATTORNEYS
1700 G Street NW
Washington, DC 20552
Phone (Warren): 202-435-9284
Phone (Thompson): 202-435-7270
Phone (Coleman): 202-435-7541
Phone (McOwen): 202-435-9553
Email: Mary.Warren@cfpb.gov
Email: John.Thompson@cfpb.gov
Email: Rebecca.Coleman@cfpb.gov
Email: Maureen.Mcowen@cfpb.gov
Fax: 202-435-7722

And

Local Counsel

KURT ERSKINE, FIRST ASSISTANT U.S. ATTORNEY

LENA AMANTI
ASSISTANT U.S. ATTORNEY
Georgia Bar No. 666825
600 Richard B. Russell Federal Bldg.
75 Spring Street, S.W.
Atlanta, GA 30303
Telephone: (404) 581-6225
Facsimile: (404) 581-6163
Email: lena.amanti@usdoj.gov

CERTIFICATE OF COMPLIANCE

The undersigned attorney hereby certifies, pursuant to LR 7.1.D, that the foregoing document was prepared in Times New Roman 14 point font.

*/s/ Mary K. Warren*
____________________________ Dated: January 30, 2018
Mary K. Warren
Enforcement Attorney

CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on this day a true and correct copy of the foregoing document was filed with the clerk of court using the CM/ECF system, which will automatically send email notification of the filing to all attorneys of record, and was mailed by United Parcel Service to the following defendants that do not have access to the CM/ECF system:

Mohan Bagga
6375 Whitestone Place
Duluth, GA 30097

Sarita Brown
1440 Jefferson Ave., #233
Buffalo, NY 14208-1827

Tasha Pratcher
142 Stratford Avenue
Buffalo, NY 14216

*/s/ Mary K. Warren*
____________________________ Dated: January 30, 2018
Mary K. Warren
Enforcement Attorney