**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA,**
**ATLANTA DIVISION**

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>Plaintiff,<br><br>v.<br><br>UNIVERSAL DEBT & PAYMENT SOLUTIONS, LLC; *et al.*<br><br>Defendants. | Civil Action No. 1:15-CV-0859-RWS |

**PLAINTIFF CONSUMER FINANCIAL PROTECTION BUREAU'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT MOHAN BAGGA**

# TABLE OF CONTENTS


I. SUMMARY OF ARGUMENT ............................................................. 1

II. NO GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO BAGGA'S LIABILITY UNDER THE FDCPA AND CFPA ................... 2

A. The admitted facts alone warrant summary judgment against Bagga because they establish that he was a debt collector subject to the FDCPA, that his knowledge and participation make him liable for the debt collection enterprise's unlawful practices, and that he is a covered person who violated the CFPA directly or, at the very least, substantially assisted violations of the CFPA by others ............. 3

1. Bagga's primary FDCPA and CFPA liability................................. 4

2. Bagga's CFPA liability for substantial assistance ........................... 8

B. Bagga's disputes as to the remaining facts do not present genuine or material issues of fact precluding summary judgment against him .......................................................................................... 9

1. Bagga's denials of his personal involvement in debt collection are directly contradicted by his own prior testimony....................... 9

2. Bagga's forgery claims are either directly contradicted by his prior sworn testimony or do not present a genuine issue of fact ... 11

III. THE BUREAU'S SUMMARY JUDGMENT EVIDENCE IS AUTHENTIC AND ADMISSIBLE ...................................................... 15

# TABLE OF AUTHORITIES

## Cases

*CNH Capital Am., LLC v. Se. Aggregate, Inc.*, No. 608CV027, 2009 WL 3172353 (S.D. Ga. Oct. 1, 2009) ....................13

*FTC v. Lalonde*, 545 F. App'x 825 (11th Cir. 2013)....................3, 12

*FTC v. Nat'l Urological Grp., Inc.*, 645 F. Supp. 2d 1167 (N.D. Ga. 2008) ............3

*FTC v. Williams, Scott & Assocs., LLC*, 679 F. App'x 836 (11th Cir. 2017) ...........2

*FTC v. Windward Mktg. Ltd.*, No. 1:96-cv-615F, 1997 WL 33642380 (N.D. Ga. Sept. 30, 1997) ....................7

*Munoz v. Pipestone Fin.*, 397 F. Supp. 2d 1129 (D. Minn. 2005)....................7

*Oakwood Acceptance Corp. v. Ahmad*, 609 S.E.2d 700 (Ga. Ct. App. 2005) ........13

*Paterson v. Equity Tr. Co.*, No. 11CA009993, 2012–Ohio–860 (Ohio Ct. App. Mar. 5, 2012)....................13

*Scott v. Harris*, 550 U.S. 372 (2007) ....................1

*SEC v. Apuzzo*, 689 F.3d 204 (2d Cir. 2012)....................3

## Federal Statutes

12 U.S.C. § 5536(a)(3)....................9

15 U.S.C. § 1692a(6) ....................7

## Federal Rules of Civil Procedure

Fed. R. Civ. P. 56(c)(1)(A) ....................11

## Local Rules

Local Rule 56.1(B)(2)(a)(2)....................4, 11

Plaintiff submits this reply in support of its Motion for Summary Judgment (ECF No. 451) (Motion) against Defendant Mohan Bagga.[1]

## I. SUMMARY OF ARGUMENT

Bagga's key role in the LLC Defendants' unlawful debt collection enterprise is highlighted by the numerous admissions in his Response to Consumer Financial Protection Bureau's Statement of Material Facts (ECF No. 517) and in his prior sworn testimony. Indeed, Bagga's admissions are independently sufficient to establish his liability under the CFPA and FDCPA, as they show that Bagga personally involved himself with the unlawful collection enterprise and, through his involvement, sought to make it succeed.

As for the facts Bagga does dispute, his denials are either contradicted by his prior testimony or are immaterial. For example, Bagga claims that he never performed debt collection himself and that his signatures on important documents were forged, but those claims are belied by his inculpatory prior testimony.[2] That is the same testimony in which Bagga acknowledges that, although he personally

---

[1] Short forms and capitalized terms not defined herein are used as defined in the Motion and its supporting brief (ECF No. 451-1) (SJ Brief).

[2] Where "opposing parties tell two different stories, one of which is blatantly contradicted by the record . . . a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

received complaints from consumers trying to recover the money the LLC Defendants took from them through deceit and intimidation, he nevertheless continued to participate in the collection enterprise. Finally, Bagga's objections to the Bureau's evidence are unfounded. The Court should hold Bagga liable for this years-long, nationwide debt collection scheme that harmed thousands of consumers.[3]

## II. NO GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO BAGGA'S LIABILITY UNDER THE FDCPA AND CFPA.

The Court should enter summary judgment against Bagga for violating the FDCPA (Counts I, II, and III) because there is no material dispute that: (i) UDPS and Credit Power, the two LLC Defendants that Bagga owned or managed as an officer, engaged in abusive or deceptive debt collection activities in violation of the FDCPA; (ii) Bagga participated directly in the unlawful practices or had authority to control them; and (iii) Bagga knew or should have known about the illegal activities. *FTC v. Williams, Scott & Assocs., LLC*, 679 F. App'x 836, 839 (11th Cir. 2017); SJ Br. 27.

The Court should also enter summary judgment against Bagga for principal violations of the CFPA (Counts V and VI) because there is no material dispute that: (1) UDPS and Credit Power engaged in deceptive or unfair acts or practices in

[3] Defendant Bagga's opposition brief is also improperly filed on behalf of LLC Defendant UDPS. ECF No. 518. The Court has previously entered an order of default against UDPS. ECF No. 199. Therefore, the Bureau treats Bagga's filing as an opposition brief on behalf of Bagga only.

violation of the statute; (2) Bagga participated directly in the deceptive or unfair acts or practices or had authority to control them; and (3) Bagga had actual knowledge of material misrepresentations, reckless indifference to the truth or falsity of such representations, or an awareness of a high probability of fraud along with an intentional avoidance of the truth. *FTC v. Lalonde*, 545 F. App'x 825, 837, 839 (11th Cir. 2013); *FTC v. Nat'l Urological Grp., Inc.*, 645 F. Supp. 2d 1167, 1207 (N.D. Ga. 2008), *aff'd* 356 F. App'x 358 (11th Cir. 2009); SJ Br. 24.

In addition, Bagga should be held liable for substantial assistance violations of the CFPA (Count VII) because there is no material dispute that Bagga provided substantial assistance when he "in some sort associated himself with the [debt collection] venture," "participated in it as in something that he wished to bring about," and "sought by his action to make it succeed"; and he had actual knowledge of, or was severely reckless with regard to, the deceptive or unfair conduct. Order on Pathfinder's Mot. to Dismiss (ECF No. 149) at 38 (*quoting SEC v. Apuzzo*, 689 F.3d 204, 212 (2d Cir. 2012)); SJ Br. 26.

### A. The admitted facts alone warrant summary judgment against Bagga because they establish that he was a debt collector subject to the FDCPA, that his knowledge and participation make him liable for the debt collection enterprise's unlawful practices, and that he is a covered person who violated the CFPA directly or, at the very least, substantially assisted violations of the CFPA by others.

The Bureau's statement of material undisputed facts (ECF No. 452) consists of

362 paragraphs, nearly 200 of which Bagga does not dispute. Those admitted facts are sufficient to find Bagga liable under the FDCPA and CFPA. Thus, the Court need not reach Bagga's purported disputes as to the other facts; it should award judgment for the Bureau on the basis of the admitted facts alone.[4]

**1. Bagga's primary FDCPA and CFPA liability**

Focusing exclusively on facts Bagga has agreed to and not challenged on any ground, the record establishes that:

(1) UDPS was a debt collector. Specifically, Bagga admits that:

- UDPS, through Brown, bought and sold debt portfolios and payday loan leads (Def. RSMF ¶ 265);
- UDPS used a skip-tracing account with CBC Innovis to obtain consumer contact information (Def. RSMF ¶¶ 8, 124-25);
- UDPS broadcast messages to consumers through Global Connect robocalls (Def. RSMF ¶ 111-12);
- UDPS's robocalls through Global Connect used scripts written by Brown, an officer of UDPS (Def. RSMF ¶¶ 10, 112);

[4] This Part discusses only the Bureau's proposed facts that Bagga admitted or did not dispute, as set forth in Bagga's Response to Consumer Financial Protection Bureau's Statement of Material Facts, ECF No. 517 (Def. RSMF). *See, e.g.*, Def. RSMF ¶¶ 18, 19 (admitted), 50, 51 (not disputed), 10, 12 ("agreed"). The Bureau argues that Bagga responded to other proposed facts with invalid evidentiary objections or denials that did not comply with Local Rule 56.1(B)(2), and contends that those facts should be deemed admitted as well, as set forth in the Bureau's Reply Statement of Material Undisputed Facts (Reply Statement of Facts) filed with this Reply Brief.

- The LLC Defendants, including UDPS, used a Ring Central account for "LRS Litigations," 22 different Ring Central phone numbers, five Vonage America accounts, and four Verizon Wireless accounts to contact consumers to collect purported debts (Def. RSMF ¶¶ 234-38); and

- UDPS's payment processing accounts with Pathfinder, Frontline, and EMS were used to take and process consumers' credit card and debit card payments (Def. RSMF ¶ 128).

(2) UDPS engaged in debt collection practices that the FDCPA prohibits as deceptive or abusive practices. Specifically, Bagga admits that:

- UDPS's robocalls through Global Connect threatened consumers with legal action or asserted that legal action had been taken (Def. RSMF ¶¶ 112-17);

- The LLC Defendants' employees claimed to be "litigators" (Def. RSMF ¶ 339);

- Training materials and scripts for the LLC Defendants' collection agents instructed them: "Whatever balance is on the screen, add $1,000" (Def. RSMF ¶ 346); and

- Consumers complained of and reported receiving collection calls in which the collector:
    - posed as a police detective (Def. RSMF ¶ 333);
    - told them they had to pay quickly to avoid consequences such as legal action or arrest (Def. RSMF ¶¶ 334-35);
    - used false names or spoofing (Def. RSMF ¶¶ 336-39);
    - misrepresented that the consumer owed the debt or that the entity had the right to collect on the debt (Def. RSMF ¶¶ 340-41);
    - failed or refused to provide a written confirmation of the amount of the debt and the name of the creditor the debt was owed to (Def. RSMF ¶¶ 342-45); or
    - added extra charges to the alleged debt (Def. RSMF ¶ 347).

(3) Bagga participated directly in UDPS's activity and had the right to control it, and acted as a debt collector. Specifically, Bagga admits that:

- He organized UDPS, served as an officer of UDPS, and managed UDPS (Def. RSMF ¶¶ 3, 138-39);

- He controlled the UDPS bank account and handled UDPS's accounting (Def. RSMF ¶¶ 140, 223), including making payments to Brown (*id*. ¶¶ 134, 140);

- He opened UDPS's payment processing account with Pathfinder (Def. RSMF ¶ 149); and

- He signed UDPS's application to CBC Innovis for a skip-tracing account, used to locate consumers (Def. RSMF ¶ 8).

(4) Bagga actually knew about, or at least was severely reckless with respect to, the enterprise's illegal debt collection activities. Specifically, Bagga's admissions establish that:

- He has controlled UDPS as its organizer, officer, and manager, since November 2011 (Def. RSMF ¶¶ 138-39);

- He signed the application to CBC Innovis to "OBTAIN CURRENT TELEPHONE NUMBER AND ADDRESS OF DEBTORS" on behalf of UDPS, which listed UDPS's type of business as "DEBT MGT / DEBT COLLECTION" and its type of products or services sold as "collection services," in January 2012 (Def. RSMF ¶ 8, citing SJ 22 at 512);

- He was UDPS's accountant and monitored and controlled UDPS's bank accounts (Def. RSMF ¶¶ 140, 223);

- He used UDPS's bank account to make payments to Brown (Def. RSMF ¶¶ 134, 140);

- He delegated UDPS's business activities to Marcus Brown, including possession and control of the codes to access UDPS's payment processing account with Pathfinder and the leasing of office space for UDPS (Def. RSMF ¶¶ 65-75, 112-13, 149, 265-66); and

- He did not supervise Brown's or the LLC Defendants' employees' activities on behalf of UDPS (Def. RSMF ¶¶ 69-70, 149, 238, 346).

Those admitted facts are sufficient to show that (i) UDPS and Bagga were engaged in a "business the principal purpose of which [was] the collection of any debts" and "regularly collect[ed] or attempt[ed] to collect, directly or indirectly debts owed or due or asserted to be owed or due another";[5] (ii) UDPS engaged in debt collection practices that violated the FDCPA and CFPA because the LLC Defendants' calls to consumers as detailed above were deceptive and abusive; (iii) Bagga, as an officer and manager of UDPS, had the right to control those practices and he participated in them through the acts above; and (iv) Bagga knew or should have known that this illegal conduct was occurring. *FTC v. Windward Mktg. Ltd*., No. 1:96-cv-615F, 1997 WL 33642380, at *13 (N.D. Ga. Sept. 30, 1997) ("An individual defendant's participation in corporate affairs is probative of knowledge."). Indeed, as UDPS's accountant, he must have known that large sums were being collected from consumers but that those funds were not being used to pay consumer debt. Despite obvious signs of illegal activity, he delegated business activities to Brown while failing to supervise him or the LLC Defendants' employees' activities.

[5] 15 U.S.C. § 1692a(6). The statute also defines "debt collector" to include persons who collect debt "indirectly." *Munoz v. Pipestone Fin*., 397 F. Supp. 2d 1129, 1133 (D. Minn. 2005) (company that communicated with consumer only through letters sent by its contractor was a "debt collector" under FDCPA because it "use[d] instrumentalities of interstate commerce or the mails in" a business whose principal purpose was debt collection).

### 2. Bagga's CFPA liability for substantial assistance

Again focusing exclusively on facts Bagga has agreed to and not challenged on any ground, the record reflects that, in addition to the facts stated above regarding Bagga's role in UDPS's illegal activity, Bagga admits to the following:

- Bagga organized Credit Power in December 2010 (Def. RSMF ¶¶ 33, 141);
- Bagga served as an officer of Credit Power and managed its accounting (Def. RSMF ¶ 142);
- Brown also was a manager of Credit Power (Def. RSMF ¶ 98);
- Credit Power utilized, by means of Brown's instruction, the "Brown Doctrine," which included collections call scripts and advice on how to motivate employees to increase collection amounts (Def. RSMF ¶ 101);
- Credit Power paid the monthly bill for the Global Connect accounts used to broadcast messages to consumers that were maintained by WNYAS and Check & Credit Recovery (Def. RSMF ¶ 241);
- Bagga submitted the application for a merchant processing account to Pathfinder on behalf of Credit Power (Def. RSMF ¶ 147);
- Bagga opened, managed, controlled, and maintained the Credit Power bank account (Def. RSMF ¶¶ 143, 223);
- Bagga opened the skip tracing account with LexisNexis on behalf of Credit Power (Def. RSMF ¶ 160); and
- Credit Power accepted consumers' credit and debit card payments through its merchant processing accounts (Def. RSMF ¶ 128).

Bagga's admitted actions on behalf of UDPS and Credit Power are sufficient to prove that he associated himself with the debt collection venture, participated in it as

in something that he wished to bring about, and sought by his actions to make it succeed. He thus provided substantial assistance to UDPS and Credit Power, in particular, and to the common enterprise, in general. Bagga's admissions are also sufficient to prove that Bagga's conduct was severely reckless. Thus, if the Court finds that UDPS, Credit Power, or the debt collection enterprise violated the CFPA, it should also find, based purely on the facts Bagga admits, that Bagga is liable under 12 U.S.C. § 5536(a)(3) for substantially assisting their violations of the CFPA.

## B. Bagga's disputes as to the remaining facts do not present genuine or material issues of fact precluding summary judgment against him.

### 1. Bagga's denials of his personal involvement in debt collection are directly contradicted by his own prior testimony.

Bagga claims that he was not personally involved in debt collection activity, *e.g*. Def. RSMF ¶¶ 8, 146, 211, but Bagga's sworn testimony leaves no doubt that he participated in the LLC Defendants' debt collection business, managed a significant portion of it, and was aware of its unlawful activities. Bagga testified that he participated in "opening a collection agency in the United States with Marcus Brown" by providing a bank account and merchant processing account. SJ 59 at 168:15-21, 169:14-18; SJ 214 at 69:7-70:4. He testified that Credit Power was a collection agency. SJ 214 at 48:9-49:12. He admitted that he not only managed Credit Power's bank account, but also purchased debt for the company, financed the company's day-

to-day operations, applied for its merchant processing account with Pathfinder, and opened its "skip-tracing" account with LexisNexis, SJ 214 at 46:9-52:13; SJ 215 155:23-157:24, and that he re-opened Credit Power after his friend Robert Wittakar left the business. SJ 214 at 229:2-21. He signed the CBC Innovis account application to obtain "the debtors' recent telephone number and the address" so that Brown could find the debtors. SJ 214 at 185:17-23. Further, he admits that he did not perform any due diligence on Brown, SJ 214 at 40:4-7, yet granted Brown a multitude of powers to run the debt collection business, including the authority to hire whatever employees he wanted. SJ 214 at 151:3-23.

Bagga was aware that UDPS received money from the debt collection enterprise; he testified that employees of LLC Defendants other than UDPS made calls to consumers that resulted in debt payments being paid into UDPS's bank account. SJ 214 at 69:7- 71:14, 91:1-11; SJ 215 at 64:7-67:23, 139:13-140:3. He knew that WNYAS, to which he wrote checks from UDPS's and Credit Power's accounts, was a debt collector. SJ 215 at 67:4-23.

Bagga also knew that the LLC Defendants' debt collection activities were unlawful. He received consumer chargeback advices, SJ1A ¶ 16 & Attachs. I-N,[6] and consumer complaints made to the Better Business Bureau. SJ 215 at 228:16-230:7.

---

[6] SJ 1 has been amended, as described in SJ 1A, which replaces SJ 1.

He acknowledged that consumers called him directly to complain that they did not owe debts or that they had not received validation letters. SJ 215 at 186:4-187:13. He testified that he could not substantiate the debts that the LLC Defendants were collecting, stating that "nobody" had the information required to properly substantiate the debt. SJ 215 at 188:24-190:3. He conceded that consumer chargebacks were too high. SJ 215 at 64:7-65:14. Despite all that, Bagga continued to participate in this operation. He should therefore be held liable under the CFPA and FDCPA.

**2. Bagga's forgery claims are either directly contradicted by his prior sworn testimony or do not present a genuine issue of fact.**

Bagga contends that his signature was "forged on documents more than eighty (80) times on applications for merchant accounts and several documents for financial gain by the parties involved." ECF No. 518 at p. 2. Bagga's brief does not specify the 80 instances, so the Bureau addresses his claims of forgery made in Def. RSMF, which focus on merchant applications to Frontline and EMS, the lease guaranty for UDPS's (and the other LLC Defendants') office space at 1401 Peachtree Street, and the Global Connect account application. *See* Def. RSMF ¶¶ 4, 7, 36, 144, 153.

As a threshold matter, Bagga's claims of forgery should not be considered by the Court because they are not supported by any evidence that would be admissible at trial. Under Fed. R. Civ. P. 56(c)(1)(A) and Local Rule 56.1(B)(2)(a)(2), Bagga's factual assertions and refutations must be supported by specific citations to evidence.

His unsworn responses in Def. RSMF, which were not made under penalty of perjury, are not evidence and do not suffice to create an issue of fact. *Lalonde*, 545 F. App'x at 839 n.4.

Even if the Court considers Bagga's forgery claims, it should find that they do not create material issues of fact. Bagga does not dispute that he submitted merchant applications to Pathfinder on behalf of UDPS and Credit Power. Def. RSMF ¶¶ 7, 149. Bagga claims that the companies' merchant applications to Frontline and EMS were forged, but he previously admitted that he authorized Brown to sign and submit merchant applications on his behalf, and even gave Brown his birthdate, social security number, and a copy of his driver's license to facilitate the process. SJ 214 at 154:12-155:5, 157:16-159:15, 162:12-17, 163:9-22, 167:12-15, 228:1-23, 231:24-232:4, 215:15-216:11. Bagga also testified that he was aware Brown was submitting merchant applications to Frontline and he authorized Brown to do so. SJ 214 at 152:18-153:9, 154:4-155:4; 228:1-23. As to EMS, Bagga admits that UDPS had an EMS account which Brown managed, Def. RSMF ¶¶ 7, 70, and testified that he coordinated with EMS to schedule a site inspection as part of the application process for UDPS's merchant account with EMS. SJ 214 at 205:13-208:21.

Moreover, Bagga ratified UDPS's and Credit Power's merchant applications and accounts by his conduct. A declaration claiming that a signature on a contract

document was forged "does not create an issue of fact regarding its validity when one ratifies the signature, and thus the document, through his or her own actions."[7] Bagga opened and controlled both UDPS's and Credit Power's bank accounts. Def. RSMF ¶¶ 140, 143. Bagga ratified the Frontline[8] and EMS[9] merchant processing agreements

---

[7] *CNH Capital Am., LLC v. Se. Aggregate, Inc.*, No. 608CV027, 2009 WL 3172353, at *9 (S.D. Ga. Oct. 1, 2009), quoting *Oakwood Acceptance Corp. v. Ahmad*, 609 S.E.2d 700, 702 (Ga. Ct. App. 2005) (applying Georgia law); *Paterson v. Equity Tr. Co.*, No. 11CA009993, 2012–Ohio–860, ¶ 21 (Ohio Ct. App. Mar. 5, 2012) (applying Ohio law). Ohio law governed UDPS and Credit Power's contracts with EMS (*e.g.*, SJ 17 at 977 ¶ 27 (Disputes, Governing Law, Jurisdiction, and Venue) (EMS)) and Georgia law governed the companies' contracts with Frontline (*e.g.*, SJ 18 at 145 ¶ 17 (Choice of Law/Attorney's Fees/Venue/Jury Trial Waiver) (Frontline).

[8] Consumer debt payments processed through UDPS's merchant accounts with Frontline (and Pathfinder) were deposited into UDPS's bank account by Global Payments. *See* SJ 4 Attach. C (Global Payments Pathfinder processing statement for UDPS, account 008788730002232) and D (Global Payments Frontline processing statement for UDPS, account 008788370013263)*;* SJ 227, Randall Harrell Investigative Hr'g Transcript excerpts, at 20:15-21:18; SJ 217 at pdf pp. 2-3 ("ACH Additions," including "Corp ACH Global Dep, Global Pay 8788370013263"); SJ 218 at pdf pp. 2-3 (same); SJ 219 at pdf pp. 2-4 (same). *Compare* SJ 216 at pdf pp. 2-3 ("ACH Additions," showing only deposits for the undisputed UDPS Pathfinder account "Corporate ACH Global Dep, Global Pay 8788730002232"), *with* SJ 217 at pdf pp. 2-3 ("ACH Additions," showing deposits from both the Pathfinder account "Global Pay 8788730002232" and the Frontline account "Global Pay 8788370013263"). Consumer debt payments made to Credit Power were processed the same way. *E.g.*, SJ 223 at pdf pp. 2-3 ("ACH Additions," including "Corporate ACH Global Dep, Global Pay 8788370013280"); SJ 224 at pdf pp. 2-3 (same); SJ 225 at pdf pp. 2-3 (same); SJ 226 at pdf pp. 2-3 (same). *Compare* SJ 222 at pdf pp. 2-3 ("ACH Additions," showing only deposits for the undisputed Credit Power Pathfinder account "Corporate ACH Global Dep, Global Pay 8788730001893"), *with* SJ 223 at pdf pp. 2-3 ("ACH Additions," showing deposits from both the Pathfinder

by knowingly receiving thousands of dollars in ACH deposits in UDPS's and Credit Power's bank accounts from the two payment processors, and by allowing them to deduct payments and fees, all without question. Bagga also wrote checks drawn on funds that Frontline and EMS deposited into the companies' bank accounts to Brown and WNYAS, among others. SJ 215 at 139:13-140:8; SJ 3 ¶¶ 8, 14-19.

Bagga also disputes that he signed the lease guaranty for the office space at 1401 Peachtree Street. Whether or not Bagga signed the lease guarantee, he ratified the contract through his conduct and the dispute is immaterial. Although Bagga testified that Brown signed the lease guaranty with Bagga's signature, he also testified that he did not question why his signature was on the guaranty and did nothing about it. SJ 215 at 214:4-21. Bagga also knew that UDPS was operating out of the Peachtree Street office space; he applied for an occupancy permit for the space, and arranged for EMS to conduct an on-site inspection of the offices. SJ 214 at 205:13-208:21; SJ 215 at 77:9-78:6. Bagga testified that collections agents were operating out of the same office. *Id.* Thus, there is no genuine dispute that the

---

account "Global Pay 8788730001893" and the Frontline account "Global Pay 8788370013280").

[9] Consumer debt payments processed through UDPS's merchant account with EMS were deposited directly into UDPS's bank account. *E.g.*, SJ 219 at pdf pp. 2-4 ("ACH Additions," including "Corporate ACH Merch Dep EMS"); SJ 220 at pdf pp. 2-4 (same); SJ 221 at pdf pp. 2-3 (same).

Defendants operated their collection enterprise out of the Peachtree Street offices and that Bagga knew about it.[10]

Finally, as to the Global Connect account application, Bagga denies signing it, but he knew that Brown, acting on behalf of UDPS, was using Global Connect to call debtors, and admitted that he permitted Brown to pay Global Connect with funds from the Credit Power bank account. SJ 214 at 196:6-198:6; SJ 215 at 206:6-24.

## III. THE BUREAU'S SUMMARY JUDGMENT EVIDENCE IS AUTHENTIC AND ADMISSIBLE.

Bagga makes the same or similar unfounded evidentiary objections raised in Defendants Khan and SPPS's opposition filings. *E.g.*, Def. RSMF ¶¶ 163-66, 242-59, 275-80, 299-313, 314-16. To the extent Bagga challenges the admissibility of exhibits SJ 1-15, the Bureau incorporates here its arguments contained in Section III of its reply brief in support of its motion for summary judgment against Khan and SPPS (ECF No. 527). In the Bureau's Reply Statement of Facts, the Bureau addresses the other objections. The Bureau has filed certificates establishing the admissibility of the Bureau's evidence, where challenged by Defendants. *See* SJ 204 and SJ 214.

[10] Likewise, there is no genuine dispute that Bagga knew that UDPS was using a mailbox at 3939 Lavista Road, Tucker, GA as a mailing address, SJ 214 at 13:15-14:11, 116:13-117:8, as did other LLC Defendants. SJ Br. 8.

Dated: March 6, 2018

Respectfully Submitted,

Attorneys for Plaintiff
Consumer Financial Protection Bureau:

KRISTEN A. DONOGHUE
Enforcement Director

DAVID RUBENSTEIN
Deputy Enforcement Director

THOMAS KIM
Assistant Deputy Enforcement Director

*<u>/s/ Mary K. Warren</u>*

Mary K. Warren (NY bar #2557684)
John Thompson (NM bar #139788)
Rebecca Coleman (MD)
Maureen McOwen (DC bar # 976749)
ENFORCEMENT ATTORNEYS
1700 G Street NW
Washington, DC 20552
Phone (Warren): 202-435-9284
Phone (Thompson): 202-435-7270
Phone (Coleman): 202-435-7541
Phone (McOwen): 202-435-9553
Email: Mary.Warren@cfpb.gov
Email: John.Thompson@cfpb.gov
Email: Rebecca.Coleman@cfpb.gov
Email: Maureen.Mcowen@cfpb.gov
Fax: 202-435-7722

And

Local Counsel

KURT ERSKINE, FIRST ASSISTANT U.S. ATTORNEY

LENA AMANTI
ASSISTANT U.S. ATTORNEY
Georgia Bar No. 666825
600 Richard B. Russell Federal Bldg.
75 Spring Street, S.W.
Atlanta, GA 30303
Telephone: (404) 581-6225
Facsimile: (404) 581-6163
Email: lena.amanti@usdoj.gov

CERTIFICATE OF COMPLIANCE

The undersigned attorney hereby certifies, pursuant to LR 7.1.D, that the foregoing document was prepared in Times New Roman 14 point font.

*/s/ Mary K. Warren*
___________________________
Mary K. Warren
Enforcement Attorney

Dated: March 6, 2018

CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on this day a true and correct copy of the foregoing document was filed with the clerk of court using the CM/ECF system, which will automatically send email notification of the filing to all attorneys of record, and was mailed by United Parcel Service to the following defendants that do not have access to the CM/ECF system:

Mohan Bagga
6375 Whitestone Place
Duluth, GA 30097

Sarita Brown
1440 Jefferson Ave., #233
Buffalo, NY 14208-1827

Marcus Brown
142 Stratford Road
Buffalo, NY 14216

Tasha Pratcher
142 Stratford Road
Buffalo, NY 14216

*/s/ Mary K. Warren*
___________________________
Mary K. Warren
Enforcement Attorney

Dated: March 6, 2018