**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA,**
**ATLANTA DIVISION**

CONSUMER FINANCIAL PROTECTION BUREAU,

Plaintiff,

v.

UNIVERSAL DEBT & PAYMENT SOLUTIONS, LLC; *et al.*

Defendants.

Civil Action No. 1:15-CV-0859-RWS

**PLAINTIFF BUREAU OF CONSUMER FINANCIAL PROTECTION'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT MOHAN BAGGA REPLYING TO BAGGA'S SUPPLEMENTAL RESPONSE MATERIALS FILED FEBRUARY 13, 2018**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................ ii

I. PRELIMINARY STATEMENT ........................................................ 1

II. ARGUMENTS & AUTHORITIES ........................................................ 3

A. Bagga's denials of personal involvement in the debt collection enterprise and his forgery claims do not raise any genuine issue of material fact. ...... 3

B. The Bureau seeks appropriate redress and penalties. ........................................ 6

C. Bagga's allegations about discovery misconduct and service of process do not raise any genuine issue of material fact. ........................................ 8

1. The Preliminary Injunction required Bagga to give the Bureau access to his computer and email files. ........................................ 9

2. The scope of Bagga's deposition questioning is irrelevant. ............... 12

3. Bagga cannot contest service of the Complaint at summary judgment. ........................................ 13

D. Bagga's arguments about the liability of Sumant Khan and SPPS are irrelevant to his own liability. ........................................ 14

III. CONCLUSION ........................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Davis v. Aegis Films, Inc.*, No. 1:14-CV-1305-ODE-LTW,
2015 WL 12591011 (N.D. Ga. Aug. 6, 2015)..........5

*FTC v. Lalonde*, 545 Fed. App'x 825 (11th Cir. 2013)..........7

*Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351
(11th Cir. 2008)..........14

*King v. Pratt & Whitney*, 161 F.R.D. 475 (S.D. Fla. 1995)..........13

*Madura v. BAC Home Loans Servicing, LP*, 593 Fed. App'x 834
(11th Cir. 2014)..........4

*Riley v. Univ. of Alabama Health Servs. Found.*, 990 F. Supp. 2d 1177
(N.D. Ala. 2014)..........6

*United States v. Brown*, No. 3:06-CR-204-J-33MCR, 2007 WL 470445
(M.D. Fla. Feb. 13, 2007)..........13

**Statutes**

12 U.S.C. § 5565(c)(2)..........8

**Regulations**

12 C.F.R. § 1083.1..........8

**Rules**

Fed. R. Civ. P. 12..........14

Fed. R. Civ. P. 26(b) .......... 13

Fed. R. Civ. P. 32(d)(1) .......... 13

Fed. R. Civ. P. 32(d)(3)(b) .......... 13

Fed. R. Civ. P. 56(a) .......... 12

Fed. R. Civ. P. 56(c)(2) .......... 6

Fed. R. Civ. P. 56(c)(4) .......... 6

Fed. R. Evid. 401 .......... 12

Fed. R. Evid. 402 .......... 12

Fed. R. Evid. 602 .......... 6

Fed. R. Evid. 701 .......... 6

On September 28, 2018, the Court granted the Bureau of Consumer Financial Protection (Bureau) an opportunity to reply to Defendant Mohan Bagga's Supplemental Response Materials [ECF No. 558]. The Bureau submits this brief in reply to those materials and in further support of its Motion for Summary Judgment [ECF No. 451] (Motion).[1] The Bureau further adopts and incorporates herein its Reply Brief in Support of its Motion for Summary Judgment against Defendant Mohan Bagga [ECF No. 542] (Reply Brief), and files concurrently with this brief its Reply to Defendant Mohan Bagga's Second Response to the Bureau's Statement of Material Facts (Reply to 2nd Def. RSMF).

## I. PRELIMINARY STATEMENT

Bagga's Supplemental Response Materials [ECF Nos. 540, 540-1, and 540-2] provide no reason to doubt the key role he played in the Defendants' unlawful debt collection enterprise, so they are no obstacle to summary judgment against him. Instead, Bagga repeats many of the arguments he made in his first set of opposition papers [ECF Nos. 517, 518]. For example, Bagga again denies that he was involved in debt collection, but fails to address his prior admissions establishing his participation in and furtherance of the Defendants' debt collection scheme. Bagga again claims that his signature on key documents was forged by

[1] Short forms and capitalized terms not defined herein are used as defined in the Motion and its supporting brief [ECF No. 451-1] (SJ Brief or Br.).

Defendant Marcus Brown, but he does not acknowledge his own deposition testimony that he authorized Brown to sign and submit merchant applications on his behalf, an admission that conclusively rebuts his claim. Nor does Bagga acknowledge that he ratified the supposedly forged documents by his conduct.

Bagga's new arguments fare no better. He asserts that the consumer redress and civil money penalties sought by the Bureau are inappropriate, but he offers no reasons why his liability for financial harm to thousands of consumers should be mitigated. He complains of alleged discovery misconduct by the Bureau, but this is the first time Bagga has been heard to complain of the conduct in question, which was, in fact, expressly permitted by this Court's Preliminary Injunction and is irrelevant to the Motion. What's left of the Supplemental Response Materials is a pair of affidavits and significant portions of Bagga's legal memorandum that try to exculpate his co-Defendants, Sumant Khan and SPPS. Those efforts are irrelevant to Bagga's own liability under the CFPA and FDCPA.

None of Bagga's arguments – whether old or new – tilt the scales in Bagga's favor. The Court should grant the Bureau's Motion against him.

## II. ARGUMENTS & AUTHORITIES

### A. Bagga's denials of personal involvement in the debt collection enterprise and his forgery claims do not raise any genuine issue of material fact.

Bagga's Supplemental Response Materials contain no new evidence supporting his denials of personal involvement in the LLC Defendants' unlawful debt collection activities. Bagga's February 2018 Declaration [ECF No. 540-2] states that (i) he "never . . . engaged in any debt collection on the phone" or "sent any debt in the interstate commerce, the purpose of which was debt collection," *id.* at ¶¶ 8-9; and (ii) Defendant Marcus Brown forged his signature on 15 exhibits that the Bureau has submitted in support of the Motion. *Id.* at ¶ 3.

The Bureau has already refuted Bagga's denials of personal involvement in the Defendants' debt collection scheme, and respectfully refers the Court to its Reply Brief, which sets forth in detail Bagga's admitted and undisputed participation in and furtherance of the scheme. Bagga's involvement included: serving as officer, manager, and accountant for LLC Defendants UDPS and Credit Power; controlling the companies' bank accounts; opening skip-tracing accounts to locate debtors; responding to consumer complaints made to the Better Business Bureau about the Defendants' debt collection activities; and handling chargeback requests by consumers trying to cancel their payments to the LLC Defendants. Reply Brief 3-11; Reply to 2nd Def. RSMF ¶¶ 36, 142, 146, 150-53. As the Reply

Brief further details, Bagga also played a crucial role in enabling the LLC Defendants' broadcasts of deceptive messages to consumers and collection of money from them under coercive conditions or without their consent. *Id.* For all of this, he received more than $20,000 in checks from the LLC Defendants' bank accounts. SJ 3 ¶ 9.

The Bureau has also already addressed most of Bagga's forgery claims, including those regarding SJ 18, SJ 20, SJ 72, SJ 78, SJ 143, SJ 144, SJ 149, SJ 172, and SJ 173. *See* Reply Brief at 11-15; ECF No. 543, Reply to Bagga's Response to the Bureau's Statement of Material Facts ¶¶ 4, 6-7, 145, 151, 153, 231, 275; Reply to 2nd Def. RSMF (same paragraphs). Bagga has admitted not only that he knew about Brown's use of his identity in signing and submitting merchant applications for the LLC Defendants, but that he assisted Brown in doing so. Reply Brief 11. In addition, by his conduct over a period of years, Bagga ratified the use of his signature on the documents he now complains of. *Id.* at 12-15; *see Madura v. BAC Home Loans Servicing, LP*, 593 Fed. App'x 834, 843-44 (11th Cir. 2014) (defendants' claim that a loan document was forged did not raise a genuine issue of fact given that defendants continued to make payments on the loan after discovering the alleged forgery).

Bagga's February 2018 Declaration asserts new forgery claims about the following six documents: SJ 60, SJ 82, SJ 93, SJ 159, SJ 170, and SJ 178. His

claims as to SJ 60, SJ 82, SJ 93, and SJ 159 appear to be in error, because those documents do not reference Bagga or purport to contain Bagga's signature. The forgery claim as to SJ 170 is baseless, because it is a printed consumer chargeback request addressed to Bagga, not signed by him. Lastly, the forgery claim as to SJ 178 is baseless and irrelevant. SJ 178 is the Bureau's 2014 Civil Investigative Demand (CID) to UDPS, which includes a Certified Mail return receipt containing Bagga's signature acknowledging delivery at Bagga's home address in Duluth, Georgia. *See* SJ 178 at first page. The Bureau did not cite to SJ 178 in the Motion. Rather, the document was attached to the Bureau's response to Defendant Sumant Khan's Motion for Summary Judgment for the purpose of discussing *Khan's* role in responding to the CID. ECF No. 489 p. 10. Neither the Certified Mail receipt nor Bagga's claim that it contains a forged signature is relevant to Bagga's liability.[2] In short, Bagga's new forgery claims, like his old ones, lack any probative evidence supporting them and are no impediment to summary judgment. *See, e.g.*, *Davis v. Aegis Films, Inc.*, No. 1:14-CV-1305-ODE-LTW, 2015 WL 12591011, at *13 (N.D. Ga. Aug. 6, 2015) (finding "Plaintiff fails to raise a

[2] Moreover, before his February filing, neither Bagga nor UDPS had ever asserted forgery or any defect in service of the CID. UDPS responded to the CID, *see, e.g.*, 2nd Def. RSMF ¶ 111, and the time has long passed for any argument about the sufficiency of its service.

genuine issue of material fact as to whether the invoices were forgeries" by "fail[ing] to lay any factual foundation in support of this theory").

Bagga's denials of involvement in the unlawful debt collection enterprise and his forgery claims are contradicted by the record and meritless. They're premised entirely on Bagga's own say-so, rather than any probative evidence that could be reduced to admissible form. Furthermore, while Bagga now claims in the Supplemental Response Materials that he has "personal knowledge" of Marcus Brown's forgery of Bagga's and Khan's signatures, his sworn statements contain no facts "derived from the exercise of [Bagga's] own senses" or "founded on personal observation," and therefore constitute mere opinion, speculation, or belief, which is not competent evidence for purposes of summary judgment. *Riley v. Univ. of Alabama Health Servs. Found.*, 990 F. Supp. 2d 1177, 1186-87 (N.D. Ala. 2014); *see* Fed. R. Evid. 602, 701; Fed. R. Civ. P. 56(c)(2), (4). That is not enough to raise a genuine issue of material fact and defeat the Bureau's Motion.

**B. The Bureau seeks appropriate redress and penalties.**

Bagga contests "[t]he amount of Plaintiff[']s damage calculations," ECF No. 540-1 at 14-15, but he does not (i) explain why the Bureau's calculations are wrong, (ii) explain what the appropriate calculations should be, or (iii) point to any evidence or authority to support a different calculation. The bald assertion that "[t]here is [a] dispute of Plaintiff, CFPB's assessment of damages" is not enough

to raise a genuine dispute. *FTC v. Lalonde*, 545 Fed. App'x 825, 839 n.4 (11th Cir. 2013) (defendant's unsworn statement is not evidence and cannot be considered in determining whether summary judgment should be granted).

Bagga also asks the Court not to impose a civil penalty on him "due to the level of fraud and forgery exercised by Marcus Brown." ECF No. 540-1 at 16. The Bureau agrees that, as the ringleader of this scheme, Brown's conduct was egregious. But so was Bagga's. Bagga enabled the LLC Defendants to threaten thousands of consumers and intimidate them into paying at least $3.6 million on phantom debts collected through UDPS and Credit Power alone. SJ 4 ¶ 21-25, 32. A sample telephone message from UDPS demonstrates the false and threatening statements made to consumers:

> I am contacting you in regards to a complaint that is being filed against you where you have been named as a respondent and may have to appear. Please be advised that the order to show cause contains a restraining order. You or your attorney have 24 to 48 hours to oppose this matter. . . . Failure to respond will result in further action being processed against you.

SJ 138 at p. 15; Reply to 2nd Def. RSMF ¶ 285.

Bagga's current story is that virtually everything with his signature on it was forged, except for the documents related to UDPS's and Credit Power's merchant payment processing accounts with Pathfinder. But his original testimony was that he authorized Brown to sign and submit merchant applications on his behalf and

facilitated the process by giving Brown his birthdate, social security number, and a copy of his driver's license. *See* ECF No. 542 at 12. Moreover, even if the Court were to ignore everything but UDPS's and Credit Power's Pathfinder accounts, as to which Bagga makes no forgery claim, the consumer harm was substantial. UDPS took in $1,869,267.30 through its Pathfinder account and Credit Power took in $601,445.23 through its Pathfinder account; after subtracting chargebacks, these two accounts *alone* are responsible for taking $2.3 million from consumers. SJ 4 ¶¶ 21, 23, 32. The penalty the Bureau seeks against Bagga, $750,000, is far less than the maximum penalty the CFPA allows and is entirely justified by Bagga's severe conduct. *See* 12 U.S.C. § 5565(c)(2); 12 C.F.R. § 1083.1; SJ Br. 43-45.

### C. Bagga's allegations about discovery misconduct and service of process do not raise any genuine issue of material fact.

Bagga's Supplemental Response Materials also contain scattershot complaints about process and discovery events from early in this litigation. These complaints are groundless and have no bearing on whether the undisputed facts support the Motion. Bagga asserts that (i) he was pressured to give up his email password to the Bureau; (ii) the questioning at his deposition was beyond the permissible scope; and (iii) service of the Complaint on UDPS was somehow improper. All of this is either false, irrelevant, or both.

**1. The Preliminary Injunction required Bagga to give the Bureau access to his computer and email files.**

In the first of three affidavits submitted with his Supplemental Response Materials [ECF No. 540 at 114] (First Bagga Affidavit), Bagga claims that former Bureau attorney Jonathan Engel acted improperly during the expedited discovery period because Engel allegedly requested that Bagga turn over his home computer or provide the Bureau with the password for Bagga's Yahoo email account. The Court should disregard this testimony for two reasons: (i) access to Bagga's computer and email account, which were used to conduct the Debt Collectors' business, was authorized by the Preliminary Injunction; and (ii) the testimony is irrelevant to the question of summary judgment, because the Bureau is not relying on any emails or documents from Bagga's Yahoo account or home computer.

According to Bagga, Engel told Bagga that he had a "court order to confiscate" Bagga's home computer and that, in lieu of confiscation, Bagga could provide Engel with the password for his Yahoo email account. First Bagga Affidavit ¶ 2. Bagga claims that he provided the email password "[a]s a result of ongoing extreme pressure exercised on [Bagga] by Mr. Jonathan Engel." *Id.* The implication Bagga wishes the Court to draw is that Engel's alleged request was improper. It was not.

The Preliminary Injunction gave the Bureau a wide array of tools to assist in the discovery of assets held by the Debt Collectors, as that term is defined in the Preliminary Injunction. Section IX of the Preliminary Injunction, "Continuing Access to Business Premises and Records" requires the Debt Collectors to, among other things, allow the Bureau access to "any Documents located at any of the locations described in this Section," which includes "any premises where Documents related to the Debt Collectors' businesses are stored or maintained." ECF No. 16 at 19. The Preliminary Injunction gives the Bureau the right to remove computers "in order that they may be inspected, inventoried, and copied," and specifies that "[i]f any property, records, Documents, or computer files relating to the PI Defendants' finances or business practices are located in the residence of any Debt Collector . . . then such Debt Collector shall produce them to the Bureau within twenty-four (24) hours of service of this Order." *Id*. at 22. The Preliminary Injunction further requires the Debt Collectors to provide the Bureau with "passwords to devices that hold Electronically Stored Information, computer access codes of all computers used to conduct PI Defendants'[3] business, *access to*

[3] "'PI Defendants' means the Debt Collectors and their successors, assigns, affiliates, or subsidiaries, and each of them, by whatever names each might be known, provided that they are owned or controlled in whole or in part by any of the Debt Collectors and conduct any business related to the Debt Collectors' collection operation." ECF No. 16 at 6.

. . . *data stored, hosted or otherwise maintained by any electronic data host*,[4] and storage area access information." *Id.* at 20 (emphasis added).

Bagga testified that he had a computer at his home that both he and Marcus Brown had used for business purposes. SJ 59, M. Bagga Dep., July 1, 2015, at 32:7-33:8, 159:6-160:5. Thus, pursuant to the Preliminary Injunction, Bagga was required to produce his computer to the Bureau within 24 hours of service of the Preliminary Injunction so that it could "be inspected, inventoried, and copied." ECF No. 16 at 22. He failed to do so. Further, Bagga testified that he used his Yahoo email address to conduct business and communicate with the other defendants. SJ 59 at 18:11-19:11, 22:12-23:6. Under the Preliminary Injunction, Bagga was required to provide the Bureau with access to his Yahoo email account because it contained "data stored, hosted or otherwise maintained by any electronic data host." ECF No. 16 at 20. Where such access required a password, the Preliminary Injunction required Bagga to give that password to the Bureau so that it could access the information. *Id.* Thus, whatever "ongoing extreme pressure" Bagga felt to turn over his Yahoo account password to the Bureau was imposed by the mandates of the Preliminary Injunction.

[4] "'Electronic Data Host' means any person or entity that stores, hosts, or otherwise maintains electronically stored information." ECF No. 16 at 5.

Moreover, there is nothing in the First Bagga Affidavit that should give the Court pause in granting the Bureau's Motion, as it has no relevance here. The Bureau did not inspect or copy Bagga's home computer and has no record of anyone accessing Bagga's email account. The Bureau never downloaded or saved any emails from the account and none are relied upon in the Bureau's Motion. Under Federal Rule of Evidence 402, "irrelevant evidence is not admissible." Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence," and the proffered fact is "of consequence in determining the action." Fed. R. Evid. 401. Here, Bagga attempts to enter into evidence alleged facts about the behavior of a former Bureau attorney in order to challenge the Motion. But none of the alleged facts presented in the First Bagga Affidavit are pertinent to the question of whether the Bureau has shown that "there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law" on its claims against Bagga. Fed. R. Civ. P. 56(a). Because the First Bagga Affidavit is irrelevant to the question of whether the Bureau is entitled to summary judgment, the affidavit cannot be reduced to admissible evidence and should be struck or disregarded.

**2. The scope of Bagga's deposition questioning is irrelevant.**

Bagga asserts that his deposition in this case went beyond the scope of the TRO, ECF No. 540-1 at 3, but he does not object to the admission of any particular

testimony or draw any connection between the questioning and the evidence supporting the Bureau's Motion. His objection is thus "too vague to allow for a meaningful analysis." *United States v. Brown*, No. 3:06-CR-204-J-33MCR, 2007 WL 470445, at *3 (M.D. Fla. Feb. 13, 2007). Although certain questions went beyond the scope of the expedited discovery topics, Bagga was only subjected to one deposition in this matter and the questioning was well within the scope of allowed discovery under the Federal Rules. Fed. R. Civ. P. 26(b). In such a case, it is not necessary to notice an entirely new deposition to ask questions on other relevant topics. *See, e.g.*, *King v. Pratt & Whitney*, 161 F.R.D. 475, 476 (S.D. Fla. 1995) ("Clearly, Plaintiff could simply re-notice a deponent under the regular notice provisions and ask him the same questions that were objected to. However, Plaintiff should not be forced to jump through that extra hoop absent some compelling reason."), *aff'd* 213 F.3d 646 (11th Cir. 2000). Finally, Bagga waived any objection to the deposition notice or scope of questioning by not raising it in a timely fashion. Fed. R. Civ. P. 32(d)(1), (3)(b).

### 3. Bagga cannot contest service of the Complaint at summary judgment.

Bagga's challenge to the sufficiency of service of process on either him or UDPS (ECF No. 540-1 at 2) is untimely and meritless. A defense for insufficient service of process "must be made before pleading if a responsive pleading is

allowed." Fed. R. Civ. P. 12. UDPS was properly served on April 2, 2015 and filed an Answer on May 18, 2015, through its then-counsel, Cary Ichter. ECF No. 94. Bagga was properly served on April 22, 2015 and filed his Answer on June 3, 2015 purportedly on behalf of himself, UDPS, and Credit Power. ECF No. 112. Neither Bagga nor UDPS contested service of process in a pre-answer motion or answer, and they therefore waived the argument. *E.g.*, *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1360 (11th Cir. 2008). Moreover, Bagga has not shown any defect in the service performed in April 2015.

### D. Bagga's arguments about the liability of Sumant Khan and SPPS are irrelevant to his own liability.

Finally, Bagga's brief is littered with contentions that Sumant Khan and SPPS are innocent of the Bureau's allegations against them. *See* ECF No. 540-1 at 3-4, 6, 8, 10-12, and 15. In fact, many of these arguments appear to have been lifted directly from Khan and SPPS's summary judgment briefing [ECF Nos. 450-2, 450-3, 498, 513, and 526]. What any of this has to do with Bagga's own culpability is unclear. Bagga's brief does nothing to connect the dots. Sumant Khan and SPPS's involvement in the unlawful debt collection scheme is irrelevant to Bagga's own involvement in the scheme and his consequent liability under the

CFPA and FDCPA.[5] Bagga also devotes two affidavits to various contentions that Marcus Brown was to blame, by forgery or other trickery, for the actions of Khan, SPPS, and to a lesser extent other Defendants. *See* ECF No. 540 at 115, 116. Again, none of this is relevant to Bagga's liability, which has been amply demonstrated by undisputed facts.

Even if the Court were to credit Bagga's arguments about Khan and SPPS's lack of involvement in the debt collection scheme, there is no genuine issue precluding the Court from holding Bagga liable under the FDCPA and CFPA.

## III. CONCLUSION

For the foregoing reasons, the Court should grant the Bureau's Motion against Defendant Bagga.

Dated: October 26, 2018

Respectfully Submitted,

Attorneys for Plaintiff
Bureau of Consumer Financial Protection:

KRISTEN A. DONOGHUE
Enforcement Director

DAVID RUBENSTEIN
Deputy Enforcement Director

[5] The Bureau addresses arguments related to Khan and SPPS's culpability in the SJ Brief and in ECF Nos. 489, 490 and 527.

THOMAS KIM
Assistant Deputy Enforcement Director

*/s/ Mary K. Warren*
Mary K. Warren (NY bar #2557684)
John Thompson (NM bar #139788)
Rebecca Coleman (MD)
Maureen McOwen (DC bar # 976749)
ENFORCEMENT ATTORNEYS
1700 G Street NW
Washington, DC 20552
Phone (Warren): 202-435-9284
Phone (Thompson): 202-435-7270
Phone (Coleman): 202-435-7541
Phone (McOwen): 202-435-9553
Email: Mary.Warren@cfpb.gov
Email: John.Thompson@cfpb.gov
Email: Rebecca.Coleman@cfpb.gov
Email: Maureen.Mcowen@cfpb.gov
Fax: 202-435-7722

And

Local Counsel

KURT ERSKINE, FIRST ASSISTANT
U.S. ATTORNEY

LORI BERANEK
CIVIL CHIEF
ASSISTANT UNITED STATES
ATTORNEY
Georgia Bar No. 053775
600 Richard B. Russell Federal Bldg.
75 Spring Street, S.W.
Atlanta, GA 30303
Telephone: (404) 581-6225
Facsimile: (404) 581-6163
Email: lori.beranek@usdoj.gov

## CERTIFICATE OF COMPLIANCE

The undersigned attorney hereby certifies, pursuant to LR 7.1.D, that the foregoing document was prepared in Times New Roman 14 point font.

*/s/ Mary K. Warren*
____________________________ Dated: October 26, 2018
Mary K. Warren
Enforcement Attorney

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on this day a true and correct copy of the foregoing document was filed with the clerk of court using the CM/ECF system, which will automatically send email notification of the filing to all attorneys of record, and was mailed by United Parcel Service to the following defendants that do not have access to the CM/ECF system:

Mohan Bagga
6375 Whitestone Place
Duluth, GA 30097

Marcus Brown
142 Stratford Road
Buffalo, NY 14216

Sarita Brown
1440 Jefferson Ave., #233
Buffalo, NY 14208-1827

Tasha Pratcher
1070 Chestnut Ridge Road
Amherst, NY 14228

WNY Account Solutions
c/o Marcus Brown
142 Stratford Road
Buffalo, NY 14216

*/s/ Mary K. Warren*
____________________________ Dated: October 26, 2018
Mary K. Warren
Enforcement Attorney