# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

|  |  |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>Plaintiff,<br><br>v.<br><br>UNIVERSAL DEBT & PAYMENT SOLUTIONS, LLC, *et al.*,<br><br>Defendants. | Civil Action No.<br><br>1:15-cv-859-RWS |

## ORDER

This case comes before the Court on the following Motions:

- Supplemental Motion for Contempt Against Defendant Tasha Pratcher, by the CFPB [Dkt. 551]

- Motion for Contempt Against Defendants Marcus Brown, Sarita Brown, WNY Account Solutions LLC, and Universal Debt Solutions LLC, by the CFPB [Dkt. 554]

- Motion to Vacate Summary Judgment, by Tasha Pratcher [Dkt. 595]

- Motion to Appoint a Receiver, by the CFPB [Dkt. 602]

- Motions to Modify the Preliminary Injunction to Obtain Financing to Secure A Loan, by Tasha Pratcher [Dkts. 616, 623]

- Motion to Request Bank Statements, by Sarita Brown [Dkt. 619]

Having reviewed the record and conducted a hearing concerning these matters, the Court enters the following Order.

## Background

The Motions addressed here raise issues arising under the Court's two major Orders governing this case: (1) the Order awarding a Preliminary Injunction [Dkt. 16], which included a freeze of the Defendants' assets, and, nearly four years later, (2) the Order granting Summary Judgment [Dkt. 576], which held these Defendants liable for various violations of the Consumer Financial Protection Act and the Fair Debt Collection Practices Act.

With respect to these two Orders, this case for the past year has progressed on parallel tracks. On one side, the inquiry into the merits of the CFPB's claims has proceeded apace—Summary Judgment was sought by and awarded to the CFPB against the Defendants here; and when the remaining Defendants settled rather than go to trial, the case grew ready for a final determination of the relief to be assessed. This Order does not address those final issues; a later ruling will.

On the other track, meanwhile, the CFPB began to raise concerns that the Defendants were dissolving assets subject to the preliminary injunction's freeze, assets which might be needed to pay off any judgment awarded against them on behalf of the consumers they had allegedly injured. The CFPB sought discovery from the Defendants and eventually asked that this Court enforce its prior Order by holding the Defendants in contempt.

It is helpful to keep these tracks separate—indeed, the discussion below is divided into sections for each—but it is also important to appreciate that, particularly for the Defendants, now appearing *pro se* or not at all, many of the issues raised in the Motions overlap. Their concerns span the entire case. It is in part for this reason that the Court will address all the Motions together in a single Order. That way, both the CFPB and the Defendants can be confident that the Court has heard them. Further, doing so should clear the way for this case to proceed to its final stages.

A detailed background of the facts underlying the claims can be found in the Court's Summary Judgment Order [Dkt. 576] and will not be repeated here. Instead, the Court turns directly to the issues raised in the Motions, beginning with the Motion to Vacate the Summary Judgment. A summary of the rulings and orders on these issues can be found after the Discussion, beginning on p. 25.

## Discussion

## I. PRATCHER'S MOTION TO VACATE SUMMARY JUDGMENT

Tasha Pratcher failed to timely respond to the CFPB's Motion for Summary Judgment, and her later request for permission to do so [Dkt. 547] was denied in the Court's ruling. Still, in determining summary judgment, the Court endeavored to "review [the CFPB's] arguments on the merits." [Dkt. 576 at 24]. In doing so,

the Court found that Ms. Pratcher was liable for providing "substantial assistance" to the other Defendants in violation of the CFPA under 12 U.S.C. § 5536(a)(3). Id. at 31. She now asks the Court to vacate its ruling under Rule 60(b)(3).[1]

Under Rule 60(b)(3), a court may "relieve a party ... from a final judgment" due to "fraud ..., misrepresentation, or misconduct by an opposing party." To get relief under the Rule, "the moving party must prove by clear and convincing evidence that the adverse party obtained the verdict through fraud, misrepresentations, or other misconduct." Jenkins v. Anton, 922 F.3d 1257, 1270 (11th Cir. 2019) (internal citations omitted). "The moving party must also demonstrate that the conduct prevented [her] from fully presenting [her] case." Id.

Ms. Pratcher argues that the facts, as she posits them, would not support the judgment of liability against her. She claims that the CFPB misrepresented these facts when it sought the judgment. And she alleges, albeit briefly, that it was the CFPB's misconduct that prevented her from presenting an adequate defense. Such allegations, if proven to be true by clear and convincing evidence, would entitle her

---

[1] Unlike with Ms. Pratcher's Motion Requesting Additional Time to Respond [Dkt. 547], she included the substance of the argument in her Motion here. And so, despite the CFPB's position that she should not get an opportunity to re-litigate matters previously unaddressed, the Court will consider the points she raises.

to relief under the Rule. But, as the discussion of these three contentions shows, that relief is not warranted here.

### A. Pratcher's Version of the Facts

The facts at summary judgment, which the CFPB set out and which the Court accepted as undisputed in its Order, were as follows:

> Ms. Pratcher is Marcus Brown's estranged wife. In 2005, she entered a guilty plea for her involvement in an identity theft scheme coordinated by Mr. Brown. Eight years later, [1] Ms. Pratcher organized Universal Debt Solutions together with Mr. Brown. [2] Ms. Pratcher also organized and operated RX Office Solutions, a company with no earnings and no expenses that was used to process payments and funnel money from the debt-collection scheme. [3] Ms. Pratcher spent this money supporting the scheme by paying rent for the office space out of which a majority of the enterprise's operations took place. [4] She received $122,910.00 in checks from WNY Account Solutions.

[Dkt. 576 at 30–31 (numbering added)]. The Court concluded that these facts constituted "substantial assistance." In her Motion, Ms. Pratcher does not dispute the first or third facts. But she vigorously disputes the second and fourth.

First, she claims that the amount of money she received did not relate to the debt collection practices. Instead, it was a combination of rental income from properties she owned and support paid to her by her husband Marcus for the care of their children. She notes, correctly, that the affidavit of Ryan Thomas, which was the basis for the $122,910 figure, does not identify the source of the deposited

funds. The CFPB, for its part, does not really dispute her contention, except to note that she, individually, may not be entitled to those rents.

Next, Ms. Pratcher claims RX Office Solutions, the company she owned, was not involved in debt collection activity, which is shown by the evidence of the chargeback rates and the lack of consumer complaints linked to that entity. Again the CFPB does not really address this factual issue directly.

The Court assumes for the moment that these facts were disputed. The question Ms. Pratcher raises is whether the remaining evidence would be enough to warrant summary judgment on the issue of her of liability for providing substantial assistance under the statute.[2] And the answer is not immediately clear. So, the Court assumes without deciding that the remaining evidence would not warrant summary judgment and proceeds to consider the other issues.

### B. Alleged CFPB Misconduct

Ms. Pratcher claims that the CFPB presented a "false narrative" by failing to produce all the relevant evidence and by declining to pursue claims against four other users who were allegedly involved in the scheme, and whose contributions,

---

[2] It is worth noting that there was other evidence presented linking Ms. Pratcher to the other defendants' debt collection activities, but it was not explicitly referred to in the CFPB's Brief or in the Order. This recitation is more of a summary of the most critical evidence than an exhaustive presentation of all of it.

she says, far exceeded her own. The CFPB vehemently denies any wrongdoing. The Court agrees with the CFPB. Ms. Pratcher has not established any misconduct warranting relief under the Rule.

First, her allegations that the CFPB spoiled evidence or failed to produce appropriate discovery are unsupported by the record. Indeed, such claims are belied by the vast amount of evidence entered by the CFPB. Of the many cases the Court has entertained, this one rates among the largest in terms of the amount of evidence entered to support a summary judgment decision. And though more does not always mean better, it does tend to undermine the allegation that the CFPB painted a false narrative by omitting evidence and presenting a one-sided story.

Next, Ms. Pratcher's contentions about the other "users" do not reflect misconduct by the CFPB nor do they bear on the determination of her liability. She argues that four other individuals she calls "users" engaged in conduct similar to—or perhaps more flagrant than—her own. Assuming her allegations concerning the other users are true, she could perhaps be forgiven for thinking they got off easy by comparison. But that is a far cry from claiming that the CFPB misbehaved by failing to pursue those claims.

Ultimately, the CFPB is under no obligation to pursue any particular claim against any particular defendant. Its decision not to proceed against the other

individuals could have been for a myriad of reasons, none of which the Court need guess. Such determinations by government attorneys involve factors often unknown to the public or even to the Court; that is true in criminal cases as well as civil ones. And most importantly, its decision not to proceed against those others has no bearing whatsoever on Ms. Pratcher's liability.

## C. Causation

In sum, there is nothing in the record to suggest the CFPB committed any misconduct. But even if there were, still Ms. Pratcher would fall short here. That is because she could not show that it was the CFPB's conduct that actually prevented her from presenting these facts at the summary judgment stage.

Ms. Pratcher does endeavor to link her failure to respond to the CFPB in two ways: first, she claims, as with the above, the CFPB allegedly withheld information in discovery that would support her response. Second, reaching back to the outset of the case, she claims that similar misrepresentations by the CFPB about the source of funds led to the Court's issuing the asset freeze; the asset freeze, in turn, prevented her from being able to hire competent counsel to respond to the Summary Judgment Order many years later.

As for the former, the Court already established that there were no inappropriate withholdings. If there had been, it might have warranted some

consideration that any response she actually filed was inadequate. But the same contention does not justify a total failure to file any response at all. Regardless of the discovery she received or did not receive, Ms. Pratcher could have filed a response that laid out some of these issues. She did not do so.

The second argument highlights why, for Ms. Pratcher, the asset freeze and the summary judgment orders are intertwined. And not just for her—in this Motion, in Mr. Brown's previous Motion, and in their Response to the CFPB's Contempt Motions, the message from these Defendants has been consistent: that the asset freeze has worked hardship on the defendants that prevented them from effectively litigating this case.

It is undoubtedly true that the asset freeze made life harder for Pratcher. See F.T.C. v. IAB Mktg. Assocs., LP, 972 F. Supp. 2d 1307, 1315 (S.D. Fla. 2013) ("[I]t is axiomatic that an asset freeze . . . may have unpleasant consequences for the defendant, including foreclosures on real estate, injury to legitimate business enterprises and other personal hardship."). It may well have made hiring counsel more difficult. But that hardship is not, on its own, a basis for relief when the claim is an inability to hire counsel in a civil case. See F.T.C. v. Lalonde, 545 F. App'x 825, 832 (11th Cir. 2013) (citing CFTC v. Noble Metals Int'l, Inc., 67 F.3d 766,

775 (9th Cir.1995)) (casting doubt on the idea that assets must be unfrozen to pay for counsel in a civil case).

Further, Ms. Pratcher bears some responsibility for the hardship herself. As the CFPB points out, she could have requested a modification of the injunction allowing her to receive her rental income. This is not a novel idea. Nearly five years ago, her husband Marcus Brown made that very same request, and, after extended briefing and a hearing on the matter, the Court entered an Order "permit[ting] Defendant Marcus Brown to receive income from the monthly rent from five properties" as he requested. [Dkt. 143].[3] Indeed, at that hearing, Ms. Pratcher's ownership of real property—as well as her ability to seek the money from that property—was explicitly discussed. [See Dkt. 147 at 19].

In sum, the hardship she alleges, while genuine, cannot be attributed directly to the CFPB and in any event does not excuse her failure to respond to the Motion for Summary Judgment and raise her arguments at the appropriate time.

\* \* \*

---

[3] Two points are of note: *First*, Ms. Pratcher's claim is further undermined by her husband's. Marcus Brown makes the exact same argument about not being able to afford counsel because of his inability to collect rent, even though he sought and obtained a Court order allowing him to do so. [Dkt. 610]. *Second*, more recently, Ms. Pratcher has now moved to modify the injunction. That Motion will be taken up in the section below.

For all these reasons, Ms. Pratcher has failed to show that the CFPB engaged in "fraud, misrepresentations, or other misconduct." Further, she has failed to demonstrate that the CFPB's conduct prevented her from "fully presenting [her] case." Thus, she cannot meet the standard required under Rule 60(b)(3). Her Motion to Vacate the Summary Judgment [Dkt. 595] is accordingly **DENIED**.

This denial, however, does not mean that Ms. Pratcher cannot raise some of these factual issues *at the appropriate time*. Although the Court will not entertain any other Motions seeking relief from the finding of liability, when the time comes for the Court to hear from the parties concerning the appropriate damages, penalties, and other relief—and the Court expects to notify the parties of that deadline soon—Ms. Pratcher will be entitled to highlight the relevant, admissible evidence that she believes demonstrates the extent of her personal liability.

## II. CFPB'S MOTIONS FOR CONTEMPT AND FOR A RECEIVER

The CFPB has long sought for this Court to more stringently enforce the Preliminary Injunction Order against what it perceived as violations by the Defendants. Upon a prior Motion, the Court held Tasha Pratcher in contempt. [Dkt. 522]. The CFPB now asks the Court to extend that order to new violations, [Dkt. 551], and to do so for four additional defendants—individuals Marcus and Sarita Brown, and LLCs WNY Account Solutions and Universal Debt Solutions. [Dkt.

11

554].[4] The CFPB also asks that the Court impose certain sanctions, including the appointment of a receiver. [Dkt. 602].

## A. Contempt

"Courts have inherent power to enforce compliance with their lawful orders through civil contempt." Citronelle-Mobile Gathering, Inc. v. Watkins, 943 F.2d 1297, 1301 (11th Cir. 1991). "A party seeking civil contempt bears the initial burden of proving by clear and convincing evidence that the alleged contemnor has violated an outstanding court order." Commodity Futures Trading Comm'n v. Wellington Precious Metals, Inc., 950 F.2d 1525, 1529 (11th Cir. 1992).

After this *prima facie* showing is made, "the burden of production shifts to the alleged contemnor to show a present inability to comply that goes beyond a mere assertion of inability." Howard Johnson Co., Inc. v. Khimani, 892 F.2d 1512, 1516 (11th Cir. 1990) (internal quotations omitted). "Parties subject to a court's order demonstrate an inability to comply only by showing that they have made 'in good faith all reasonable efforts to comply.'" Citronelle-Mobile, 943 F.2d at 1301

---

[4] In the same filing, the CFPB also moved the Court to order the defendants to appear at a hearing and show cause why they should not be held in contempt. The Court ordered the parties to appear at a hearing [Dkt. 592], a hearing was held [Dkt. 607], and additional briefing was taken [Dkts. 610, 611, 613]. Therefore, to the extent it differs from the contempt Motion itself, the Court considers the Motion to Show Cause to be unnecessary. It is **DENIED as moot**.

(quoting United States v. Ryan, 402 U.S. 530, 534 (1971)). The court's focus in this inquiry "is not on the subjective beliefs or intent of the alleged contemnnors in complying with the order, but whether in fact their conduct complied with the order at issue." Howard Johnson, 892 F.2d at 1516.

If, and only if, the alleged contemnor makes a sufficient evidentiary showing, then the burden shifts back to the party seeking contempt to prove the ability to comply. Wellington Precious Metals, 950 F.2d at 1529.

Here, the CFPB crosses the initial hurdle. It has presented substantial evidence that (1) the Defendants transferred 23 properties subject to the asset freeze, that (2) Defendants Sarita Brown and WNYAS failed to disclose an additional 10 properties in the disclosures required by the order, and (3) that Defendants Marcus and Sarita Brown failed to appear for depositions and to produce documents in response to the CFPB's lawful discovery requests.

The Defendants, by contrast, do not meet their contrary burden. Of the new Defendants subject to the new Motion, the only one to respond was Marcus Brown.[5] And he did not dispute the underlying factual claims. Instead, repeating an argument from his prior request to sanction the CFPB, [Dkt. 550], which the Court denied [Dkt. 605], he claims that the transfers should not be held against him

---

[5] Of course, the LLC Defendants cannot appear pro se.

because he was advised by a CFPB lawyer in a phone call to sell the properties at issue. That argument need not be retraced here. It suffices to note that Brown does not dispute that he actually violated the Order. He, like the nonresponding defendants, cannot demonstrate an inability to comply.

Accordingly, the CFPB's Motion [Dkt. 554] is **GRANTED**. Defendants Marcus Brown, Sarita Brown, WNY Account Solutions, LLC, and Universal Debt Solutions, LLC, are hereby **HELD IN CONTEMPT** of the Order of this Court.

Tasha Pratcher also responded to the CFPB's claims about her. Even though she has already been held in contempt, the Court will briefly address her arguments. Like Brown, she also does not dispute the primary factual issue. Although she challenges the amounts the CFPB claims she received and whether there was any fraud in the transactions, she does not dispute that the properties were in fact sold. She argues instead that she sold them out of necessity to avoid foreclosure and paying certain judgments leveled by the city.

The underlying problem, just as with her purported inability to respond to the summary judgment motion, was that she had no money because she could not collect rents. And the argument falters for the same reason: she could have requested that the Court allow her to collect. There is nothing in her Response to persuade the Court that it ruled incorrectly when holding her in contempt before.

And the CFPB has presented sufficient evidence of the additional violations at issue. Therefore, the CFPB's Motion [Dkt. 551] is also **GRANTED**.[6]

\* \* \*

That leaves the question of sanctions. "Civil contempt sanctions are, of course, employed by the courts to secure compliance with their orders." Commodity Futures Trading Comm'n v. Wellington Precious Metals, Inc., 950 F.2d 1525, 1530 (11th Cir. 1992). The Court has "wide discretion in fashioning an equitable remedy for . . . civil contempt." F.T.C. v. Leshin, 719 F.3d 1227, 1231 (11th Cir. 2013). After the Court's hearing on the issue, and per the Court's directive, the CFPB filed a Reply brief [Dkt. 613] that addressed possible sanctions. Its recommendations departed somewhat from the previous requests in the original motions.

In particular, the CFPB requested the following: (1) that a Receiver be appointed to take over and manage the properties, pursuant to a request filed in a separate Motion [Dkt. 602]; (2) that the Defendants pay $100,000 into the court

---

[6] The Court does note that, unlike the other Defendants, Ms. Pratcher has appeared for some discovery, including her deposition. Even though she remains in contempt for the transfer of the properties, she has purged herself of contempt to the extent that she has complied with discovery requests. The CFPB highlighted some additional documents that she may have failed to produce. The Court notes that Ms. Pratcher is still required to comply with the CFPB's lawful discovery requests under the Preliminary Injunction.

registry; and (3) that Defendants be ordered to appear at depositions and produce requested documents on threat of incarceration. The Court addresses these three requests in the sections below.

**B. Appointment of a Receiver**

There is little doubt that the Court has the inherent equitable authority to appoint a receiver to enforce violations of the CFPA. The statute authorizes the Court to "grant any appropriate legal or equitable relief with respect to a violation of Federal consumer financial law." 12 U.S.C. §5565(a)(1). And, although the Eleventh Circuit has not addressed the statute directly, it has upheld a district court's authority to appoint a receiver in a related context. See F.T.C. v. IAB Mktg. Assocs., LP, 746 F.3d 1228, 1232 (11th Cir. 2014) (Section 13(b) of FTC Act).

That is because, unless the statute provides otherwise, "all the inherent equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction." F.T.C. v. U.S. Oil & Gas Corp., 748 F.2d 1431, 1434 (11th Cir. 1984). Here the statute does not proscribe the court's power to appoint a receiver; indeed, there is nothing to suggest that the Court cannot do so. Accord Consumer Fin. Prot. Bureau v. Pension Funding, LLC, No. 8:15-CV-01329-JLS-JCGx, Dkt. 61 (C.D. Cal. Jan. 8, 2016); Consumer Fin. Prot. Bureau v. Orion Processing, LLC, No. 1:15-CV-23070-MGC, Dkt. 28 (S.D. Fl. Sept. 2, 2015);

<u>Consumer Fin. Prot. Bureau v. Harper</u>, No. 9:14-cv-80931-JIC, Dkt. 131 (S.D. Fl. Mar. 2, 2015) (appointing receivers in CFPA cases).

Of course, authority is not the final determinant; just because the Court can do so does not necessarily mean it should. "A district court's appointment of a receiver . . . . is an extraordinary equitable remedy." <u>United States v. Bradley</u>, 644 F.3d 1213, 1310 (11th Cir. 2011) (citing 13 Moore's Federal Practice, § 66.04[2][a] (3d ed.2010)). And equity "intervenes only when there is no remedy at law or the remedy is inadequate." <u>Id.</u> Even then, "no precise formula exists for determining when a court should resort to appointing a receiver." <u>Clough Mktg. Servs., Inc. v. Main Line Corp.</u>, 2007 WL 496739, at *2 (N.D. Ga. Feb. 13, 2007).

Several factors may bear on a Court's decision whether to appoint a receiver: "(1) whether fraudulent activity has or will occur, (2) the validity of the claim, (3) the danger that property will be lost or diminished in value, (4) inadequacy of legal remedies, (5) availability of less severe equitable remedy, and (6) the probability that a receiver may do more harm than good." <u>Id.</u>

The Court is satisfied that those factors support the appointment, largely for the reasons set forth by the CFPB. [See Dkt. 602-1 at 9–12].[7] In awarding the preliminary injunction many years ago, the Court confirmed that equitable relief

---

[7] The Defendants did not respond to the Motion to Appoint a Receiver.

was warranted. Having awarded summary judgment, the validity of the claim is confirmed. And now at this later stage, having held the Defendants in contempt for repeated violations of that Order, the Court finds that a receiver is an appropriate remedy to protect against the dissipation of assets needed to satisfy the liability to consumers established (though not finally determined) at summary judgment.

Accordingly, the CFPB's Motion to Appoint a Receiver is **GRANTED**.[8] Per the CFPB's Request, Mark Bernet is hereby **APPOINTED** as **RECEIVER**. What remains then, is to determine the scope of the receiver's authority. Rather than do that here, the Court has attached as **EXHIBIT A** the implementing details for appointing the receiver and outlining the scope of his authority. The Receiver and the parties are **DIRECTED** to refer to **EXHIBIT A** and abide by it.

The Order largely mirrors what the CFPB requested. It extends to the remaining LLC Defendants as well as two additional LLCs: Rx Office Solutions, LLC, and Real Estate of Distinction, LLC. Each is wholly owned by an individual Defendant and has a material connection to this case. See Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc., 14 F.3d 1507, 1521 (11th Cir. 1994) ("[T]he general

---

[8] Because this is not a final judgment, the receiver and asset freeze does not operate in lieu of a legal attachment. The Court expresses no opinion yet on whether the receiver should remain in control of the properties after the liability of the parties is finally determined. See United States v. Bradley, 644 F.3d 1213, 1311 (11th Cir. 2011).

federal rule of equity is that a court may not reach a defendant's assets unrelated to the underlying litigation and freeze them so that they may be preserved to satisfy a potential money judgment."). Rx Office Solutions was discussed with respect to Ms. Pratcher's Motion in the section above. And Real Estate of Distinction was the grantor of 3 of the 23 properties sold in violation of the asset freeze order. Therefore, these companies properly fall within the scope of the Courts—and therefore the receiver's—authority.

The Court is aware that appointing a receiver to take control of these companies is a harsh sanction for the Defendants. But, because he will not be subject to the same limitations, the receiver will be able to make the necessary payments and invest and transfer the properties in a way that best preserves them for all parties. The receiver will also enable this case to proceed to its conclusion speedily, so that Defendants and the CFPB alike can finally achieve some closure.

## B. Payment into the Court Registry

The CFPB initially asked that the Defendants rescind the property transfers or pay an equivalent amount into escrow and that they post a bond equal to the value of the remaining assets they held. After the hearing, and with the possibility of receivership, they have limited that request to a payment of $100,000 by the Defendants into the registry of the Court. The $100,000 figure derives from a

supposed settlement offer made by Marcus Brown, which, as the CFPB notes, was disclosed in Defendants' public filings. [Dkt. 611]. The Court agrees that payment of the $100,000 into the Court registry is an appropriate sanction. The $100,000 can then be used to satisfy a judgment or settlement.

But the Court does not agree that the sanction should be imposed jointly. First, although the CFPB contends that the defendants should be joint and severally liable, the Court has not determined whether joint and several liability applies. And second, more importantly, when determining whether to sanction contempt, "the district court must make an individualized determination as to whether there exists a realistic possibility that the contemnor will comply." Commodity Futures Trading Comm'n v. Wellington Precious Metals, Inc., 950 F.2d 1525, 1530 (11th Cir. 1992). Civil contempt without the possibility of compliance becomes punitive.

The Court concludes therefore that it is appropriate require payment of Marcus Brown individually, but not of Sarita Brown or Tasha Pratcher. First, Marcus Brown, as the CFPB has repeatedly noted, was the ringleader of the debt collection scheme. And the judgment Order reflects that: whereas Sarita Brown and Tasha Pratcher were liable only for substantial assistance (Count VII), Marcus Brown was liable for the substantive conduct (Counts I-VII). Further, Marcus Brown's ability to pay appears more firmly established than the other two. He was

discussed as having made the offer; the evidence in Ms. Pratcher's Motion showed that he continued to pay support on her behalf; and, based on this Court's prior rulings, Marcus Brown was able to collect rents under the Court's asset freeze modification, whereas Tasha Pratcher was not.

Accordingly, Defendant Marcus Brown is **ORDERED** to **PAY $100,000** into the Court registry to be held for future satisfaction of judgment or settlement within **30 days** of this Order. The procedures for making the payment are described in Rule 67 of the Local Civil Rules, found on the Court's website: http://www.gand.uscourts.gov/local-rules.

### C. Deposition Attendance and Production of Documents

Finally, the CFPB asks that the individual Defendants be compelled to produce documents it requested in accordance with the Preliminary Injunction Order and this Order.[9] The CFPB notes that the Defendants have long defied their obligations: both Marcus and Sarita Brown failed to appear for depositions in 2018 and failed to produce documents. Tasha Pratcher appeared for her deposition and produced documents, but the CFPB notes that, in light of information contained in her filings, she may need to produce additional documents.

---

[9] The CFPB has withdrawn without prejudice its other discovery requests.

The Court agrees with the CFPB that the Defendants must produce documents lawfully requested under the authority of its prior Orders and the rules of discovery. But rather than grant the specific requests in the CFPB's Motion, which include different types of documents and references to prior document requests, the Court finds that it will be more effective for the CFPB to re-serve an updated request to each *individual* defendant.[10] The information requested should be limited to the scope identified in the CFPB's Motion and should not be duplicative of any request that the Receiver will issue. Similarly, because the Receiver will take custody and control of the documents belonging to the LLC Defendants, the LLC Defendants will not be ordered here to produce additional documents to the CFPB. Accordingly, the CFPB is **DIRECTED** to **SERVE** updated document requests on the individual Defendants and to file a notice attaching the requests to the Court within **14 days** of this Order.

As for the individual Defendants, they will be ordered to respond. However, their disparate prior conduct warrants some consideration in levying the threat of incarceration. Because they have failed to respond in the past, Marcus Brown and

---

[10] The Court has some concern that the individual defendants—particularly Sarita Brown—have not been receiving all of the mailings. Now that Sarita Brown has made a filing with her updated address, [see Dkt. 619] all three individuals should be receiving items mailed to them. If it has not already done so, the Clerk is **DIRECTED** to update Defendant Sarita Brown's mailing address in accordance with her filing.

Sarita Brown's compliance with the document requests will be required upon pain of incarceration. If they fail to meet their deadline to produce the documents, upon notice by the CFPB, the Court will issue a warrant for their arrest. They would then remain incarcerated until they comply with the discovery requests.

However, because she has obeyed prior requests, Tasha Pratcher's compliance will not be on threat of incarceration. If she fails to produce the documents, the CFPB must first attempt to contact her in a good faith effort to secure her compliance over a period of 14 days after the response deadline. If after 14 days, the CFPB is unsuccessful, it may then move this Court upon a showing of good cause to issue a warrant for her arrest.

Accordingly, the Court **ORDERS** that Defendants Marcus Brown and Sarita Brown **PRODUCE** the documents requested by the CFPB within **14 days** of service of its request, upon pain of incarceration. The Court further **ORDERS** that Defendant Tasha Pratcher **PRODUCE** the documents requested by the CFPB within **14 days** of service of its request.

Finally, the Court **DIRECTS** the CFPB to file a notice if and when a Defendant meets his or her discovery obligations so that the Court may be satisfied that the Defendant has purged the contempt.

## III. DEFENDANTS' MOTIONS FOR RELIEF

After the hearing and the supplemental responses for the contempt motions,

Tasha Pratcher filed a pair of Motions requesting a modification of the preliminary

injunction, [Dkts. 616, 623],[11] and Sarita Brown filed a motion requesting some

discovery. [Dkt. 619]. Ms. Pratcher seeks to obtain a loan for the express purpose

of proposing a settlement offer; Ms. Brown seeks bank records for the various LLC

Defendants but does not say why.

The CFPB opposes each request. It argues that Ms. Pratcher's request is

premature given the other moving pieces in each case. And it argues that Ms.

Brown's request is far too late given that formal discovery closed long ago. The

Court agrees with the CFPB about both. Neither request warrants a Court Order

granting relief.

Accordingly, both Ms. Pratcher's Motions [Dkts. 616, 623] and Ms.

Brown's Motion [Dkt. 619] are **DENIED**. However, the Court notes that the

appointed Receiver should be well-positioned to respond to the Defendants'

concerns. First, the Receiver's power to identify and preserve assets should

hopefully position Ms. Pratcher and the other Defendants to make a viable

---

[11] Ms. Pratcher, proceeding *pro se*, styled her Motions as ones to "Obtain Financing to Secure a Loan to Resolve Obligation with the CFPB." The Court treats them as requests to modify the asset freeze under the Preliminary Injunction.

settlement offer. And second, the Receiver's custody over financial records and other documents should position him to answer questions or provide records to the Defendants as is appropriate. Although the Court declines to order such a production under the auspices of formal discovery, the Court does expect the Receiver to cooperate with the parties' reasonable requests for information that is relevant to the conclusion of this case.

## Conclusion

In accordance with the discussion above, the Court issues the following rulings for the pending Motions:

- The CFPB's Supplemental Motion for Contempt Against Defendant Tasha Pratcher [Dkt. 551] is **GRANTED**.

- The CFPB's Motion for an Order to Show Cause Why Defendants Marcus Brown, Sarita Brown, WNY Account Solutions LLC, and Universal Debt Solutions LLC Should Not Be Held In Contempt [Dkt. 554] is **DENIED as moot**.

- The CFPB's Motion for Contempt Against Defendants Marcus Brown, Sarita Brown, WNY Account Solutions LLC, and Universal Debt Solutions LLC [Dkt. 554] is **GRANTED**.

- Tasha Pratcher's Motion to Vacate Summary Judgment [Dkt. 595] is **DENIED**.

- The CFPB's Motion to Appoint a Receiver [Dkt. 602] is **GRANTED**.

- Tasha Pratcher's Motions to Modify the Preliminary Injunction to Obtain Financing to Secure A Loan [Dkts. 616, 623] are **DENIED**.

- Sarita Brown's Motion to Request Bank Statements [Dkt. 619] is **DENIED**.

Pursuant to these rulings, the Court orders the following:

- The Defendants Tasha Pratcher, Marcus Brown, Sarita Brown, WNY Account Solutions LLC, and Universal Debt Solutions are **HELD IN CONTEMPT**.

- Mark Bernet is **APPOINTED** as **RECEIVER**. The Receiver, the Defendants, and the CFPB are **DIRECTED** to abide by **EXHIBIT A** attached to this Order.

- Defendant Marcus Brown is **ORDERED** to **PAY $100,000** into the Court registry to be held for future satisfaction of judgment or settlement within **30 days** of this Order. The procedures for making the payment are described in Rule 67 of the Local Civil Rules, found on the Court's website: http://www.gand.uscourts.gov/local-rules.

- The Clerk is **DIRECTED** to update Sarita Brown's mailing address to the address in her Motion [Dkt. 619], if it has not already done so.

- The CFPB is **DIRECTED** to **SERVE** updated document requests on the individual Defendants and to file a notice attaching the requests to the Court within **14 days** of this Order.

- Defendants Marcus Brown and Sarita Brown are **ORDERED** to **PRODUCE** the documents requested by the CFPB within **14 days** of service of its request, upon pain of incarceration.

- Defendant Tasha Pratcher is **ORDERED** to **PRODUCE** the documents requested by the CFPB within **14 days** of service of its request.

- The CFPB is **DIRECTED** to file a notice if and when a Defendant meets his or her discovery obligations.

\* \* \*

This case now enters its final stages. With the aid of the Receiver, the Court expects the parties to abide by the deadlines set out in this Order and to prepare to discuss the issues concerning the relief to be awarded under the Summary

Judgment Order. The Court will notify the parties at a later date about how to

proceed on those issues. In the meantime, the Court will not entertain other

Motions that retread ground already addressed in this Order or previous ones.

**SO ORDERED** this 19th day of February, 2020.

_____
**RICHARD W. STORY**
United States District Judge

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

CONSUMER FINANCIAL
PROTECTION BUREAU,

      Plaintiff,

      v.

UNIVERSAL DEBT & PAYMENT
SOLUTIONS, LLC, *et al.*,

      Defendants.

Civil Action No.

1:15-cv-859-RWS

## EXHIBIT A: RECEIVERSHIP[12]

## I. DEFINITIONS

For the purposes of this Order, the following definitions shall apply:

a. "Affected Consumer" means any Consumer who paid money to the LLC

Defendants between March 1, 2011 and March 31, 2015.

b. "Asset" means any legal or equitable interest in, right to, or claim to any

real, personal, or intellectual property, including, but not limited to, chattel,

---

[12] The Court's Order is adapted from the Proposed Order included in the CFPB's unopposed Motion. [Dkt. 602-4]. However, some modifications have been made. See Section III(e) (Receiver must petition Court to liquidate assets), Section VI (third party actions will not be stayed), and Section IX (Receiver must make request to Court to seal report), below.

goods, instruments, equipment, fixtures, general intangibles, effects,

leaseholds, contracts, mail or other deliveries, shares of stock, commodities,

futures, inventory, checks, notes, accounts, credits, receivables (as those

terms are defined in the Uniform Commercial Code), funds, cash, and trusts,

including trusts held for the benefit of a person's minor children or spouse,

wherever located, whether in the United States or abroad.

c. "Consumer" means an individual or an agent, trustee, or representative

acting on behalf of an individual. 12 U.S.C. § 5481(4).

d. "Document" and "Electronically Stored Information" are synonymous in

meaning and equal in scope to the usage of the terms in Rule 34(a) of the

Federal Rules of Civil Procedure and include but are not limited to:

1. The original or a true copy of any written, typed, printed,

electronically stored, transcribed, taped, recorded, filmed, punched, or

graphic matter or other data compilations of any kind, including, but

not limited to, letters, email or other correspondence, messages,

memoranda, paper, interoffice communications, notes, reports,

summaries, manuals, magnetic tapes or disks, tabulations, books,

records, checks, invoices, work papers, journals, ledgers, statements,

returns, reports, schedules, files, charts, logs, electronic files, stored in any medium; and

2.  Any electronically created or stored information, including but not limited to electronic mail, instant messaging, videoconferencing, SMS, MMS, or other text messaging, and other electronic correspondence (whether active, archived, unsent, or in a deleted items folder), word processing files, spreadsheets, databases, document metadata, presentation files, and sound recordings, whether stored on any cell phones, smartphones, flash drives, personal digital assistants (PDAs), cards, desktop personal computer and workstations, laptops, notebooks and other portable computers, or other electronic storage media, backup disks and tapes, archive disks and tapes, and other forms of offline storage, whether assigned to individuals or in pools of computers available for shared use, or personally owned but used for work-related purposes, whether stored on-site with the computer used to generate them, stored offsite in another company facility, or stored, hosted, or otherwise maintained off-site by a third party; and computers and related offsite storage used by any Defendant in this action or their participating associates, which may

include Persons who are not employees of the company or who do not work on company premises.

e. "Electronic Data Host" means any Person that stores, hosts, or otherwise maintains electronically stored information.

f. "Financial Institution" means any bank, savings and loan institution, credit union, or any financial depository of any kind, including, but not limited to, any brokerage house, trustee, broker-dealer, escrow agent, title company, commodity trading company, or precious metal dealer.

g. "LLC Defendants" means Check & Credit Recovery, LLC, Credit Power, LLC, S Payment & Processing Solutions, LLC, Universal Debt & Payment Solutions, LLC, Universal Debt Solutions, LLC, WNY Account Solutions, LLC, and WNY Solutions Group, LLC.

h. "Payment Processor" means any Person that provides or provided payment processing services, including, but not limited to, any payment processor, payment gateway, or merchant account provider.

i. "Person" means an individual, partnership, company, corporation, association (incorporated or unincorporated), trust, estate, cooperative organization, or other entity.

j.  "Receivership Entities" means Check & Credit Recovery, LLC, Credit

Power, LLC, Universal Debt & Payment Solutions, LLC, Universal Debt

Solutions, LLC, WNY Account Solutions, LLC, WNY Solutions Group,

LLC, Real Estate of Distinction, LLC, and Rx Office Solutions, LLC, as

well as any other entity that has conducted any business related to

Defendants' debt-collection business, including receipt of any Assets

derived from any activity that is the subject of the Complaint in this matter,

and that the Receiver reasonably determines is owned or controlled by any

Defendant.

k.  "Receivership Estate" means the Persons and Assets subject to the

receivership entered in this action, including all Assets of the Receivership

Entities, all Assets over which the Receiver makes a claim under an

equitable lien, constructive trust, or other legal or equitable theory, all other

Assets transferred to the Receiver in this action pursuant to this Order or any

subsequent order of this Court, and all accounts maintained with any

Financial Institution or Payment Processor designated as depositories for

funds of the Receivership Entities and all funds contained therein.

## II. APPOINTMENT OF RECEIVER

It is hereby **ORDERED** that Mark Bernet, Esq., of Akerman, LLP is appointed Receiver for the Receivership Entities with the full power of an equity receiver. The Receiver shall be the agent of this Court and solely the agent of this Court in acting as Receiver under this Order. The Receiver shall be accountable directly to this Court. The Receiver shall comply with all laws and Local Rules of this Court governing federal equity receivers.

## III.   DUTIES AND AUTHORITIES OF RECEIVER

It is further **ORDERED** that the Receiver is directed and authorized to accomplish the following:

a. Assume full control of the Receivership Entities by removing, as the Receiver deems necessary or advisable, any director, officer, independent contractor, employee, consultant or agent of any of the Receivership Entities, including any named Defendant in this action, from control of, management of, or participation in, the affairs of the Receivership Entities.

b. Take exclusive custody, control, and possession of all Assets and Documents of, or in the possession, custody, or under the control of, the Receivership Entities, wherever situated. The Receiver shall have full power to divert mail and to sue for, collect, receive, take into possession, hold, and

manage all Assets and Documents of the Receivership Entities and other Persons whose interests are now held by or under the direction, possession, custody, or control of the Receivership Entities. The Receiver shall not, however, attempt to collect or receive any amount from an Affected Consumer.

c.  Take all steps necessary to secure the business premises of the Receivership Entities. Such steps may include, but are not limited to, the following as the Receiver deems necessary or advisable:

1.  serving and filing this Order;

2.  completing a written inventory of all Assets of the Receivership Entities;

3.  obtaining pertinent information from all employees and other agents of the Receivership Entities, including but not limited to, the name, home address, social security number, job description, method of compensation, and all accrued and unpaid commissions and compensation of each such employee or agent, and all computer hardware and software passwords;

4.  videotaping or photographing all portions of the location;

7

5. securing the location, if appropriate, by changing the locks and disconnecting any computer modems or other means of access to the computer or other records maintained at that location;

6. requiring all employees, independent contractors, and consultants of the Receivership Entities to complete a questionnaire submitted by the Receiver; and

7. requiring any Persons present on the premises at the time this Order is served to leave the premises, to provide the Receiver with proof of identification, or to demonstrate to the satisfaction of the Receiver that such Persons are not removing from the premises Documents or Assets of the Receivership Entities.

d. Conserve, hold, and manage all Assets of the Receivership Entities, and perform all acts necessary or advisable to preserve the value of those Assets, in order to prevent any irreparable loss, damage, or injury to Affected Consumers or to creditors of the Receivership Entities, including, but not limited to, obtaining an accounting of the Assets and preventing transfer, withdrawal, or misapplication of Assets;

8

e. *Request leave of the Court to* Liquidate any and all Assets owned by or for the benefit of the Receivership Entities as the Receiver deems to be advisable or necessary;

f. Enter into contracts and purchase insurance as the Receiver deems to be advisable or necessary;

g. Prevent the inequitable distribution of Assets and determine, adjust, and protect the interests of Affected Consumers and creditors who have transacted business with the Receivership Entities;

h. Manage and administer the business of the Receivership Entities until further order of this Court by performing all incidental acts that the Receiver deems to be advisable or necessary, which includes retaining, hiring, or dismissing any employees, consultants, independent contractors, or agents;

i. Choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

j. Make payments and disbursements from the Receivership Estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order. The Receiver shall apply to the Court for

prior approval of any payment of any debt or obligation incurred by the Receivership Entities prior to the date of entry of this Order, except payments that the Receiver deems necessary or advisable to secure Assets of the Receivership Entities, such as rental payments or payment of liens;

k.  Determine and implement measures to ensure that the Receivership Entities comply with and prevent violations of this Order and the Preliminary Injunction Order [ECF No. 16] and all other applicable laws, including, but not limited to, implementing monitoring procedures;

l.  Institute, compromise, adjust, appear in, intervene in, or become party to such actions or proceedings in state, federal, or foreign courts that the Receiver deems necessary and advisable to preserve or recover the Assets of the Receivership Entities, or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order;

m. Defend, compromise, adjust, or otherwise dispose of any or all actions or proceedings instituted in the past or in the future against the Receiver in his or her role as Receiver, or against the Receivership Entities, that the Receiver deems necessary and advisable to preserve the Assets of the Receivership Entities or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order;

n.  Continue and conduct the business of the Receivership Entities in such manner, to such extent, and for such duration as the Receiver may in good faith deem to be necessary or appropriate to operate the business profitably and lawfully, if at all; provided, however, that the continuation and conduct of the business shall be conditioned upon the Receiver's good faith determination that the businesses can be lawfully operated at a profit using the Assets of the Receivership Estate;

o.  Take depositions and issue subpoenas to obtain Documents and records pertaining to the Receivership Estate, transfers of assets by the Receivership Entities, payment of a judgment or restitution to Affected Consumers, and compliance with this Order. Subpoenas may be served by agents or attorneys of the Receiver and by agents of any process server retained by the Receiver;

p.  Take all steps necessary or advisable, including issuing subpoenas, to identify Affected Consumers, including name, address, telephone number, email address, total amount paid, amount of any full or partial refund or chargeback, and payment information;

q.  Open one or more bank accounts as designated depositories for funds of the Receivership Entities. The Receiver shall deposit all funds of the Receivership Entities in such a designated account and shall make all

payments and disbursements from the Receivership Estate from such account(s);

r.  Maintain accurate records of all receipts and expenditures that the Receiver makes as Receiver;

s.  Cooperate with reasonable requests for information or assistance from any state or federal law enforcement agency;

t.  Provide the Bureau, upon request, with any business records of the Receivership Entities or business records obtained in discovery that identify Affected Consumers and their payment and refund information;

u.  Intercept, divert, and open any mail addressed to any of the Receivership Entities that comes into the Receiver's possession, custody, or control;

v.  Prepare and submit periodic reports to this Court, as directed by the Court;

w.  Maintain the chain of custody of all of the Receivership Entities' records in their possession; and

x.  Notify any courts in which Receivership Entities have litigation pending, that this case is pending, and request temporary stays of those cases or any other necessary relief to preserve the rights of Consumers.

It is further **ORDERED** that law enforcement personnel, including, but not limited to, police or sheriffs, may assist the Receiver in implementing these provisions in order to keep the peace and maintain security.  If requested by the Receiver, the United States Marshal will provide appropriate and necessary assistance to the Receiver to implement this Order and is authorized to use any necessary and reasonable force to do so.

## IV.    COOPERATION WITH RECEIVER

It is further **ORDERED** that:

a. Defendants; Receivership Entities; Defendants' and Receivership Entities' officers, agents, employees, and attorneys, and all other

Persons in active concert or participation with any of them; and any other Person with possession, custody, or control of property of or records relating to the Receivership Entities, who receive actual notice of this Order, shall fully cooperate with and assist the Receiver. Defendants' cooperation and assistance shall include, but not be limited to:

  1. Providing any information to the Receiver that the Receiver deems necessary to exercising the authority and discharging the responsibilities of the Receiver under this Order, including but not

13

limited to allowing the Receiver to inspect Documents and Assets and to partition office space;

2. Providing any username or password and executing any documents required to access any computer or electronic files in any medium, including but not limited to Electronically Stored Information stored, hosted, or otherwise maintained by an Electronic Data Host; and

3. Advising all Persons who owe money to the Receivership Entities that all debts should be paid directly to the Receiver.

b. Defendants and their successors, assigns, officers, directors, agents, servants, employees, attorneys, and all other Persons directly or indirectly, in whole or in part, under their control, and all other Persons in active concert or participation with them who receive actual notice of this Order, and any other Person served with a copy of this Order, shall not interfere in any manner, directly or indirectly with the custody, possession, management, or control by the Receiver of Assets and Documents, and are hereby restrained and enjoined from directly or indirectly:

1. Transacting any of the business of the Receivership Entities;

2. Destroying, secreting, erasing, mutilating, defacing, concealing, altering, transferring or otherwise disposing of, in any manner,

14

directly or indirectly, any Documents or equipment of the Receivership Entities, including but not limited to contracts, agreements, Consumer files, Consumer addresses and telephone numbers, correspondence, advertisements, brochures, sales material, sales presentations, Documents evidencing or referring to Defendants' services, training materials, scripts, data, computer tapes, disks, or other computerized records, books, written or printed records, handwritten notes, telephone logs, "verification" or "compliance" tapes or other audio or video tape recordings, receipt books, invoices, postal receipts, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, copies of federal, state or local business or personal income or property tax returns, photographs, mobile devices, electronic storage media, accessories, and any other Documents, records or equipment of any kind that relate to the business practices or business or personal finances of the Receivership Entities or any other entity directly or indirectly under the control of the Receivership Entities;

3. Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any Assets owned,

controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Receivership Entities, or the Receiver;

4. Excusing debts owed to the Receivership Entities;

5. Failing to notify the Receiver of any Asset, including accounts, of a Receivership Defendant held in any name other than the name of the Receivership Defendant, or by any Person other than the Receivership Defendant, or failing to provide any assistance or information requested by the Receiver in connection with obtaining possession, custody, or control of such Assets;

6. Failing to create and maintain books, records, and accounts which, in reasonable detail, accurately, fairly, and completely reflect the incomes, Assets, disbursements, transactions and use of monies by the Defendants or any other entity directly or indirectly under the control of the Defendants;

7. Doing any act or refraining from any act whatsoever to interfere with the Receiver's taking custody, control, possession, or managing of the Assets or Documents subject to this Receivership; or to harass or to interfere with the Receiver in any way; or to interfere in any manner with the exclusive jurisdiction of this Court over the Assets or

Documents of the Receivership Entities; or to refuse to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their duties or authority under any Order of this Court;

8. Creating, operating, or exercising any control over any business entity, whether newly formed or previously inactive, including any partnership, limited partnership, joint venture, sole proprietorship, or corporation, without first providing the Bureau with a written statement disclosing: (1) the name of the business entity; (2) the address and telephone number of the business entity; (3) the names of the business entity's officers, directors, principals, managers, and employees; and (4) a detailed description of the business entity's intended activities, and

9. Filing, or causing to be filed, any petition on behalf of the Receivership Entities for relief under the United States Bankruptcy Code, 11 U.S.C. § 101 et seq., without prior permission from this Court.

## V. DELIVERY OF RECEIVERSHIP PROPERTY

It is further **ORDERED** that immediately upon service of this Order upon them or upon their otherwise obtaining actual knowledge of this Order, or within a

period permitted by the Receiver, Defendants and any other Person, including but not limited to Financial Institutions, Electronic Data Hosts, and Payment Processors, shall transfer or deliver access to, possession, custody, and control of the following to the Receiver:

a. All Assets held by or for the benefit of the Receivership Entities.

b. All Documents of the Receivership Entities, including but not limited to books and records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, records of ACH transactions, and check registers), client or customer lists, title documents and other papers.

c. All Assets belonging to members of the public now held by the Receivership Entities.

d. All keys, computer and other passwords, user names, entry codes, combinations to locks required to open or gain or secure access to any Assets or Documents of the Receivership Entities, wherever located, including, but not limited to, access to their business premises, means of communication, accounts, computer systems, or other property.

e. Information identifying the accounts, employees, properties, or other Assets or obligations of the Receivership Entities.

In the event any Person fails to deliver or transfer immediately any Asset, Document, or other thing under this Section, or otherwise fails to comply with any provision of this Section, the Receiver may file *ex parte* with the court an Affidavit of Non-Compliance regarding the failure. Upon filing of the affidavit, the Court may authorize, without additional process or demand, Writs of Possession or Sequestration or other equitable writs requested by the Receiver. The writs shall authorize and direct the United States Marshal, any Deputy United States Marshal or any sheriff or deputy sheriff of any county to seize the Asset, Document, or other thing and to deliver it to the Receiver.

## VI.  STAY OF ACTIONS

It is further **ORDERED** that:

a. Except by leave of this Court, during pendency of the Receivership ordered herein, Defendants are hereby stayed from taking any action for, against, on behalf of, or in the name of any of the following: the Receivership Entities, any of their subsidiaries, affiliates, partnerships, Assets, Documents, or the Receiver or the Receiver's duly authorized agents acting in their capacities as such. Such hereby-stayed actions include, but are not limited to, the following:

1. Commencing, prosecuting, continuing, entering, or enforcing any suit or proceeding, except that such actions may be filed to toll any applicable statute of limitations;

2. Attempting to foreclose, forfeit, alter, or terminate any interest in any Asset, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise;

3. Executing, issuing, serving, or causing the execution, issuance, or service of, any legal process, including, but not limited to, attachments, garnishments, subpoenas, writs of replevin, writs of execution, or any other form of process whether specified in this Order or not; or

4. Doing any act or thing whatsoever to interfere with the Receiver taking custody, control, possession, or management of the Assets or Documents subject to the Receivership, or to harass or interfere with the Receiver in any way, or to interfere in any manner with the exclusive jurisdiction of this Court over the Assets or Documents of the Receivership Entities; and

b. Except as otherwise provided in this Order, all Persons in need of documentation from the Receiver shall in all instances first attempt to secure

such information by submitting a formal written request to the Receiver,

and, if such request has not been responded to within thirty days of receipt

by the Receiver, any such Person may thereafter seek an Order of this Court

with regard to the relief requested.

## VII.  LIMITED DISCOVERY BY RECEIVER

It is further **ORDERED** that the Receiver is granted leave to conduct certain

expedited discovery, and that, commencing with the time and date of this Order, in

lieu of the time periods, notice provisions, and other requirements of Rules 19, 26,

30, 34, and 45 of the Federal Rules of Civil Procedure, and applicable Local Rules,

the Receiver is granted leave to:

a. Take the deposition, on three days' notice, of any Person, whether or not a
   party, for the purpose of: (1) discovering the nature, location, status, and
   extent of Assets of the Receivership Entities; (2) discovering the nature and
   location of Documents and business records of the Receivership Entities; (3)
   discovering the identity of and amounts paid by Affected Consumers; and
   (4) enforcing compliance with this Order. The limitations and conditions set
   forth in Fed. R. Civ. P. 30(a)(2) and 31(a)(2) regarding subsequent
   depositions shall not apply to depositions taken pursuant to this Section. In
   addition, any such depositions taken pursuant to this Section shall not be

counted toward the ten deposition limit set forth in Fed. R. Civ. P. 30(a)(2)(A)(i) and 31(a)(2)(A)(i). Service of discovery upon a party, taken pursuant to this Section, shall be sufficient if made by facsimile, email, or by overnight delivery. Any deposition taken pursuant to this subsection that has not been reviewed and signed by the deponent may be used by any party in connection with this litigation.

b. Serve upon parties requests for production of documents or inspection that require production or inspection within three calendar days of service, and serve upon non-parties subpoenas that direct production or inspection within five calendar days of service, for the purpose of: (1) discovering the nature, location, status, and extent of assets of the Receivership Entities; (2) discovering the nature and location of Documents and business records of the Receivership Entities; (3) discovering the identity of and amounts paid by Affected Consumers; and (4) compliance with this Order, provided that twenty-four hours' notice shall be deemed sufficient for the production of any such Documents that are maintained or stored only as electronic data.

c. Serve deposition notices and other discovery requests upon the parties to this action by facsimile or overnight courier, and take depositions by telephone or other remote electronic means.

d. If a Defendant fails to appear for a properly noticed deposition or fails to comply with a request for production or inspection, seek to prohibit that Defendant from introducing evidence at any subsequent hearing.

## VIII.  COMPENSATION FOR RECEIVER

It is further **ORDERED** that the Receiver and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order, and for the cost of actual out-of-pocket expenses incurred by them, from the Assets now held by or in the possession or control of, or which may be received by, the Receivership Entities. The Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of this Order. The Receiver shall not request more than $375 per hour, which hourly rate shall not increase without prior approval of the Court.

## IX.   RECEIVER'S REPORTS

It is further **ORDERED** that the Receiver shall report to this Court within forty-five days of the entry of this Order and then again periodically, as the Receiver believes appropriate, regarding:

a. The steps taken by the Receiver to implement the terms of this Order.

b.  The value of all liquidated and unliquidated assets of the Receivership Entities.

c.  The sum of all liabilities of the Receivership Entities.

d.  The steps the Receiver intends to take in the future to (a) prevent any diminution in the value of Assets of the Receivership Entities, (b) pursue Assets from third parties, and (c) adjust the liabilities of the Receivership Entities, if appropriate.

e.  The Receiver's assessment of whether the business can be operated in compliance with this Order.

f.  Any other matters that the Receiver believes should be brought to the Court's attention.

Provided, however, that if any of the required information would hinder the Receiver's ability to pursue Assets of the Receivership Entities, the Receiver may request that the Court seal the document, noting specifically that the parties not be able to see it. If the Court grants the request, the document need not be served on other parties.

## X. WITHDRAWAL OF RECEIVER

It is further **ORDERED** that the Receiver and any professional retained by the Receiver, including but not limited to his or her attorneys and accountants, be

24

and are hereby authorized to reasonably withdraw from their respective

appointments or representations and apply for payment of their professional fees

and costs at any time after the date of this Order by sending written notice seven

days prior to the date of the intended withdrawal to the Court and to the parties

along with a written report reflecting the Receiver's work, findings, and

recommendations, as well as an accounting for all funds and assets in possession or

control of the Receiver. The Receiver shall be exonerated and the receivership

deemed closed seven days from the date of the mailing of such notice of

withdrawal, unless the Court extends the receivership by appointing a substitute

receiver. The Court will retain jurisdiction to consider the fee applications, report,

and accounting submitted by the Receiver and any professional retained by the

Receiver. The written notice shall include an interim report indicating the

Receiver's actions and reflect the knowledge gained along with the fee applications

of the Receiver and any professional retained by the Receiver. The report shall also

contain the Receiver's recommendations, if any.

## XI.   RECEIVER'S BOND/LIABILITY

It is further **ORDERED** that no bond shall be required in connection with

the appointment of the Receiver. Except for an act of gross negligence or

intentional misconduct, the Receiver and any professional retained by the Receiver

shall not be liable for any loss or damage suffered by any of the Defendants, their

officers, agents, servants, employees, and attorneys or any other Person, by reason

of any act performed or omitted to be performed by the Receiver and any

professional retained by the Receiver in connection with the discharge of their

duties and responsibilities, including but not limited to their withdrawal from the

case under Section X.

## XII.   DEFENDANTS' DUTY TO DISTRIBUTE ORDER

It is further **ORDERED** that Defendants shall immediately provide a copy

of this Order to each affiliate, subsidiary, division, sales entity, successor, assign,

officer, director, employee, independent contractor, client company, Electronic

Data Host, agent, authorized signatory to bank accounts, attorney, spouse, and

representative of Defendants and shall, within three calendar days from the date of

entry of this Order, provide counsel for the Bureau with a sworn statement that: (a)

confirms that Defendants have provided copies of the Order as required by this

Section and (b) lists the names and addresses of each Person to whom Defendants

provided a copy of the Order. Furthermore, Defendants shall not take any action

that would encourage officers, agents, directors, employees, salespersons,

independent contractors, attorneys, subsidiaries, affiliates, successors, assigns, or

other Persons in active concert or participation with Defendants to disregard this

Order or believe that they are not bound by its provisions.

## XIII.  CORRESPONDENCE WITH PLAINTIFF

It is further **ORDERED** that, for the purposes of this Order, because mail

addressed to the Bureau is subject to delay due to heightened security screening, all

correspondence and service of pleadings on the Bureau shall be sent either via

electronic submission through the court's electronic filing system or via

commercial overnight express delivery or via email to:

> Mary Warren
> Bureau of Consumer Financial Protection
> Office of Enforcement
> 1700 G Street, NW
> Washington, DC 20552
> Email: Mary.Warren@cfpb.gov

> With copies to:

> Maureen McOwen
> Rebecca Coleman
> Bureau of Consumer Financial Protection
> Office of Enforcement
> 1700 G Street, NW
> Washington, DC 20552
> Email: Maureen.McOwen@cfpb.gov; Rebecca.Coleman@cfpb.gov

## XIV.  SERVICE OF THIS ORDER

It is further **ORDERED** that copies of this Order may be served by facsimile

transmission, email, personal or overnight delivery, or U.S. Mail, by agents and

employees of the Bureau or any state or federal law enforcement agency or by private process server, upon any Financial Institution, Payment Processor, or other Person that may have possession, custody, or control of any Documents or Assets of any Defendant, or that may otherwise be subject to any provision of this Order. Service upon any branch, subsidiary, affiliate, or office shall effect service upon the entire entity.

## XV.   RETENTION OF JURISDICTION

It is further **ORDERED** that this Court shall retain jurisdiction of this matter for all purposes of construction, modification, and enforcement of this Order.